**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KYLE ALEXANDER, and ) <br> DYLAN SYMINGTON, ) <br> on behalf of themselves and all those similarly ) <br> situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BF LABS INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 14-CV-2159-KHV-JPO |

**AGREED ORDER ESTABLISHING PROTOCOL
FOR ESI AND PAPER DOCUMENTS**

Pursuant to the Court's Scheduling Order (Doc. No. 8), and this District's *Guidelines for Discovery of Electronically Stored Information (ESI),* Plaintiffs Kyle Alexander and Dylan Symington, on behalf of themselves and all those similarly situated ("Plaintiffs"), and Defendant BF Labs Inc. ("Defendant") have met and conferred regarding ESI production and have agreed to the following protocols. The protocols are before the Court in the form of a proposed Order. The Court has reviewed the proposed Order and finds that the protocol set forth in the proposed Order is an effective and efficient method for discovery of ESI, including paper documents which will be electronically scanned. Accordingly, for good cause shown, IT IS HEREBY ORDERED as follows:

### I. DEFINITIONS

  a. **ESI:** Electronically stored information, regardless of the media, including scans of hard copy (*i.e.*, paper documents).

  b. **Potentially Discoverable ESI:** Plaintiffs' and Defendant's electronic "documents" containing or potentially containing information relating to facts at issue in the Complaint, where the term "documents" is used as it is defined in Fed. R. Civ. P. 34(a).

    c. **<u>Reasonably Accessible ESI</u>:** ESI available without undue burden or cost, including active or dynamic media such as information stored on drives and servers accessible by desktops, laptops, tablets, and other computer interfaces other than PDAs, smartphones, or cells phones. Legacy data (*i.e.*, data that has been created or stored by the use of software and/or hardware that has been replaced), and data that require forensic analysis to recover are not reasonably accessible.

    d. **<u>Search Terms</u>:** Search Terms are words or phrases that can be used to identify potentially relevant documents.

    e. **<u>Searching Syntax</u>:** Searching Syntax refers to logical combinations of Search Terms that can be used to narrow the search for potentially relevant documents.

## II. GENERAL SCOPE

    a. **<u>Potentially Discoverable ESI.</u>**

        i. Unless otherwise specifically stated and agreed to the contrary, the parties agree that, pursuant to the Federal Rules of Civil Procedure, Local Rules and the Court's Scheduling Order (Doc. No. 8), only Reasonably Accessible ESI will be reviewed and produced unless a party makes a specific request for other ESI. Nothing in this proposed Order establishes any agreement as to either the temporal or subject matter scope of discovery in this lawsuit.

        ii. Should a dispute arise among the parties in determining and agreeing upon whether a particular population of ESI or entire ESI data source is inaccessible or needs to be produced, the parties will make a good faith effort to resolve such a dispute before any motion is filed with the Court.

    b. **<u>Preservation of Discoverable Information.</u>**

    A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

    c. **<u>Guidelines.</u>**

        i. The parties have jointly agreed to collect, process and review Potentially Discoverable ESI and produce responsive ESI in accordance with the principles set forth in the Sedona Conference's 2008 Cooperation Proclamation, founded on principles of reasonableness and proportionality aimed at exhaustively but succinctly producing all responsive ESI to both parties. As part of the parties' agreement, the parties may embark on a collaborative effort to identify appropriate Search Terms and Searching

>   Syntax, scoped to key player custodians and date range filtering corresponding to the subject matter of this lawsuit. Nothing herein, however, obligates a producing party to use Search Terms and Searching Syntax to identify Potentially Discoverable ESI or responsive ESI.
>
>   ii. To the extent any party identifies for its own production ESI documents that it believes render use of Search Terms and Searching Syntax appropriate, the parties agree to begin discussing and crafting potential Search Terms and Searching Syntax. The parties agree to identify such Search Terms and Searching Syntax to be used by both parties as part of their collection and processing of ESI, including paper that will be scanned, as set forth in these protocols.
>
>   iii. After reaching such agreement, if a party later decides other Search Terms and Searching Syntax should be crafted in order to identify additional Potentially Discoverable ESI and responsive ESI, the parties agree to a further series of meet and confer concerning that request before filing a motion with the Court.
>
>   iv. Nothing in this agreement, including any provisions related to the use or non-use of Search Terms or Search Syntax, shall excuse a party from searching for and producing documents from locations (including electronic files) it knows or reasonably believes to have responsive information.
>
>   v. This Agreement does not govern any production of back-up media. For purposes of this Agreement, "back-up media" shall be defined as tape-based back-up systems or disaster recovery back-up systems. However, Parties agree to preserve all back-up media during the term of this litigation, pursuant to applicable case law. If either Party later determines that the production of back-up media is relevant, the Requesting Party shall notify the Responding Party immediately and the parties will agree to confer at that time to develop a reasonable approach to handle such requests. In addition, in the event that any Party identifies a particular source of responsive documents or electronically stored information for which application of this Protocol would be unduly burdensome or impractical (e.g., Data for which word searches would be impossible or otherwise impractical), the Party identifying the source will promptly notify the other Parties and the Parties will confer concerning appropriate modifications of this Protocol with respect to that source.

