UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER and<br>DYLAN SYMINGTON<br><br>Plaintiff<br><br>v.<br><br>BF LABS, INC.<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)  Case Action No.  14-CV-2159-KHV-JPO<br>)<br>)<br>)<br>)<br>) |

**NON-PARTY NETSOLUS' MOTION TO QUASH PLAINTIFFS'
SUBPOENA AND SUGGESTIONS IN SUPPORT THEREOF**

COMES NOW, the non-party movant, Netsolus.com, Inc., and files this, its Motion to Quash Plaintiff's Non-Party Subpoena, and offers the following facts, arguments and objections to such subpoena in support thereof:

**I. BACKGROUND INFORMATION:**

1. On or about Friday, August 29, 2014, Plaintiffs Kyle Alexander and Dylan Symington ("Plaintiffs") served Netsolus.com, Inc. ("Netsolus") with a non-party Subpoena ("Subpoena").

2. The Subpoena seeks to command Netsolus to produce all documents, files and records, electronic or otherwise, from July 25, 2011 to present regarding a number of "Target Entities," including Defendant BF Labs, Inc. ("BF Labs"), and its affiliates, agents or employees, which may include, among others, (1) Nimbus Mining, LLC ("Nimbus"), (2) HashTrade, (3) Coinware and (4) LiquidBits, along with each entity's affiliates, employees and agents.

3. The Subpoena also commands the same documents, files and records, electronic or otherwise, regarding these "Target Entities" customers.

4. The subject matter of Plaintiffs' Complaint is bitcoin mining machines that Kyle Alexander and Dylan Symington ordered from BF Labs, Inc.

5. Netsolus is a data center that supports the type of products purchased by Plaintiffs from BF Labs.

6. Since BF Labs does not provide hosting services for its equipment, customers are offered the option of selecting Netsolus, among others, as a hosting provider.

7. Netsolus does not have significant written or electronic communication with BF Labs other than emails regarding product orders, repair tickets, warranty work and payments.

8. Netsolus provides hosting services and consulting to Coinware, a non-party. A written service agreement containing a confidentiality provision exists between the entities.

9. To Netsolus' knowledge, Coinware is also a customer of BF Labs and purchases the company's mining machines. To Netsolus' knowledge, Coinware is not an affiliate, nor does it have common ownership with BF Labs.

10. Netsolus provides Nimbus, a non-party, with hosting and consulting services. A written service agreement containing a confidentiality provision exists between the entities. To Netsolus' knowledge, Nimbus is not an affiliate, nor does it have common ownership with BF Labs.

11. Netsolus provides LiquidBits, a non-party, with hosting and consulting services. A written service agreement containing a confidentiality provision exists between the entities. To Netsolus' knowledge, LiquidBits is not an affiliate, nor does it have common ownership with BF Labs.

12. Netsolus provides HashTrade, a non-party, with hosting and consulting services. A written service agreement containing a confidentiality provision exists between the entities.

To Netsolus' knowledge HashTrade is not an affiliate, nor does it have common ownership with BF Labs.

13. As part of its hosting services, Netsolus is in possession, custody and control of information for which it is not the owner and which would potentially be subject to the Subpoena.

## II. ARGUMENTS AND OBJECTIONS

14. Netsolus seeks an Order quashing or in the alternative limiting the scope of the Subpoena as it subjects Netsolus to undue burden as it is overly broad, seeks information irrelevant to the Plaintiff's Complaint, requires significant time, expense and human resources to compile the information, and seeks information that could be reasonably obtained from other sources, namely the Defendant, BF Labs, Inc. or the other Target Entities. Further, Netsolus seeks an Order quashing or in the alternative limiting the scope of the Subpoena as it seeks information that is privileged and/or protected and further requires the disclosure of trade secrets and other confidential and proprietary information. The scope of this case does not warrant the discovery at issue.

### A. UNDUE BURDEN

15. The Federal Rules of Civil Procedure *require* the court to quash or modify a subpoena that subjects a person to undue burden. FRCP 45(d)(3)(A)(iv).

16. FRCP 45(d)(1) requires the party issuing the subpoena to take reasonable steps not to impose undue burden or expense. The court should consider the burden on the producing party, as well as the issuing party's need for the information and if that information can be obtained from more convenient sources.

17. "Whether a subpoena imposes an undue burden upon a respondent raises a case-specific inquiry. It turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D.Kan. 2003). A court is to balance the relevance of the information sought against the burden imposed. *Id.; In re Coordinated Pretrial Proceedings in Petroleum,* 669 F.2d 620, 623 (10th Cir.1982).

