**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KYLE ALEXANDER, and )
DYLAN SYMINGTON, )
on behalf of themselves and all those )
similarly situated, )
)
Plaintiffs, )
) Case No. 14-CV-2159-KHV-JPO
v. )
)
BF LABS INC., a Wyoming corporation, )
doing business as BUTTERFLY LABS, )
)
Defendant. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
TEMPORARY RECEIVER ERIC JOHNSON'S MOTION TO STAY**

WOOD LAW FIRM, LLC

By   /s/  *Noah K. Wood*

Noah K. Wood                KS #23238
noah@woodlaw.com
Ari N. Rodopoulos        USDC-KS #78455
ari@woodlaw.com
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243

*Attorneys for Kyle Alexander and Dylan
Symington*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

I.      Nature of the Matter Before the Court ...................................................................2

II.     Statement of Facts ...................................................................................................3

III.    Questions Presented ................................................................................................8

IV.     Argument .................................................................................................................8

        A.      This Court's original jurisdiction vested on April 4, 2014 ...........................8

        B.      This Court's original jurisdiction over this action, once vested,
                "cannot be ousted" by a subsequent FTC action or by an order from
                a sister federal court ....................................................................................9

        C.      The Temporary Receiver failed to meet his burden.....................................9

                1.      The Temporary Receiver failed to establish the scope and
                        breadth of the requested stay is "necessary."...................................10

                2.      The Temporary Receiver failed to establish the need for the
                        requested stay "clearly outweighs" the disadvantages on
                        others ................................................................................................11

        D.      The Temporary Receiver misapplies the doctrine of comity .....................14

        E.      The FTC action threatens to interfere with this Court's original
                jurisdiction and the integrity of this action................................................15

V.      Request for Oral Argument ...................................................................................19

VI.     Conclusion .............................................................................................................20

Certificate of Service ....................................................................................................21

List of Exhibits .............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bank of America, NA v. UMB Financial Services, Inc.*, 618 F.3d 906, 914-915 (8th Cir. 2010) ................................................................................17, 18

*Chiglo v. City of Preston*, 104 F.3d 185, 187-188 (8th Cir. 1997) ........................................7

*Cinel v. Connick*, 792 F.Supp. 492, 496 (E.D. La. 1992)....................................................18

*FTC v. Cephalon, Inc.* 551 F.Supp.2d. 21, 32 (D.D.C. 2008) ............................................4

*Gatch, Tennant & Co. v. Mobile & O.R.R.*, 59 F.2d 217 (S.D. Ala. 1932)............................4

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–571 (2004) ...................9

*Hill v. McDonough*, 464 F.3d 1256, 1258-59 (11th Cir. 2006) ..........................................18

*Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir.), *cert. denied*, 456 U.S. 1007 (1982) ........................................................................8, 9, 14

*In re Arabia*, 156 P.3d 652, 657-659 (Kan. 2007) ............................................................16

*In re Baldwin–United Corp.*, 770 F.2d 328, 338 (2nd Cir. 1985) .....................................18

*Johnson v. Pfizer, Inc.*, 2004 WL 2898076, *2 (D. Kan. 2004)...................................14, 15

*Kendall State Bank v. Archway Ins. Services, LLC*, 2011 WL 3610125, *2 (D. Kan. 2011) ...............................................................................................14

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ........................18

*Liles v. Del Campo*, 350 F.3d 742, 747 (8th Cir. 2003) ....................................................18

*Mullan v. Torrance*, 22 U.S. 537, 539, (1824) .................................................................9

*Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) .............................................................2

*Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)................................................................................................................14

*Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010)........................................................9

*U.S. v. Allen*, 2008 WL 2622872, *4 (D. Kan. 2008) ......................................................16

*U.S. v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011) ........................................................18

*United States v. Christian*, 660 F.2d 892, 894 (3rd Cir. 1981) .......................................17

*USCOC of Greater Missouri, LLC v. County of Franklin, Mo.*, 636 F.3d 927, 932-933 (8th Cir. 2011) ......................................................................18

**STATUTES**

28 U.S.C. § 1332 .............................................................................................................1, 8

28 U.S.C. § 1651..............................................................................................................17

**OTHER AUTHORITIES**

J. Moore, Federal Practice ¶ 66.05(2) (2d ed. 1974) ........................................................4

**RULES**

Federal Rules of Civil Procedure 24 ................................................................... 6

Federal Rules of Civil Procedure 42 ................................................................... 4

Federal Rules of Civil Procedure 3 .................................................................... 9

K.R.P.C. 3.3 ...................................................................................................16

**COME NOW** Kyle Alexander and Dylan Symington (the "class representatives"), on behalf of themselves and all those similarly situated (the "customer class" or "consumers"), by and through their attorneys of record, and respectfully request this Court deny Temporary Receiver Eric Johnson's ("Temporary Receiver") Motion to Stay in its entirety, or alternatively, issue an order protecting this Court's authority and jurisdiction to adjudicate this matter, because:

