### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER and, ) | |
| DYLAN SYMINGTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-02159-KHV-JPO |
| ) | |
| BF LABS INC., ) | |
| ) | |
| Defendant. ) | |

## REPLY IN SUPPORT OF MOTION TO STAY

Eric L. Johnson, Temporary Receiver for Defendant BF Labs Inc. (the "Temporary Receiver"), submits this reply memorandum in support of his Motion to Stay this action for sixty (60) days and request for a status hearing at the end of the sixty day period.

### INTRODUCTION

Temporary Receiver respectfully requests that this Court enforce the order issued by the Western District of Missouri ("Western District") staying all pending litigation against Butterfly Labs, Inc. ("BFL") for at least sixty (60) days. (Doc. # 53, Ex. 3). Further, at the end of this 60 day period, the Temporary Receiver requests that the parties reconvene before this Court at which time they can advise the Court on the status of the receivership. Accordingly, the relief sought by the Temporary Receiver is limited in nature and will not prejudice the Plaintiffs.

Plaintiffs represent to this Court that they were willing to agree to an interim stay "so long as the FTC and BFL would agree during the pendency of the stay not to obtain orders or enter into agreements which would deprive the class of their remedies or nullify this action during the proposed interim stay, *without at least giving sufficient notice to the class so [sic] attempt to petition either this Court of the Missouri courts to address the issue.*" Doc. # 56, p.

15) (emphasis added). On October 9, 2014, the Western District entered a procedural order providing Plaintiffs precisely the process they seek. *See* Case No. 4:14-cv-00815-BCW; Doc. # 77; attached hereto as **Exhibit 1**. In particular, the Western District ordered that "[a]ny proposed consent judgment that would resolve the pending action must be submitted to the Court by motion and in accordance with Local Rule 7.0." *Id*. at 2. Therefore, Plaintiffs' concerns have been addressed. If there is a consent judgment negotiated and reached between BFL and FTC it must be presented to the Western District by motion. As such, Plaintiffs' counsel will be able to petition the Western District to address any issue they may have with the filing. Plaintiffs should therefore agree to stand-down for at least sixty days and join Temporary Receiver in his request of enforcement of the Western District's stay by this Court.

While Temporary Receiver trusts that Plaintiffs will follow through in their assent to the proposed stay, if they do not, this Court should exercise its discretion and enforce the Western District's order, at least for the interim sixty day period, based on principles of judicial economy and comity as further explained herein.

**I.     Temporary Receiver Has Made a Strong Showing that the Requested Stay is Necessary and its Need Clearly Outweighs Any Alleged Disadvantage to Plaintiffs.**

Temporary Receiver meets its burden to justify the scope and breadth of the requested stay. *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (stay appropriate where requesting party makes a strong showing that stay is necessary for movant and disadvantageous effect on others is clearly outweighed). The responsibilities listed below justify a relatively brief stay to permit Temporary Receiver to fully ascertain BFL's business. *See S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (a receiver must be given an opportunity to "do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant"). In

particular, Temporary Receiver must accomplish over the next 50 days the below non-exhaustive list of court-ordered responsibilities to manage the BFL receivership estate while also conserving its assets and reporting to the Western District regarding progress. Further, the general listing of responsibilities below does not account for the constant correspondence, both internal and external, attendant to achieving a result or an answer for each.

Temporary Receiver's responsibilities include:

- Assuming full control of BFL operations. This includes managing all employees, consultants and independent contractors necessary to continue the limited BFL operations.

- Working with BFL management regarding the preparation and implementation of an interim budget.

- Working with BFL management regarding the identity of employees necessary for the limited BFL operations and implementation, management, and communication with those employees.

- Handling daily operations issues associated with the limited BFL business, including oversight of BFL employees, payroll, employee benefits, payments to essential vendors, banking communications, communication with employees, communication with customers, website maintenance and security, communications with banking operations, inventory control, mail control, facility security measures, real estate and landlord communication, and insurance issues.

