**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KYLE ALEXANDER, and )
DYLAN SYMINGTON, )
on behalf of themselves and all those )
similarly situated, )
                                    )
                   Plaintiffs, )
                                    )       Case No. 14-CV-2159-KHV-JPO
v. )
                                    )
BF LABS INC., a Wyoming corporation, )
doing business as BUTTERFLY LABS, )
                                    )
                   Defendant. )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Noah K. Wood            Bar #23238
noah@woodlaw.com
Aristotle N. Rodopoulos    Bar #26585
ari@woodlaw.com
WOOD LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INDEX OF EXHIBITS ....................................................................................... iii

I.      NATURE OF THE MATTER BEFORE THE COURT ............................................. 1

II.     SUMMARY OF ARGUMENT .................................................................2

III.    STATEMENT OF FACTS .....................................................................3

IV.     APPLICABLE LAW ..............................................................................7

V.      ARGUMENT ........................................................................................7

        A.      Interrogatories to be answered and/or supplemented ............................7

                I.      IROG Nos. 5-7 ......................................................................7

                2.      IROG Nos. 8-9 ................................................................... 10

                3.      IROG Nos. 12-13 .................................................................11

                4.      IROG Nos. 14-15.................................................................11

                5.      IROG Nos. 18-19 ................................................................ 12

                6.      IROG No. 20....................................................................... 12

                7.      IROG No. 23 ....................................................................... 13

        B.      Requests for production of documents to be responded to
                and/or supplemented.................................................................. 15

                1.      RFPD No. 2........................................................................ 15

                2.      RFPD Nos. 3-11, 13-18....................................................... 15

                3.      RFPD No. 20 ...................................................................... 18

VI.     REQUEST FOR ORAL ARGUMENT .................................................... 19

VII.    CONCLUSION .................................................................................... 19

CERTIFICATE OF SERVICE ...................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) .................................................................1

**STATUTES**

Federal Trade Commission Act Section 5 ..........................................................................3

**RULES**

D. Kan. Rule 37.2 ................................................................................................................2
Fed. R. Civ. P. 26...............................................................................................7, 15, 16
Fed. R. Civ. P. 37(a)(1) .......................................................................................................2

# INDEX OF EXHIBITS

1.   Affidavit Certifying Compliance with Fed.R.Civ.P. 37(a)(1) and D. Kan. Rule 37.2 ..............................................................................2

2.   W. D. Mo Doc. 218 (Order lifting stay) ..................................................4

3.   2/2/2015 Email from A. Rodopoulos to M. Foster ...................................4

4.   2/2/2015 Email from M. Foster to A. Rodopoulos ..................................5

5.   2/10/2015 Email from A. Rodopoulos to M. Foster .................................5

6.   2/10/2015 Email from M. Foster to A. Rodopoulos ................................5

7.   2/17/2015 Letter from A. Rodopoulos to J. Humphrey and M. Foster ..................5

8.   2/20/2015 Email from T. Reed to Chambers ..........................................5

9.   2/20/2015 Email from A. Rodopoulos to M. Miller ..................................5

10.  BFL's Answers to Plaintiffs' First Interrogatories...................................5

11.  BFL's Responses to Plaintiffs' First Request for Production of Documents.....................................................................................5

12.  3/3/2015 Letter from A. Rodopoulos to J. Humphrey and M. Foster ...................5

13.  3/10/2015 Email from A. Rodopoulos to J. Humphrey and M. Foster..................6

14.  3/17/2015 Emails from A. Rodopoulos and J. Humphrey and M. Foster ..............................................................................................6

15.  3/17/2015 Emails from M. Foster and A. Rodopoulos ...........................6

16.  3/17/2015 Letter from J. Humphrey to A. Rodopoulos...........................6

17.  4/4/2015 Spoliation Letter from N. Wood to J. Humphrey............................ 9, 12

18.  Shipping Confirmation Email, Redacted ................................................9

19.  3/20/2015 Letter from M. Foster to N. Wood and A. Rodopoulos .................. 6, 15

20.  Defendant's Initial Disclosures, Section II, Nos. 1-28 ...........................18

21.  3/20/2015 BFL's Supplemental Interrogatory Answers and Objections.................................................................................7

**COME NOW** Plaintiffs Kyle Alexander and Dylan Symington, by and through their attorneys of record, and respectfully request this Court compel Defendant BF Labs Inc. ("BFL") to provide complete responses to Plaintiffs' First Interrogatories and First Request for Production of Documents as requested herein.

