

# WOOD
LAW FIRM

Tuesday, March 3, 2015

James M. Humphrey, Esq. (*via E-Mail:* jhumphrey@polsinelli.com)
Michael S. Foster, Esq. (*via E-Mail:* mfoster@polsinelli.com)
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

    Re:    **2nd Golden Rule Letter – Alexander et. al v. BF Labs, Inc.**
              **D. Kan. Case No. 2:14-CV-02159**

Gentlemen:

    Plaintiffs' First Interrogatories and First Requests for Production of Documents were served on Defendant BF Labs, Inc. ("BFL") on August 18, 2014. BFL's responses were due no later than September 22, 2014. Although on September 18, 2014 the U.S. District Court for the Western District of Missouri stayed all actions against BFL, such stay was lifted on December 23, 2014.

    On February 17, 2015, Plaintiffs sent a golden rule letter requesting BFL to provide discovery responses by February 20, 2015. Although BFL provided discovery responses on February 20, 2015, we believe the responses provided are insufficient, incomplete, and do not comply with Rule 26(g)(1).

    To be frank, BFL's discovery responses are the most egregious I've encountered in my career. This is the first time in my career where a defendant has produced zero documents in response to requests for production of documents. This is also the first time in my career where a defendant has refused to produce the documents it disclosed in its initial disclosures.

**I.**    **Interrogatories**

    **A.**    **IROG No. 5.**

    BFL states it did not track by product the number of units it has manufactured to consumers by month and year. This responsive is evasive. This interrogatory does not ask for the method by which information was tracked; rather, it asks for the number of units manufactured by month and year regardless of the manner BFL tracks information. BFL does not deny the requested information is available. BFL does not deny that with reasonable efforts, BFL could have provided answers to this interrogatory.



1100 MAIN STREET, STE 1800, KANSAS CITY, MO 64105
P (816) 256.3582  |  F (816) 337.4243  |  WOODLAW.COM
OFFICES IN KANSAS CITY AND SPRINGFIELD

EXHIBIT 12

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 2

  For example, BFL had a queue (*i.e.*, a list of customers waiting for units to be manufactured and/or shipped), BFL made representations about how many units it had available for shipping at various times, BFL has access to its own component parts purchase records, BFL has knowledge of how many parts and components it ordered and received, BFL has knowledge of how many parts and components go into each unit, BFL has knowledge of how many parts and components were not used to manufacture units, BFL has knowledge of how many units it manufactured and when they were ready for shipment, BFL claims it conducted quality assurance testing on each unit it manufactured, and BFL kept records of the number of units it manufactured and used for self-mining, claiming such units were not conveyable to customers waiting in the queue.

  Further, on April 4, 2014, Plaintiffs sent a spoliation letter requesting, among other things, that BFL preserve "records of the number of mining units available for shipping, or in the process of being manufactured during any time Defendant BFL accepted payments from customers." A copy of the April 4, 2014 spoliation letter to BFL is enclosed. Finally, Interrogatory No. 5 was served on BFL on August 18, 2014. As such, BFL's answer that it did not track this information in the manner requested prior to February 20, 2015 is evasive and unacceptable.

  BFL also states that BFL's Exhibits A and B provide the information requested in Interrogatory No. 5. Exhibit A, which pertains to FPGA, does not show the number of units manufactured or when such units were manufactured. Exhibit B, which pertains to 65 and 28 NM, also does not show the number of units manufactured or when such units were manufactured. Further, Exhibit B does not show the date units were shipped to customers.

  **B.** **IROG No. 6.**

  BFL's answer to Interrogatory No. 6 is evasive and unacceptable for the same reasons stated in Section I-A, above.

  **C.** **IROG No. 7.**

  BFL's answer to Interrogatory No. 7 is evasive and unacceptable for the same reasons stated in Section I-A, above. Additionally, the April 4, 2014 spoliation letter specifically requested BFL to preserve, among other things, "[i]nventory and supply records for parts or materials," "[c]orrespondence with any component manufacturer or supplier," and "[r]ecords of purchases or orders from component manufacturers or suppliers."

  **D.** **IROG No. 8.**

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 3

    In its answer, BFL does not identify the date or content of any public representation regarding shipping dates or revised shipping dates. Further, although BFL summarizes the general nature of information it claims it relied on in making all such representations, BFL does not provide the substance and content of the information relied on and BFL does not provide the factual basis for any specific representation made on any specific date.

