IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER, et al., | ) |
| | ) |
|       Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 14-CV-2159-KHV-JPO |
| | ) |
| BF LABS INC., | ) |
| | ) |
|       Defendant. | ) |

### DECLARATION OF MICHAEL S. FOSTER

I, Michael S. Foster, hereby declare and state as follows:

1. I am an associate at Polsinelli PC and one of the attorneys representing BF Labs Inc. in this action.

2. On April 4, 2014, the Wood Law Firm sent a letter and notice to preserve documents to Polsinelli, informing BF Labs that it was under a duty not to destroy, conceal, or alter potential relevant evidence.

3. Thereafter, Polsinelli provided BF Labs an attorney-client privileged preservation notice which was signed by ten different custodians.

4. From June to August 2014, I conducted numerous and extensive attorney-client privileged custodian interviews.

5. During the Court's first scheduling conference on June 25, 2014, after the Court inquired about BF Labs' net worth, I recollect that Attorney James Humphrey told the Court that BF Labs was worth somewhere between $10 to $20 million dollars but that he was not sure. On that day, the price of one bitcoin was $562.13.

6. The day after receiving Plaintiffs' first interrogatories and first request for production, Polsinelli sent Plaintiffs' discovery requests to BF Labs.

7. On August 20, 2014, Polsinelli produced its bates labeled insurance policy to Plaintiffs' counsel.

8. On August 20, 2014, Bruce Bourne, a consultant and acting Chief Financial Officer to BF Labs, in a privileged communication to Polsinelli discussed the difficulties in answering the discovery requests and discussed pulling an employee off of work to begin working on the responses as a full time project manager.

9. On August 26, 2014, BF Labs' counsel participated in an attorney-client privileged and work-product phone call with Modus, a provider of eDiscovery services, about collecting BF Labs' data for the two lawsuits filed against the company.

10. On August 28, 2014, BF Labs signed a non-disclosure agreement (NDA) with Modus. The next day, Modus signed the NDA.

11. On or around August 29, 2014, BF Labs and Modus both signed the letter of engagement.

12. On September 2 and 3, 2014, BF Labs' counsel and a Modus' employee spend two full days at BF Labs' headquarters, imaging key custodians' hard drives, capturing emails, etc. The entire size of Modus' data collection was 1.6 TB.

13. On September 4, 2014, Plaintiffs filed a notice of intent to subpoena documents to Michael Marquardt d/b/a bitcointalk.org for BF Labs' employees' internet postings made in the forum. BF Labs did not object.

14. On September 8 and 9, 2014, multiple attorney-client privileged email correspondence takes place between Polsinelli and Modus about continuing to collect data.

15. On September 15, 2014, internal attorney-client privileged Polsinelli emails are exchanged about potentially using Counsel on Call to review and mark documents. Polsinelli determined it needs to see the amount of data that Modus collects before it makes a decision.

16. On September 18, 2014, I sent The Wood Law Firm an email confirming the due date of discovery is September 22, 2014 because the discovery requests state the answers are due on September 19, 2014.

17. On September 19, 2014, I spent the entire morning working on discovery responses. I planned to continue to work with clients that day, determine where they were on the responses, and then potentially ask for an extension of two to three weeks to respond to discovery if it could not be finalized on Monday.

18. On September 19, 2014, the FTC, along with its investigator, attorneys, federal Marshalls, and the court-appointed Temporary Receiver and his counsel raided BF Labs' building and the employees were forced to leave. I believe that James Humphrey learned of this development around 11:00 a.m. and I along with Attorney Humphrey drove to BF Labs' headquarters and met with the Temporary Receiver, his counsel, and the FTC.

19. On September 22, 2014, BF Labs' answers and responses to Plaintiffs' interrogatories and requests were originally due to Plaintiffs.

20. On September 29, 2014, the Preliminary Injunction Hearing was scheduled to occur in the *FTC v. BF Labs Inc., et al.*, matter. The parties thereafter agreed to a stipulated interim order delaying the preliminary injunction hearing until November 2015.

21. On January 14, 2014, Polsinelli communicated with Modus to discuss the outstanding invoices for September to December 2014 and processing, collection, and fees moving forward.

22. On February 6, 2015, Polsinelli discovered that Modus, by mistake, failed to collect a few email addresses from its ESI collection. Modus then collected the data from those missing email addresses from BF Labs.

