# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER, and ) <br> DYLAN SYMINGTON, ) <br> on behalf of themselves and all those ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BF LABS INC., a Wyoming corporation, ) <br> doing business as BUTTERFLY LABS, ) <br> ) <br> Defendant. ) | Case No. 14-CV-2159-KHV-JPO |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL

Noah K. Wood     Bar #23238
noah@woodlaw.com
Ari N. Rodopoulos     Bar #26585
ari@woodlaw.com
WOOD LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

Index of Exhibits .................................................................................................................... iii

I.     INTRODUCTION ..........................................................................................................1

II.    APPLICABLE LAW .....................................................................................................2

III.   ARGUMENT ..................................................................................................................3

        A.    Interrogatories to be answered and/or supplemented ..................................3

             1.     IROG Nos. 5-7 ...................................................................................3

             2.     IROG Nos. 8-9 ...................................................................................5

             3.     IROG Nos. 14-15 ...............................................................................8

             4.     IROG No. 19 ....................................................................................10

        B.    Requests for production of documents to be responded to and/or supplemented .....10

             1.     General issues applicable to all RFPD's ........................................10

             2.     RFPD Nos. 5 and 14 ........................................................................12

             3.     RFPD No. 20 ...................................................................................13

IV.   Conclusion ...................................................................................................................15

Certificate of Service ...........................................................................................................15

# **TABLE OF AUTHORITIES**

**RULES**

Fed. R. Civ. P. 26 ...........................................................................................................................2, 11, 13, 14

## **INDEX OF EXHIBITS**

1.     3/20/2015 Letter from M. Foster to A. Rodopoulos............................................ 1, 3

## I.     INTRODUCTION

In its Opposition, Defendant BF Labs, Inc. ("BFL") argues it was "inappropriate" for Plaintiffs to file a motion to compel on March 20, 2015 even though:

- as of March 20, 2015, BFL had produced zero documents (ESI or tangible) in response to requests for production; and

- on March 20, 2015, BFL advised that:[1]

    o   Plaintiffs' requests are "unreasonable" and "BF Labs objects";

    o   "BF Labs stands by its objections and answer and acknowledges the parties are unable to come to an agreement";

    o   "BF Labs is standing by its objection";

    o   "BF Labs refuses to provide this information";

    o   BFL objects to providing "the date each refund was requested . . . [because] it would result in an untold number of hours to try to identify the specific information";

    o   "BF Labs is not willing to provide IPs and account names";

    o   "BF Labs stands by its objections";

    o   "BF Labs is unwilling to incur this undue expense"; and

    o   BFL continued to refuse to produce the documents it disclosed in its June 18, 2014 Rule 26 initial disclosures unless and until "we are able to agree on search terms and other required protocol."

Because BFL, on March 20, 2015, advised it was largely standing on its objections and refusing to search for or produce known responsive documents, including BFL's initial disclosure documents, BFL cannot genuinely argue it was inappropriate for Plaintiffs to file a Motion to Compel on March 20, 2015.

In its Opposition, BFL provides dozens of statements of fact in support of its argument that BFL did not engage in spoliation. Plaintiffs, however, are not seeking

---

[1]     *See generally*, 3/20/2015 Letter from M. Foster to A. Rodopoulos, **Exhibit 1**.

Alexander, et al. v. BF Labs Inc.                                                                                                         1
*Plaintiffs' Reply Memorandum in Support of Motion to Compel*

spoliation sanctions at this time. Although Plaintiffs reserve the right to seek such sanctions as the case progresses and as discovery continues, at this time Plaintiffs are simply seeking to obtain the information and documents requested in written discovery to BFL.

BFL also argues the Motion to Compel is moot because BFL has made multiple supplemental responses and produced hundreds of thousands of documents since Plaintiffs' Motion to Compel was filed. Although BFL's reasonableness and cooperation in discovery dramatically improved after Plaintiffs' golden rule letters were sent and after Plaintiffs' Motion to Compel was filed, there are several issues that still remain and require this Court's involvement.

