

900 W. 48th Place, Suite 900, Kansas City, MO, 64112 • 816.753.1000

March 20, 2015

Michael S. Foster
(816) 395-0650
(816) 222-0598 Direct Fax
mfoster@polsinelli.com

**Via Email**

Mr. Noah K. Wood, Esq.
Mr. Ari N. Rodopoulos, Esq.
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171

Re: Alexander et al. v. BF Labs Inc., case no. 14-CV-2159; Response to Second Golden Rule Letter

Gentlemen,

Although we wrote to you on March 17, 2015 regarding ESI discovery, this letter is intended to more thoroughly and directly address your March 3, 2015 golden rule letter. We are pleased that we were able to spend almost three and a half hours on the phone with you on Friday of last week in an attempt to address your discovery issues. It bears mentioning, however, that the extreme and unrealistic positions taken in your March 3 letter, reaffirmed during the call last week, make it difficult for us to believe that we could provide any response that would be satisfactory to you. We are nevertheless interested in resolving as many issues as possible and intend to work in good faith toward that end. We would also like to avoid burdening the Court with discovery issues when the parties have yet to confer on ESI issues under the Court's Agreed Order Establishing Protocol for ESI and Paper Documents.

Before we attempt to address each of your concerns, your positions on discovery require me to note that while BF Labs' is required to produce ESI and documents in its possession, custody, and control, it is not obligated to create materials that do not exist. *Didier v. Abbott Laboratories, et al.*, 2014 WL 219851 (D. Kan. Jan. 21, 2014) (Judge O'Hara) ("The court cannot compel a party to produce documents that do not exist or not in that party's possession, custody, or control"). And your preservation letter sent in April 2014 does not somehow change that reality. *Id*. In addition, just because you believe documents should exist on a given issue does not mean that spoliation has occurred. *See Firestone v. Hawker Beechcraft Intern. Service Co.*, 2012 WL 899270 (D. Kan. March 16, 2012) (explaining that "Spoliation is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as

polsinelli.com

Atlanta   Chicago   Dallas   Denver   Kansas City   Los Angeles   New York   Phoenix   San Francisco   St. Louis   Washington, DC   Wilmington
Polsinelli PC, Polsinelli LLP in California

50071573.1

EXHIBIT 1



Mr. Ari N. Rodopoulos
March 20, 2015
Page 2

evidence in pending or reasonably foreseeable litigation.'"). Maybe your expectation that they should exist needs to be revisited (it does). Or maybe you have just asked for the impossible in some of your requests (you have). Finally, your position that you want information on all BF Labs' ESI ever created establishes that you are disregarding the Court's Agreed Order and ignoring the concepts of reasonableness and proportionality in discovery. We now will address each complaint you have with BF Labs' interrogatory answers individually.

### I. Interrogatories

#### a. IROG No. 5

Plaintiffs argue that BF Labs is being evasive and can answer this interrogatory. But as mentioned last Friday, BF Labs does not maintain records regarding the amount of products it manufactured by month. Therefore the information you request does not exist. See answer to IROG No. 6 where BF Labs states "[g]iven the use of the preorder sales model, the vast majority of FPGA and 65 NM products were ordered by customers prior to manufacture and the daily focus was on producing at maximum output and shipping as quickly as possible to fulfill the demand from pre-existing orders." For those same reasons, BF Labs does not maintain data to identify the number of units shipped to consumers by month and year. BF Labs has provided Exhibits A and B which provide order dates and status, but cannot produce documents that do not exist as its obligation is to preserve and produce what exists. We have recently learned that there is a spreadsheet that exists that contains 81 different customers whose order status was excluded from Exhibit B for a few different reasons (*e.g.*, pending acceptance of a different product, attempted to deliver the product but it was returned and BF Labs was unable to contact the customer, a lawsuit was filed, or demand letter sent). We will supplement IROG No. 5 and provide this exhibit in both native and pdf format.

