UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KYLE ALEXANDER, et al.,

          Plaintiffs,

v.                                                    Case No. 14-2159-KHV

BF LABS INC.,

          Defendant.


## **ORDER**

The plaintiffs, Kyle Alexander and Dylan Symington, allege in this putative class action that the defendant, BF Labs, Inc., improperly collected prepayment for bitcoin mining equipment.[1]  Plaintiffs bring claims against defendant for unjust enrichment, negligent misrepresentation, conversion, and violations of the Kansas Consumer Protection Act (the "KCPA").  The case is before the undersigned U.S. Magistrate Judge, James P. O'Hara, on plaintiffs' motion to compel defendant to provide complete responses to plaintiffs' first set of interrogatories and requests for production (ECF doc. 72).  Because the court finds some of the requested discovery relevant, plaintiffs' motion to compel is granted in part and denied in part.

---

[1] A bitcoin is a unit of intangible currency that exists only on the internet, without direct ties to any single nation's monetary systems.  Bitcoins are earned, or "mined," by solving a complex mathematical riddle, which requires a large amount of computer processing power.  *See* ECF doc. 59 (citing *Meissner v. BF Labs, Inc.*, No. 13-2617-RDR, 2014 WL 2558203, at *1-2 (D. Kan. June 6, 2014).

Plaintiffs served their first set of discovery requests on August 18, 2014.[2]  Before defendant responded to the requests, the court entered a sixty-day stay of this case.[3]  On December 29, 2014, the court held a scheduling conference and lifted the stay so that the litigation could proceed, with most previously imposed deadlines and settings adjusted by approximately four months.[4]   After several exchanges between the parties regarding the status of defendant's production, defendant served its responses to plaintiffs' first discovery requests on February 20, 2015.[5]  On March 20, 2015, defendant supplemented those discovery responses.[6]  That same day, plaintiffs filed the instant motion to compel, noting that they did not have time to review the supplemental discovery responses from defendant before filing their motion.[7]

After the motion to compel was filed, the parties met and conferred to determine what issues remained following defendant's supplemental responses.  Based on those discussions, defendant supplemented its discovery responses a second time on April 1, 2015.[8]  On April 9, 2015, the parties met and conferred again but were unable to solve all

---

[2] ECF doc. 28.

[3] *See* ECF doc. 59.

[4] *See* ECF doc. 62.

[5] ECF docs. 64-65.

[6] *See* ECF doc. 71.

[7] ECF doc. 73 at 10, n.4.

[8] *See* ECF doc. 75.

O:\ORDERS\14-2159-KHV-72.docx

remaining issues.  Therefore, defendant filed its memorandum in opposition to plaintiffs' motion on April 17, 2015.[9]  Within this response, defendant explains that certain issues in plaintiffs' motion have likely been resolved while new issues have been raised for the first time.[10]  Plaintiffs filed their reply on May 11, 2015, and argued that although the defendant's cooperation had improved with its supplemental responses, there were still several issues that needed to be resolved.[11]  Plaintiffs also noted that they were not seeking spoliation sanctions at this time.

Fed. R. Civ. P. 26(b)(1) provides that generally the scope of discovery is limited to the parties' pleaded claims and defenses, but that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  When a party files a motion to compel and asks the court to overrule objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[12]  Objections initially raised but not supported in response to the motion to

---

[9] ECF doc. 83.

[10] For example, a dispute exists about the way defendant ran a privilege filter before producing its entire electronically stored information ("ESI") hard drive to plaintiffs (ECF doc. 83 at 34).  The hard drive was not delivered to plaintiffs until April 13, 2015.  Thus, this issue did not exist at the time plaintiffs filed their motion to compel on March 20, 2015.

[11] ECF doc. 92.

[12] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

compel are deemed abandoned.[13]   However, if the discovery request appears facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[14]  With these standards in mind, the court addresses defendant's objections and responses to the disputed requests.

