# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KYLE ALEXANDER, and )
DYLAN SYMINGTON, )
on behalf of themselves and all those )
similarly situated, )
)
                Plaintiffs, )
) Case No. 14-CV-2159-KHV-JPO
v. )
)
BF LABS INC., a Wyoming corporation, )
doing business as BUTTERFLY LABS, )
)
                Defendant. )

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
## SECOND MOTION TO COMPEL

Noah K. Wood       Bar #23238
noah@woodlaw.com
Ari N. Rodopoulos    Bar #26585
ari@woodlaw.com
WOOD LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INDEX OF EXHIBITS ........................................................................................................iii

I.    INTRODUCTION ................................................................................................... 1

II.   BFL ABANDONED ITS ASSERTED OBJECTIONS WITH RESPECT TO ALL REQUESTED DOCUMENTS OTHER THAN A BUSINESS PLAN AND MONTHLY STATUS REPORTS ............................................................ 2

III.  THE BUSINESS PLAN AND MONTHLY STATUS REPORTS ARE NOT IMMUNE FROM DISCOVERY IN THIS ACTION SIMPLY BECAUSE THEY WERE FILED UNDER SEAL IN THE FTC ACTION (OR INTENDED TO BE) ................................................................................................ 3

IV.   THE BUSINESS PLAN AND MONTHLY STATUS REPORTS ARE CLEARLY RELEVANT AND DISCOVERABLE UNDER RULE 26 ........................ 4

V.    BFL MAY DESIGNATE CONFIDENTIAL OR SENSITIVE DOCUMENTS UNDER THE COMPREHENSIVE PROTECTIVE ORDER ENTERED IN THIS ACTION ................................................................... 9

VI.   CONCLUSION ....................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 10

# **TABLE OF AUTHORITIES**

**CASES**

*Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005) .................................................................................................................... 5

*Federal Trade Commission v. BF Labs, Inc., et al.*, Case Number 4:14-CV-815-BCW ................................................................................................ 1

*In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011) .................................................................................................. 2

*Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) ............................................................. 7

**RULES**

Rule 26 ................................................................................................................................ 4

**INDEX OF EXHIBITS**

1.   6/9/2015 Docket Report ........................................................................................ 2
2.   10/2/2014 Stipulated Interim Order, Case 4:14-cv-00815-BCW ........................ 3, 6
3.   12/12/14 Order, Case 4:14-cv-00815-BCW ........................................................... 3, 9
4.   9/27/2014 Reply Suggestions, Case No. 4:14-cv-00815-BCW ............................... 8

**COME NOW** Plaintiffs Kyle Alexander and Dylan Symington, by and through their attorneys of record, and offer the following reply in support of their Second Motion to Compel:

## I.  INTRODUCTION

Plaintiffs requested Defendant BF Labs Inc. ("BFL") to produce "[a]ny and all documentation given to, provided to, or filed with the Federal Trade Commission, Eric Johnson (the temporary receiver), and/or the United States District Court for the Western District of Missouri, including business plans and status reports, in *Federal Trade Commission v. BF Labs, Inc., et al.*, Case Number 4:14-CV-815-BCW." (Doc. 87-2, No. 1).  BFL initially objected as follows:

> BF Labs objects to this Request as it seeks "[a]ny and all documentation," which is overly broad, unduly burdensome, and Plaintiffs have not reasonably tailored this request to matters that may be within the scope of discovery permitted under Fed. R. Civ. 26 for this case. BF Labs also objects to this request to the extent that it seeks documents protected from discovery and are sealed pursuant to Court order in case number 4:14-CV-815-BCW. Plaintiffs have propounded 20 requests in their first set of requests for production and to the extent the same or similar documents requested were provided to the persons identified in this request, Defendants have or will produce them to Plaintiffs.

(*Id.*).  In its Memorandum in Opposition, however, BFL argues that "[t]he documents also are not relevant to Plaintiffs' claims." (Doc. 94, p. 4).

Plaintiffs' Second Motion to Compel should be granted because:

- BFL has abandoned its asserted objections with respect to all requested documents other than a business plan and monthly status reports;

- The business plan and monthly status reports are not immune from discovery;

- BFL did not specifically assert a relevance objection in its initial discovery response and, therefore, such objection has been waived;

- Request No. 1 is reasonably calculated to lead to the discovery of admissible evidence;

- Request No. 1 seeks documents that, by their very description, are relevant to the claims and defenses in this action.