III. **IDENTIFICATION OF RESPONSIVE ESI**

   a. **Search Terms and Syntax.** To the extent any party intends to use Search Terms and Searching Syntax as set forth generally in the proceeding section, the parties agree to identify Search Terms and Searching Syntax for ESI. The use of Search

Terms and Searching Syntax, however, does not excuse a party from its normal obligations under the Federal Rules of Civil Procedure to conduct its own diligent search for responsive documents and produce them.

b. **Custodians of ESI or Paper Documents.** The parties agree to identify the individuals who have or previously had control of a network, computer or other specific electronic files within or upon which Potentially Discoverable ESI may be or may have been maintained. To the extent a party is unable to identify a certain population of custodians until provided adequate contentions or other notice by the opposing party, the parties agree to supplement such list of custodians within a reasonable period of time.

c. **Locations to be Searched.** The parties agree to identify the locations where Potentially Discoverable ESI is stored, such as centralized repositories and custodial files (*i.e.*, files stored on the custodian's laptop, desktop, tablet or other individually controlled computer other than PDAs, smartphones, or cells phones) and email for the custodians identified in section b above.

d. **Search Methodology.** To the extent Search Terms and Searching Syntax will be used to identify Potentially Discoverable ESI and responsive ESI for any location identified pursuant to section c above, the parties agree to specify the Search Terms and Searching Syntax to be used for each such location.

e. **Deduplication**. A party is only required to produce a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (*e.g*., side threads, subject line changes), selective deletion of previous thread content by sender, etc. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

f. **Forensic Images of Hard Drives.** The parties agree that it is not necessary to create forensic snapshot images of the custodians' laptop or desktop hard drives at this time. If a party later requests that a forensic image be created and searched in order to identify additional responsive ESI, the parties agree to meet and confer concerning that request before filing a motion with the Court. The parties also recognize, however, that there may be inadvertent changes to the computer hardware whereby forensic information is inadvertently not preserved.

    g. **Duty of Producing Party.** If a producing party becomes aware of Potentially Discoverable ESI or responsive ESI that was not extracted using the Search Terms and Searching Syntax provided for in this Protocol, the party will produce the ESI.

    h. **Additional Discovery Permitted.** The above statements are those of the respective parties regarding their own ESI, and nothing herein shall be deemed to estop or bar the non-producing party from engaging in discovery (*e.g.,* interrogatories, depositions) to determine the types of ESI and paper documents maintained by the producing party and the investigations which have been performed to identify or produce responsive ESI. Likewise, the parties do not waive any rights to assert any applicable objections to such discovery, including but not limited to objections based on the scope of such discovery, the burden (of such discovery, the attorney-client privilege or the work-product protection, nor does any party waive the right to subsequently argue that the scope or process should be revised.

    i. **Reasonable Diligence.** The parties will use reasonable diligence to search for and retrieve Potentially Discoverable ESI, but the parties recognize that the processes and software to be utilized for compliance with this protocol are not perfect. If any issues arise regarding the methods used by either party, the parties will confer to resolve those issues that may arise relating to the manner in which the retrieval and searches are completed.

    j. **Information Not Searchable.** The parties recognize that there may be some ESI, including some email that are not recoverable due to technical reasons. For example, ESI that is corrupt will not be searched. Additionally, there may be email attachments that are not searchable due to technical reasons or the format in which they were created. If, however, an email is produced or logged, all attachments thereto must also be produced or logged regardless of whether one or more of such attachments are unsearchable.

IV. **FORM OF DOCUMENTS: GENERAL PRINCIPLES**

    a. **ESI Document Production Format.** The following provisions shall generally govern the production format and procedure for responsive ESI including scanned paper documents.

        i. <u>Format.</u> All responsive ESI shall be produced electronically, in PDF format. The producing party will produce imaged copies of scanned paper documents together with OCR text generated from the imaged copies of such scanned paper documents. To the extent a producing party provides imaged copies of scanned paper documents with OCR text generated from the imaged copies, the receiving party accepts such production "as is," and the producing party accepts no liability as to the accuracy of searches conducted upon such production. All images must be assigned a unique

      Bates number that is sequential within a given document and across the production sets. Responsive documents in PDF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. If a responsive document produced in native format it will have its confidentiality designation identified in the filename of the native file.

ii. <u>Paper Documents.</u> Paper documents will be scanned to PDF format and produced in the same manner as electronic documents identified in section IV.A.i. The imaged copies of scanned paper documents will be logically unitized (*i.e.*, to preserve page breaks between documents and otherwise allow separate documents to be identified).

iii. <u>Appearance.</u> Subject to bates-numbering, confidentiality legending, and appropriate redacting with requisite marking indicating such redaction has occurred, each document's electronic image shall convey the same information and image as the original document. Documents that present imaging or other technical formatting problems shall be promptly identified; the parties shall meet and confer in an attempt to correct and re-deliver any affected data, in accordance with each parties' existing in-house or outsourced e-discovery technology resources.