18. The Tenth Circuit appears to recognize the balancing test for quashing a subpoena based upon undue burden. *In re Coordinated Pretrial Proceedings in Petroleum,* 669 F.2d 620, 623 (10th Cir.1982); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003).

19. Federal courts have acknowledged that special consideration must be given to non-parties when assessing undue burden, balancing favor towards the non-party. See *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005); *In re Automotive Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005); *Guy Chemical Co. v. Romaco AG*, 243 F.R.D. 310 (N.D. Ind. 2007). "Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations." *Cusumano v. Microsift Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

20. Furthermore, federal courts have required a party issuing a subpoena to a third party that required the production of electronically stored information ("ESI") to make a showing that the production of the ESI between the parties to the lawsuit was insufficient. See *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 651, 653 (N.D. Ala. 2002).

21. In this case, the scope of the document request is extremely over broad. Plaintiffs are commanding Netsolus to produce ALL documents, files and records, electronic or otherwise, related to any of the Target Entities, their key employees, agents and their customers. The scope of this request will undoubtedly include information that has no relevance to the subject Complaint.

22. For example, the scope of the request is in no way limited to information pertaining to the Plaintiffs or the subject matter of the Complaint. Only one (1) of the ten (10) document requests is limited to information related to bitcoin mining, which is the subject matter of the Plaintiff's Complaint.

23. Further, none of the requests are limited in scope to the Defendant, BF Labs, but instead include an extensive list of "Target Entities." However, to Netsolus' knowledge, there is no affiliation or common ownership between BF Labs and the other Target Entities, namely Coinware, Nimbus, HashTrade and LiquidBits.

24. Plaintiffs have not shown a specific need for the information sought.

25. Further, Plaintiffs have not shown that they sought the information required of Netsolus from the Defendant in the suit, BF Labs, and that it was insufficient.

26. Plaintiff should be required to first seek such information from Defendant BF Labs or directly from the other entities before burdening non-party Netsolus with the task.

27. Furthermore, almost all of the documents and information required by the Subpoena are in electronic format. The search and retrieval of the documents and information would be complex. In order to sift through all of the electronic information and compile it, Netsolus will have to expend a significant amount of time and resources.

28. Netsolus estimates it would take at a minimum one full week's worth of three employees' time to comply with the Subpoena. The three particular full-time employees who would be needed for the project receive annual salaries of $50,000, $60,000 and $160,000. Diverting these employees' focus away from their time sensitive responsibilities at Netsolus would be detrimental to its business.

B. **PRIVILEGED OR OTHER PROTECTED MATTER**

29. The Federal Rules of Civil Procedure *require* the court to quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies. FRCP 45(d)(3)(A)(iii).

30. A subpoena duces tecum may not be used by a party to obtain privileged documents; the policy protecting privileged communication is simply too strong to allow subpoenas to undermine it. *International Coal Group, Inc. v. Tetra Financial Group, LLC*, 2010 WL 2079675 (D. Utah 2010) (non-party carried its burden by showing documents sought by defendant were confidential commercial information disclosure of which would be harmful).

31. In this case, the documents commanded by Plaintiffs for production are privileged or otherwise protected.

32. Production under the Subpoena would require Netsolus to break the confidentiality provisions in its service agreements with Coinware, HashTrade, Nimbus and LiquidBits. The purpose of the confidentiality agreement is to protect these client's trade secrets, customer information, lists and history, specialized business processes, and other confidential commercial information.

33. Additionally, some of the ESI sought by the subpoena is not actually owned by Netsolus. Netsolus has client information in its possession, custody and control as a hosting

agent.  The ESI is owned by the clients utilizing Netsolus' hosting services and includes confidential commercial information.

34. Requiring Netsolus to produce information that is subject to a confidentiality agreement will adversely affect its business relationships with its customers who require confidentiality as a material term of engagement.

35. Further, Plaintiff has not shown that the information sought regarding these clients are relevant to the Complaint and that it can not be obtained from another source, namely a party to the case.

## C. DISCLOSURE OF TRADE SECRET OR OTHER CONFIDENTIAL INFORMATION

36. Federal Rule 45(d)(3)(B)(i) permits the courts to quash or modify a subpoena if it would require the disclosure of a trade secret or other confidential research, development or commercial information.

37. The party from whom discovery is sought bears the initial burden of establishing that the information is a "trade secret" and that its disclosure could be harmful; once established, the burden shifts to the requesting party to show that the information is both relevant and necessary to the pending action. *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 525 (W.D. Tenn. 1999).

38. The court then balances the need for the information against the possible harm of disclosure. *Id*.

39. Courts have not compelled production of marketing or financial information under a subpoena duces tecum when the plaintiff failed to show that the information sought was relevant and necessary to support the damages claim in the pending action, when discovery

would impose an undue burden on the nonparty, and when there was substantial risk of harm from disclosure of the confidential information. *Id*.