- the Federal Trade Commission (the "FTC") has embarked on a campaign to wrest the power to adjudicate the class representatives' claims from this Court by intentionally avoiding filing suit in this district and omitting the FTC's knowledge of the pendency of this action from its *ex parte* briefing to the U.S. District Court for the Western District of Missouri (the "Missouri court") supporting the FTC's request for an order from the Missouri court staying this action;

- the action filed by the FTC in the Missouri court bestows no authority to enjoin or oust this Court's original jurisdiction over the parties, claims, rights, assets, or property at issue in this action, which vested on April 4, 2014 pursuant to 28 U.S.C. § 1332(a) and (d) upon the filing of the class representatives' complaint;

- the order which the Temporary Receiver now seeks for this Court to "consider and enforce" is the "agreed and stipulated to" product of secret negotiations entered into between Defendant BF Labs Inc. ("BFL") and the FTC and was requested and entered without providing either notice or an opportunity to object to the class representatives or this Court;

- under the "first to file" rule, this Court has authority to determine the appropriate venue and which court has priority to proceed and which court should decline exercising jurisdiction; and

- the relief sought by the FTC from the Missouri court, and the orders it has already jointly obtained with Defendant BFL (including a recent "stipulation" allowing the Temporary Receiver to sell off property the customer class owns and seeks to recover in this action), will operate to extinguish, both practically, and as a matter of law, the very rights for which the consumer class has petitioned this Court for redress.

*Alexander, et al. v. BF Labs Inc.*
*Plaintiffs' Memorandum in Opposition to Temporary Receiver Eric Johnson's Motion to Stay*

1

## I.    NATURE OF THE MATTER BEFORE THE COURT

The class representatives have brought this suit on behalf of "all persons who pre-paid Defendant for Bitcoin mining equipment", alleging BFL collected pre-payments for non-existent Bitcoin mining equipment, failed to ship Bitcoin mining equipment orders for which consumers have pre-paid, misrepresented the date such equipment would ship to customers, and profited from Bitcoin mining for BFL's own benefit by using customers' equipment without permission or authorization from customers. The class representatives' suit contends BFL violated the Kansas Consumer Protection Act, were unjustly enriched, made negligent misrepresentations, and committed conversion of personal property.

The class action Complaint seeks, on behalf of the customer class, damages and a constructive trust[1] to recover the purchase price, the value of bitcoins paid to BFL, the loss of use of bitcoins, the loss of use of mining equipment that was never received or not received in a timely manner, the loss of bitcoins mined by BFL using customers' equipment, the diminution in value of mining equipment, costs of suit, attorney's fees, and punitive damages.

The Temporary Receiver has now asked this Court to "consider and enforce" a stay of this action, which is part of a "stipulated and agreed" order entered by the Missouri court at the request of the "FTC, Defendants BF Labs, Inc., Darla Drake, and Sonny Vleisides"[2].   The class representatives oppose and seek an order denying the Motion to Stay in its entirety, or alternatively, an order protecting this Court's authority and jurisdiction to adjudicate this matter.

---

[1]      *See Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) ("[A] constructive trust remedy is *res* specific [and] is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value.").

[2]      Ms. Drake and Mr. Vleisides are officers of BF Labs, Inc. and defendants in the Missouri action.

## II.   <u>STATEMENT OF FACTS</u>

On April 4, 2014, the class representatives filed their class action complaint against BFL in this Court alleging BFL violated the Kansas Consumer Protection Act, were unjustly enriched, made negligent misrepresentations, and committed conversion of personal property and asked this Court for damages and a constructive trust to recover the purchase price, the value of bitcoins paid to BFL, the loss of use of bitcoins, the loss of use of mining equipment that was never received or not received in a timely manner, the loss of bitcoins mined by BFL using customers' equipment, the diminution in value of mining equipment, costs of suit, attorney's fees, and punitive damages . (Doc. 1).

Between April and September of 2014, the class representatives engaged in significant discovery and had made significant progress negotiating a class-wide settlement on behalf of the putative class. (Doc. 10-47). The class representatives and BFL engaged in settlement negotiations and agreed to mediate on November 5, 2014. (Doc. 40). Trial is scheduled for January 4, 2016.  (Doc. 8)

Since this action was filed, class counsel has maintained a website to provide information and updates about the progress of the lawsuit to the customer class. (*See* Wood Law Firm – Butterfly Labs and BF Labs, Inc. Bitcoin Miners, (October 7, 2014), http://www.woodlaw.com/cases/butterfly-labs-and-bf-labs-inc-bitcoin-miners). During the pendency of this action the FTC has monitored class counsel's web site, which provides copies of the complaint, other relevant documents, and status updates in this action.  Specifically, the FTC visited class counsel's web site and clicked and read information describing the class action filed against BFL in this Court.  (*See* Google Analytics Report for woodlaw.com, **Exhibit 1**).