- Preparing the Temporary Receiver's report that must be submitted to the Western District by November 17, 2014. This continuous work includes, but is not limited to:

    o Working with and overseeing two accounting teams from both MarksNelson LLC and RubinBrown LLP to review books and records of BFL from January 14, 2014 until September 30, 2014.

        ▪ Overseeing the following accounting actions to be conducted by MarksNelson including, but not limited to, updating financial records; performing month-end closing entries; reconciling cash balances to bank statements; reconciling inventory to physical counts and inventory management system; reconciling sales to shipments reported in the e-commerce system; preparing journal entries for accruals and prepaid items; recording fixed asset additions/deletions; recording depreciation and amortization expense; recording realized and unrealized gains/losses on investments (Bitcoin).

- Overseeing the following accounting actions to be conducted by RubinBrown, including, but not limited to, coordinating and reviewing the bookkeeping services performed by MarksNelson; reviewing schedules prepared by management of BFL that are provided to the receiver or MarksNelson; performing forensic accounting analysis related to: (1) the status of customer pre-payments; (2) inventory reported per BFL's inventory management system and financial reporting software; (3) orders, sales, and refunds reported per BFL's e-commerce system and financial reporting software; (4) the amounts due to/from shareholders and key management; (5) bitcoin transactions, including the receipt, payment, and transfers of bitcoin; (6) bitcoin mining activities, including applicable policies and procedures and internal control considerations; (7) historical financial analysis and trends; and (8) other asset tracing and forensic analysis.

  o Addressing issues with respect to the required business plan that is being formulated by BFL management.

  o Working with BFL employees with respect to customer service, inventory, shipping, accounting and human resources issues.

  o Analysis and evaluation of the current and any proposed refund policy.

    - Establishing an adequate cash reserve to cover potential refund liability, which is to include (1) identification of BFL assets and pursuit of claims; (2) securing remaining BFL assets; (3) books and records reconciliation (through assistance by the two accounting teams hired by Temporary Receiver); (4) an audit of BFL's bitcoin mining practices; and (5) conversion of BFL's bitcoin holdings to cash on a systematic and reasoned basis.

  o Reviewing documents and data obtained (and secured) at BFL property.

  o Conducting depositions, issuing subpoenas and/or interviewing witnesses, including current and former employees, of BFL regarding matters necessary for the Temporary Receiver's report.

- Preparing for a hearing as early as November 21, 2014 where Temporary Receiver will submit his report to the Western District.

In comparison, Plaintiffs have failed to identify any actual disadvantage they will suffer should the stay be enforced at this Court's discretion. As set forth above, the Western District has provided a procedure wherein Plaintiffs can seek to address any motion or proposed consent

judgment that is submitted by either the FTC or BFL. *See* Receivership Case, Doc. # 77; **Exhibit 1**. Therefore, Plaintiffs may address any potential harm such motion or proposed consent judgment would cause to the putative class. Further, the only anticipated activity in the next sixty days reflected on the docket in this case includes:

- A mediation setting (Doc. # 40).
- Return of discovery issued by Plaintiffs to third parties (Docs. # 42-47).

This is not a period during which a dispositive motion would otherwise be decided. Trial is not set in this matter until January 2016. Plaintiffs do not argue that the requested 60-day stay of the case derails an otherwise critical period.

Plaintiffs instead argue they will suffer harm if Temporary Receiver liquidates some or all of BFL's bitcoin holdings to U.S. dollars and/or sells its Bitcoin mining equipment. Plaintiffs say they do not seek a cash refund and will suffer harm should Temporary Receiver take such steps. (Doc. # 56 at 13). Temporary Receiver intends to continue the exchange practice used by BFL before Temporary Receiver's appointment. If BFL's business practice of converting BFL assets before appointment of Temporary Receiver was unacceptable to Plaintiffs, then Plaintiffs could have sought provisional remedies under Rules 64, 65, or 66 to prohibit BFL from converting its assets.