## I.   NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs have brought this suit on behalf of "all persons who pre-paid Defendant for Bitcoin mining equipment," alleging BFL collected pre-payments for non-existent Bitcoin mining equipment, failed to ship Bitcoin mining equipment orders for which consumers have pre-paid, misrepresented the date such equipment would ship to customers, and profited from Bitcoin mining for BFL's own benefit by using customers' equipment without permission or authorization from customers. Plaintiffs contend BFL violated the Kansas Consumer Protection Act ("KCPA"), was unjustly enriched, made negligent misrepresentations, and committed conversion of personal property. Plaintiffs further allege BFL utilized customers' prepayments for the purchase of a home and automobile for its majority shareholder, Sonny Vleisides, and hundreds of thousands of dollars in loans to other shareholders.  Plaintiffs seek damages and a constructive trust[1] to recover the purchase price, the value of bitcoins paid to BFL, the loss of use of bitcoins, the loss of use of mining equipment that was never received or not received in a timely manner, the loss of bitcoins mined by BFL using customers' equipment, the diminution in value of mining equipment, costs of suit, attorney's fees, and punitive damages.

Plaintiffs now seek a court order compelling BFL to provide complete responses

---

[1]      *See Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) ("[A] constructive trust remedy is *res* specific [and] is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value.").

to Plaintiffs' First Interrogatories and First Request for Production of Documents as requested below. Plaintiffs' counsel's affidavit certifying compliance with Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 is attached as **Exhibit 1**.

## II.   SUMMARY OF ARGUMENT

The discovery responses provided by BFL are incomplete and insufficient.  For example, in its interrogatory answers, BFL claims it does not know how many bitcoin machines it manufactured or when such machines were manufactured because it did not track, record, or maintain this information—even after receiving a spoliation letter requesting such information to be preserved.  In interrogatory answers, BFL claims it largely does not know when it shipped bitcoin machines to class members and had no obligation to create shipping records simply because Plaintiffs sent a spoliation letter, but the undisputed evidence establishes BFL created records and possessed information showing the shipping dates before and after Plaintiffs' spoliation letter.

Further, BFL objected to nearly all twenty requests for production of documents (which are not limited to ESI) on the grounds it would conduct a search for electronic documents after reaching an agreement on search terms with Plaintiffs—*i.e.*, a copy-and-paste type of response that could have and should have been provided weeks ago, if at all, and without waiting until Plaintiffs sent a golden rule letter.  To date, BFL has produced *zero documents* in response to Plaintiffs' First Request for Production of Documents.  BFL has refused to provide obviously relevant, clearly non-objectionable, and known responsive information and documents subject to the heart of Plaintiffs' discovery requests simply because there *might* be some fringe information that is not relevant, readily-accessible, or otherwise discoverable.  In fact, BFL refused to produce or make available for copying and inspection the documents BFL designated in its Rule

26 Initial Disclosures, a copy of which was specifically requested in Plaintiffs' First Request for Production of Documents.

BFL's explanation for producing *zero documents* was that Plaintiffs have not produced any documents either.  Plaintiffs have not produced any documents because until March 13, 2015, BFL had not served any discovery requests or asked for a copy of the documents designated in Plaintiffs' Rule 26 Initial Disclosures, which will be provided to BFL as soon as bates-labeling and copying of over 4,000 documents and electronic media is completed.[2]

In discovery negotiations, BFL was unwilling, unable, and/or unprepared to confirm or deny the responsive information and documents (tangible or ESI) it: (1) possesses or does not possess; (2) has withheld or has not withheld as privileged; (3) has searched for or has not yet searched for; and/or (4) will supplement or will not supplement.  BFL also was unwilling, unable, and/or unprepared to identify the ESI it will or will not produce even if Plaintiffs take on the burden and pay for the cost of obtaining such ESI and agrees BFL will not waive privilege for any produced ESI.