    **E.    IROG No. 9.**

    In its answer, BFL provides no meaningful answer whatsoever. BFL objects on the grounds this interrogatory is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This interrogatory simply seeks to find out the rate at which BFL satisfied or failed to satisfy its own shipping representations with regard to the products at issue during the class period at issue. BFL's objections are vague, conclusory, and BFL provided no explanation, argument, or authorities supporting such objections. These objections are improper and are not supported by law or fact.

    BFL also states it does not have the records to be able to provide the information requested in Interrogatory No. 9. See Section I-A and I-D, above. See also the April 4, 2014 spoliation letter.

    **F.    IROG No. 12.**

    BFL promises to produce, but has not yet produced, the letter denying coverage.

    **G.    IROG No. 13.**

    BFL has not provided the addresses for Alexa Fuller, Chris Vleisides, or A.D. Douma.

    **H.    IROG No. 14.**

    BFL refuses to answer Interrogatory No. 14 with respect to bitcoin mining accounts or operations operated, owned, utilized, or otherwise controlled by BFL's agents or employees. BFL does not deny it possesses responsive information with respect to such agents and employees. Although BFL claims it "objects," BFL did not state any legally recognizable objection and BFL did not provide any explanation, argument, or authorities supporting its objection. This objection is improper and is not supported by law or fact.

    With respect to BFL itself, BFL provides no account numbers, locations, dates

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 4

bitcoins were mined under each account or at each location, or the product name, version, or serial numbers for any mining equipment used on any date or at any location. BFL failed to identify its mining machines or mining results in its Eclipse Mining Consortium. Although BFL claims Eclipse Mining Consortium is operated on multiple servers in multiple locations, no such servers or server locations were identified.

      I.      **IROG No. 15.**

BFL refuses to answer Interrogatory No. 15 with respect to bitcoin addresses operated, owned, utilized, or otherwise controlled by BFL's agents or employees. BFL does not deny it possesses responsive information with respect to such agents and employees. Although BFL claims it "objects," BFL did not state any legally recognizable objection and BFL did not provide any explanation, argument, or authorities supporting its objection. This objection is improper and is not supported by law or fact.

      J.      **IROG No. 18.**

For FPGA sales, BFL refers to Exhibit C. For the 28 and 65 NM sales, BFL refers to Exhibit D. No Exhibit C or D was produced. Michael Foster has explained that Exhibits C and D were ultimately not produced because the information requested by this interrogatory was already contained in Exhibits A and B. Exhibit A, however, does not provide the sale price for most sales. Further, Exhibits A and B do not show the customers who paid in bitcoins or the number of bitcoins each customer paid to BFL.

      K.      **IROG No. 19.**

BFL refers to Exhibit E and states it "may be supplemented as it may not be completely comprehensive." Please supplement. Further, Exhibit E does not identify all customers who requested refunds, the date each refund was requested, or the type and amount of each refund (*i.e.*, whether in cash, bitcoins, or some other consideration).

      L.      **IROG No. 20**

BFL answer is limited to BFL's forums. BFL did not object to IP's and account names for other sites and locations on the Internet, yet BFL did not provide such information.

      M.      **IROG No. 23**

BFL states it did not maintain records that would allow it to answer Interrogatory No. 23. BFL does not deny it tracked such information; rather, BFL claims it did not maintain records of such information. This answer is unacceptable. BFL has knowledge

of the number of units it manufactured, the number of units it tested, and the number of bitcoins obtained via testing. BFL states bitcoins resulting from "by-product" mining has historically been directed to a single wallet address, but BFL failed to identify that wallet address and failed to state the number of bitcoins directed to that wallet address.

Further, the April 4, 2014 spoliation letter specifically requested, among other things, that BFL preserve all "[r]ecords of any mining, purchase, or sale of bitcoins." If BFL obtained any bitcoins through testing of equipment, BFL should have preserved records of such bitcoins. If the bitcoins were sold, BFL should have preserved records of such sales. Why didn't BFL preserve records of bitcoins mined from testing after April 4, 2014? Interrogatory No. 23 was served on August 18, 2014. Why didn't BFL preserve records of bitcoins mined from testing after August 18, 2014?

### N.   Exhibits attached to Interrogatories

BFL's interrogatory answers state Exhibits A, B, C, D, E, and F are attached. Exhibits C and D were not attached. The exhibits produced were provided only in PDF. Please produce each exhibit identified in BFL's answers in its original electronic format.

## II.   Requests for Production

### A.   RFPD No. 2

BFL produced zero documents responsive to this request. BFL objects and states it will meet and confer with Plaintiffs. Plaintiffs believe BFL, in order to comply with Rule 26(g)(1), should have produced documents that are obviously responsive and then meet and confer only about documents that might or might not be responsive. Obviously responsive documents would include non-privileged statements possessed by BFL it thinks is relevant or intends to use at trial. Using the meet and confer process to withhold clearly relevant and clearly non-objectionable documents does not comply with Rule 26(g)(1) and serves no purpose but to delay and frustrate Plaintiffs' discovery of facts and documents in this action.