23. On February 10, 2015, I sent Plaintiffs' counsel an email letting him know that BF Labs and its counsel are "working on getting you discovery responses to your interrogatories now. Some are complex and require a lot of work from the client. Still working hard and even over the weekend with Modus to get everything that was collected processed. I should have responses to you soon. I will be back in touch (and be on the phone here in 20 minutes) very soon."

24. On February 17, 2015, Plaintiffs' counsel sent a golden rule letter to BF Labs requesting BF Labs to provide discovery responses no later than February 20, 2015.

25. On February 20, 2015, Tammy Reed with Wood Law Firm sends an email to this Court without cc'ing BF Labs' counsel or even asking whether BF Labs was providing discovery responses that day, stating that "[w]e are having a discovery issue and would like to know if Judge O'Hara might be available this afternoon for a brief phone conference with the parties. You can reach me by phone at (816) 651-2400. Thanks. Tammy" Based on a response back from Megan J. Miller, who cc'ed all counsel of record, I immediately called Plaintiffs' counsel asking what the dispute was about and informing him that BF Labs was currently finalizing discovery responses that day pursuant to the Plaintiffs' February 17, 2015 letter.

26. At 10:32 p.m. on February 20, 2015, BF Labs' served discovery responses by e-mail to Plaintiffs' counsel. I noted in my email that if Plaintiffs had any questions or need any information before the mediation February 26 to let me know. BF Labs' responses to Plaintiffs' requests for production included an answer respecting electronically stored information that

4

states: "in accordance with the ESI protocol, including an agreement on search terms and custodians, BF Labs will conduct a reasonable search for and produce responsive non-privileged documents."

27. On February 23, 2015, I sent to Plaintiffs' counsel the exhibits identified in BF Labs' Answers to Plaintiffs' First Interrogatories. Those exhibits included order dates (including consideration paid) and order status for BF Labs' products, refund requests, and a list of customers who notified BF Labs the equipment they received was defective, not working properly, or not working according to specification.

28. On February 26, 2015, a mediation between the parties took place at The McLeod Law Firm. The mediation lasted 9.0 hours and the case did not settle.

29. On March 3, 2015, just days after a very long, though unsuccessful mediation, Plaintiffs' counsel sent a golden rule letter stating that "we believe the responses provided are insufficient, incomplete, and do not comply with Rule 26(g)(1)."

30. On March 4, 2015, Plaintiffs filed a notice of intent to subpoena documents to Michael Marquardt d/b/a bitcointalk.org for BF Labs' employees' internet postings made in the forum. BF Labs did not object.

31. On March 13, 2015, Plaintiffs' counsel and BF Labs' counsel meet and confer for three and a half hours over the telephone about Plaintiffs' golden rule letter and specific issues with BF Labs' discovery responses. It is my understanding that neither party reached out to the other about agreed upon search terms or ESI production until this date.

32. On March 17, 2015, James Humphrey, BF Labs' counsel at the time, sent a letter to Plaintiffs' counsel with the proposed ESI search terms and production protocols based on the requests for production. Included as exhibits are the names included in the electronic privileged

terms search, the ten custodians, and the search terms proposed as a reasonable and proportional approach to respond to Plaintiffs' requests for production. Based on the data collection set of emails for the ten custodians identified, the set contained approximately 218,000 documents. Using the search terms and excluding the privileged terms resulted in "79,251 hits." BF Labs' counsel noted that a review of that amount of documents is not realistic, proportional, or reasonable and BF Labs was "therefore looking for practical alternatives to reduce the size of the review and production set."

33.    On March 20, 2015, at 12:26 p.m., I sent a letter to Plaintiffs' counsel addressing the issues that Plaintiffs have with each of BF Labs' Interrogatory Answers and explaining BF Labs' position. At 12:31 p.m. I sent Plaintiffs' counsel the native files that Plaintiffs requested. At 1:28 p.m., BF Labs sends Plaintiffs' counsel supplemental interrogatory answers with three additional exhibits based on Plaintiffs' concerns with BF Labs' initial answers. At 6:30 p.m., Plaintiffs file their Motion to Compel while noting that they "have not had sufficient time to review these supplemental answers but will notify the court and agree to withdraw any issues...."

34.    On March 23, 2015, two companies submitted bids to review approximately 90,000 documents. One company submitted a bid for $79,415, the other company submitted a bid for $135,000 to $165,000.