## II. APPLICABLE LAW

Rule 26 provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who may know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* If a party withholds electronically stored information, that party "must show that the information is not reasonably accessible because of undue burden or cost." *Id.* at Rule 26(b)(2)(B). When a party withholds information on the basis of privilege, the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." *Id.* at Rule 26(b)(5)(A).

### III. ARGUMENT

#### A. Interrogatories to be answered and/or supplemented

1. IROG Nos. 5-7.

Although BFL's counsel has unequivocally stated "what Plaintiffs are seeking does not exist,"[2] BFL's interrogatory answers provided under oath remain vague and ambiguous. In its initial, supplemental, and second supplemental answers, BFL essentially states it did not track the information requested *in the precise manner* it was requested. Plaintiffs did not request the information only if it was tracked in a particular manner; rather, Plaintiffs requested the information regardless of the manner it was tracked. The language used in BFL's answer caused Plaintiffs to wonder and inquire: did BFL track the requested information in any manner and are there any BFL employees or other persons that have knowledge responsive to Irog Nos. 5-7 even if BFL does not have any responsive records? If the requested information does not exist at all, as advised by BFL's counsel, BFL should be ordered state this in an interrogatory answer under oath.

Further, other than identifying Marc Goodpasture, BFL's counsel would not confirm or deny whether there are other BFL employees or other persons that have responsive knowledge. If there are other BFL employees or other persons that have responsive information, BFL should be ordered to provide such knowledge in an interrogatory answer under oath.

Again, BFL's interrogatory answers provided under oath are vague and ambiguous. For example, BFL states that it is "not aware of any witness or witnesses with knowledge of *the specific information as to precise dates and numbers of units on*

---

[2] 3/20/2015 Letter from M. Foster to A. Rodopoulos, p. 2, **Exhibit 1**.

*each date.*" (Doc. 84-4, Irog. Answer No. 7) (emphasis added). The language used in BFL's answers caused Plaintiffs to wonder and inquire: is BFL aware of any witnesses with relevant knowledge of the requested information even if their knowledge level is less than omniscient? BFL's counsel would not confirm or deny whether there are other BFL employees or other persons that have responsive knowledge couched in terms of reasonable estimates or averages rather than precise dates and precise numbers of units.

BFL appears to be reasserting an argument that it raised during the first meet and confer phone call, *i.e.*, that the interrogatories as technically worded only require exact figures and dates, but do not require known reasonable estimates. During the first meet and confer phone call, BFL's counsel argued it would be required to provide an answer only if BFL knew for sure, for example, that exactly 97 units were ordered, manufactured, or shipped between June 5, 2012 and July 17, 2012. If, however, BFL merely knew that approximately 100 units were ordered, manufactured, or shipped between June 2012 and July 2012, BFL believes it is not required to provide this information at all.

BFL is still characterizing Irog. Nos. 5-7 in a way that parses words and evades the heart of the interrogatories. Interestingly, BFL's counsel is unwilling to stipulate that BFL, at trial, will not introduce any documents or call any witnesses to provide estimates, averages, *etc.* of the information requested in Irog. Nos. 5-7 beyond the information provided in BFL's interrogatory answers. If BFL has knowledge of estimates, averages, *etc.* of the information requested in Irog. Nos. 5-7, BFL should be ordered to provide such information in an interrogatory answer under oath. Otherwise, BFL should be precluded from introducing any documents or calling any witness at trial to provide additional information requested in Irog. Nos. 5-7 beyond the information

provided in BFL's interrogatory answers.