While BF Labs has confirmed that what Plaintiffs are seeking does not exist, as mentioned on the phone on Friday, BF Labs does have a manually created spreadsheet that includes a weekly breakdown of how many 65 NM products were shipped from July 14, 2013 to December 14, 2013 that was used internally for PayPal purposes. Again, there are questions as to whether this document is completely accurate. BF Labs is willing to supplement its interrogatory answer and provide this document to Plaintiffs.

As also mentioned on the phone call, BF Labs is also willing to supplement its interrogatory answer by specifically stating that it may have emails that alerted a specific customer that a product was shipped but BF Labs would have to spend an untold amount of time and incur an unknown expense to gather each of those emails and manually creating a

50071573.1



Mr. Ari N. Rodopoulos
March 20, 2015
Page 3

spreadsheet. This is an unreasonable request and BF Labs objects to gathering those emails to create a list of the number of products shipped to consumers by month and year for you.

### b. IROG No. 6

See answer to IROG No. 5 above.

### c. IROG No. 7

See answer to IROG No. 5 above.

### d. IROG No. 8

BF Labs stands by its objection and answer and acknowledges the parties are unable to come to any agreement. If a statement was publicly made then Plaintiffs have access to it. BF Labs will, however, supplement its answer by directing Plaintiffs to blogs that Plaintiffs may be able to search for comments related to estimated shipping dates. Further, as mentioned in its answer to Plaintiffs' interrogatory, BF Labs considered a multitude of different factors when making representations about estimated shipping dates. To expect that BF Labs could catalogue all of them is not realistic and would certainly result in undue burden. For instance, *see* BF Labs' answer to IROG No. 3 listing the numerous component manufacturers that have provided parts to BF Labs. There is no way BF Labs has or could catalog every issue it has had with each manufacturer.

### e. IROG No. 9

As mentioned, in its answer to IROG No. 8, BF Labs is standing by its objection that if a statement was publicly made then the Plaintiffs have access to it and can gather those statements. BF Labs, however, can supplement and provide the date that each unit listed in its answer to IROG No. 2 was first shipped and when sales ended for the products.

### f. IROG No. 12

BF Labs will produce the coverage denial letter.

### g. IROG No. 13

50071573.1



Mr. Ari N. Rodopoulos
March 20, 2015
Page 4

BF Labs will supplement its interrogatory answer and provide addresses for the three individuals you identify.

### h. IROG No. 14

Your request for BF Labs' employee's personal bitcoin wallets is overbroad and unreasonable. This request is analogous to suing a bank and demanding its employees' personal bank account information. BF Labs refuses to provide this information unless Plaintiffs can provide legal authority to support the request. We invite you, however, to identify a particular employee and we can potentially consider your request. You refused to do so on the phone. Along these lines, BF Labs has provided its bitcoin wallets addresses to Plaintiffs and through those wallet addresses, Plaintiffs are able to see all transactional activity. That means that Plaintiffs can see all transactions made through BF Labs' active and storage wallets. If you would like to research all the transactions at blockchain.info, you can track the bitcoin transactions yourself.

Second, serial numbers for the 65 NM machines were assigned to customer units as they were ready to ship. The FPGA single devices did not have serial numbers. Serial numbers for the FPGA MiniRigs were assigned but not attached to the machine and assigned on the date shipped. BF Labs does not maintain the records to identify the specific mining equipment used over the course of the history of the company. BF Labs does have a report that identifies all mining proceeds by month. While not specifically sought in Plaintiffs' interrogatory 14, BF Labs is willing to supplement and include a breakdown by month of how much it has mined and where it was mined. Other than its Nimbus mining partnership as well as bitcoins that BF Labs has yet to receive from cloud mining (*see* answers to IROG Nos. 22 and 23), BF Labs only has mined from its headquarters in Overland Park, Kansas.

BF Labs is confused by your request demanding that we identify mining machines or results in the Eclipse Mining Consortium ("EMC"). The following were mined through EMC: the gameshow equipment, the burn-in testing, the RMA testing, the broken wing mining, the BFL portion of Nimbus Mining and cloud mining.

Finally, we continue to be confused by your request for account numbers with third parties. The client informs us there are no account numbers responsive to your interrogatory.

### i. IROG No. 15

See answer to IROG No. 14 above.