## I.     Interrogatories

Interrogatory No. 5.  Interrogatory No. 5 asks "[f]or each product identified in No. 2 above,[15] identify the number of units manufactured by month and year, the number of units ordered by consumers by month and year, and the number of units shipped to consumers by month and year."  Initially, defendant responded that it does not track by product the number of units manufactured or shipped to consumers by month and year. However, it directed plaintiffs to two exhibits for the "FPGA generation order dates and order status" and the "65 and 28 NM generations … which will show order dates and order status."[16]

---

[13] *In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011).

[14] *Id.*

[15] Interrogatory No. 2 asks defendant to "[i]dentify all products offered by Defendant for purchase by consumers from the date of Defendant's inception to the date of these interrogatories, including the product name, version, and the date the product was first released/available for purchase" (ECF doc. 73-10 at 1).

[16] ECF doc. 73-10 at 5.

After meeting and conferring with plaintiffs, defendant supplemented its answer to provide a spreadsheet that contained eighty-one different customers whose order status was excluded from the exhibits previously provided.  In addition, defendant responded that it "manually created a spreadsheet that includes a weekly breakdown of how many 65 NM products were shipped from July 14, 2013 to December 14, 2013 that was used internally for PayPal purposes."[17]   Defendant explained that this document is not comprehensive as to all shipping.  Finally, defendant asserted that it has emails that alerted customers that a product was shipped but did not produce them due to the undue burden and expense of gathering the emails and manually creating a spreadsheet.

On April 1, 2015, defendant supplemented its response a second time.  This time, defendant agreed to produce the emails described in its previous answer, which should allow plaintiffs to approximate the number of units manufactured by month and year. However, defendant still refused to manually create a spreadsheet based on those emails due to undue burden and expense.  Defendant also included a statement from its employee, Marc Goodpasture, regarding the number of boards defendant received per day, which were used in the assembly process.  Defendant listed the number of boards delivered to it by month in 2013.

Defendant argues that it has gone above and beyond the specific question asked in an attempt to avoid court intervention.  Defendant insists that it has provided more detail

---

[17] ECF doc. 73-21.

than what was asked by plaintiffs and because of this, there is nothing for the court to compel defendant to do.

Plaintiffs reply generally to Interrogatory Nos. 5-7 together.  Plaintiffs argue that although the defendant claims that what plaintiffs are seeking does not exist, it is still concerned because the interrogatory answers are vague and ambiguous.  For example, the plaintiffs point out that defendant essentially states it did not track the information requested in the precise manner it was requested.  Plaintiffs claim that they want the information, regardless of whether it was tracked in the particular manner set forth by the plaintiffs, and further claim that the language used by the defendant makes plaintiffs worry that defendant is parsing words.  As such, plaintiffs argue that if the information does not exist at all, as defendant claims, then defendant should be ordered to state this in an interrogatory answer under oath.  Further, plaintiffs request that if the defendant has knowledge of estimates or averages of the information requested in Interrogatory No. 5, that it provide that information under oath, or be precluded from introducing documents at trial or calling witnesses beyond the information provided in the interrogatory answers.

The defendant has provided information on more than one occasion in an attempt to fully answer plaintiffs' request.  If, as defendant claims, there is simply nothing left for defendant to produce, then it must state so, under oath, in a supplemental interrogatory answer.  If defendant intends on using documents at trial that establish averages or estimates, then it must produce those documents and must further identify witnesses that will testify to such information, as it is responsive to Interrogatory No. 5.