## II. BFL ABANDONED ITS ASSERTED OBJECTIONS WITH RESPECT TO ALL REQUESTED DOCUMENTS OTHER THAN A BUSINESS PLAN AND MONTHLY STATUS REPORTS

In Case Number 4:14-CV-815-BCW (the "FTC Action"), BFL has filed or served numerous documents, affidavits, pleadings, interrogatory answers, and other discovery responses containing arguments, explanations, denials, admissions, and/or factual statements. Many documents BFL filed or served in the FTC Action were filed under seal and/or served only to the parties in that action. (*See* 6/9/2015 Docket Report, **Exhibit 1**). Although BFL initially objected to producing such documents to Plaintiffs, BFL did not support such objections in its response to Plaintiffs' Second Motion to Compel with respect to any requested documents except a business plan and monthly status reports. *See In re Bank of Amer. Wage & Emp't Practices Litig.*, 275 F.R.D. 534, 538 (D. Kan. 2011) )("[T]he objecting party must specifically show in its response to the motion how each discovery request is objectionable. Objections initially raised but not supported in response to the motion to compel are deemed abandoned."). As such, with the business plan and monthly status reports temporarily aside (addressed below), BFL should be ordered to produce all other documents, affidavits, pleadings, interrogatory answers, and other discovery responses given to, provided to, or filed with the Federal Trade Commission, Eric Johnson (the temporary receiver), and/or the Western District

of Missouri in the FTC Action.

### III. THE BUSINESS PLAN AND MONTHLY STATUS REPORTS ARE NOT IMMUNE FROM DISCOVERY IN THIS ACTION SIMPLY BECAUSE THEY WERE FILED UNDER SEAL IN THE FTC ACTION (OR INTENDED TO BE)

BFL argues it will be in violation of court orders if it produces the monthly status reports because they were filed under seal in the Western District of Missouri pursuant to court order. Similarly, even though the business plan was not filed under seal, BFL argues the business plan was intended to be and, therefore, is not discoverable. Although BFL argues that the business plan and monthly status reports are immune from discovery in other civil actions, BFL cites no legal authority in support of its argument.

Throughout its Memorandum, BFL attempts to focus this Court's attention on the fact the business plan and monthly status reports were "court ordered"—as though against BFL's will. In reality, however, the very idea of the business plan and monthly status reports were proposed, volunteered, and/or submitted by BFL as a stipulated order for the Western District of Missouri to enter. (*See* 10/2/2014 Stipulated Interim Order, Case 4:14-cv-00815-BCW, Doc. 54, p. 18, **Exhibit 2**) ("Receivership Defendant shall submit a business plan to Temporary Receiver and FTC[.]"); (*see also* 12/12/14 Order, Case 4:14-cv-00815-BCW, Doc. 201, p. 11, **Exhibit 3**) ("[C]onsistent with Defendants' voluntary proposal contained in BFL's business plan, [the Court] orders Defendants to submit a written report on a monthly basis[.]")

BFL does not deny it possesses unsealed copies of the business plan and monthly status reports. BFL does not deny it could make public its business plan, for example, if it wanted to—and the Western District of Missouri has not ordered otherwise. And

although the Western District of Missouri stated in December of 2014 that it intended the monthly status reports not to be distributed without leave of court, there is no indication whether that remains the case today.  Further, the Western District of Missouri did not go so far as to state that such reports are immune from discovery in other civil actions.  Regardless, BFL did not cite – and Plaintiffs could not find – any authority holding that one federal district court may decide that certain documents are forever immune from discovery in another federal court.

Interestingly, BFL does not address whether *some* documents filed under seal are discoverable depending on the circumstances.  Instead, BFL argues that any documents filed under seal (or intended to be filed under seal) are immune to discovery without exception.  Even the work product and attorney client privileges, however, are not absolute.

There is nothing in the record suggesting the Western District of Missouri intended to grant BFL an absolute privilege allowing it to withhold documents from the fact-finding process in civil court.  Instead, it is clear that the business plan and monthly status reports were filed under seal (or intended to be) for the purpose of protecting sensitive information from general public disclosure—and not to trump or suspend Rule 26 and exclude such information from discovery in other civil litigation.  The fact that BFL filed documents under seal, or intended to do so, in the FTC Action does not render such documents immune to discovery in this action.  Rule 26 governs whether such documents are discoverable.