iv. <u>Requests for Additional Information</u>. The Parties agree that they will only seek native files and metadata in situations where it makes it easier for a party to search through a certain document. In the event a producing party believes the scope or number of such requests is unduly burdensome, and the parties cannot agree on an appropriate method to resolve such disputes, the Court shall resolve such disputes.

v. <u>Redaction Of Information</u>. If documents are produced containing redacted information, the producing party shall supply a list of the documents for any such claim(s) of privilege, indicating the grounds for the redaction and the nature of the redacted material (*e.g.*, privilege, trade secret, privacy). Any redacted information should be identified as "Redacted" on the document. During the course of the litigation, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data.

vi. <u>Decryption and Passwords.</u> To the extent that decryption or access passwords are necessary to unlock any electronic document in its native form, including without limitation electronic mail passwords and file decryption passwords, the parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.

    b. **<u>Variance.</u>** Any practice or procedure set forth herein may be varied by agreement of the parties, and confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of responsive ESI.

    c. **<u>Duplicate Production Not Required.</u>** A party producing a document in electronic form need not produce the same document in paper format.

    d. **<u>Production of Electronic Data.</u>** As the producing party identifies electronic data to be produced, the producing party shall provide one or more external hard-drives sufficient to hold and store each production set containing such data or secure file exchange over the internet as the parties agree. If the producing party believes that production on a different media or in a different manner would be more cost effective, the parties will confer to arrive at an appropriate method for providing electronic data to other parties.

V. **PRODUCTION OF ELECTRONIC DATA: ACTUAL FORM OF PRODUCTION TECHNICAL SPECIFICATIONS**

    a. **<u>Form of Production Agreement:</u>** In accordance with Fed. R. Civ. P. 34, and relying on the parties' opportunity for sampling afforded under Fed. R. Civ. P. 34(a)(1), the parties have collaboratively developed and agreed upon the following forms of production and related required technical specifications.

    b. **<u>Form of Production:</u>**

        i. The parties shall meet-and-confer to reach an agreement concerning the form of production for any discovery document record whose source was originally electronic in nature (ESI) in the ordinary course of business. The agreement shall address at least the following issues:

            1. <u>Rendering documents searchable.</u> ESI and Hard Copy documents should be produced with a corresponding OCR file.

            2. Specification of which documents should be produced in native format.

        ii. The parties will negotiate and agree upon the metadata that will be produced along with responsive ESI.

        iii. For paper documents that are not ESI, each party shall electronically store the document as PDFs and produce the document in accordance with the ESI procedures discussed above. For example, it is understood that it is not realistic to provide OCR searching for handwritten characters. However, to the extent reasonable, each party shall provide the required data to render documents searchable for all paper documents.

    iv. Both parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission.

    v. Documents shall be produced on external hard drives, readily accessible computer(s) or electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.,* "VOL001", "VOL002"), as well as the volume of the material in that production (e.g. "-001", "-002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates number range of the materials contained on the Production Media; and (4) if necessary, an appropriate confidentiality designation.

## VI. SERVICE OF ELECTRONIC DOCUMENTS:

Documents that the parties serve on each other, including motions, briefs, disclosures, discovery requests and discovery responses shall be fully text searchable.

## VII. COST CONTAINMENT

Consistent with the customary practices and procedures the District of Kansas, including, for example, the Guidelines for Discovery of Electronically Stored Information (ESI) at § 4(g), the procedures and protocols herein pertaining to identification of Potentially Discoverable ESI and production of responsive ESI are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of ESI and to the development of reasonable and appropriate cost allocation agreements. Any such cost allocation, *e.g.*, *id.* at § 4(g), agreements shall be tailored to give the parties incentives to use cost-effective means of obtaining information and disincentives to engage in wasteful and costly discovery activity.

SO ORDERED July 10, 2014.

                                                          s/ James P. O'Hara
                                                      HON. JAMES P. O'HARA
                                                    United States Magistrate Judge

SUBMITTED BY:

        WOOD LAW FIRM, LLC

By  /s/  *Noah K. Wood*
    Noah K. Wood            KS #23238
    noah@woodlaw.com
    Ari N. Rodopoulos     USDC-KS #78455
    ari@woodlaw.com
    1100 Main Street, Suite 1800
    Kansas City, MO 64105-5171
    T: (816) 256-3582
    F: (816) 337-4243

    Attorneys for Plaintiffs


        POLSINELLI PC

By  /s/  *James M. Humphrey*
    James M. Humphrey    KS Fed #70664
    jhumphrey@polsinelli.com
    Michael S. Foster       KS #24011
    mfoster@polsinelli.com
    900 W 48th Place, Suite 900
    Kansas City, MO 64112
    T: (816) 753-1000
    F: (816) 753-1536

    Attorneys for Defendant

**SCHEDULE A**

1. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

2. Data in metadata fields that are frequently updated automatically, such as last opened dates.

3. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

4. Voice messages.

5. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

6. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

7. Logs of calls made from mobile devices.

8. Electronic data stored in the ordinary course of business only on a temporary basis by laboratory, diagnostic or monitoring equipment.

9. And all other categories that may be agreed to between the parties.