40. "Where…discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Fears v. Wilhelmina Model Agency, Inc.* 2004 WL719185 (S.D.N.Y. April 1, 2004); *See American Elec. Power Co. v. United States,* 191 F.R.D. 132, 137 (S.D.Ohio 1999); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996); *Semtek Int'l, Inc. v. Merkuriy Ltd.,* 1996 WL 238538 at 2 (N.D.N.Y. May 1, 1996).

41. In this case, compliance with the Subpoena would require disclosure of confidential business information and proprietary trade secrets, including but not limited to customer names and pricing information, specialized business processes, market strategies, service contracts, employee information, financial information, invoices, service orders, payment information, documents related to structure, operation and function, business planning information, pricing, sales data and product detail, among other things.

42. For example, Netsolus' customer list and business structure are some of its most valuable assets and their confidentiality is critically important to Netsolus' competitive position in the marketplace. This information is not publically known and Netsolus has a substantial interest in protecting it from disclosure, particularly from its market competitors.

43. Plaintiffs have not shown the production of this material to be relevant to their claims, nor have they shown a substantial need for such information. Information that is relevant to the Plaintiff's Complaint could be obtained from Defendant BF Labs, any of the other "Target Entities" or other sources.

44. Production of the commanded information would be intrusive and harmful to Netsolus as it requires disclosure of confidential commercial information and proprietary trade secrets regarding its business that could be utilized by Netsolus' competitors to its detriment.

### D. THE INFORMATION SOUGHT IS OVERLY BROAD, IRRELEVANT AND IS AVAILABLE ELSEWHERE

45. Many courts have considered subpoenas' over breadth of information sought when ruling in favor of a motion to quash them.  Overly broad and irrelevant requests for information are factors in concluding that the subpoenas were issued for the purpose of annoying or harassing the producing party. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (holding subpoenas properly quashed where their over breadth led the court to conclude that the subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information").

46. The document requests contained in the Subpoena are vague, ambiguous, overly broad, unduly burdensome or oppressive, require speculation, or are not reasonably likely to lead to the discovery of information relevant to the subject matter or any claim or defense in the underlying litigation.

47. Plaintiff should be required to first seek such information from Defendant BF Labs and its related entities before burdening non-party Netsolus with the task.

### III. CONCLUSION

In conclusion, Netsolus seeks an Order quashing or in the alternative limiting the Subpoena Duces Tecum because it imposes an undue burden on Netsolus.  The scope of the Subpoena is overly broad and seeks an extremely large volume of information that is stored largely in electronic format.  Compliance would require significant time, effort, expense and

human resources to compile the information sought, which would be detrimental to the business of Netsolus.  Further, the Subpoena seeks information that is privileged and/or confidential.  The information sought by Plaintiffs would cause Netsolus to violate its agreement of confidentiality with the Target Entities described above, as well as require it to produce information for which Netsolus is not the owner.  Further it would require production of proprietary trade secrets and confidential commercial information, the disclosure of which would be harmful to the business of Netsolus.  Lastly, Netsolus seeks this Court's Order quashing the Subpoena or limiting its scope because the Subpoena seeks information that is irrelevant to the Plaintiff's Complaint and is available elsewhere, specifically from the Defendant, BF Labs, Inc. or the other Target Entities.  If not quashed, the Court should in the alternative very narrowly circumscribe and carefully describe the information to be adduced.

WHEREFORE, Non-Party Movant, Netsolus, objects to the Subpoena Duces Tecum and prays that this Court issue its Order to quash Plaintiffs' Subpoena Duces Tecum or in the alternative limit the scope of the Subpoena as required by Order of this Court for the reasons stated above, and for such other and further relief as the Court deems just and proper.

## IV. REQUEST FOR ORAL ARGUMENT

Netsolus requests oral argument on this Motion because it believes such argument may assist the Court.

       Respectfully submitted,

       **/s/ A. Scott Waddell**

       _____
       A. Scott Waddell    KS # 20955
       Waddell Law Firm LLC
       2029 Wyandotte, Suite 100
       Kansas City, Missouri 64108
       Telephone: 816.221.2555
       Facsimile: 816.221.2508
       scott@aswlawfirm.com

       ATTORNEY FOR NETSOLUS.COM, INC.

### CERTIFICATE OF SERVICE

I certify that on this September 12, 2014, the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send an electronic copy to all parties presently in this litigation.

       **/s/ A. Scott Waddell**

       _____
       A. Scott Waddell    KS # 20955