On September 15, 2014, the FTC filed a complaint (the "FTC action") in the United States District Court for the Western District of Missouri[4] against BFL and other individuals mirroring the factual allegations made in the class complaint, seeking temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief.  (9/15/2014 FTC Complaint, **Exhibit 2**).  Specifically, the FTC alleges BFL and other individuals violated Section 5 (a) of the FTC Act by engaging in the same conduct alleged in this action, *i.e.*, using deceptive and unfair business practices in connection with the marketing and sale of Bitcoin mining machines. (*Id.* at pp. 3-10).  The FTC also filed a motion to seal the case file and an *ex parte* motion for a temporary restraining order with an asset freeze, appointment of a receiver, and seeking other equitable relief. (W.D.Mo. Doc. 5).

On September 18, 2014, the FTC obtained *ex parte* from U.S. District Judge Brian C. Wimes an *ex parte* temporary restraining order ("TRO"), which, among other things, temporarily enjoins BFL and other individuals, freezes assets, and appoints a receiver.[5] (W.D.Mo. Doc. 9). The TRO also states "[e]xcept by leave of this Court, . . . Defendants and all other persons and entities . . . are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the

---

[4]    BFL is headquartered in this district. Substantially all of their assets are located in this district. Their officers and shareholders reside in this district. The actions that give rise to both complaints originated in and took place in this district. However, by filing elsewhere the FTC could avoid consolidation with this action under Fed.R.Civ.P. 42, a forum shopping practice other courts have recognized from the FTC and stopped. *See, e.g. FTC v. Cephalon, Inc.* 551 F.Supp.2d. 21, 32 (D.D.C. 2008).

[5]    Because all or mostly all of BFL's assets are located in this district, the Missouri court's appointment of a receivership over such assets may have been improper.  *See* 7 J. Moore, Federal Practice ¶ 66.05(2) (2d ed. 1974) (it would be improper to appoint a receiver in a district if most of the assets were elsewhere); *see also Gatch, Tennant & Co. v. Mobile & O.R.R.*, 59 F.2d 217 (S.D. Ala. 1932) (holding order appointing a receiver was void for want of jurisdiction because the defendant owned no real estate or other property of a fixed character within the receivership district, and the sole property therein was only movable office furniture, equipment, and bank accounts).

---

Alexander, et al. v. BF Labs Inc.                                                                           4
*Plaintiffs' Memorandum in Opposition to Temporary Receiver Eric Johnson's Motion to Stay*

Receivership Defendant[.]"  (9/18/2014 *Ex Parte* Order, **Exhibit 3**).  The record is devoid of any indication the FTC informed Judge Wimes of this action or that entry of the TRO requested by the FTC would stay a lawsuit set for trial and subject to case management order in this Court. (W.D.Mo. Docs. 2, 3, 6, 9).

On September 28, 2014, to protect the interests of the class, the class representatives moved on an emergency basis to intervene in the FTC action under Rule 24 because the FTC action sought to adjudicate the legal rights of the parties in this action including, but not limited to, the election of mutually-exclusive remedies on behalf of the customer class, the modification of contractual terms and rights on behalf of the customer class, and FTC was seeking *ex parte* and emergency orders regarding the disposition of property the customer class owns and seeks to recover in this action. (*See* Motion to Intervene, **Exhibit 7).**  In the course of pursuing the motion to intervene, class counsel contacted the parties in the FTC action to ascertain their position on the class representatives' intervention. (*See* Motion to Intervene at p. 4). The FTC was the only party which objected, specifically asserting intervention by the class representatives is inappropriate because "this is a statutory enforcement action[.]" (9/26/2014 Email from H. Wong, **Exhibit 4**).

Pursuant to the *ex parte* order obtained by the FTC, the Temporary Receiver appointed by Judge Wimes has taken possession of all or nearly all of BFL's property and assets even though such property and assets is almost exclusively located within this judicial district. This includes hard drive images and discovery material from this action which were taken into custody on Friday, September 19, 2014, which was due to be turned over to the class representatives the following Monday, September 22. (*See* Motion to Intervene at p. 8; Defendants' Statement of Reasons (W.D.Mo. Doc 14) at p.

8).  On September 30, 2014, the TRO entered by Judge Wimes was extended to October 3, 2014.  (9/30/2014 Order Extending TRO, **Exhibit 5**).

During briefing of and prior to a hearing on the class representatives Motion to Intervene, the FTC and Defendant BFL entered into secret negotiations and then sought and obtained, without providing either notice or an opportunity to object to the class representatives or this Court, entry of an "agreed and stipulated order" which purported to stay this Court's action until "further order of the [W.D.Mo.] Court." (10/02/2014, Stipulated Interim Order, p. 34, **Exhibit 6**).  In addition to purporting to stay the action pending in this Court, the Stipulated Interim Order allows the Temporary Receiver to immediately begin converting "[BFL's] substantial bitcoin holdings to cash on a systemic and reasoned basis" in order to establish "an adequate cash reserve to cover potential refund liability." (*Id.* at p. 17).