Further, Plaintiffs acknowledge that BFL was making refunds to customers prior to the imposition of Temporary Receiver. (Doc. # 56 at 13). Yet the record reflects no effort by Plaintiffs to halt the exchange of BFL's assets by employing any provisional remedies such as attachment, injunction, or receivership. As such, Plaintiffs' argument rings hollow that they will now be disadvantaged by Temporary Receiver carrying out the Western District's order to

preserve and conserve the receivership's assets, which may include liquidating assets Plaintiffs never sought to control.

Finally, Plaintiffs dispute whether the requested stay will truly further Temporary Receiver's charge to conserve and preserve the Receivership Entity's assets. (Doc. # 56 at 10-11). This concern is questionable given Plaintiffs' pledge to "repeatedly petition this Court and the Missouri court for relief from the stay." (Doc. # 56 at 13). Further, Plaintiffs assert they will seek to enjoin the FTC through an order issued by this Court from liquidating BFL assets. (Doc. # 56 at 18-19). It is precisely those activities that unnecessarily expend valuable time and resources that Temporary Receiver is required to devote to carrying out his responsibilities. Temporary Receiver sees no other method to ensure it is not faced with resource-diverting litigation other than to request enforcement of the Western District's stay.

Temporary Receiver has met its burden. The request is necessary to permit Temporary Receiver sufficient time to undertake his responsibilities before having to address additional litigation and the attendant expenses and distractions that result from the same. Plaintiffs will not suffer any disadvantage that is not outweighed by this practical request. Accordingly, Temporary Receiver respectfully requests that this Court apply its discretion in enforcing the Western District of Missouri's stay, for at least a 60-day period.

## II. Under Well-Settled Law, This Court Should Defer to the Western District of Missouri.

Judicial comity is "the respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." *In re Bristol Res. 1994 Acquisition Ltd. P'ship*, 333 F.3d 608, 610 (5th Cir. 2003) (citing Black's Law Dictionary (7th ed. 1999)). Plaintiffs argue that Temporary Receiver misunderstands the doctrine of comity on account of his failure to acknowledge the first-to-file rule. While Temporary Receiver had hoped

to avoid any premature jurisdictional disputes, Plaintiffs leave him very little choice. Accordingly, for the reasons set forth below, Temporary Receiver respectfully requests that the Court, at least for the short term, defer to the Western District and enforce its Order to stay these proceedings.

### A. Plaintiffs' Attacks on a Non-party Are Inappropriate.

As a threshold issue, Plaintiffs make several accusations questioning the FTC's actions and motives in filing its case before the Western District and the exercise of provisional remedies allowed under the Federal Rules. For example, Plaintiffs make arguments about the FTC's alleged venue shopping, "secret negotiations" with BFL, or other actions by those parties. As an arm of the court, it is not appropriate for Temporary Receiver to comment on or defend the appropriateness of the FTC's methods. However, rather than making such arguments in a case where the FTC is not present to defend itself, Temporary Receiver respectfully submits that such arguments are better directed to the Western District in the Receivership Case.[1] In fact, Plaintiffs have already attempted to question the FTC's motives before Judge Wimes and, at least for intervention purposes, he found such arguments to be unpersuasive. Order Denying Intervention at p. 3, Receivership Case, Doc. #59, **Exhibit 4** attached to Supplemental Memorandum in Support of Motion to Stay (the "Intervention Order").

### B. The Western District Was the First Court to Take Possession of the Res.

The law is clear. The Western District is the first court to assert jurisdiction over the res. While Plaintiffs had the opportunity to take the very same steps the FTC did to invoke this

---

[1] Likewise, Plaintiffs also appear to question Temporary Receiver's motives and whether he is fulfilling his duties as set forth in the Stipulated Interim Order by not siding with them against the FTC. *See* Response at 11 and 13. While Temporary Receiver disputes such insinuations and stands by his work and the work of his professionals, such matters should be addressed with the appointing court.

Court's *in rem* jurisdiction, they failed to do so. Accordingly, Temporary Receiver respectfully requests that this Court enforce the Western District's stay in this action for at least a 60-day period.