## III.   <u>STATEMENT OF FACTS</u>

On August 18, 2014, Plaintiffs' First Interrogatories and First Request for Production of Documents were served on BFL. (*See* Certificate of Service, Doc. 28). BFL's responses were originally due on September 22, 2014.

On September 15, 2014, the FTC filed a complaint (the "FTC action") in the United States District Court for the Western District of Missouri alleging BFL and other individuals violated Section 5(a) of the FTC Act by using deceptive and unfair business

---

[2]        Plaintiffs anticipate this will be finished no later than March 23, 2015.

practices in connection with the marketing and sale of Bitcoin mining machines.   On September 18, 2014, U.S. District Judge Brian C. Wimes entered an *ex parte* temporary restraining order enjoining BFL, freezing BFL's assets, appointing a temporary receiver, and staying all actions against BFL.   The temporary receiver took possession of discovery materials that were prepared by BFL for production in this action.   The stay of actions against BFL, however, was lifted on December 23, 2014.   (*See* W.D. Mo. Doc. 218, p. 3, ¶ 6, **Exhibit 2**).

On December 29, 2014, this Court conducted a teleconference to discuss an amended scheduling order.   During the teleconference, this Court and the parties discussed whether the temporary receiver had returned all discovery materials to BFL and when BFL would be able to provide discovery responses.   Plaintiffs' counsel's recollection was that BFL advised it would be ready to provide discovery responses within a few weeks, and an amended scheduling order was negotiated with discovery deadlines premised on BFL providing discovery responses as estimated by BFL's counsel.

On January 22, 2015, the parties had a phone call to discuss the status of BFL's discovery responses.   BFL's counsel advised they needed some more time and they would soon provide an estimated production date so Plaintiffs would know when to expect discovery responses.   BFL's counsel advised a lot of time and effort was being put into BFL's discovery responses, that BFL would be overproducing in many respects, and that although BFL was not going to produce everything Plaintiffs requested, Plaintiffs would see that BFL was being candid and thorough in its discovery responses.   On February 2, 2015, having received no discovery responses from BFL, Plaintiffs' counsel followed up by email.   (2/2/2015 Email from A. Rodopoulos to M. Foster, **Exhibit 3**).

BFL's counsel responded they would follow up soon, realizing that Plaintiffs needed a drop-dead production date.   (2/2/2015 Email from M. Foster to A. Rodopoulos, **Exhibit 4**).  On February 10, 2015, having received no discovery responses from BFL, Plaintiffs' counsel again followed up to find out when BFL would be providing discovery responses because such responses were crucial to having a meaningful mediation on February 26, 2015.  (2/10/2015 Email from A. Rodopoulos to M. Foster, **Exhibit 5**).  That same day, BFL's counsel advised "I should have responses to you soon." (2/10/2015 Email from M. Foster to A. Rodopoulos, **Exhibit 6**).

On February 17, 2015, Plaintiffs' counsel sent a golden rule letter (the "First Golden Rule Letter").  (2/17/2015 Letter from A. Rodopoulos to J. Humphrey and M. Foster, **Exhibit 7**).  On February 20, 2015, still having received no discovery responses from BFL, Plaintiffs' counsel attempted to set up a discovery teleconference with the Court before filing a motion to compel.   (2/20/2015 Email from T. Reed to Chambers, **Exhibit 8**).  Plaintiffs' counsel had another phone discussion with BFL's counsel before submitting a summary of the dispute to the Court, and BFL advised it would provide discovery responses that day in lieu of a discovery teleconference with the Court. (2/20/2015 Email from A. Rodopoulos to M. Miller, **Exhibit 9**).   As such, a teleconference was not scheduled.

BFL provided discovery responses on February 20, 2015.  (BFL's Answers to Plaintiffs' First Interrogatories, **Exhibit 10**; BFL's Responses to Plaintiffs' First Request for Production of Documents, **Exhibit 11**).  On March 3, 2015, Plaintiffs' counsel sent another golden rule letter (the "Second Golden Rule Letter").  (3/3/2015 Letter from A. Rodopoulos to J. Humphrey and M. Foster, **Exhibit 12**).   BFL did not respond to the Second Golden Rule Letter so, on March 10, 2015, Plaintiffs' counsel emailed BFL's

counsel to arrange a phone call.  (3/10/2015 Email from A. Rodopoulos to J. Humphrey and M. Foster, **Exhibit 13**).  A phone call was scheduled for March 13, 2015.