### B.   RFPD No. 3

BFL produced zero documents responsive to this request. BFL objects and states this request seeks information protected by attorney-client privilege and work-product doctrine. Such objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 6

BFL also states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians.  This request is not limited to documents that only exist in electronic format.  BFL has produced no policies, manuals, documents, communications, or guidelines relating or referring to procedures for publishing, marketing, or selling BFL's merchandise.

Even if all such responsive documents exist only in electronic format, it is unlikely that all such documents are privileged.  Plaintiffs believe BFL, in order to comply with Rule 26(g)(1), should have produced paper documents that are obviously responsive and non-privileged, and should have produced electronic documents that are obviously responsive and non-privileged based on search terms acceptable to BFL—and then meet and confer only about documents or search terms that might or might not be responsive or acceptable to BFL.  Using the meet and confer process to forego conducting a reasonable search and to withhold clearly relevant and clearly non-objectionable documents does not comply with Rule 26(g)(1) and serves no purpose but to delay and frustrate Plaintiffs' discovery of facts and documents in this action.

    C.    RFPD No. 4

BFL produced zero documents responsive to this request.  BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians.  Plaintiffs believe this discovery tactic violates Rule 26(g)(1).  See Section II-A and II-B, above.

BFL also states, after reaching an agreement on search terms, it will search for non-privileged documents.  BFL should have already determined which documents are privileged and asserted privilege in compliance with Rule 26(b)(5)(A)(ii).  The meet and confer process cannot be used to excuse BFL's obligation to make a reasonable search for privileged documents and/or to timely assert privilege.

    D.    RFPD No. 5

BFL produced zero documents responsive to this request.  BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians.  Plaintiffs believe this discovery tactic violates Rule 26(g)(1).  See above.

    E.    RFPD No. 6

BFL produced zero documents responsive to this request.  BFL referred Plaintiffs to the docket sheet in the FTC action.  The docket sheet in the FTC action does not contain—and there is no reasonable basis to believe it would contain—the requested

documents, *i.e.*, "documents and/or communications between [BFL] and any State Attorney General, the Federal Trade Commission, the United States Government, or the Better Business Bureau relating or referring to [BFL's] business practices, sales, pre-order sales, and/or shipping of merchandise."

Without any objection or explanation, BFL limits the request to any State Attorney General and the Better Business Bureau and states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

  F. RFPD No. 7

BFL produced zero documents responsive to this request. Without any objection or explanation, BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

  G. RFPD No. 8

BFL produced zero documents responsive to this request other than referring Plaintiffs to Exhibit F to BFL interrogatory answers. BFL objects and states this request seeks information protected by attorney-client privilege and work-product doctrine. Such objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

BFL also states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

  H. RFPD No. 9

BFL produced zero documents responsive to this request. BFL objects and states this request seeks information protected by attorney-client privilege, work-product doctrine, and "any other applicable privileges." Such objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 8

      BFL also states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

### I. RFPD No. 10

      BFL produced zero documents responsive to this request other than referring Plaintiffs to Exhibits C and D to BFL interrogatory answers, which have not been produced to date. BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

### J. RFPD No. 11

      BFL produced zero documents responsive to this request. BFL refuses to answer RFPD. No 11 with respect to bitcoin mining by BFL's agents or employees in their individual capacity. BFL does not deny it possesses responsive documents with respect to such agents and employees in their individual capacity. Although BFL claims such documents are irrelevant, BFL does not deny this request seeks information reasonably calculated to lead to the discovery of admissible evidence. BFL's relevancy objection is improper and is not supported by law or fact.

      With respect to BFL itself, BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

### K. RFPD No. 12

      BFL produced zero documents responsive to this request. BFL objects and states this request seeks information protected by attorney-client privilege and work-product doctrine. Such objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

### L. RFPD No. 13

      BFL produced zero documents responsive to this request. BFL merely incorporates its objections and responses to RFPD Nos. 4, 7, and 9.

Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 9

### M.     RFPD No. 14

BFL produced zero documents responsive to this request. BFL objects that BFL's websites, including previous versions of such websites, are publically available and the burden of compiling such documents from publicly available sources is the same for BFL as it is for Plaintiffs. What is BFL's factual basis for making this statement, *i.e.*, that BFL's websites and previous versions of such websites are publically available to Plaintiffs? And that BFL would be required to compile the requested documents from publically available sources rather than just copying and sending its website data to Plaintiffs?