35.    On March 26, 2015, I sent Plaintiffs' counsel an email asking whether, before BF Labs drafts a response to Plaintiffs' Motion to Compel, the parties can discuss what has been mooted by BF Labs' supplemental answers and ESI Agreement. The parties later discuss ESI and discovery issues on the telephone. At 5:08 p.m., I sent Plaintiffs' counsel an email in

preparation for a phone call set for the next day about what BF Labs had collected for ESI purposes.

36. On March 27, 2015, Polsinelli and Modus had a conference call, finalizing processing and production options with the associated costs.

37. On March 27, 2015, Plaintiffs' counsel and I conferred for a few hours about remaining discovery issues and what the Plaintiffs believed was still is lacking from the interrogatory responses. We came to informal agreement that BF Labs would produce its entire hard drive of data to Plaintiffs in lieu of the agreed upon ESI protocol so that BF Labs will not have to incur the substantial expense of hiring external reviewers (as well as its belief that reviewing 218,000 documents was not reasonable or proportional) for reviewing and marking documents.

38. From December 2014 through April 2015, BF Labs was also served with and responded to discovery requests in the Meissner and FTC cases. Because of the significant costs involved in reviewing and marking ESI, BF Labs and the FTC reached a similar agreement to the agreement reached with the Plaintiffs that BF Labs produce its entire hard drive in lieu of running search terms and marking documents as confidential.

39. On April 1, 2015, BF Labs served its second supplemental answers and objections to Plaintiffs First Interrogatories. BF Labs hand delivered two exhibits to these interrogatories to the Wood Law Firm and also delivered to Plaintiffs additional documents that BF Labs was producing. These documents were bates labeled BFLABS-KA 00002731 to 00003289.

40. On April 1, 2015, I requested a telephone call with Plaintiffs' counsel to discuss the second supplemental responses and whether it mooted all or nearly all complaints in the motion to compel. I also asked for an additional week to respond to the motion to compel to try

to work through any remaining issues. Plaintiffs' counsel did not oppose giving BF Labs another week to work out their differences before BF Labs responded to the motion to compel.

41. On April 2, 2015, I reached out to Plaintiffs' counsel again to discuss the supplemental discovery and see what remaining issues exist. Plaintiffs' counsel responded by stating he was available after April 6, 2015.

42. On April 6, 2015, BF Labs served its responses to Plaintiffs' second requests for production the day they were due as well as produced via hand delivery another production, bates labeled BFLABS-KA 00003290 to 00025988.

43. On April 9, 2015, counsel for both parties met and conferred about the remaining discovery issues. It was determined that BF Labs would have to brief the response to the motion to compel because the parties could not reach an agreement. Plaintiffs' counsel gave BF Labs until April 17, 2015 to file a response to the Motion to Compel. BF Labs then filed an unopposed motion for extension of time to respond to the Motion to Compel to April 17, 2015. This Court later granted that motion.

44. On April 10, 2015, Modus sent a hard drive to Polsinelli with a tracking number.

45. On April 13, 2015, BF Labs hand delivered the hard drive of ESI to Plaintiffs.

46. After delivering the hard drive, Plaintiffs' counsel sent an email inquiring about the search criteria that Modus used to remove privilege data. I immediately inquired about the search criteria that Modus used to remove privileged documents, only to find out that it ran searches using the names of BF Labs' attorneys and law firms not only in the to:, from:, cc:, and bcc: fields but also in the body. It was explained to me by Modus that by doing it the way Plaintiffs' counsel suggested, it would catch email chains from counsel that would be privileged that may not have been picked up using only the fields below. I then informed Plaintiffs' counsel

8

of this development and informed him that BF Labs was in the process of creating a privilege log and would then produce all non-privileged documents once that review was finalized.

47. While I believed Modus was going to implement privilege filters in the manner Plaintiffs' counsel suggested, I see no harm in the way the privilege filter was done by Modus because a clawback agreement was in place, BF Labs was preparing a privilege log, and BF Labs would produce non-privileged documents after reviewing the documents picked up by the privileged term search.

48. On April 14, 2015, Michael Marquardt, d/b/a bitcointalk.org, responded to Plaintiffs' March 4, 2015 subpoena in this action and produces BF Labs' employees' internet postings made in the forum, including private messages made from those employees. I had multiple phone calls with counsel for Michael Marquardt, d/b/a bitcointalk.org and never objected to them producing any documents, including private messages.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of April, 2015.

_____
Michael S. Foster