    2.    IROG Nos. 8-9.

In its initial answer to Irog. No. 8, BFL did not identify the date or content of any public representation regarding shipping dates or revised shipping dates. Further, BFL did not provide the substance and content of the information relied on and BFL did not provide the factual basis for any specific representation made on any specific date. BFL did not even provide the content of representations made in the web page(s) that any product in particular was available for purchase. Instead, for all products generally, BFL answered that it "considered the production and assembly processes, information it received from suppliers and component manufacturers, communications with crucial vendors, contracts it had for ASIC chip delivery, among other things." (Doc. 83-2, Irog. Answer No. 8). BFL might as well have answered that, in making various shipping representations on various dates with respect to various products, it relied on various information from various sources and various communications with various people.

In its supplemental answer, BFL directed Plaintiffs to "three blogs that may contain this information[.]" (Doc. 83-3, Irog. Answer No. 8). These blogs consist of BFL's after-the-fact attempt to explain and/or to apologize for shipping delays and do not provide any information as to the factual basis relied upon by BFL *before* it made a shipping representation on any particular date with respect to any particular product. BFL did not provide the content of representations made in the web page(s) that any product in particular was available for purchase.

In its second supplemental answer, BFL cut and paste some of the blog entries into its interrogatory answer and, for the first time, BFL identified a few shipping representations made in product web pages. (Doc. 83-4, Irog. Answer No. 8). For

example, BFL states "[i]n late February 2013, a BitForce SC product page stated that: BitForce SC (ASIC) products are in final stage development with initial shipping scheduled for the last half of February 2013." (*Id.* at p. 7).

BFL supplemental and second supplemental answers, however, completely ignore BFL's initial explanation, *i.e.*, that BFL "considered the production and assembly processes, information it received from suppliers and component manufacturers, communications with crucial vendors, contracts it had for ASIC chip delivery, among other things." (Doc. 83-2, Irog. Answer No. 8). BFL should be ordered to provide a meaningful answer.

If, for example, BFL made a shipping representation on a particular date because of: (a) something occurring at that time in BFL's production or assembly process; (b) information received at the time from suppliers or component manufacturers; (c) communications at the time with crucial vendors; and/or (d) contracts it had at the time for ASIC chip delivery, as explained by BFL in its initial interrogatory answers, then BFL should be ordered to explain what was going on in BFL's production or assembly process at the time, what information did BFL receive from suppliers or component manufactures at the time (and when and from whom), what communications did BFL have with crucial vendors at the time (and when and from whom), and what contracts did BFL have at the time regarding ASIC chip delivery (and when and from whom).

Further, if BFL revised a shipping representation because of: (a) something occurring at that time in BFL's production or assembly process; (b) information received at the time from suppliers or component manufacturers; (c) communications at the time with crucial vendors; and/or (d) contracts it had at the time for ASIC chip delivery, as

explained by BFL in its initial interrogatory answers, then BFL should be ordered to explain what was going on in BFL's production or assembly process at the time, what information did BFL receive from suppliers or component manufactures at the time (and when and from whom), what communications did BFL have with crucial vendors at the time (and when and from whom), and what contracts did BFL have at the time regarding ASIC chip delivery (and when and from whom).

In its initial and supplemental answers to Irog. No. 9, BFL stated "it does not have the records to be able to provide [the requested] information to Plaintiffs." (Doc. 83-2, Irog. Answer No. 9; Doc. 83-3, Irog. Answer No. 9). These answers were objectively false and were not based on a reasonable inquiry into the matter. In Plaintiff's Memorandum in Support of their Motion to Compel, Plaintiffs' counsel attached a sample email that BFL would send to the customer when a product was shipped. (Doc. 73-18). In meet and confer correspondence, BFL's counsel did not deny that such emails were sent and, in BFL's briefing, BFL's counsel does not deny that such emails were sent. BFL also does not deny it possesses all such shipping emails. In fact, the parties agreed that Plaintiffs would perform the calculations requested in Irog. No. 9 if BFL would agree to produce the shipping emails. BFL claims it has produced all such emails on a hard drive given to Plaintiffs on April 13, 2015.