50071573.1



Mr. Ari N. Rodopoulos
March 20, 2015
Page 5

### j. IROG No. 18

As explained on the phone, Exhibit C and D never existed and were mistakenly identified in the answers. Furthermore, you are correct in that BF Labs does not have the records of sales prices for some sales related to the FPGA products.

### k. IROG No. 19

We have confirmed that Exhibit E is comprehensive as of February 20, 2015. Further, Exhibit E provides the date, name, order number, and amount of refund. BF Labs did not maintain records on the date each refund was requested or whether the refund was made in cash or bitcoin. To go back and attempt to create a spreadsheet on the date each refund was requested, for instance, is unrealistic. To the extent it is even possible, it would result in an untold number of hours to try to identify the specific information.

### l. IROG No. 20

BF Labs is not willing to provide IPs and account names for Defendant's employees or agents that were personal in nature. If Plaintiffs can provide some authority suggesting such information is discoverable, BF Labs will entertain this request. BF Labs has provided account names that BF Labs employees and agents have used in BF Labs' forums. BF Labs is willing to supplement its answer if employees have made representations in other forums *in their capacity as employees*. Further, BF Labs objects that this is unduly burdensome and overly broad to compile this information.

### m. IROG No. 23

BF Labs does not maintain records on the information sought by this interrogatory. BF Labs will identify the one bitcoin wallet address at issue. That active wallet address is 18UxwNVLPo7vyRkCgs5wusUfhhbMYhApAu. You should be aware that this same wallet received customer payments in bitcoin.

### n. Exhibits attached to Interrogatories

BF Labs agrees to produce these pdf exhibits in native format.

50071573.1



Mr. Ari N. Rodopoulos
March 20, 2015
Page 6


      **II.**      **Requests for Production**

      While we sent a letter on March 17, 2015 regarding BF Labs' position on ESI and privilege, there are few issues that need to be clarified for purposes of your golden rule letter. First, in no way were any of BF Labs' Responses to Plaintiffs' First Requests for Production intended to be a "discovery tactic." BF Labs is not refusing to produce documents. BF Labs has also explained its position on the attorney-client privilege and has provided an exhibit to you that represents the names that were included in the ESI search designed to eliminate privileged emails from being produced to the Plaintiffs. We will continue to work with you on finding a reasonable way to produce documents to Plaintiffs without undue burden and expense.

      Regarding your "sanctionable" comments, Plaintiffs are attempting to create controversy when it does not exist. BF Labs is trying to be reasonable and meet its discovery obligations. BF Labs is not trying to hide the ball from Plaintiffs and agrees not to use any non-demonstrative exhibits at trial that it fails to produce to Plaintiffs. We are trying to produce those materials to you after we are able to agree on search terms and other required protocol.

      That said, a few of your requests need to be discussed specifically. Regarding RFPD No. 2, BF Labs stands by its objections. As your request is written, it includes every BF Labs' email ever written. Even BF Labs' response notes that it is willing to confer with Plaintiffs as to the request. Your unwillingness to confer about a reasonable request shows your unreasonableness. We want to work with you on narrowing this request. Regarding RFPD No. 11, BF Labs refuses to produce documents and/or communications relating to the mining of bitcoin by any of BF Labs' employees or agents in their individual capacity.

      And finally, BF Labs is willing to discuss RFPD No. 14 with Plaintiffs. Website information is publically available, and the burden to search for, collect, and compile this is the same for Plaintiffs as it is for BF Labs. BF Labs met its discovery obligations. But there is a cost involved in gathering prior versions of websites. BF Labs is unwilling to incur this undue expense without a specific showing by Plaintiffs why it is necessary.

      In conclusion, BF Labs spent significant time and expense in responding to Plaintiffs' discovery requests. BF Labs is not obligated to create materials that do not exist and takes significant issue with comments like "egregious" and "sanctionable." BF Labs will be supplementing its interrogatory responses later today. We look forward to working with you towards a resolution of these issues without the need for any further discovery motions.



Mr. Ari N. Rodopoulos
March 20, 2015
Page 7

                Sincerely,

                Michael S. Foster

071534 / 475203