Interrogatory No. 6.  Interrogatory No. 6 asks defendant to "identify the number of units manufactured by month and year that were *not* ordered by customers" for every product identified in Interrogatory No. 2.  Initially, defendant responded that it could not provide an answer because historical manufacturing records were not maintained on the basis requested.  However, defendant explained that given the use of its preorder sales model, "the vast majority of FPGA and 65 NM products were ordered by customers prior to manufacture … Only at the end of the preorder queue would the company have manufactured units without a pre-existing order."[18]  Therefore, defendant stated that it cannot identify units that were not ordered by consumers because it did not track such units by month and year.  Defendant supplemented this response, explaining that it believes all of the units it manufactured were ordered by customers until the preorder queue was exhausted.  Defendant continued:

> Given the use of the preorder sales model, the vast majority of FPGA and 65 NM products were ordered by customers prior to manufacture and the daily focus was on producing at maximum output and shipping as quickly as possible to fulfill the demand from pre-existing orders.  At times, only at the end of the preorder queue, BF Labs manufactured units without a pre-existing order, and those were manufactured with the intent to sell to customers from stock.  BF Labs does not have historical records that reflect or identify the number of units assembled for any particular month when the preorder queue may have been exhausted.  In February 2015, BF Labs completed building 28 NM units to satisfy the preorder queue.  BF Labs is not able to identify units that were not ordered by consumers, nor did the company track such units by month and year.  In addition, BF Labs shipped units to data centers for use in providing remote mining services to customers who had preordered or ordered "off the shelf" processing

---

[18] ECF doc. 73-10 at 5-6.

capacity, but did not order the physical units; however, BF Labs did not maintain records of the number of units built by month and year for these specific purposes.[19]

Defendant asserts that it has been complete in answering this interrogatory based on the information it has in hand and "there is nothing to compel [it] to do."[20]

Again, plaintiffs' reply to defendant's arguments generally group Interrogatory Nos. 5-7 together.  Defendant claims that it answered the interrogatory, and plaintiffs request that defendant state under oath that the information requested does not exist at all. However, defendant's answer already states that it did not maintain the records sought by plaintiff.[21]  As such, plaintiffs' motion to compel as to Interrogatory No. 6 is denied as moot.

Interrogatory No. 7.  Interrogatory No. 7 asks defendant to "identify the date(s) Defendant first requested, ordered, or initiated the manufacture of [products identified in No. 2 above] and the number of units defendant requested, ordered, or initiated the manufacture of on each such date."[22]  Defendant responded that it does not maintain or possess manufacturing records that would allow "an exhaustive answer to this interrogatory," but incorporated its response to Interrogatory No. 4.  In its supplemental response, defendant reiterated that it does not maintain or possess manufacturing records

---

[19] ECF doc. 83-4 at 3-4.

[20] ECF doc. 83 at 27.

[21] ECF doc. 83-4 at 3-4.

[22] ECF doc. 73-10 at 6.

that would allow it to answer this request.  Defendant added that it also does not know of any witness with knowledge of the specific information requested as to precise dates and numbers of units on each date.  Defendant explained that it does not purchase fully manufactured machines but rather, assembles components itself for each machine. Defendant concluded, "[b]ecause dozens of components go into each machine that BF Labs buys with varying lead times, the interrogatory is too vague to answer."[23]

Defendant argues that it has been "transparent in its answer" and is not aware how it could answer this interrogatory any differently because "there are no records to provide the precision plaintiffs apparently seek."[24]

Plaintiffs argue that although defendant's counsel has unequivocally stated that what plaintiffs are seeking does not exist, the defendant's answers under oath remain vague and ambiguous.  For example, in response to Interrogatory No. 7, defendant responded that it is "not aware of any witness or witnesses with knowledge of the specific information as to the *precise* dates and numbers of units on each date."[25]  Plaintiffs were concerned with the language used in the answer, and stated that defendant's counsel would not confirm or deny whether there are employees or persons that have responsive knowledge couched in terms of reasonable estimates or averages rather than precise dates and precise numbers of units.

---

[23] ECF doc. 83-4 at 4.

[24] ECF doc. 83 at 27.

[25] ECF doc. 83-4 at 4 (emphasis added).

If there is no information to provide, as defendant claims, then it must state so in a supplemental interrogatory answer.   If, however, the defendant has knowledge concerning reasonable estimates or averages of the information sought by plaintiffs, then it must identify that information, as well as the witnesses who would testify about it.