IV.    **THE BUSINESS PLAN AND MONTHLY STATUS REPORTS ARE CLEARLY RELEVANT AND DISCOVERABLE UNDER RULE 26**

BFL did not specifically assert a relevance objection in its initial discovery

Alexander, et al. v. BF Labs Inc.
*Plaintiffs' Reply Memorandum in Support of Second Motion to Compel*

4

response. In its Memorandum, however, BFL argues that "[t]he documents also are not relevant to Plaintiffs' claims." (Doc. 94, p. 4). Because BFL did not specifically assert a relevance objection in its initial discovery response, BFL's relevance objection has been waived. *See Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005) ("It is also well settled that when a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the objection is deemed waived.").

Even if BFL had timely asserted a relevance objection to the business plan and monthly status reports, such documents are clearly relevant. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Id.* at 615 (citations omitted). A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Id.* (citations omitted).

BFL argues the business plan and monthly status reports are not relevant because they are "forward-looking" and only relate to "future" business operations and, therefore, are not relevant to the claims or defenses in this lawsuit. BFL, however, has misconstrued the nature of these documents simply to avoiding having to produce them. According to the Stipulated Interim Order submitted and stipulation to by BFL, the business plan:

> [S]hall be supported by reasonable pro formas reflecting both estimated revenues and expenditures. In addition, the Business Plan must answer the following questions:
>
> 1.    Whether "burn-in" testing is necessary and materially more effective than beta testing;

    2.    Whether there is a viable testing alternative to "burn-in" testing;

    3.    If there is no viable alternative, then what, if any, disclosures will Receivership Defendant provide to potential customers of such practices, including the material facts and implications that will be disclosed; and

    4.    What internal controls Receivership Defendant will implement to track and secure revenues generated from "burn-in" testing, to the extent "burn-in" testing is contemplated by the Business Plan.

(*See* 10/2/2014 Stipulated Interim Order, Case 4:14-cv-00815-BCW, Doc. 54, p. 18, **Exhibit 2**).

BFL's revenues and expenditures are relevant to multiple issues, including an obvious issue that has been ongoing for years—why hasn't Plaintiff Kyle Alexander and scores of other class members received a product or a refund?  Plaintiff Kyle Alexander paid $308.00 to BFL in 2013 and, to date, has not received a product or a refund from BFL.  Many putative class members are in the same position, *i.e.*, they paid money to BFL and years later have received neither a product nor a refund.  BFL's revenues and expenditures are directly relevant to BFL's ability and/or failure to provide products or refunds to class members.  It is very possible the business plan reveals that BFL has, had, or will have sufficient revenue to refund class members but, instead, is spending money elsewhere to BFL's benefit and to class members' detriment—*i.e.*, the exact scheme Plaintiffs alleged in the Complaint.  Plaintiffs have alleged BFL used deception, misrepresentations, omissions, and concealment of material information in order to induce customers to send money so that BFL could keep and use the customers' money for BFL's own benefit, without ever providing the product to the customer (or providing

it months or years later).

BFL's revenues and expenditures are relevant to Plaintiffs' unjust enrichment claim, *i.e.*, BFL has generated and continues to generate revenues using the funds of customers who have not received a product or a refund. The more revenues BFL generates without providing products or refunds, the more unjustly enriched BFL becomes. BFL's revenues and expenditures are also relevant to Plaintiffs' conversion claim, *i.e.*, BFL kept and used customers' equipment for its own financial benefit without customers' permission when customers could have been enjoying such financial benefit with the product they paid for in full. Revenues generated by BFL using customers' equipment are also directly relevant to damages.

BFL's revenues and expenditures are directly relevant to Plaintiffs' claim for the imposition of a constructive trust. Plaintiffs seek a constructive trust on the money and bitcoins customers paid to BFL. *See Nelson v. Nelson*, 205 P.3d 715, 719 (Kan. 2009) ("[A] constructive trust remedy is res specific [and] is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value.").