On October 3, 2014, Judge Wimes conducted a teleconference hearing on the class representatives' motion to intervene.  At the hearing, counsel argued intervention as of right under Rule 24(a) was appropriate because (1) the customer class claims property interests in the bitcoins, Bitcoin mining machines, and other assets the Temporary Receiver possesses and is authorized to sell in order to provide cash refunds the customer class may not want; (2) the remedies sought by the FTC (*e.g.*, reformation of contracts, rescission of contracts) threaten to modify contractual rights of the customer class and/or deprive the customer class the right to seek damages under Kansas law; and (3) in addition to the above, the FTC will not adequately represent the property interests (or other interests) of the customer class because the FTC has already agreed on the record with BFL's – *the entity the FTC claims is the wrongdoer* – position in this suit and in the FTC action: that customers do not have any property interests in

the bitcoins wrongfully taken and/or withheld from them or in the Bitcoin mining equipment for which customers have paid in full.[6]

Judge Wimes denied the class representatives' motion to intervene in the FTC action and concluded the class representatives failed to overcome a presumption the FTC will adequately represent the interests of the public at large.  (10/3/2014 Order, p. 3, **Exhibit 8**).  The class representatives have filed a notice of appeal because Judge Wimes did not consider and address the interests claimed by the customer class and applied the wrong legal standard by finding there was a presumption the FTC will adequately represent customers' interests.[7] (W.D.Mo. Doc. 62).

On that same day, October 3, 2014, the Temporary Receiver filed a notice and motion to stay in this Court.  (Doc. 53).  Citing "principles of judicial economy and comity," the Temporary Receiver argues "[t]he pending action against [BFL] in this Court . . . is covered by the court-ordered stay" and this Court should "enforce the stay" (*See* Receiver's Notice and Motion to Stay, at 1-2; Receiver's Supplemental Memorandum at p. 7).

The "agreed and stipulated" order entered by the Missouri court is so broad, the class representatives had to seek leave on an emergency basis from the Missouri court so they can make this filing without subjecting themselves to possible contempt. (*See* Emergency Motion for Relief from Stay, **Exhibit 9).**

---

[6]     Counsel has ordered the transcript of the Motion to Intervene hearing, but it is not yet available, so counsel is unable to provide a reference to the record concerning the parties' positions and statements during the hearing.

[7]     It is indisputable the customer class stands to gain or lose from the FTC action (and this action) in a way different from the public at large.  *See e.g., Chiglo v. City of Preston*, 104 F.3d 185, 187-188 (8th Cir. 1997) ("[T]he government only represents the citizen to the extent his interests coincide with the public interest . . . [i]f the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him.") (emphasis in original).

### III.   QUESTIONS PRESENTED

(A)   Whether original jurisdiction vested in this Court on April 4, 2014 pursuant to 28 8 U.S.C. § 1332(a) and (d)?

(B)   Whether this Court's jurisdiction, once vested, may be ousted by a subsequent FTC civil enforcement action or an order by a sister federal court in that action purporting to stay an action pending in this Court?

(C)   Whether the Temporary Receiver satisfied his burden of making a "strong showing" that: (1) the requested stay is necessary; and (2) the need for the requested stay "clearly outweighs" the disadvantageous effects on others?

(D)   Whether the doctrine of "comity" favors continuance of this action under the "first to file" rule?

(E)   Whether, in the absence of injunctive relief pursuant to the All Writs Act, the FTC action interferes with this Court's original jurisdiction and the integrity of this action?

### IV.   ARGUMENT

#### A.   This Court's original jurisdiction vested on April 4, 2014

There is no question this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000 and the class representatives and BFL are citizens of different state; and/or (2) the proposed class is larger than 100 members, the aggregate amount in controversy exceeds $5,000,000, and at least one class member is a citizen of a different state than BFL. *See* 28 8 U.S.C. § 1332(a) and (d).   In the Tenth Circuit, in both *in rem* and *in personam* actions, the jurisdiction of the district court attaches upon the filing of the complaint. *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).   The rule that jurisdiction

attaches upon the filing of the complaint gives effect to Rule 3, which provides that "a civil action is commenced by filing a complaint with the court." *Id.* (quoting Fed. R. Civ. P. 3). Because the complaint in this action was filed on April 4, 2014, this Court's original jurisdiction attached at that time.