Plaintiffs argue that this Court takes primary jurisdiction under the "first-to-file" rule. (Doc. # 56 at 14-15). Plaintiffs ignore, however, well-settled law related to situations like here that is intended "to prevent friction and unseemly conflict between courts of concurrent jurisdiction." *Denver-Greeley Valley Water Users Ass'n v. McNeil*, 131 F.2d 67, 70-71 (10th Cir. 1942). In this respect,

> [i]t is settled law that the court, whether federal or state, which first takes possession of a res withdraws the property from the reach of the other. Where the action is *in rem* the effect is to give the court possession or control, actual or potential, of the res, and another court is precluded from exercising jurisdiction over the same res in an action subsequently brought.

*McNeil*, 131 F.2d at 70-71; *see also In re Coleman Am. Companies, Inc.*, 8 B.R. 384, 388 (Bankr. D. Kan. 1981) (where court of competent jurisdiction acquires possession of res by appropriate proceedings, such property is withdrawn from jurisdiction of all other courts).[2] In such circumstances, the court of concurrent jurisdiction should, at a minimum, stay its proceedings and await the conclusion of the litigation in the court with legal possession of the res. *1st Nat. Credit Corp. v. Von Hake*, 511 F. Supp. 634, 638 (D. Utah 1981).

---

[2] By statute, Temporary Receiver is vested with "complete jurisdiction and control" of all of the Receivership Entity's property. 28 U.S.C. § 754. Under the federal court appointment power, the appointing court and its receiver have exclusive jurisdiction and control of all receivership property, whether real, personal, or mixed—even where property lies in different districts. *Id.* ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof."). Courts located in other districts may not exercise control over the receivership property or the receiver. *Guar. Trust Co. of New York v. Chicago, M. & St. P. Ry. Co.*, 13 F.2d 129, 129 (W.D. Wash. 1926) (receivership has exclusive jurisdiction over property; "No other court has authority to interfere with the property, or to control the receivers in respect to custody and operation.").

Plaintiffs took no action prior to the Receivership Case to invoke this Court's *in rem* jurisdiction. Rather, Plaintiffs brought suit asserting claims for violation of the Kansas Consumer Protection Act, unjust enrichment, negligent misrepresentation, and conversion. (Doc. # 1). They took no steps to exercise any provisional remedies to take possession of assets prior to the Receivership Case. Plaintiffs <u>could</u> have, among other things, sought to invoke state law to attach property (Rule 64), sought injunctive relief (Rule 65), or sought the appointment of a receiver—as the FTC did in the Receivership Case (Rule 66). Interestingly, while Plaintiffs now express concern over Temporary Receiver's proposed action to convert a volatile asset[3] to a stable one, they took no such action to restrain the Receivership Defendant from taking similar actions during the course of their approximately five months of litigation.

Further, by simply <u>pleading</u> a constructive trust, Plaintiffs have not transformed an otherwise *in personam* action to an *in rem* action. As recognized by the Tenth Circuit and the Kansas Supreme Court, a constructive trust is a remedial device imposed by a court, not a substantive cause of action. *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1176 (10th Cir. 2009); *Nelson v. Nelson*, 205 P.3d 715, 723-24 (Kan. 2009) (constructive trust is a remedy for unjust enrichment, not cause of action). While the Kansas Supreme Court indicated that a constructive trust may impact a res, the fact remains that the cause of action remains *in personam*. *Nelson*, at 288 Kan. at 579-80 ("[T]he constructive trust plaintiff who proves his claim by clear and convincing evidence wins an *in personam* order that requires the defendant to transfer legal rights and title of specific property or intangibles to the plaintiff.") (quoting 1 Dobbs, Law of

---

[3] When Temporary Receiver took possession of the Receivership Defendants' assets on September 19, 2014, one bitcoin was equal to $392.00. As of October 9, 2014, one bit coin is equal to approximately $360.00 as of 5:00 p.m. *See* CoinDesk Historical Bitcoin Price; http://www.coindesk.com/price. Indeed, Plaintiffs took no steps to secure or otherwise prevent the potential loss or dissipation of the Receivership Defendants' substantial bitcoin holdings since the inception of Plaintiffs' case against BFL on April 4, 2014 when one bitcoin was equal to approximately $448.00. *Id.*