On March 13, 2015, the parties met and conferred via telephone for several hours discussing BFL's discovery responses.  At the end of the conversation, BFL's counsel agreed to send a letter confirming the discovery requests, if any, BFL would agree to supplement without a motion to compel.  BFL's counsel also advised BFL would propose ESI search terms and designated custodians.

On March 17, 2015, Plaintiffs' counsel sent an email following up on one issue that was not discussed on March 13, 2015, specifically why Plaintiff Kyle Alexander was omitted from the list of class members attached to BFL's interrogatory answers and whether any other class members had been omitted.  (3/17/2015 Emails from A. Rodopoulos to J. Humphrey and M. Foster, **Exhibit 14**).  BFL's counsel responded by return emails on March 17, 2015.  (3/17/2015 Emails from M. Foster to A. Rodopoulos, **Exhibit 15**).   Later that day, BFL's counsel sent a letter proposing ESI search terms and designated custodians but suggesting even BFL's proposed search terms are not feasible.  (3/17/2015 Letter from J. Humphrey to A. Rodopoulos, **Exhibit 16**).

On March 19, 2015, BFL's counsel left a voice message stating another letter addressing discovery issues would be forthcoming, but Plaintiffs' counsel has not yet received such letter.  As of the final review of this motion and memorandum prior to final formatting, BFL has not confirmed whether, when, or which discovery responses it will supplement, if any.[3,4]

---

[3]     At 12:26 p.m. on March 20, 2015, BFL sent another letter mostly standing on its objections but offering to partially supplement some discovery items.  (3/20/2015 Letter from M. Foster to N. Wood and A. Rodopoulos, **Exhibit 19**).
[4]     At 1:28 p.m. on March 20, 2015, BFL sent supplemental interrogatory answers and objections. Plaintiffs have not had sufficient time to review these supplemental answers but will notify the court and

## IV.   APPLICABLE LAW

Rule 26 provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who may know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  If a party withholds electronically stored information, that party "must show that the information is not reasonably accessible because of undue burden or cost."  *Id.* at Rule 26(b)(2)(B).  When a party withholds information on the basis of privilege, the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." *Id.* at Rule 26(b)(5)(A).

## V.   ARGUMENT

### A.   Interrogatories to be answered and/or supplemented

#### 1.   IROG Nos. 5-7.

BFL states it did not track by product the number of units it ordered, manufactured, or shipped to consumers by month and year.  These interrogatories do not ask for the method by which information was tracked and these are not requests for documents; rather, these interrogatories ask for the number of units BFL ordered, manufactured, or shipped to consumers by month and year regardless of BFL's records or the manner BFL "tracks" information.

---

agree to withdraw any issues submitted herein that are mooted by BFL's last-minute answers. (3/20/2015 BFL's Supplemental Interrogatory Answers and Objections, **Exhibit 21**).

For starters, it is difficult to believe that a company that manufactures and ships bitcoin machines has no knowledge about how many units it ordered, manufactured, or shipped in any month of any year.   Interestingly, in discovery negotiations, BFL's counsel did not confirm or deny whether there are any BFL employees having knowledge sufficient to provide an answer.   BFL's counsel did not confirm or deny whether they made inquiries with the employees actually responsible for ordering, manufacturing, or shipping.   Instead, BFL's counsel argued *if* there were any BFL employees with knowledge sufficient to answer the interrogatory, such employees' knowledge would only allow reasonable estimates and not exact figures or dates.   BFL's counsel argued the interrogatories as technically worded only require exact figures and dates, but do not require known reasonable estimates. In other words, BFL is apparently arguing it would be required to provide an answer only if BFL knew for sure, for example, that exactly 97 units were ordered, manufactured, or shipped between June 5, 2012 and July 17, 2012.   If, however, BFL merely knew that approximately 100 units were ordered, manufactured, or shipped between June 2012 and July 2012, BFL believes it is not required to provide this information at all.   BFL is characterizing Interrogatories Nos. 5-7 in a way that parses words and evades the heart of the interrogatories.