### N.     RFPD No. 15

BFL produced zero documents responsive to this request. BFL objects and states this request seeks information protected by attorney-client privilege and work-product doctrine. Such objections have not been properly raised because BFL has not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

BFL also states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

### O.     RFPD No. 16

BFL produced zero documents responsive to this request. BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

### P.     RFPD No. 17

BFL produced zero documents responsive to this request other than referring Plaintiffs to Exhibits A through E to BFL's interrogatory answers. BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

Further, Exhibits A through E to BFL's interrogatory answers do not include any of the requested documents, *i.e.*, "all documents and/or communications relating or referring to orders placed and the monetary value of those orders, how many of the

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 10

product was shipped, the dates of shipment, and how many refunds were requested and made for the product."

### Q.     RFPD No. 18

BFL produced zero documents responsive to this request other than referring Plaintiffs to Exhibit F to BFL's interrogatory answers. BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

Further, Exhibit F to BFL's interrogatory answers does not include any of the requested documents, *i.e.*, "all documents and/or communications relating or referring to complaints by consumers of defective and/or malfunctioning bitcoin mining equipment or services purchased from [BFL]."

### R.     RFPD No. 20

BFL produced zero documents responsive to this request. BFL states it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. Plaintiffs believe this discovery tactic violates Rule 26(g)(1). See above.

BFL's response to RFPD No. 20 has no basis in law or in fact, violates Rule 26(g)(1), and is sanctionable. In Section II, Nos. 1-28 of BFL's initial disclosures, BFL identified the documents, electronically stored information, and other tangible items BFL intends to use at trial. BFL's failure to produce all such documents upon request by Plaintiffs and attempt to limit Plaintiffs' discovery of such documents based upon limited search terms and custodians is sanctionable. If BFL will agree it cannot use at trial any of the documents, electronically stored information, and other tangible items BFL listed in Section II, Nos. 1-28 of its initial disclosures, Plaintiffs will not file a motion for discovery sanctions with respect to BFL's response to RFPD No. 20.

### III.    Deadline to supplement

Plaintiffs' discovery responses were served on August 18, 2014. BFL had thirty days to prepare proper discovery responses prior to the FTC shutdown and stay of litigation on September 18, 2014. On December 23, 2014, the stay was lifted and BFL had an additional 60 days to provide proper discovery responses. The responses provided on February 20, 2015, however, were evasive, incomplete, and in violation of Rule 26(g)(1).

BFL – as admitted in its discovery responses – failed to conduct any reasonable

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Tuesday, March 3, 2015
Page 11


search into Plaintiffs' discovery requests and BFL now seeks to use the meet and confer process as a way of further delaying and frustrating discovery in this case. To date, BFL has not produced a single document in response to Plaintiffs' First Request for Production of Documents. How is it that BFL believes producing zero documents in response to 20 requests for production complies with Rule 26(g)(1) and/or is not otherwise sanctionable?

BFL largely claims it will not produce any documents until the parties agree on search terms, yet BFL never informed Plaintiffs or discussed the need for search terms prior to February 20, 2015. BFL's failure to make any discovery responses until February 20, 2015 is inexcusable—especially considering the responses merely state no documents are being produced until search terms are agreed upon.

Please provide complete supplemental discovery responses no later than Friday, March 13, 2015. If discovery responses are not received by then, we will file a motion to compel on March 20, 2015.

Should you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Ari N. Rodopoulos
Attorney at Law


ANR:tr

Encl: April 4, 2014 NKW Ltr re spoliation



Friday, April 4, 2014

James M. Humphrey, Esq. (*via E-Mail:* jhumphrey@polsinelli.com)
Michael S. Foster, Esq. (*via E-Mail:* mfoster@polsinelli.com)
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112

  Re: *Alexander et. al v. BF Labs, Inc.,*
    U.S.D.C. Kansas Case No. 2:14-CV-02159
    **Spoliation Letter and Notice to Preserve Documents**

Gentlemen:

  It is my understanding you represent BF Labs Inc. d/b/a Butterfly Labs ("BFL"). If you do not represent BFL, please let me know.

  A class-action complaint has been filed against Defendant BFL in the United States District Court for the District of Kansas. A copy of the complaint is attached.

  We respectfully request and expect Defendant BFL to preserve all potentially relevant evidence, data, and information concerning the Plaintiff Class and their claims, regardless of any record retention time guidelines provided by regulatory agencies or policies. Any failure to preserve such evidence, data, and information may result in our seeking remedies with the court that may be adverse to Defendant BFL.