Contrary to BFL's initial and supplemental interrogatory answers, BFL did possess records that would enable it to provide the requested information in Irog. No. 9. As such, BFL should be ordered to explain the basis of its answer provided under oath stating "it does not have the records to be able to provide [the requested] information to Plaintiffs." (Doc. 83-2, Irog. Answer No. 9; Doc. 83-3, Irog. Answer No. 9).

3. IROG Nos. 14-15.

In meet and confer discussions, Plaintiffs' counsel agreed to limit Irog. No. 14 to bitcoin mining accounts or operations operated, owned, utilized, or otherwise controlled by BFL and/or Eclipse Mining Consortium, because Eclipse Mining Consortium became part of BFL on October 26, 2012, by stating the name and number of the account (*i.e.*, wallet address or account number with third-party mining company), the location of the operation, the amount and dates bitcoins were mined to each wallet address or at each location, and the product name, version, and/or serial number of each piece of mining equipment used to mine bitcoins to each wallet address or at each location.

With respect to Eclipse Mining Consortium, BFL states "EMC provides pool mining services for thousands of pool members, who own their own equipment and the bitcoins mined[.]" (Doc. 83-4, Irog. Answer No. 14). BFL objects to "providing records on the mining results of machines not owned by the company, and does not maintain records of the serial number or type of customer equipment connected to the pool." (*Id.*). BFL should be ordered to provide the wallet addresses and number of bitcoins mined on machines owned by BFL connected to the pool and the serial number or type of equipment owned by BFL connected to the pool. BFL should also be ordered to provide the number of bitcoins it received as its share for operating the mining pool.

In meet and confer discussions, Plaintiffs' counsel agreed to limit Irog. No. 15 (with respect to BFL's agents or employees) to the personal wallet addresses of agents or employees to which BFL transferred bitcoins. BFL's counsel does not deny BFL possesses such information and BFL's counsel does not deny BFL transferred bitcoins from its bitcoin wallets to the personal bitcoin wallets of its agents and employees.

BFL argues "Plaintiffs' request is analogous to suing a bank and demanding its

employees' personal bank account information." (Doc. 83, p. 25). BFL's analogy, however, is intentionally over simplified. A better analogy would be suing a bank: (a) who obtained customers' property by misrepresenting the services the bank would perform and/or when the services would be performed; (b) who concealed from the customers the bank's intention to keep the customers' property without performing the services and with no intention of returning the property to the customers upon demand; (c) who failed to disclose to the customers that the president and CEO of the bank is a convicted felon with a history of scamming consumers out of property and money; (d) who used and/or converted the customers' property into cash to purchase homes, to purchase cars, and to provide loans for the bank's owners and employees; (e) who transferred the customers' property to the personal and private addresses of the bank's owners and employees; (f) in a lawsuit that seeks a constructive trust in order to trace and to recover the property transferred to the personal and private addresses of the bank's owners and employees; and (g) seeking the personal and private addresses of the bank's owners and employees in discovery.

BFL also argues Plaintiffs can already see all bitcoin transactions made by BFL because "BF Labs has provided its *corporate* bitcoin wallet addresses to Plaintiffs." (Doc. 83, p. 25) (emphasis added). BFL's "corporate" qualifier raises the issue of whether BFL has provided all bitcoin wallet address it used or merely the wallet addresses BFL deems "corporate" wallet addresses. BFL should be ordered to state under oath whether it has provided all wallet address it used in conducting its affairs (whether "corporate" wallet addresses or otherwise) and, if not, to identify all such wallet addresses.

Regardless, Plaintiffs should not have to bear the burden of searching hundreds

of transaction in the bitcoin public ledger for BFL's answer to an interrogatory when BFL can simply identify the bitcoin transactions it made to its agents and employees. Further, bitcoin transactions in the public ledger are anonymous—*i.e.*, as such, without knowing the identity of the person controlling the wallet address to which BFL transferred bitcoins, Plaintiffs have no way of determining which transactions reflect transfers of bitcoin from BFL to its agents or employees. BFL should be ordered to provide the wallet addresses of agents or employees to which BFL transferred bitcoins.