Interrogatory No. 8.  Interrogatory No. 8 asks defendant to "identify the estimated shipping date (and revised shipping date) defendant represented publically, the date each representation was made, and defendant's factual basis for making such representation to the public on each such date" for every product identified in response to Interrogatory No. 2.[26]  Defendant objected to the extent plaintiffs seek information that is public and equally accessible to plaintiffs, but defendant explained that it considered "the production and assembly processes, information it received from suppliers and component manufacturers, communications with crucial vendors, contracts it had for ASIC chip delivery, among other things" to form its factual basis to make any such representations.[27]  In its first supplemental response, defendant directed plaintiffs to three website blogs that contain the representations.[28] Finally, in its second supplemental response, defendant provided more than eight pages of additional information, quoting its

---

[26] ECF doc. 83-4 at 4.

[27] ECF doc. 73-10 at 6.

[28] ECF doc. 73-21 at 2.

"release notes" from July 2012, updates to the "BitForce SC product page", posts to its blogs, and posts to defendant's product and "FAQ" pages with dates for each posting.[29]

Defendant insists that there is nothing more to compel and plaintiffs' motion is moot as to this request.

Plaintiffs argue that defendant failed to identify the date or content of any public representation regarding shipping dates or revised shipping dates, and that defendant's initial answer referenced all products generally and failed to give any specific or meaningful information. Plaintiffs also complain that the blog referenced in defendant's supplemental answer consists of defendant's after-the-fact attempt to explain or apologize for shipping delays and does not provide any information as to the factual basis relied upon by defendant before it made a shipping representation on any particular date with respect to any particular product. Plaintiffs note that in its second supplemental answer, defendant finally identified a few shipping representations made in product web pages. Nonetheless, Plaintiffs complain that defendant's supplemental answers completely ignore its initial answer, and asks that the court order defendant to provide a meaningful answer.

If the defendant has any additional information similar to specific information it provided in its second supplemental answer, then it must provide that information to the plaintiffs. Further, if the defendant has more specific information regarding the factual

---

[29] ECF doc. 83-4 at 5-13.

basis for making shipping representations to the public, then it must provide that information.  If, as defendant claims, it does not have that information to produce, then it must state so in a formal interrogatory answer.

Interrogatory No. 9.  Interrogatory No. 9 asks defendant to identify the percentage of units of each product (identified in Interrogatory No. 2) that were actually shipped within the estimated shipping date for each estimated shipping date identified in response to Interrogatory No. 8.  Originally, defendant objected to this request as overly broad, unduly burdensome, and irrelevant.  Further, defendant asserted that it does not have the records to provide the information requested.[30]  In its first supplemental response, defendant reasserted its objections but provided the first shippable unit date and sales end date for each product it listed in response to Interrogatory No. 2.  In its second supplemental response, defendant asserted that plaintiffs have agreed to perform calculations to answer this request themselves—assuming defendant's revised answer to Interrogatory No. 8 is sufficient.[31]

Defendant argues that there is nothing more to compel because it has revised its response to Interrogatory No. 8, as agreed between the parties.

Plaintiffs confirm that the parties agreed that plaintiffs would perform the calculations requested in Interrogatory No. 9 if defendant would agree to produce the

---

[30] ECF doc. 73-10 at 7.

[31] ECF doc. 83-4 at 14.

shipping emails, which defendant claims it produced on a hard drive given to plaintiffs on April 13, 2015.  Plaintiffs do not appear to argue that there are any issues with the hard drive.  Rather, plaintiffs take issue with the fact that defendant did have the records that would enable it to provide an answer to Number 9, and thus ask the court to order that defendant explain the basis of its initial answers under oath that it did not have the records to answer the interrogatory.  Because defendant did produce the information relevant to the plaintiffs' inquiry, there is nothing left for the defendant to produce or answer.  As such, plaintiffs' request as to Interrogatory No. 9 is denied.[32]