The business plan is also highly relevant to the issue of "burn-in" testing, which is a huge issue in this action. BFL publically represented and continues to represent that it does not mine bitcoins for itself. (*See* http://www.butterflylabs.com/bitforce-sc-release-notes/) ("Why don't you guys mine? This is a popular question. The answer is pretty simple. Hardware is the focus of our passion. We're hardware designers."). Plaintiffs alleged that "[i]nstead of shipping completed Bitcoin mining hardware to customers . . . Defendant has utilized completed Bitcoin mining hardware to earn mining income for itself under the guise of 'testing' such hardware." (Doc. 1, p. 5). BFL denied such

allegation. (Doc. 4, p. 3). Nevertheless, in discovery, BFL admitted it has mined over 8,124.58 bitcoins for itself and the majority of bitcoins were from "burn-in" testing. As a defense, BFL has argued and is expected to argue at trial that "burn-in" testing is necessary before shipping to customers.

Instead of shipping fully tested miners to customers, however, BFL kept them and operated them on the live bitcoin network for BFL's benefit until additional replacement miners were manufactured so that BFL could keep the same number of miners operating on the live bitcoin network for its own benefit. (*See* 9/27/2014 Reply Suggestions, Case No. 4:14-cv-00815-BCW, Doc. 42, p. 6, **Exhibit 4**). BFL "tested" customers' equipment on the live bitcoin network for days even though the equipment only required 10 to 30 minutes of testing and could have been tested on "test.net," which enables the equipment to be tested without being used. (*Id.*). When asked by an employee why BFL used customers' equipment on the live bitcoin network instead of on the test-net, BFL responded the company would not make any money using the test-net. (*Id.*). Because the business plan contains statements by BFL regarding the necessity, effectiveness, viability, and alternatives to "burn-in" testing, it is highly relevant to Plaintiffs' allegations.

Further, as explained by the Western District of Missouri, the monthly status reports address:

> (1) Status of manufacturing and shipping to the current order queue, number of customers requesting shipment/service activation, number of customers delivered, projected number of customers still requiring shipment and anticipated shipment timeframes;
>
> (2) Assessment of remaining pre-order refund liability, including status of refund requests and status of reserve or progress toward generating assets to pay out all requested

> refunds in a timely manner;
>
> (3) Corporate governance progress;
>
> (4) Reaffirm that the no pre-order policy remains in effect and that only consumer sales of in-stock items are occurring;
>
> (5) Status of burn testing and report on segregated proceeds; and
>
> (6) Key communications made and/or planned with customers.

(12/12/14 Order, Case 4:14-cv-00815-BCW, Doc. 201, p. 11, **Exhibit 3**). These issues directly relate to Plaintiffs' and other class members' claims against BFL as well as class certification issues. For example, because the monthly status reports contain information regarding the status of manufacturing and shipping to customers in the queue, the status of refunds, refund requests, and BFL's refund liability, the monthly reports are highly relevant to issues such as the size and scope of the putative class, the appropriate class definition, the nature and extent of class members' damages, the type of class that may certified, the claims that may be certified, and the type of evidence that is available to prove or disprove Plaintiffs' allegations at trial, *i.e.*, whether common or individualized. BFL should be ordered to produce the business plan and monthly status reports.

### V. BFL MAY DESIGNATE CONFIDENTIAL OR SENSITIVE DOCUMENTS UNDER THE COMPREHENSIVE PROTECTIVE ORDER ENTERED IN THIS ACTION

BFL also argues it should not have to produce the business plan or monthly status reports because they contain highly confidential information. BFL, however, has produced highly confidential information in this action pursuant to the comprehensive protective order entered in this case any may do so again with respect to the business

plan and monthly status reports.

## VI.  CONCLUSION

**WHEREFORE**, Plaintiffs Kyle Alexander and Dylan Symington, by and through their attorneys of record, respectfully request this Court compel Defendant BF Labs Inc. to produce the documents requested in Plaintiffs' Second Request for Production of Documents, Request No. 1.

Date: June 9, 2015

                         WOOD LAW FIRM, LLC

                    By   /s/ *Ari N. Rodopoulos*
                    Noah K. Wood         Bar #23238
                    noah@woodlaw.com
                    Ari N. Rodopoulos     Bar #26585
                    ari@woodlaw.com
                    1100 Main Street, Suite 1800
                    Kansas City, MO 64105-5171
                    T: (816) 256-3582
                    F: (816) 337-4243
                    Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2015, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.

                    By   /s/  *Ari N. Rodopoulos*
                        *Attorneys for Kyle Alexander and Dylan Symington*