### B. This Court's original jurisdiction over this action, once vested, "cannot be ousted" by a subsequent FTC action or by an order from a sister federal court

Here, the FTC action was not filed until September 15, 2014 and the *ex parte* order was not entered until September 18, 2014, *i.e.*, five months after this Court's original jurisdiction over this action vested. "[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought, and . . . after vesting, it cannot be ousted by subsequent events." *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010), quoting *Mullan v. Torrance*, 22 U.S. 537, 539, (1824); *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–571 (2004). The Temporary Receiver does not dispute original jurisdiction vested in this Court months before the FTC action was filed. The Temporary Receiver acknowledges this Court is not required to respect or enforce the stay orders entered by Judge Wimes but, rather, the decision falls within this Court's discretion. (*See* Doc. 55, p. 4) ("This Court has discretion to respect and enforce a stay entered in another jurisdiction, even where the other suit may involve different parties and issues.").

### C. The Temporary Receiver failed to meet his burden

The Temporary Receiver admits he has the burden of making a "strong showing" that: (1) the requested stay is necessary; and (2) the need for the requested stay "clearly outweighs" the disadvantageous effects on others—and even then, this Court has discretion whether or not to enforce the requested stay. *See* Doc. 55, p. 4, *citing*

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).

> 1.   <u>The Temporary Receiver failed to establish the scope and breadth of the requested stay is "necessary"</u>

The Temporary Receiver merely argues a stay is necessary because he has been appointed as a receiver and receivers need time to perform their duties.  The Temporary Receiver, however, makes no attempt to explain why the scope and breadth of the requested stay is necessary. The Temporary Receiver also fails to explain why a less restrictive stay would not suffice.

For example, the Temporary Receiver argues he needs time to perform the "immense responsibility" of ascertaining BFL's liabilities.  (Doc. 55, p. 5).  The damages sought in this action likely far exceed BFL's reported assets and net worth and likely exceed all of BFL's other liabilities combined.  As such, the Temporary Receiver cannot ascertain BFL's liabilities in any meaningful sense until BFL's liability in this action is assessed and understood.  BFL's liability in this action, however, cannot be fully assessed or understood at least until this Court decides class certification and any appeals are exhausted.  The Interim Stipulated Order entered by Judge Wimes currently has no expiration date.  Indefinitely delaying class-wide discovery and the class-certification briefing schedule entered by this Court will only delay the Temporary Receiver's ability to ascertain BFL's liabilities.

Further, the Temporary Receiver acknowledges he has a duty to conserve and preserve BFL's assets and, in fact, the Temporary Receiver cites "judicial economy" as a basis for enforcing the requested stay.  (Doc. 55, p. 6).  The Temporary Receiver, however, fails to acknowledge, address, or explain why the FTC action may proceed

against BFL without impairing his receivership duties and without wasting judicial resources but this action may not—especially when the FTC essentially copied the allegations in the class-action complaint and most of the discovery efforts and liability issues in this action would be identical to the discovery issues and liability issues in the FTC action.

Just as the Temporary Receiver had authority to file a motion to stay on behalf of BFL in this Court, the Temporary Receiver also could have filed other motions or requested other relief on behalf of BFL.  (*See* 10/02/2014, Stipulated Interim Order, p. 14, **Exhibit 6**).   For example, if the Temporary Receiver was truly interested in ascertaining liabilities, preserving assets, and preventing loss or injury to BFL's customers and creditors, the Temporary Receiver could have consented to the class representatives' motion to intervene or could have filed a motion to consolidate or to coordinate the FTC action and this action in order to avoid unnecessary and duplicative discovery and litigation expenses.   Instead, the Temporary Receiver is seeking to stay this action while the FTC action is litigated, which will only create twice the legal work and twice the legal bills for work that could be done once—*i.e.*, favorable for lawyers charging BFL by the hour but detrimental to BFL's customers and creditors.

2.     The Temporary Receiver failed to establish the need for the requested stay "clearly outweighs" the disadvantageous effects on others

The Temporary Receiver does not deny the requested stay has significant negative consequences for the customer class, including threatened deprivation of property without due process and denial of the right to a trial by jury.   Instead, the Temporary Receiver argues the requested stay contains a mechanism that is guaranteed to prevent the customer class from suffering "any possible disadvantage caused by a

lengthy stay of this action," *i.e.*, the customer class may seek permission from Judge Wimes to proceed with this action in this Court.  (Doc. 55, p. 6).  The Temporary Receiver argues this "escape valve" guarantees the customer class will not be denied their day in court.  (*Id.*).  The Temporary Receiver's argument and the relief it supposedly offers, however, is hollow.