Remedies § 4.3(2), pp. 590–91). *See also In re Handy*, 624 F.3d 19, 21-22 (1st Cir. 2010) ("Subsequent decisions [to *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)] have held that a court may not exercise jurisdiction over an action quasi *in rem* absent an attachment or garnishment."); *In re Gonzales*, 483 B.R. 1, 14 n. 25 (Bankr. D. N. M. 2012) ("Enforcement of a constructive trust results in an *in personam* obligation on one party to convey real estate to the other party in order to prevent unjust enrichment.") (internal quotes omitted); *Francis v. Pulley*, 2006 WL 3827514 at *3 (D. N.H. Dec. 28, 2006) ("Where an action seeks to impose a constructive trust, rather than to act directly on the title to the property, jurisdiction is *in personam*.").

In *Yavuz*, the appellant asserted that a Swiss Court was not a proper venue for a case. The appellant argued, in part, that the Swiss Court would have no jurisdiction over certain property because he previously sought to impose a constructive trust and such claim is "*in rem* and exclusive venue lies where the land is located." *Yavuz*, 576 F.3d at 1175 (quoting appellant). The Tenth Circuit rejected such a position finding that venue was proper in the Swiss Courts and that the appellant conflated "a potential remedy with the substantive cause of action." *Id*. at 1176.

The Western District is the first Court to exercise *in rem* jurisdiction and assert jurisdiction over the res. Plaintiffs' pleading seeking a constructive trust as a remedy in this action does not impact the Western District's authority over such property.

### C.     Plaintiffs' Reliance on the First-to-File Rule is Misplaced.

Plaintiffs' reliance on the first-to-file rule is misplaced. As the Tenth Circuit has noted, "the first-to-file rule is not entitled to 'mechanical application.'" *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982).  This Court has held that "the purpose of the first-to-file rule—maximization of judicial economy—is most strongly in play when the second-

filed case is a complete subset of the earlier action . . ." *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010). Here, the "second-filed case" (Receivership Case) is not a complete subset of this action.

Rather, it appears that this case is a subset of the Receivership Case. First, while Plaintiffs purport to speak for all customers of the Receivership Defendant, the fact remains that the class has not yet been certified. Indeed, customers would theoretically have the option to opt out of the purported class and bring their own lawsuit, which is what has already happened in at least one instance. *See Meissner v. BF Labs Inc.*, 2:13-cv-02617-RDR-KGS (D. Kan.). Second, Plaintiffs assert that the FTC's action is to protect the public at large, which by very definition makes Plaintiffs' case a subset of the Receivership Case. *See* Doc. #56 at 7 n. 7.

Finally, the Western District found that the FTC is adequately representing Plaintiffs' interests in addition to all consumers in the Receivership Case. Intervention Order at 3. While Plaintiffs may disagree with Judge Wimes on this point, the appropriate response is not to put this Court in the untenable position of having to overrule its fellow sister court. In this respect, Plaintiffs have already submitted themselves to the jurisdiction of the Western District of Missouri by seeking to intervene in the Receivership Case. *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006) (intervening plaintiff willingly submitted to federal district court's jurisdiction). Indeed, they are still attempting to intervene by appealing Judge Wimes' decision. Receivership Case, Doc. # 62.

If Plaintiffs believed that the Western District lacked jurisdiction, then that issue could have been raised to that court by special appearance rather than seeking to intervene. Alternatively, they could have sought leave to come to this Court in the first instance rather than subsequently doing so after receiving an unfavorable decision, which they themselves invited.

WA 6189901.5

*See U.S. v. Edward*, 224 F.3d 1216, 1222 (10th Cir. 2000) ("The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error."). In short, such action—and threats of future litigation—run counter to the purpose of the first-to-file rule, which is to promote judicial economy.