Further, on April 4, 2014, Plaintiffs sent a spoliation letter[5] requesting, among other things, that BFL preserve "records of the number of mining units available for shipping, or in the process of being manufactured during any time Defendant BFL accepted payments from customers," "[i]nventory and supply records for parts or

---

[5]    Plaintiffs are not seeking spoliation sanctions at this time but, rather, are seeking to compel complete and unequivocal discovery answers.  Plaintiffs will continue to investigate in discovery whether spoliation occurred.

materials," "[c]orrespondence with any component manufacturer or supplier," and "[r]ecords of purchases or orders from component manufacturers or suppliers." (4/4/2014 Spoliation Letter from N. Wood to J. Humphrey, **Exhibit 17**).  When asked whether BFL ordered, manufactured, or shipped bitcoin mining units after receiving the spoliation letter, BFL's counsel responded something to the effect of "any normal human mind" would know the answer to that question is "yes."  BFL's counsel did not confirm or deny whether BFL created or possessed any records in the process of ordering, manufacturing, or shipping such units that would identify the number of units ordered, manufactured, or shipped and/or the date the units were ordered, manufactured, or shipped.  Instead, BFL's counsel argued even *if* there were such documents, the information requested in Interrogatories Nos. 5-7 does not exist in a single document and BFL is not required to create such a document simply because Plaintiffs sent a spoliation letter.

Again, BFL is characterizing Interrogatories Nos. 5-7 in a way that parses words and evades the heart of the interrogatories.  For example, the undisputed evidence establishes BFL in fact "tracks" the specific date it ships mining units to customers. Plaintiffs' counsel has collected hundreds of documents from putative class members, including a standard email "Butterfly Labs, Inc." (using an email address "tracking@shipstation.com") sends to customers titled "Your order has been shipped!" and stating the exact shipping date, identifying the carrier, and even including a "Track Your Shipment" account number with a link.  (*See e.g.*, Shipping Confirmation Email, Redacted, **Exhibit 18**).

This Court should ask BFL to unequivocally explain: (1) whether BFL or its employees have any knowledge about the number of units BFL has ordered,

manufactured, or shipped by month and year regardless of BFL's records; and (2) whether BFL created or possessed any records in the process of ordering, manufacturing, or shipping units that would identify the number of units ordered, manufactured, or shipped and/or the date the units were ordered, manufactured, or shipped.  Depending on the answer provided by BFL, this Court should order BFL to answer Interrogatory Nos. 5-7 accordingly, to supplement accordingly, or to produce the records that would allow Plaintiffs to derive an answer to such interrogatories.

2.    IROG Nos. 8-9.

In its answer to Interrogatory No. 8, BFL does not identify the date or content of any public representation regarding shipping dates or revised shipping dates.  Further, although BFL summarizes the general nature of information it claims it relied on in making all such representations, BFL does not provide the substance and content of the information relied on and BFL does not provide the factual basis for any specific representation made on any specific date.  Although BFL argues this information is publically available, BFL's counsel did not confirm or deny whether all such representations made by BFL actually are publically available.  Plaintiffs are entitled to obtain BFL's position as to the number, nature, content, and factual basis for all such representations even if all such representations are publically available.

Interrogatory No. 9 seeks to find out how often BFL actually satisfied its own shipping representations.  Although BFL objects the interrogatory is overbroad, unduly burdensome, and not reasonable calculated to lead to the discovery of admissible evidence, these are mere boilerplate objections with no argument or explanation.  This interrogatory merely asks BFL to identify its shipping representations and the dates it shipped units.  The answer is highly relevant to the issue of whether it was fraudulent

and/or negligent for BFL to make shipping representations without a factual basis and/or to continue making shipping representations it never or rarely satisfied historically.

        3.    <u>IROG Nos. 12-13.</u>

BFL promises to produce, but has not yet produced, the letter denying coverage. BFL has not provided the addresses for Alexa Fuller, Chris Vleisides, or A.D. Douma.

        4.    <u>IROG Nos. 14-15.</u>

BFL refuses to answer Interrogatory Nos. 14-15 with respect to bitcoin mining accounts or operations operated, owned, utilized, or otherwise controlled by BFL's agents or employees.  BFL did not assert, explain, or provide any argument in support of a specific objection.  BFL simply states it will not provide the information.  In discovery negotiations, however, BFL's counsel argued unless and until the individual agents or employees are added as defendants, the requested information is not relevant.  BFL's counsel did not confirm or deny whether BFL had knowledge of bitcoin mining by its agents and employees.  BFL's counsel did not confirm or deny whether BFL allowed its agents or employees to mine bitcoins using customers' mining equipment or mining equipment manufactured by BFL.  BFL's counsel did not confirm or deny or if BFL transferred bitcoins to its agents or employees.