  The purpose of this letter is to place Defendant BFL on notice of its duty to preserve potential evidence, and information likely to lead to admissible evidence, in this case. On behalf of the Plaintiff Class, Plaintiffs demand that Defendant BFL take immediate steps to preserve all electronic data, documents, and media in its possession or control, including but not limited to immediate suspension of all routine purging of all said data and the media on which said data is stored. Please note that paper printouts of text or other data existing on electronic files or media are no substitute for the electronic files themselves and do not relieve Defendant BFL of its obligation to preserve the electronic data and files and the media on which they are stored. Please note that the rules of law prohibiting the destruction or spoliation of evidence and providing for the imposition of sanctions for the negligent or willful destruction or spoliation of evidence, apply to electronic information with the same force as they apply to other kinds of evidence.

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Friday, April 4, 2014
Page 2

      As part of our discovery efforts in this matter, Plaintiffs will be serving discovery requests. As you know pursuant to Rule 26(d), such discovery may not be sought until the parties have conferred as required by Rule 26(f). However Defendant BFL is still under a duty not to destroy, conceal, or alter any potentially relevant evidence in this matter. This includes, but is not limited to, any web pages, previous versions of web pages, electronic mail, paper or electronic files and other data generated by, or stored on, the Defendant BFL's computers, servers, and storage media (*e.g.*, hard disks, memory, jump drives, external disks, backup tapes), or any other electronic data under its control. The relevant evidence, data, and information may include, but is not limited to:

- Records identifying members of the Plaintiff Class, and their purchases or payments;
- Records of any purported "terms and conditions" of all purchases or payments made by the Plaintiff Class;
- all correspondence or communication with members of the Plaintiff Class;
- the contents of *www.butterflylabs.com*;
- the contents of *products.butterflylabs.com*;
- the contents of *forums.butterflylabs.com*;
- all electronic data in possession of Google, Inc. and under the control of Defendant BFL;
- all electronic data in possession of CloudFlare, Inc. and under the control of Defendant BFL;
- all electronic data in possession of SendGrid, Inc. and under the control of Defendant BFL;
- all electronic data in possession of BitPay, Inc. and under the control of Defendant BFL;
- all electronic data in possession of Hivelocity Ventures Corporation and under the control of Defendant BFL;
- all electronic data in possession of Hetzner Online AG and under the control of Defendant BFL;
- all electronic data in possession of Staminus, Inc. and under the control of Defendant BFL;
- all electronic data in possession of Joe's Datacenter, LLC and under the control of Defendant BFL;

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Friday, April 4, 2014
Page 3

- all records of Eclipse Mining Consortium;
- Bank, financial records, or other records reflecting payments by the Plaintiff Class to BFL, whether by fiat currency or Bitcoin;
- Bank, financial records, or other records reflecting the use and deposition of money or Bitcoin received from customers;
- all policies, manuals, or procedures concerning customer orders, shipping, and customer refunds;
- Inventory and supply records for parts or materials;
- Correspondence with any component manufacturer or supplier;
- Records of purchases or orders from component manufacturers or suppliers;
- Records of the number of mining units available for shipping, or in the process of being manufactured during any time Defendant BFL accepted payments from customers;
- Records, including manifests, bills of lading, or invoices, concerning the shipment of Bitcoin mining hardware to customers;
- Records showing the wait list or "queue" during any time Defendant BFL accepted payments from customers; and
- Records of any mining, purchase, or sale of bitcoins by Defendant BFL.

In order to avoid spoliation, Defendant BFL will need to provide the data requested on the original media and in the original form it exists. Accordingly, we request that you hold such media inviolate and not reuse it in any way. Electronic documents, and the storage media on which they reside, contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media. We also will seek paper printouts of those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, notations, marginalia, drawings, annotations, highlighting and redactions), along with any paper documents for which no corresponding electronic files exist.

Our discovery requests will ask for certain data on the hard disks, electronic storage and backup media used in Defendant BFL's computers and servers or computers and servers under its control, including but not limited digital recordings or any other electronic files, some of which are not readily available to an ordinary computer user,

James M. Humphrey, Esq.
Michael S. Foster, Esq.
Friday, April 4, 2014
Page 4


such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is truly erased is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing. Defendant BFL must suspend all programs and applications that erase electronic data, including auto-scheduled maintenance or "cleanup" processes and, to ensure that no electronic data is accidently lost, Defendant BFL must immediately make complete copies of the applicable computer and server hard drives and memory.

      Thank you for your prompt attention to this matter. Should you have any questions or concerns, please do not hesitate to contact me.

                            Very truly yours,

                            Noah K. Wood
                            Attorney at Law


NKW:tr