4. IROG No. 19.

In its second supplemental answer, BFL states "Exhibit K is also attached that BF Lab's customer service group maintains, that also contains refund data that includes the date a valid refund request was received." (Doc. 83, p. 27). BFL's initial and supplemental answers, however, merely referred to an "Exhibit E," which does not contain the date a valid refund request was received. Because BFL admits Exhibit K was maintained by BFL's customer service group, BFL should be ordered to explain its failure to identify and/or to provide Exhibit K until its second supplemental answers (served on April 1, 2015).

**B. Requests for production of documents to be responded to and/or supplemented**

1. General issues applicable to all RFPD's

BFL acknowledges that a "dispute exists about the way BF Labs and Modus ran the privilege filters before producing the ESI hard drive to the Plaintiffs." (Doc. 83, p. 29). The dispute is simple: Plaintiffs confirmed in writing the assented terms regarding the production of ESI from the Modus database, BFL unilaterally violated such terms, and now BFL seeks to force undesirable and non-assented terms on Plaintiffs and to

retain the benefit of assented terms desirable to BFL.

BFL wished to avoid the time and expense of reviewing all ESI in the Modus database for privilege and for confidentiality. To be sure, the burden of asserting privilege and marking documents as confidential was BFL's burden alone. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also* Doc. 13, p. 3 ("The producing party may designate documents as containing Confidential Information[.]"). Citing the need to agree upon ESI search terms, BFL refused to produce ESI in locations known to have responsive information in order to use such withheld ESI as a bargaining chip to negotiate and to reduce its burden of reviewing for privilege and confidentiality. This was an improper discovery tactic. (*See* Doc. 12, p. 3, para. iv ("Nothing in this agreement, including any provisions related to the use or non-use of Search Terms or Search Syntax, shall excuse a party from searching for and producing documents from locations (including electronic files) it knows or reasonably believes to have responsive information.")).

In order to reach a compromise with BFL, Plaintiffs agreed that BFL could designate the entire Modus database as confidential without having to review the database and without having to individually designate ESI documents as confidential. Plaintiffs agreed that BFL could filter the Modus database for privilege based on specific search terms without having to review the database for privilege one document at a time and without having to provide a privilege log before or at the time the hard drive is produced. Plaintiffs also agreed to pay up to $2,500 for the ESI on the Modus database to be copied onto a hard drive and delivered to Plaintiffs. The specific terms agreed to by Plaintiffs were confirmed by email on March 30, 2015. (Doc. 83-7, pp. 3-4).

After receiving the March 30, 2015 email from Plaintiffs' counsel, BFL's counsel – without any notice or discussion with Plaintiffs' counsel – went ahead and ran search

terms that BFL's counsel knew were objectionable and not agreed to by Plaintiffs. Had Plaintiffs known that BFL was going to filter and produce the Modus database using BFL's unilateral search terms, Plaintiffs would not have agreed that (a) BFL could designate the entire Modus database as confidential without having to review the database and without having to individually designate ESI documents; (b) BFL could filter the Modus database for privilege based on specific search terms without having to review the database for privilege one document at a time and without having to provide a privilege log before or at the time the hard drive is produced; or (c) Plaintiffs will pay up to $2,500 for the hard drive.

Because BFL did not honor the terms agreed to by Plaintiffs, BFL should be ordered to pay for the entire cost of the hard drive provided to Plaintiffs, to individually designate as confidential the documents on the hard drive it believes are subject to the protective order within 30 days, and to provide a complete privilege log for all documents withheld from the hard drive within 30 days, including the number, nature, format, and data size of the ESI documents withheld so that Plaintiffs may compare the withheld ESI and data size against the total ESI and data size in the Modus hard drive.