Interrogatory Nos. 14 and 15.  Interrogatory No. 14 asks defendant to identify "all bitcoin mining accounts or operations operated, owned, utilized, or otherwise controlled by defendant or defendant's agents or employees by stating the name and number of the account or location of the operation, the specific date(s) bitcoins were mined under that account or at that location, and the product name, version, and serial number of [] each piece of mining equipment used to mine bitcoins for each account or operation."[33] Interrogatory No. 15 asks defendant to identify all bitcoin addresses operated, owned, utilized, or otherwise controlled by defendant or defendant's agents or employees. Defendant objected to both requests to the extent they request information owned by defendant's agents or employees that are not operated, owned, utilized or otherwise

---

[32] Of course, Plaintiffs are not foreclosed from inquiring about this inconsistency in depositions.

[33] ECF doc. 73-10 at 9.

controlled by defendant. Defendant then identified twenty-one bitcoin addresses in response to Interrogatory No. 15.

With respect to Interrogatory No. 14, defendant responded that Eclipse Mining Consortium became part of defendant in October 2012, but objected to providing records on the mining results of these machines because they are not owned by the company. Regardless, defendant explained that it does not maintain records of the serial number or type of customer service equipment connected to the pool. Defendant explained that it set up a mining operation to fund a bitcoin prize pool for an internet game show and identified the mining equipment used and the number of bitcoins mined. Finally, defendant described a cloud-based mining partnership it entered through which it offered a product called Nimbus Mining. This was eventually expanded to include a permanent service called CloudMining. Defendant identified the machines used for the partnership and how many bitcoins were mined.

In its supplemental response, defendant provided a breakdown by month of how much was mined into its active wallet. Defendant further explained that these bitcoins came from burn-in testing, RMA testing, and broken-wing units. Other than the foregoing, defendant asserted that it has only mined from its headquarters in Overland Park, Kansas.

In its second supplemental response, defendant provided contact information for the hosting companies of the Eclipse Mining Consortium, but explained that it is unaware where the companies' equipment is specifically located. With respect to Nimbus and/or

CloudMining, defendant explained that it is unaware where these services have mined bitcoin from.  However, defendant consulted its Vice President of Product Development, Josh Zerlan, to help answer this request.  Mr. Zerlan stated that mining was done at Joe's Data Center but it was not done on behalf of defendant.  Instead, the mining was done for customer-owned devices that were used to mine for themselves.  Defendant asserts that it only rented servers for the Eclipse Mining Consortium and its website at Joe's Data Center, nothing more.

Defendant asserts that it has answered both of these interrogatories "to the best of its ability."[34]  Defendant responds that it has already provided its corporate bitcoin wallet addresses through which plaintiffs can see all of its transactional activity.  However, defendant reasserts its objections to providing its employees' personal bitcoin wallets as overbroad and unreasonable.

Plaintiffs note they agreed to limit the scope of Interrogatory No. 14 in meet and confer discussions with defendant.  Nonetheless, plaintiffs ask that defendant be ordered to provide the wallet addresses and number of bitcoins mined on machines owned by defendant connected to the pool, the serial number of type of equipment owned by defendant connected to the pool, and the number of bitcoins it received as its share for operating the mining pool.  Because the information requested is relevant and limited to the defendant, plaintiffs' request as to Interrogatory No. 14 is granted.

_____

[34] ECF doc. 83 at 30.

In meet and confer discussions, plaintiffs agreed to limit Interrogatory No. 15 (with respect to defendant's agents or employees) to the personal wallet addresses of agents or employees to which defendant transferred bitcoins.  Defendant does not deny that it has this information, but argues the request is overbroad and unreasonable because "[p]laintiff's request is analogous to suing a bank and demanding its employees' personal bank account information."[35]  Further, defendant argues that plaintiffs can simply subpoena any of defendant's employees for this information.  But, asking defendant to provide the requested information for its *employees* is unreasonable, unduly burdensome, and not discoverable through defendant.  Defendant insists that it is "overreaching to obtain personal information about employees from their current or former employer."  Thus, any constructive trust argument by plaintiffs must fail.