Just because the customer class may seek Judge Wimes' permission to proceed with this action does not mean such relief will be granted—and, more importantly, this does not establish Judge Wimes even had the authority to appoint the Temporary Receiver and/or enjoin this action in the first place.  Regardless, the Temporary Receiver's argument completely ignores significant negative consequences that have already occurred and/or may occur even if Judge Wimes permits the FTC and BFL's joint action to continue to some indefinite point in the future.  For example, the Temporary Receiver does not deny the requested stay:

- permits the FTC and BFL to reach a settlement on behalf of the customer class—in the absence of the class representatives—that modifies the contractual rights and terms of the customer class;

- permits the FTC and BFL to reach a settlement on behalf of the customer class—in the absence of the class representatives—that precludes, as a matter of law, the customer class from recovering damages in this action under Kansas law;

- permits the FTC and BFL to reach a settlement on behalf of the customer class—in the absence of the class representatives—that denies customers their right to a trial by jury in this action; and

- authorizes the Temporary Receiver to sell and dispose of the customer class's property which was in the possession of BFL—the very property and assets over which the customer class has sought to assert their ownership of in this action—in violation of customers' due process rights.

If the Temporary Receiver's argument is accepted as correct, the customer class will

have no choice but to repeatedly petition this Court and the Missouri court for relief from the stay because the FTC's conduct is harming the customer class.  For example, just a few days ago, the FTC agreed on the record with BFL – *the wrongdoer* – that customers do not have any property interests in the bitcoins wrongfully taken and/or withheld from them or in the Bitcoin mining equipment for which customers have paid in full.

The Temporary Receiver wholly failed to establish the need for the requested stay "clearly outweighs" the negative consequences to the customer class.  The Temporary Receiver essentially argues he needs time to assess and preserve BFL's assets in order to protect customers' ability to obtain a cash refund or a partial cash refund.  In response to this action, however, BFL was already making such refunds to customers.  In fact, BFL alleges it has made over $3,000,000 in refunds since the filing of this class action. Further, as discussed above, many customers do not want a cash refund—they want their bitcoins, they want the Bitcoin mining equipment for which they have already paid in full (*i.e.*, the very assets the Temporary Receiver is authorized to sell in order to pay, among other things, his own fees), and they want to recover compensatory damages, punitive damages, and attorney's fees in this action.

Every dollar paid to the Temporary Receiver to perform his duties decreases BFL's ability to satisfy the claims of the customer class in this action.  The Temporary Receiver has not established the requested stay (or the FTC action) will likely yield a more favorable resolution for the customer class than allowing the customer class to continue seeking the remedies available in this action.  As such, the Temporary Receiver cannot genuinely argue the need for the requested stay "clearly outweighs" the disadvantageous effects to others.

### D.     The Temporary Receiver misapplies the doctrine of comity

Contrary to the Temporary Receiver's argument, the doctrine of "comity" does not support enforcement of the requested stay.  Rather, the doctrine of "comity" weighs in favor of this action proceeding in this Court under the "first to file" rule.  *See Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("[C]ourts follow a 'first to file' rule that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."), citing *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir.), *cert. denied,* 456 U.S. 1007 (1982).

"The first-to-file rule is based on the principle that federal district courts should not interfere with each other's affairs." *Kendall State Bank v. Archway Ins. Services, LLC*, 2011 WL 3610125, *2 (D. Kan. 2011).  "This policy avoids the waste of duplication, rulings which may intrude on the authority of sister courts and piecemeal resolution of issues that call for a uniform result." *Id.*

This Court follows the first-to-file rule.  *See e.g., Johnson v. Pfizer, Inc.*, 2004 WL 2898076, *2 (D. Kan. 2004).  "The parties only need be substantially similar for the rule to apply." *Id.*  The immediate issue is not whether jurisdiction and venue are proper in this Court or in the Missouri court, but which court should decide that issue.  *Id.* "Under the rule, the first court to obtain jurisdiction applies the first-to-file rule and exceptions in order to determine the appropriate forum for the case." *Id.* "[T]he court in a second-filed case should not determine the initial question of which court applies the first-to-file rule." *Id.*

Because the class representatives' complaint was filed in this Court before the FTC action was instituted in the Missouri court, this Court determines which court is the

appropriate forum, which court has priority to proceed, and whether any exceptions to the first-to-file rule are applicable.  This Court is the appropriate forum and has the priority to proceed because this action was commenced first, BFL's assets and officers are primarily located in this district, substantial discovery has already taken place, and settlement negotiations were already in progress when the FTC action was filed.

This Court has recognized two exceptions to the first-to-file rule: (1) where "the first-filed suit is a declaratory judgment action triggered by receipt of a notice letter"; and (2) where "the first-filed suit is an improper anticipatory filing, or one made under threat of a presumed adversary filing the mirror image of that suit in a different district."  *Id.*  Neither exception is applicable here.  Because the doctrine of "comity" favors the continuance of this action, the Temporary Receiver's motion to stay should be denied.