### D. Plaintiffs' Reliance on the All Writs Act Is Also Misplaced.

Plaintiffs' suggestion that this Court issue an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, is also unavailing. The Act gives a district court the ability to protect its own jurisdiction over the dispute pending before it, but such an injunction is inappropriate here.[4] "[A]n injunction under the All Writs Act, like any other injunction, should not be issued if adequate remedies at law are available." *Vallier v. Am. Fid. Assur. Co.*, 08-2267-JAR, 2008 WL 4330028 (D. Kan. Sept. 16, 2008), *citing Grider v. Keystone Health Plan Ctr., Inc.,* 500 F.3d 322, 330 (3d Cir. 2007). As this Court has noted, "under this standard, the general rule is that 'if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law.'" *Id.*, *citing Grider*, 500 F.3d. at 330.

Here, though Plaintiffs' request to intervene in the Receivership Case was denied without prejudice, Judge Wimes ruled that "[a]s the case progresses and issues become more concrete, Alexander and Symington can seek leave to intervene (as of right or permission) to the extent

---

[4] Indeed, the All-Writs Act has been successfully invoked in the opposite scenario, to effect a stay of separate actions against a receivership estate. *See In re The Reserve Fund Secs. and Derivative Litigation*, 673 F. Supp. 2d 182, 202 (S.D. N.Y. 2009) (granting an injunction under the All-Writs act to prevent numerous actions against the entities in liquidation from proceeding); *see also Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) ("confirm[ing] that the district court has within its equity power the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651 . . ."); *see also S.E.C. v. Parish*, 2:07-CV-00919-DCN, 2010 WL 8347143, at *5 (D.S.C. Feb. 10, 2010) (same).

necessary and proper." Receivership Case, Doc. # 59 at 4. Plaintiffs will have an opportunity to again seek leave to intervene in the Receivership Case to raise their claims, giving them an adequate remedy at law. An All Writs Act injunction is inappropriate here.

### III. Oral Argument Is Not Necessary

The motion before the Court seeks enforcement of the Western District's stay order for a temporary 60-day stay period, and requests a status hearing at the end of such period. Oral argument on motions lies within the sole discretion of this Court. D. Kan. Rule 7.2. Where oral argument will not materially assist in the resolution of the motion, the request will be denied. *See In re Motor Fuel Temperature Sales Practices Litig.*, 867 F. Supp. 2d 1124, 1127 n. 1 (D. Kan. 2012) (Vratil, J.). The parties' briefs adequately address the issues for the Court's consideration. The Court need not take more of its time to address this motion, which seeks only a limited action at this time. The Court should deny Plaintiffs' request for oral argument and limit the continued attorneys' fees associated with Plaintiffs' litigation.

### CONCLUSION

Temporary Receiver seeks the enforcement of the Western District's stay order for a temporary 60-day period and requests a status hearing to be held at the end of such period. Temporary Receiver approached this temporary stay in a measured, practical manner. He requested an agreement by the parties that they would join Temporary Receiver in seeking to enforce the stay. This was to avoid unnecessary litigation and attorneys' fees on all sides through briefing that has now become necessary. BFL did not take a position. Once the Western District denied Plaintiffs' motion to intervene without prejudice, Plaintiffs declined to agree to a 60-day stay and now promise further and continued litigation in both venues. Temporary Receiver respectfully requests that this Court apply its discretion and enforce the Western District's stay of this case for at least 60 days, allow Temporary Receiver to address its court-ordered duties

without threat of constant litigation by the parties, and then reconvene for a status hearing following the temporary stay.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

| /s/ Bryant T. Lamer | |
|---|---|
| Bryant T. Lamer | KS #22722 |
| Kersten L. Holzhueter | KS #24885 |
| Stephanie Lovett-Bowman | KS #24842 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone:	(816) 474-8100
Facsimile:	(816) 474-3216
blamer@spencerfane.com
kholzhueter@spencerfane.com
slovettbowman@spencerfane.com

Attorneys for Temporary Receiver Eric L. Johnson

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of October 2014, a true and correct copy of the foregoing was filed electronically with the United States District Court for the District of Kansas using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Bryant T. Lamer
Attorney for Temporary Receiver Eric L. Johnson