BFL's counsel did not deny this information would be relevant *if* it was possessed by BFL. BFL's counsel, however, did not confirm or deny whether these things occurred or whether BFL possesses responsive information.  More importantly, BFL's counsel did not deny these interrogatories are reasonably calculated to lead to the discovery of admissible evidence.

With respect to BFL itself, BFL provided no account numbers, locations, or dates

bitcoins were mined under each account or at each location, or the product name, version, or serial numbers for any mining equipment used on any date or at any location.  BFL failed to identify its mining machines or mining results in its Eclipse Mining Consortium.  Although BFL claims Eclipse Mining Consortium is operated on multiple servers in multiple locations, no such servers or server locations were identified.  Other than stating BFL might or might not have serial numbers assigned to mining units, BFL's counsel provided no explanation for BFL's failure to provide the information requested in these interrogatories.

5.    IROG Nos. 18-19.

BFL's counsel has explained that BFL's references to Exhibits C and D were typos and were intended to refer to BFL's Exhibits A and B.  BFL's Exhibit A, however, does not provide the sale price for most sales.  Further, BFL's Exhibits A and B do not show the customers who paid in bitcoins or the number of bitcoins each customer paid to BFL.  BFL's Exhibit E does not identify all customers who requested refunds, the date each refund was requested, or the type and amount of each refund.  BFL's counsel argued BFL does not have this information contained in a single document and is not required to create such a document simply because Plaintiffs sent a spoliation letter.  BFL's counsel did not confirm or deny whether BFL has employees with knowledge or other records available to provide this information.

6.    IROG No. 20.

BFL answer is limited to BFL's forums.  BFL did not object to IP's and account names for other sites and locations on the Internet, yet BFL did not provide such information.

7.    IROG No. 23.

BFL states it did not maintain records that would allow it to answer Interrogatory No. 23.  The April 4, 2014 spoliation letter specifically requested, among other things, that BFL preserve all "[r]ecords of any mining, purchase, or sale of bitcoins." (4/4/2014 Spoliation Letter from N. Wood to J. Humphrey, **Exhibit 17**).  Plaintiffs' counsel's position is simple: if BFL obtained any bitcoins through testing of equipment before shipping the equipment to customers, BFL should have preserved records of such bitcoins; if the bitcoins were sold, BFL should have preserved records of such sales.

Although BFL states bitcoins resulting from "by-product" mining has historically been directed to a single wallet address, BFL failed to identify that wallet address and failed to state the number of bitcoins directed to that wallet address.  BFL's counsel argued BFL was not tracking this information in a single document prior to the April 4, 2014 spoliation letter and BFL has no obligation to create such a document simply because Plaintiffs sent a spoliation letter or simply because Plaintiffs served discovery requests.

In discovery negotiations, Plaintiffs counsel inquired whether BFL knows the total number of bitcoins obtained from all sources.  BFL's counsel responded "yes" and referred Plaintiffs' counsel to the 8,124.58 figure provided in BFL's interrogatory answer. To date, BFL has only identified three sources of BFL's bitcoin mining: (1) mining from the testing of equipment; (2) mining as part of the Nimbus Mining partnership; and (3) cloud mining.  BFL's counsel did not confirm or deny whether BFL knows the number of bitcoins obtained from the Nimbus Mining partnership and cloud mining.

Plaintiffs' counsel has obtained records from Netsolus, Inc., a third party who

hosted the mining machines for the Nimbus Mining partnership and cloud mining.  The Netsolus records show that detailed records were created showing the precise number of bitcoins mined on a daily and monthly basis.  It is hard to believe with a reasonable inquiry BFL cannot determine the number of bitcoins it received from a partnership of which it was a partner and from its own cloud mining.  With this number, the number of bitcoins obtained from the testing of equipment prior to shipping may be determined with simple math.