Further, the parties' agreement (not honored by BFL) only applied to the ESI on the Modus database. The agreement did not relieve BFL of its obligation to search for and to produce responsive tangible documents or other ESI not included in the Modus database. BFL's counsel would not confirm or deny whether there are any responsive tangible documents or other ESI and/or whether BFL withheld any responsive tangible documents or other ESI on the basis of privilege. For each request for production, BFL should be required to state under oath whether it has any responsive tangible documents or other ESI and, if so, to produce such documents and ESI.

2. RFPD Nos. 5 and 14.

Request Nos. 5 and 14 seek "all versions of Defendant's terms and conditions relating or referring to selling, shipping, or providing refunds for Defendant's lines of merchandise" and "[a]n electronic copy of the Defendant's websites including any previous versions." (Doc. 83-1, RFPD Nos. 5, 14). Plaintiffs' counsel's understanding was that such ESI documents should have been included on the hard drive already received, but BFL's counsel has advised otherwise. With respect to Request No. 14, BFL's counsel has advised there is an additional expense involved in collecting and providing this ESI to Plaintiffs. (Doc. 83, p. 35). BFL has offered to produce this ESI if Plaintiffs are willing to pay for it. (*Id.*).

BFL's approach, however, is contrary to the express language of Rule 26. *See* Fed. R. Civ. P. 26(b)(2)(B) (if a party withholds electronically stored information, that party "must show that the information is not reasonably accessible because of undue burden or cost."). Here, BFL has offered no evidence or explanation showing that it was too difficult or too expensive to produce an electronic copy of its current website and prior versions thereof. As such, BFL's failure to produce such ESI does not comply with Rule 26(b)(2)(B). BFL should be ordered to produce the ESI requested in RFPD Nos. 5 and 14 at its own expense or, alternatively, BFL should be ordered to explain the undue costs involved so that Plaintiffs may have sufficient information to decide whether to pay for such costs.

3. RFPD No. 20.

In Plaintiffs' RFPD No. 20, Plaintiffs' requested BFL to produce the documents, electronically stored information, and other tangible things designated by BFL in its initial disclosures. BFL objected to producing the documents it designated in its initial

disclosures and stated it will conduct a reasonable search and produce responsive non-privileged documents after reaching an agreement with Plaintiffs on search terms and custodians. (Doc. 83-1, RFPD. No. 20).

In its Opposition, BFL states it is "currently identifying and producing documents (including its entire hard drive) to Plaintiffs." (Doc. 83, p. 30). This is not an acceptable excuse. *See* Fed. R. Civ. P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its initial disclosures because it has not fully investigated the case[.]"). In its Opposition, BFL also states "[a]ll of BF Labs' documents designated in its initial disclosures will be produced through the production of the ESI hard drive to Plaintiffs." (Doc. 83, p. 30). This is confusing to Plaintiffs because BFL produced the hard drive on April 13, 2015 and filed its Opposition on April 17, 2015.

Even if BFL already produced its initial disclosure documents on the April 13, 2015 hard drive, such documents are buried within hundreds of thousands of other documents and Plaintiffs have no way of determining which documents are initial disclosure documents versus documents responsive to discovery requests. BFL should be ordered to produce the documents it disclosed in its initial disclosures within 30 days or, alternatively, BFL should be ordered to identify the documents it produced on the hard drive as initial disclosure documents.

## IV. CONCLUSION

**WHEREFORE**, Plaintiffs Kyle Alexander and Dylan Symington, by and through their attorneys of record, respectfully request this Court compel Defendant BF Labs Inc. to provide complete responses to Plaintiffs' First Interrogatories and First Request for Production of Documents as requested herein.

Date: May 11, 2015

    WOOD LAW FIRM, LLC

By  /s/ Ari N. Rodopoulos
Noah K. Wood              Bar #23238
noah@woodlaw.com
Aristotle N. Rodopoulos   Bar #26585
ari@woodlaw.com
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2015, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.

By  /s/  Ari N. Rodopoulos
*Attorneys for Kyle Alexander and Dylan Symington*