Plaintiffs respond that the defendant's bank analogy is over simplified because of alleged nefarious activity on behalf of the defendant and its employees.  However, as defendant notes, the plaintiffs can subpoena the information they seek from any of the defendant's employees.  As such, plaintiffs' request as to the information regarding individual employee's personal accounts is denied.  If, however, plaintiffs run into problems in the course or issuing the subpoenas for this information, they can bring those issues before the court.

---

[35] ECF doc. 83 at 30.

Plaintiffs are also concerned with qualifying language in some of defendant's briefing.  For example, the defendant claimed that plaintiffs could already see the bitcoin transactions made by defendant because "BF Labs has provided its *corporate* bitcoin wallet addresses to Plaintiffs."[36]  Plaintiffs request that defendant be required to state under oath in a supplemental answer whether it provided all wallet addresses it used in conducting its affairs (whether deemed corporate or otherwise) and, if not, to identify all such wallet addresses.  Because the court has already denied plaintiffs' request regarding the personal information of employees, plaintiffs' request for this clarification is denied.[37]

Interrogatory No. 19.  Interrogatory No. 19 asks defendant to identify all customers who requested a refund from defendant, including which customers received refunds, the date of such refunds, and the type and amount of such refunds (cash, bitcoins, etc.).  Defendant directed plaintiffs to Exhibit E, which is comprehensive as of February 20, 2015.  In its second supplemental response, defendant directed plaintiffs to Exhibit J, which is comprehensive as of March 31, 2015.  Defendant explained that Exhibits E and J list the date of refunds, the amount of refunds, and the type of refunds.  These documents are maintained by defendant's accounting staff.  Defendant also provided a third document maintained by defendant's customer service group (Exhibit

---

[36] ECF doc. 83 at 25 (emphasis added).

[37] Of course, the plaintiffs are not foreclosed from inquiring about these issues in depositions or additional discovery.

K), which contains refund data, including the date a valid refund request was received. Defendant asserts there is nothing left for the court to compel in response to this request.

Plaintiffs ask that the court order the defendant to explain why it did not produce Exhibit K until its second supplemental answers.  Because plaintiffs received what it asked for, there is nothing left for the court to order.  As such, plaintiffs' request at to Interrogatory No. 19 is denied.

## II.    Requests for Production

ESI Hard Drive.  Defendant raises a new issue in its opposition to plaintiffs' motion to compel arising from the production of its ESI hard drive.  Defendant asserts that it produced its entire hard drive, in a searchable format and by agreement with plaintiffs, to save the expense of reviewing and classifying the hundreds of thousands of documents as confidential or attorney-client privileged.  Despite this agreement, the parties did *not* agree on the search terms to be used to catalogue potentially privileged documents.  Plaintiffs requested the privilege filter to limit its search to fields of "to," "from," "cc," or bcc" but not the body or text of the documents.  Although the filter was not done the way plaintiffs asked, defendant asserts that this was "not intentional." Defendant insists that production of its hard drive should be satisfactory to plaintiffs because the only documents plaintiffs will *not* receive are those subject to the attorney-client privilege.  Defendant plans to produce a privilege log and any non-privileged documents after it completes its privilege review to determine if any non-privileged documents were picked up by the search terms used during the privilege filter.

Plaintiffs argue that defendant did not honor the terms agreed to by the parties when it ran search terms that were not agreed to by plaintiffs.  Because of that, plaintiffs argue that defendant should be ordered to pay for the entire cost of the hard drive provided to plaintiffs, to individually designate as confidential the documents on the hard drive it believes are subject to the protective order within 30 days, and to provide a complete privilege log for all documents withheld from the hard drive within 30 days, including the number, nature, format, and data size of the ESI documents withheld so that plaintiffs may compare the withheld ESI and data size against the total ESI and data size in the Modus hard drive.