**E.    The FTC action threatens to interfere with this Court's original jurisdiction and the integrity of this action**

The class representatives understand the Temporary Receiver is simply attempting to perform his duties and is not responsible for creating the conflict of jurisdiction and authority between this Court and the Missouri court.   The class representatives were willing to agree to an interim stay of this action to minimize the conflict unnecessarily created by the FTC and to allow the Temporary Receiver to get up to speed—so long as the FTC and BFL would agree during the pendency of the stay not to obtain orders or enter into agreements which would deprive the class of their remedies or nullify this action during the proposed interim stay, without at least giving sufficient notice to the class so attempt to petition either this Court or the Missouri court to address the issue.  (*See* Email from N.Wood to H.Wong, **Exhibit 10)**.

The FTC, however, refused to agree to such a minimal courtesy, which would have permitted the Temporary Receiver to achieve every one of the objectives he seeks to meet with the proposed stay.  (*See* Email to N.Wood from T. Kosmidis, **Exhibit 11**). The FTC's position is clear: the jurisdiction and authority of this Court is irrelevant, this action must be stayed, the customer class must be silenced, and the FTC is free to pursue whatever remedies it prefers regardless of consumer sentiment and regardless of the legal and practical consequences to the customer class in this action.

Here, the FTC sought an *ex parte* order to shut down BFL (including production and shipping of machines the customers had already paid for) and seize property claimed by the customer class without sufficient facts[8] and without advising the Missouri court about the pendency of this action.  *See* K.R.P.C. 3.3(d) (imposing a duty of candor in *ex parte* proceedings); *see also U.S. v. Allen*, 2008 WL 2622872, *4 (D. Kan. 2008) (Rule 3.3(d) requires the lawyer to inform the court of all material facts known to the lawyer, whether or not such facts are adverse); I*n re Wonder*, 179 P.3d 451, 455 (Kan. 2008) (duty of candor required in *ex parte* proceedings, which by their very nature, are expedited and limit the court's ability to compare documents and conduct extensive analysis); *In re Arabia*, 156 P.3d 652, 657-659 (Kan. 2007) (disbarring lawyer from practicing law in Kansas, in part, due to lawyer's failure to inform court of material information in an *ex parte* proceeding).  Further, on Friday, September 19, 2014, the FTC raided BFL's offices and took possession of discovery responses and discovery materials (including hard drive images) that were ready to be produced to the class representatives on Monday, September 22, 2014.  (*See* Motion to

---

[8]     Just a few days after shutting down BFL via *ex parte* proceedings, the FTC implicitly acknowledged it lacked sufficient evidence to do so by stipulating that BFL may resume business operations.  (*See generally*, 10/02/2014, Stipulated Interim Order, **Exhibit 6**).

Intervene at p. 8; Defendants' Statement of Reasons (W.D.Mo. Doc 14) at p. 8). The FTC knew or should have known its conduct would interfere with or frustrate the authority of this Court to control discovery and/or to issue discovery orders in this action.

Because jurisdiction was acquired by this Court before any concurrent jurisdiction was acquired by the Missouri court, this Court has the exclusive authority to adjudicate the claims asserted, to control discovery and the production of relevant documents and things, to grant or deny the relief requested, and to dispose of the property subject to the alleged constructive trust in this action. The FTC's conduct, however, has interfered and threatens to interfere with this Court's exclusive jurisdiction and authority. Because the FTC threatens and interferes with this Court's "inherent ability to protect its own jurisdiction over the dispute pending before it," immediate injunctive relief is authorized and is necessary. *See Bank of America, NA v. UMB Financial Services, Inc.*, 618 F.3d 906, 914-915 (8th Cir. 2010).

As such, if this Court is inclined to enforce the requested stay, the class representatives request this Court to delay ruling on the motion to stay and order the parties may brief what injunctive relief is appropriate pursuant to the All Writs Act, 28 U.S.C. § 1651. The All Writs Act provides, in part, a District Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. In other words, the All Writs Act gives a District Court the "inherent ability to protect its own jurisdiction over the dispute pending before it." *Bank of America*, 618 F.3d at 914-915. However, it is not necessary "that a case be pending in the court [being] asked to issue the writ." *United States v. Christian*, 660 F.2d 892, 894 (3rd Cir. 1981). Further, an All Writs Act injunction "need not rigidly comply with Rule 65's prescriptions so long as the injunction is 'specific and

definite enough to apprise those within its scope of the conduct that is being proscribed.'" *U.S. v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011), quoting *In re Baldwin–United Corp.*, 770 F.2d 328, 338 (2nd Cir. 1985); *see also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.").

If there is a case pending before the Court, it can issue an All Writs Act injunction against a party to enjoin conduct that is related to or that impacts the underlying action. *See e.g., Bank of America*, 618 F.3d at 914-915.   An injunction issued under the All Writs Act can also enjoin the conduct of a non-party to the underlying action. *See e.g., USCOC of Greater Missouri, LLC v. County of Franklin, Mo.*, 636 F.3d 927, 932-933 (8th Cir. 2011). Finally, an All Writs Act injunction can even enjoin a related judicial proceeding. *See e.g., Liles v. Del Campo*, 350 F.3d 742, 747 (8th Cir. 2003). This includes a related criminal proceeding.  *See e.g., Cinel v. Connick*, 792 F.Supp. 492, 496 (E.D. La. 1992).  In short, "[a]n injunction under the All Writs Act 'must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior.'"  *Hill v. McDonough*, 464 F.3d 1256, 1258-59 (11th Cir. 2006), quoting *Klay*, 376 F.3d at 1099–1100.