BFL's counsel did not confirm or deny whether there are any BFL employees having knowledge sufficient to provide an answer.  BFL's counsel did not confirm or deny whether they made inquiries with the employees actually responsible obtaining bitcoins from testing, partnership mining, or cloud mining.  When asked whether BFL created or possessed any records in the process of obtaining bitcoins from testing, partnership mining, or cloud mining showing the number of bitcoins obtained and/or the source of the bitcoins, BFL's counsel did not confirm or deny other than generally referring to the Bitcoin "blockchain," which is essentially a public ledger that anonymously records bitcoin transactions.

This Court should ask BFL to unequivocally explain: (1) whether BFL or its employees have any knowledge about the number of bitcoins BFL obtained from testing, partnership mining, and/or cloud mining regardless of BFL's records; and (2) whether BFL created or possessed any records in the process of obtaining bitcoins from testing, partnership mining, or cloud mining showing the number of bitcoins obtained and/or the source of the bitcoins.  Depending on the answer provided by BFL, this Court should order BFL to answer Interrogatory No. 23 accordingly, to supplement accordingly, or to produce the records that would allow Plaintiffs to derive an answer to such

interrogatory.

**B.   Requests for production of documents to be responded to and/or supplemented**

    1.   <u>RFPD No. 2.</u>

BFL produced zero documents.  BFL objected and stated it will meet and confer with Plaintiffs. During discovery negotiations, Plaintiffs agreed to limit this request to non-privileged statements possessed by BFL it thinks is relevant and intends to use at trial to oppose Plaintiffs' allegations or to support a defense, which obviously includes any statements BFL designated in its Rule 26 Initial Disclosures[6] and any previous statements made by Plaintiffs.  *See* Fed. R. Civ. P. 26(b)(3)(C).

    2.   <u>RFPD Nos. 3-11, 13-18.</u>

BFL produced zero documents.  BFL objected and stated these requests seek information protected by attorney-client privilege and work-product doctrine. Such privilege objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

BFL also states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians.  This request is not limited to documents that only exist in electronic format. BFL's counsel did not confirm or deny whether BFL possesses any tangible responsive

---

[6]    The last-minute letter sent by BFL's counsel on March 20, 2015 states that RFPD No. 2 "includes every BF Labs' email ever written."  (3/20/2015 Letter from M. Foster to N. Wood and A. Rodopoulos, **Exhibit 19**).   If BFL intends to use at trial every BFL email ever written to oppose Plaintiffs' claims or support defenses, then Plaintiffs request the Court to order BFL to produce all such emails.

documents or whether BFL even searched for tangible responsive documents.  BFL produced no documents (tangible or ESI) even though BFL's counsel does not deny BFL likely possesses documents in locations known to have responsive information.  (*See* Doc. 12, p. 3, para. iv) ("Nothing in this agreement, including any provisions related to the use or non-use of Search Terms or Search Syntax, shall excuse a party from searching for and producing documents from locations (including electronic files) it knows or reasonably believes to have responsive information.").

Not only did BFL fail to identify or produce any tangible documents or ESI, BFL's counsel did not raise the issue of limiting BFL's production of ESI due to undue burden or costs until February 20, 2015.  BFL's counsel did not propose search terms and designated custodians until March 17, 2015—four days after the deadline set forth in Plaintiffs' Second Golden Rule Letter for BFL to provide complete responses.  In discovery negotiations, BFL's counsel provided no explanation other than arguing Plaintiffs' counsel is equally to blame for BFL's failure to serve discovery responses or raise issues regarding BFL's ESI earlier in discovery.  Until February 20, 2015, however, Plaintiffs had received no discovery responses from BFL whatsoever and had no idea what kind or amount of ESI BFL possessed, if any—let alone the burden or costs of producing it.

Regardless, BFL, the party withholding ESI, "must show that the information is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2)(B).  BFL's counsel has argued search terms and designated custodians are appropriate in order to reduce BFL's burden and costs of production.  Specifically, in discovery negotiations, BFL's counsel argued all requests that involve ESI are unduly burdensome and costly because BFL is near bankruptcy and cannot afford to pay its lawyers to collect

and review for privilege all of the relevant ESI that has been preserved. Here, BFL's counsel has not identified any preserved ESI categories or locations that contain large amounts of irrelevant information and it is unlikely BFL made significant efforts to preserve (or had any duty to preserve) irrelevant ESI.