Defendant states that it will produce a privilege log and any non-privileged documents after it completes a review.  As such, plaintiffs' requests are premature at this time.  Defendant is ordered to produce the privilege log and any non-privileged documents within 30 days.  If plaintiffs still have concerns after a review of those documents and discussion with counsel, then it can bring those concerns to the court's attention with subsequent briefing.

Plaintiffs also claim that the parties' agreement only applied to the ESI on the Modus database, and did not relieve Defendant of its obligation to search for and produce responsive tangible documents or other ESI not included in the Modus database.  Further, plaintiffs claim that defendant's counsel would not confirm or deny whether there are any responsive tangible documents or other ESI.  Plaintiffs argue that for each request for production, defendant should be required to state under oath whether it has any

responsive tangible documents or other ESI and, if so, to produce such documents and ESI.   As to this point, and notwithstanding any individual objections to particular requests for production, plaintiffs' motion is granted.

Request for Production No. 5 & 14.   Request for Production Nos. 5 and 14 ask for an electronic copy of defendant's websites including any previous versions.   Defendant objected to this request to the extent it seeks documents from publicly available sources because the burden of searching for, collecting, or compiling such information is substantially the same for plaintiffs as it is for defendant.   Now, defendant asserts that it is willing to provide this information, but only if plaintiffs will pay for defendant's costs.

Plaintiffs argue that defendant should be ordered to produce the ESI requested or, alternatively, should be ordered to explain the undue costs so that plaintiffs may have sufficient information to decide whether to pay for such costs.   In its response to the motion to compel, defendant conclusively states that "there is an expense involved in collecting and providing this to plaintiffs."[38]   However, Rule 26(b)(2)(B) requires that upon a motion to compel, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.[39]   Defendant's response does not comply with Rule 26.   As such, defendant is ordered to comply with Rule 26(b)(2)(B) and explain the reasons why production would result in an undue

---

[38] ECF doc. 83 at 35.

[39] Fed. R. Civ. P. 26(b)(2)(B).

burden or cost within 30 days. After submitting its explanation to plaintiffs, the parties must meet and confer.  If the parties cannot come to a resolution, they can bring the issue before the court.

Request for Production No. 20.   Request for Production No. 20 requests all "electronically stored information, and other tangible things listed by defendant as set forth in defendant's initial disclosures, Section II, Nos. 1-28."[40]  In response, defendant agreed to conduct a reasonable search for these documents and produce non-privileged documents, assuming this request excludes documents and ESI protected by the attorney-client privilege and work-product doctrine, and is in accordance with the ESI protocol. Consistent with its previous response, defendant asserts that all of the documents designated in its initial disclosures will be produced through the production of the ESI hard drive to plaintiffs.

Plaintiffs claim that defendant's argument is confusing, because defendant produced the hard drive on April 13, 2015, and filed its opposition motion on April 17, 2015.   As such, plaintiffs request that defendant should be ordered to produce the documents noted in its initial disclosures or, alternatively, be ordered to identify the documents it produced on the hard drive as initial disclosure documents.

Defendant is ordered to identify the initial disclosure documents it produced on the hard drive within 30 days.  If there are initial disclosure documents not contained on the

---

[40] ECF doc. 83 at 8.

hard drive and not protected by privilege or work-product doctrine, then defendant must produce those documents within 30 days.

## III.    Oral Argument

Plaintiffs have requested oral argument on the motion to compel.  The issues have been fully briefed, including a thirty-seven page response from defendant.  These briefs adequately address the issues for the court's consideration.  This motion has been pending since March 20, 2015, due to three separate motions for extensions of time.[41] The resolution of this issue does not need to be prolonged any further.  In consideration of the foregoing, plaintiffs' request for oral argument on the motion to compel is denied.

IT IS THEREFORE ORDERED:

1. Plaintiffs' motion to compel (ECF doc. 72) is granted in part and denied in part.

2. The parties shall bear their own expenses and attorney fees incurred in connection with this motion.

Dated May 18, 2015 at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

---

[41] *See* ECF docs. 76, 80, and 84.

O:\ORDERS\14-2159-KHV-72.docx