Pursuant to the All Writs Act, the class representatives intend to request this Court to enjoin the FTC, and any others with notice of the Court's order from taking or proceeding with actions in the FTC action (Case No. 4:14-cv-00815-BCW), without leave of this Court, to:

- liquidate the property or assets of the customer class, whether

possessed by BFL or others, which are the subject of the constructive trust sought in this action;

- dispose, convert, sell, or transmute any personal property, which this action seeks to adjudicate possession of, including, but not limited to: bitcoins paid by the customer class or produced from Bitcoing mining equipment the customer class has already purchased or paid for; or Bitcoin mining equipment which the customer class has purchased and paid for;

- obtain any equitable remedies on behalf of consumers, specifically, rescission or reformation of contracts for consumers until this Court has determined whether or not those remedies would extinguish the monetary claims sought in this action; or

- enter into any stipulations or agreements which would interfere or frustrate with this Court's scheduling order, including but not limited to the transfer, destruction, modification, or information covered by discovery requests in this action, or preventing or restraining the class representatives from seeking consolidation or transfer of the FTC action to this Court.

Such injunctive relief would prevent the FTC from continuing to proceed in a manner that interferes with this Court's original jurisdiction and the integrity of this action. This would also ensure the interests of the customer class will be protected in the FTC action while the appeal regarding the denial of the class representatives' motion to intervene is pending.

## V.     REQUEST FOR ORAL ARGUMENT

Due to the gravity and importance of the instant matter, in that it could be dispositive of the entirety of the customer class's cause of action, and the unique issues involving the interaction of the jurisdiction of two adjacent District Courts, the class representatives respectfully request this Court to permit oral argument on the Temporary Receiver's motion to stay and the questions presented in this opposition.

## VI.   <u>CONCLUSION</u>

The FTC's conduct thus far, which includes forum shopping, disregard of this Court's jurisdiction and authority, indifference to customers' rights and preferences, and failure to brief the Missouri court about the pendency of this action, has created a legal morass that has already led to one appeal and likely will lead to multiple appeals by the parties in two appellate circuits.   Nevertheless, here, there is no question original jurisdiction over the parties, claims, rights, assets, and property at issue vested in this Court several months before the FTC action was filed. Once jurisdiction vests, a district court has a duty to protect its exclusive authority to adjudicate the claims, rights, and disposition of property over which it has jurisdiction—and to enjoin the conduct of any person or entity that threatens to impair or impede the exercise of such jurisdiction. Because the Temporary Receiver wholly failed to make a strong showing the requested stay is necessary and clearly outweighs the negative consequences, the motion to stay should be denied.  Alternatively, this Court should delay ruling on the motion to stay so that the class representatives may seek injunctive relief pursuant to the All Writs Act.

**WHEREFORE**, Kyle Alexander and Dylan Symington respectfully request this Court deny the Temporary Receiver's Motion to Stay in its entirety, or alternatively, issue an order protecting this Court's authority and jurisdiction to adjudicate this matter.

Date:  <u>October 7, 2014</u>

Respectfully submitted,

WOOD LAW FIRM, LLC

By  /s/  *Noah K. Wood*
  Noah K. Wood   KS #23238
  noah@woodlaw.com
  Ari N. Rodopoulos  USDC-KS #78455
  ari@woodlaw.com
  1100 Main Street, Suite 1800
  Kansas City, MO 64105-5171
  T: (816) 256-3582
  F: (816) 337-4243

  *Attorneys for Kyle Alexander and Dylan Symington*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2014, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.

By  /s/  *Noah K. Wood*
  *Attorneys for Kyle Alexander and Dylan Symington*

## <u>LIST OF EXHIBITS</u>

1    Google Analytics Report for woodlaw.com

2    9/15/2014 FTC Complaint

3    9/18/2014 *Ex Parte* Order

4    9/26/2014 Email from Helen Wong to Noah Wood

5    9/30/2014 Order Extending TRO

6    10/02/2014 Stipulated Interim Order

7    9/28/2014 Emergency Motion to Intervene and Suggestions in Support

8    10/3/2014 Order

9    10/3/2014 Emergency Motion for Relief from Stay to Permit Compliance with an Order Issued by the United States District Court for the District of Kansas and Suggestions in Support

10   10/6/2014 Email from Noah Wood to Helen Wong

11   10/6/2014 Email from Teresa Kosmidis to Noah Wood