Plaintiffs, however, are not limited to discovering ESI based on BFL's proposed terms and custodians or BFL's potential bankruptcy—especially in circumstances where, as here, relevant ESI has been preserved and Plaintiffs are willing to shoulder the burden and costs of collecting it.  (*See* Doc. 12, p. 2, para. i) ("[T]he parites *may* embark on a collaborative effort to identify appropriate Search Terms and Searching Syntax[.]") (emphasis added). BFL's counsel apparently believes limited search terms and custodians *must* be used whenever a defendant prefers, even if the ESI at issue is relevant and the requesting party is willing to shoulder the burden and cost of collecting the ESI.

Because the preserved ESI at issue is known to contain relevant and responsive information, and because Plaintiffs are willing to shoulder the burden and costs of collecting it, BFL has not met its burden of showing undue burden or undue costs sufficient to withhold ESI or limit Plaintiffs' discovery of relevant ESI based upon limited search terms and custodians.

In discovery negotiations, BFL's counsel argued BFL would still incur significant legal fees because each and every piece of ESI would have to be reviewed for privilege. Plaintiffs' counsel suggested privilege concerns could be largely reduced by sorting ESI by the dates privilege was first a viable claim, by allowing a claw back procedure under which BFL does not waive privilege or other objections to ESI produced, and/or by filtering ESI according to proper sender and recipient fields.  BFL's counsel did not

disagree with Plaintiffs' suggestion in theory but also did not agree to move forward with Plaintiffs' suggestion.  Plaintiffs will continue to negotiate ways to reduce or eliminate privilege burdens and costs and/or privilege search terms with BFL, but the parties strongly disagree about whether designated custodians and substantive search terms are appropriate in this case.

        3.     RFPD No. 20.

In Plaintiffs' RFPD No. 20, Plaintiffs' requested BFL to produce the documents, electronically stored information, and other tangible things designated by BFL in its initial disclosures.  (*See* Defendant's Initial Disclosures, Section II, Nos. 1-28, **Exhibit 20**).  BFL objected to producing the documents it designated in its initial disclosures and stated it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. BFL's counsel, however, did not confirm or deny whether or which documents designated in BFL's initial disclosures are tangible or ESI.  Regardless, Plaintiffs are unaware of any legal authority that allows a party to use ESI protocol and/or the possibility of ESI to reduce or restrict the opponent's ability to obtain a copy of the documents designated in the party's initial disclosures.  Plaintiffs believe BFL may have designated documents in its initial disclosures without knowing whether such documents even exist and/or whether such documents exist in tangible or electronic format.

BFL argues it will agree it cannot use at trial any documents (ESI or otherwise) that it does not produce to Plaintiffs in discovery.  BFL's proposal, however, completely ignores the purpose of initial disclosures.  BFL's belief that it can simply produce whatever documents (ESI or otherwise) it wants whenever it wants – without

consequence – so long as discovery has not closed defies Rule 26(a)(1)(A)(ii) and Rule 37(c)(1). BFL should be ordered to immediately produce all documents (ESI or otherwise) it designated in its initial disclosures.

## VI.   REQUEST FOR ORAL ARGUMENT

Due to the gravity and importance of the instant matter, the need for unequivocal explanations on the record, and the unique technological issues involved, Plaintiffs respectfully request this Court to permit oral argument on Plaintiffs' Motion to Compel.

## VII.   CONCLUSION

**WHEREFORE**, Plaintiffs Kyle Alexander and Dylan Symington, by and through their attorneys of record, respectfully request this Court compel Defendant BF Labs Inc. to provide complete responses to Plaintiffs' First Interrogatories and First Request for Production of Documents as requested herein.

Date: <u>March 20, 2015</u>

WOOD LAW FIRM, LLC

By    <u> /s/ *Ari N. Rodopoulos* </u>
Noah K. Wood                          Bar #23238
noah@woodlaw.com
Aristotle N. Rodopoulos          Bar #26585
ari@woodlaw.com
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20st day of March, 2015, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.


By  /s/  Ari N. Rodopoulos
       *Attorneys for Kyle Alexander and Dylan*
       *Symington*