# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KYLE ALEXANDER, and )
DYLAN SYMINGTON, )
on behalf of themselves and all those )
similarly situated, )
                              )
                Plaintiffs, )
                              )     Case No. 14-CV-2159-KHV-JPO
v. )
                              )
BF LABS INC., a Wyoming corporation, )
doing business as BUTTERFLY LABS, )
                              )
              Defendant. )

### PLAINTIFF KYLE ALEXANDER'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT'S FIRST INTERROGATORIES

COMES NOW Plaintiff, Kyle Alexander, and responds to Defendant BF Labs Inc.'s First Interrogatories as follows:

### OBJECTIONS AND ANSWERS

1.     State Your full name, date of birth, place of birth, residence address (along with the period You have resided at such address and all other addresses at which You have resided during the past 10 years and dates of the use of each), Social Security number, and driver's license number (along with issuing state).

**ANSWER: Objection.   By agreement with Defendant's counsel, this interrogatory has been limited to the past five years.   Subject to these objections, Plaintiff states:**

        **Kyle Alexander**
        **DOB: 6/26/1987**
        **Addresses:**
        **502 N 16th Street, Nashville, TN (May 2015 to preset)**
        **353 Hampshire Drive, Clarksville, TN 37043 (Present)**
        **918 Martin Street, Clarksville, TN 37040 (2013)**
        **Three other Clarksville, TN addresses that Plaintiff does not recall the addresses**
        **SSN: ***-**-9806**

**DL: 117279987 (Tennessee)**

2.      For each of Your employers in the past 10 years from the time You started

working to the present, please state the name and address of each employer along with

dates of employment, and title of the position You held and nature of work performed.

**ANSWER: Objection. By agreement with Defendant's counsel, this
interrogatory has been limited to the past five years.  Subject to these
objections, Plaintiff states:**

> **312 Pizza Company
> 371 Monroe St, Nashville, TN
> October 24, 2014 – present**
>
> **Plaintiff has also worked at the following places but does not
> recall the dates.**
>
> **Miss Lucille's Café.
> Pizza Hut.
> G's Pancake House.
> Wilson's.
> Progressive Gardens.
> Port City Java.
> Chen New China Inc.**

3.      Identify every person who provided information or documents responsive

to these Interrogatories or BF Labs Inc.'s First Set of Requests for Production of

Documents and list the Interrogatories or Requests for Production for which each such

individual provided information or documents.

**ANSWER:  Objection. This interrogatory is unduly burdensome in that it
would require a massive undertaking of repetitive busywork to list and type
hundreds of people who have provided information and documents with
respect to multiple Interrogatories and Requests.   Subject to these
objections, Plaintiff states:**

> **Kyle Alexander with the assistance of counsel.  Further, the requested
> individuals have been identified and/or may be identified in
> documents already in Defendant's possession.   Plaintiff refers
> Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S
> 00001-04250, subpoenas served by Plaintiff, documents obtained by
> subpoena, Defendant's discovery responses, Defendant's website (and**

web forum) and prior versions thereof, Defendant's initial
disclosures, and documents and transcripts in the FTC action against
Defendant.  Plaintiff will supplement and provide the identity of any
additional people who provide responsive information or documents
as discovery continues.

**SUPPLEMENTAL ANSWER:  Plaintiff has not withheld the identity of any
person who provided information or documents.  Such persons have been
listed in Plaintiff's initial disclosures.  Plaintiff also received information
and documents from Defendant, from subpoenas (of which Defendant is
aware and has received copies of subpoenaed documents), and from the
FTC action (of which Defendant is a party and already possesses such
information and documents).  Plaintiff merely objected to listing the
information and documents provided by each person and the
Interrogatories or Requests for Production for which each piece of
information or each document provided relates to.  After further discussion
with Defendant's counsel, Plaintiff now understands this interrogatory is
specifically asking Plaintiff to list the persons who provided information or
documents *in response to* Defendant's Interrogatories or Requests for
Production.  The only persons who provided information and documents in
response to Defendant's Interrogatories or Requests for Production are
Dylan Symington and Kyle Alexander with the assistance of counsel.  See
A&S 04242-04250.  All other persons providing information and
documents did so before Defendant's Interrogatories and Requests for
Production were served.**


4.      Identify any non-privileged documents obtained from any source that

relate in any way to the claims asserted in Your Complaint, including those seeking class

certification and the separate counts, and identify all persons having possession,

custody, or control of those items.

**ANSWER:  Objection. This interrogatory is unduly burdensome in that it
would require a massive undertaking of repetitive busywork to list and type
thousands of documents with respect to each count and/or allegation in the
Complaint.  Subject to these objections, Plaintiff states:**

**The documents this interrogatory seeks to identify have been
produced to Defendant, were identified and produced by Defendant,
and/or are already in Defendant's possession.  Plaintiff refers
Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S
00001-04250, subpoenas served by Plaintiff, documents obtained by
subpoena, Defendant's discovery responses, Defendant's website (and
web forum) and prior versions thereof, Defendant's initial**

**disclosures, and documents and transcripts in the FTC action against Defendant.   Plaintiff will supplement and produce a copy of any additional responsive documents obtained as discovery continues.**

**SUPPLEMENTAL ANSWER:  Plaintiff has not withheld the identity of any known documents that relate to the counts asserted in Plaintiff's Complaint, including those seeking class certification.  All such documents have been produced to Defendant.**

5.      Identify all Internet Protocol address and account names that You have utilized to post information on the internet, including online forums, chat rooms, bulletin boards, message boards, newsgroups, blogs or any other online medium allowing for conversations or the creation of content relating or referring to bitcoin mining, including but not limited to any and all references to Defendant, its operations or Your complaints, by the dates the posts were made, the contents, and the location of those posts.

**ANSWER:  Objection. This interrogatory seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence.   This interrogatory also seeks information that is publically available and/or already in Defendant's possession.   Subject to these objections, Plaintiff states:**

**Plaintiff does not recall posting any information to the internet relating to bitcoin mining.**

**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory has been limited to Internet posts relating to bitcoin and/or bitcoin mining.   Plaintiff has not withheld any known responsive information.**

6.      Identify all principal or material facts that You contend support Your allegation in paragraph 23 of your Complaint that "Defendant represented that customers would most likely receive their equipment within 'two months' after order, or

such equipment 'would be shipped in two months', or sooner." As part of Your answer, identify:

      a.    all persons with knowledge concerning this allegation, as alleged; and

      b.    all documents concerning, referencing, or material to this allegation.

**<u>ANSWER</u>:  Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type hundreds of individuals and thousands of documents with respect to paragraph 23 in the Complaint.  Subject to these objections, Plaintiff states:**

> **Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this allegation have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this allegation have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents obtained as discovery continues.  Examples include, but are not limited to, the following:**

> > **According to Defendant, when buyers placed pre-orders, Defendant notified each and every buyer on Defendant's online order form that the shipping date for the ordered product was two months, or longer.  (Doc. 14 in Case 4:14-cv-00815-BCW)**

> > **Units are shipped within four to six weeks from the date of purchase. However, your delivery time may be significantly less depending on the production group your order fails in. (A&S 02787)**

> > **A large portion of the ASICs were going to be manufactured in house, this will cut our supply chain issues down dramatically and allow us to build product as required to fulfill orders. We**

have made many changes for the ASIC generation that will make our production, assembly and shipping times measured in days, not weeks.  [O]ur production facility is getting into nice shape and we will be able to crank out lots of ASIC units as well, so things are looking good and are on track right now. (A&S 03475, 03476)

[W]e are also working very hard on getting the ASICs out the door on time. (A&S 03471)

October 13: Unlikely, but not impossible and November 4: Possible. (A&S 03469)

By Christmas I hope to have current pre-orders shipped, not just the first batch! (A&S 03470)

First, how about when Singles (not SC) are shipping: We are in the midst of orders made 8/27. We are now guessing the launch will be November. (A&S 01992)

[T]he ASICs are still under development, and  shipping for the first 300 units will take place in January and February 2013. (A&S 02847)

We plan on shipping the ASIC versions of our products by the end of October or early November, depending on the quantity of units available. (A&S 01480)

Shipping of new units is still anticipated to being late October or early November.  Butterfly Labs, INC. is accepting pre-orders for ASIC based products, expected to begin shipping in late October or early November 2012.  (A&S 01481)

We expect the final chip versions to be in our hands in ~25 days, with final assembly and shipping to begin a few days after that. (A&S 01566)

We will be shipping them all at the same time and they will not be delayed because of a screen issue or anything like that.  (A&S 01814)

[E]xpect to have chips in hand by the end of November and begin initial shipments shortly after. (A&S 02804)

We plan on shipping the ASIC version of our products by the end of November or early December, depending on quantity of units available. (A&S 01482)

[H]opefully, very soon, we will be, uh, shipping our products. (A&S 01991)

We had fully intended to be ready by October for shipping and deeply regret that we have not been able to meet our timelines. (A&S 03438)

This means our delivery date is expected the week of the 10th of February. [I]f you order today, 13 January 2013, you would likely receive your order around the middle of March or possibly sooner if you're ordering a Jalapeno or a Single. (A&S 05181, 05183)

We plan on shipping the ASIC versions of our products by early February, depending on quantity of units available. (A&S 01484)

If you are ordering today, your expected ship date is sometime in the latter half of April as an estimate. Possibly sooner, but expect sometime in April. Our timeline is still on target for the week of the 10th, probably towards the later part of the week. If the worst case scenario in every step comes to pass, we are looking at starting shipping around Monday the 18th. Best case scenario we will start shipping around Wednesday the 13th or Thursday the 14th. (A&S 01535, 01536)

So it's looking like the week of the 17th for shipping, probably a bit later in the week unless the bumping house really pulls together, we might be able to ship as early as the 18th, but that is pretty optimistic, more likely is around the 22nd or so. (A&S 01536)

We plan on shipping the ASIC versions of our products by the end of April. (A&S 01494)

We are not shipping yet. We plan on shipping possibly by the end of next week, but I will update on a shipping schedule as soon as I have more definitive information with regards to that. (A&S 01541)

This is a Pre-Order product which is not yet shipping. However, this is our second generation, so we have much greater clarity on the process and plan to begin shipments in April 2014. Orders are shipped in order date priority so any order placed now should be expected to be delivered in June." (A&S 01947)

[A]ll products usually ship within 1-2 business days of receiving payment. (A&S 04243).

**5GH/s Bitcoin Miner initial shipping scheduled for the last half of April 2013. Products are shipped according to placement in the order queue and delivery may take 2 months or more after order. (A&S 01492)**

**We are gearing up to start shipping out some dev boards and a few Jalapeno's (sic) most likely this week (at least a few dev boards) and then as more chips roll in we'll be shipping out the Jalapeno's. When the new boards land in KC, we'll start shipping Little Singles and Singles at that time. I don't currently have a time frame for those, but I should have something later this week in regards to that. (A&S 01541)**

**I saw 2 Jalapenos leave the plant today. (A&S 02796)**

**We estimate that an order placed in March will be shipped in approximately June. We estimate that your order would ship in July. (A&S 01442)**

**We estimate that an order placed now would be shipped in approximately two months. (A&S 01441)**

**BFL Products Shipping Now. Shipping of our BitForce SC ASIC miners has begun! We're finally shipping. (A&S 01982)**

**Butterfly Labs recently announced that they would be shipping their BFL Jalapenos first, as they were able to complete them with existing cases and chip. The Single line of BFL products are projected to follow shortly. (A&S 01976, 01977)**

**We anticipate an order placed now would be shipped approximately 2 months. (A&S 01406)**

**We estimate that an order placed today would be shipped approximately in two months. (A&S 01405)**

**They will all ship at the same time.  We estimate that an order placed recently would ship in approximately two months. (A&S 01404)**

**We estimate that an order placed recently, would ship approximately in July. We estimate that an order placed at this time would be shipped in July. We estimate that an order placed today would ship approximately in July. (A&S 01403)**

**If you ordered more now, we estimate that they would be shipped approximately in July. We estimate that an order placed on 4/16 would ship approximately in June. (A&S 01402)**

We estimate that it would be around two months before an order placed now would ship. (A&S 01401)

A few went out Saturday and more will be ready to go Monday. (A&S 02851)

We plan on shipping the ASIC version of our products by the end of April. We have orders that date back to June of 2012. Those are the orders that will be delivered first. Orders placed now will not ship until the month of July. (A&S 01494)

Assuming no problems with it, we will be being (sic) shipment (sic) shortly thereafter. (A&S 01543)

Shipping of new units is expected to begin soon. It is unknown at this time when we will complete the shipping of our pre-orders. Even though we should start shipping soon, orders placed now will be shipped at a later time." (A&S 01504)

We estimate that an order placed on 5/24 would ship in August. (A&S 01398)

Shipping of new units is expected to begin soon. It is unknown at this time when we will complete the shipping of our pre-orders. Even though we should start shipping soon, orders placed now will be shipped at a later time. (A&S 01468)

Bitforce SC (ASIC) products are shipped according to placement in the order queue, and delivery may take 2 months or more after order. (A&S 01508)

Chip delivery schedule is approximately 100 days through end of packaging once your order is placed. (A&S 02827)

We are already taking orders for the 50GH. Any order placed now would ship in approximately August." (A&S 01396)

60GH/s Single shipping!  (A&S 01392)

As it states on our website we estimate current orders would be shipped in 2 months. (A&S 01392)

Bitforce SC (ASIC) products are shipped according to placement in the order queue, and delivery may take 2 months or more after order. (A&S 01513)

I haven't updated in awhile because I thought the shipping was self explanatory, but people seem to be clamoring for an update, so here we are. We have been working our way through the

backlog of orders over the past month. Lots of Jalapeno's (sic) have been sent out the door, as well as some singles and mini rigs. [W]e still expect the current back order backlog to be cleared by the middle of September or so, although given what we can likely achieve with our production rate, I suspect it may be sooner than that. **(A&S 001544, 01545)**

Now that shipping of orders has begun, refunds will not be processed. We are trying to catch up, your order will be shipped per your position in the order queue. **(A&S 00006)**

We're shipping about 300 units a day, but we'd like to be doing more. **(A&S 02007)**

We have started shipping Jalapenos earlier and have already gotten through the initial large-volume order days. So even though lots of singles are going out every day, their served order date isn't moving as fast. Now that we're nearing the end of that initial surge of orders, the dates will begin to progress very quickly as we catch up today.  **(A&S 00023)**

Jalapenos are shipping today! **(A&S 01414)**

We begin shipping much larger quantities of orders on a first come first served basis. **(A&S 02073)**

Bitforce SC (ASIC) products are shipped according to placement in the order queue, and delivery may take 2 months or more after order. **(A&S 01516)**

Backlog is finished and we are shipping from stock! **(A&S 01550)**

All jalapenos shipping in the next few days. Little Singles 25 gh/s and 30 Upgrades: ALL CAUGHT UP. Single 50 gh/s and 60 Upgrades: ALL CAUGHT UP. **(A&S 01550)**

Completing the 65nm backlog will allow Butterfly Labs faster development and shipping of the coming 28nm line of products. Currently taking pre-orders for its 600 GH/s Bitcoin mining card, as well as a hosted, Bitcoin mining product. Both are expected to begin delivery in March 2014. Announced the mid-December 2013 completion of nearly 45,000 ASIC product order shipments – eliminating what had been a multi-month backlog. **(A&S 01281-01282)**

Right now, we hope to start shipping the first Monarchs out the door at the very earliest at the very end of January or beginning of February. (A&S 02076)

We're pleased to be offering Nimbus Mining cloud contracts on our website and to have been chosen as the preferred hardware supplier for NimbusMining and 65Nm technology contracted by NimbusMining will be supporting these mining contracts today, and as we deliver pre-ordered 28Nm products to Nimbus Mining in the future. (A&S 01283)

[I]t will take approximately 5 weeks before we get packaged chips in hand, meaning the deployment of the Monarch will be delayed about 5 weeks from now. (A&S 02070)

Our ASIC based products ranging from 4.5 GH/s to 1,500 GH/s are currently scheduled for availability in February, 2013. (A&S 01958)

We have shipped over 50,000 miners to date and continue to ship and deliver these products (A&S 01298)

See also Docs. 42 and 193 in Case 4:14-cv-00815-BCW.

Former employee Anthony Fast testified it was "company policy" to inform prospective customers that delivery was "two months away" and even sooner for existing customers, even though the two-month timeframe was not tied to supply chain or the engineering timeline and no final prototype for the machine existed.

**SUPPLEMENTAL ANSWER:**  By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support paragraph 23 of Plaintiff's Complaint but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support paragraph 23 of Plaintiff's Complaint.  Plaintiff has not withheld any known responsive information.  All known persons who might have knowledge about paragraph 23 and all known documents that might relate to paragraph 23 have been provided to Defendant. Plaintiff has listed in No. 6 the "principal" facts Plaintiff currently believes support paragraph 23 of Plaintiff's Complaint.

7.     Identify all principal or material facts that You contend support Your allegation in paragraph 30 of Your Complaint that "Defendant knew or had reason to

know that the products would not ship on the dates represented to customers." As part of Your answer, identify:

      a.    all persons with knowledge concerning any facts material to this allegation; and

      b.    all documents referencing, concerning, or material to this allegation.

**<u>ANSWER</u>: Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type hundreds of individuals and thousands of documents with respect to paragraph 30 in the Complaint.  Subject to these objections, Plaintiff states:**

> **Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this allegation have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this allegation have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents obtained as discovery continues. Examples include, but are not limited to, the following:**

> > **See No. 6, above.**

> > **In written discovery to Defendant, Plaintiff asked Defendant to explain its factual basis for making shipping representations, which Defendant was unable to do.**

> > **In written discovery to Defendant, Plaintiff asked Defendant to identify the date(s) Defendant first requested, ordered, or initiated the manufacture of its products and the number of units Defendant requested, ordered, or initiated the manufacture of on each such date, which Defendant was unable to do.**

In written discovery to Defendant, Plaintiff asked Defendant to identify the number of units manufactured by month and year, which Defendant was unable to do.

In written discovery to Defendant, Plaintiff asked Defendant to identify how often it actually shipped within the time period Defendant represented it would ship, and Defendant did not identify a single instance.

Defendant did not miss its shipping promises by a few days or even a few weeks.  Instead, Defendant's discovery responses establish that thousands of customers received their equipment many months after the represented deadline, sometimes over a year later, or not at all.  Many customers have still not received the equipment they purchased or a refund.

Former employee Anthony Fast testified it was "company policy" to inform prospective customers that delivery was "two months away" and even sooner for existing customers, even though the two-month timeframe was not tied to supply chain or the engineering timeline and no final prototype for the machine existed.

See also Docs. 42 and 193 in Case 4:14-cv-00815-BCW.

Even after mining units became effectively obsolete due to the length of time customers were waiting for Defendant to ship, customers were not allowed to obtain a refund even if they refused delivery.  Former employee Sabina Marsh testified that, per management's instructions, Defendant would keep both the mining units and customers' funds.

After failing to ship as promised, Defendant used customers' funds for the individual benefit of Defendant's officers and shareholders.  For example, Defendant purchased a home and a $66,171.27 car for Sonny Vleisides, Defendant's co-founder, largest shareholder, vice president, and director, even though Defendant did not have a final working prototype and had already failed to ship as promised.

Defendant represented to the public that it did not mine bitcoins for itself and did not use customers' equipment before shipping but, in reality, Defendant mined bitcoins for itself using customer equipment on each and every unit before shipping to customers.

Defendant "tested" customers' equipment on the live bitcoin network for days even though the equipment only required 10 to

Kyle Alexander, et al., v. BF Labs, Inc.
Kyle Alexander's Supplemental Objections and Answers to Defendant's First Interrogatories

13

30 minutes of testing and could have been tested on "test.net," which enables the equipment to be tested without being used.

Instead of shipping manufactured and tested miners to customers, Defendant kept them and and operated them on the live bitcoin network for Defendant's benefit until additional replacement miners were manufactured so that Defendant could keep the same number of miners operating on the live bitcoin network for its own benefit.

When asked by an employee why Defendant used customers' equipment on the live bitcoin network instead of on the test-net, Defendant responded the company would not make any money using the test-net.

**SUPPLEMENTAL ANSWER:** By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support paragraph 30 of Plaintiff's Complaint but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support paragraph 30 of Plaintiff's Complaint. Plaintiff has not withheld any known responsive information. All known persons who might have knowledge about paragraph 30 and all known documents that might relate to paragraph 30 have been provided to Defendant. Plaintiff has listed in No. 7 the "principal" facts Plaintiff currently believes support paragraph 30 of Plaintiff's Complaint and, although not re-typed into No. 7, Plaintiff also believes the facts listed in No. 6, Nos. 8-9, and No. 13 support paragraph 30 of Plaintiff's Complaint as well.

8.     Identify all principal or material facts that You contend support Your allegation in paragraph 65 of the Complaint that Defendant "(a) knowingly or with reason to know, representing the status of Defendant's Bitcoin mining equipment inventory as being available, in production, available for shipping soon, and/or that shipping has already begun when, in reality, the status of Defendant BFL's mining equipment inventory was not available, not in production, not available for shipping soon, and/or not already shipping; (b) willfully using an exaggeration, falsehood, innuendo, or ambiguity as to a material fact, specifically regarding when shipment of mining equipment would occur and/or that mining equipment most likely would be

shipped within two months or sooner; (c) willfully failing to state a material fact, specifically that shipment of mining equipment would likely not occur for over six months, would never occur, and/or that Defendant BFL intended to keep and use the mining equipment itself; (d) offering mining equipment without the intent to sell or ship the mining equipment; and (e) offering mining equipment without the intent to supply the reasonable, expectable public demand and without truthfully disclosing the limitations." As part of Your answer, identify:

> a. all persons with knowledge concerning this allegation in Paragraph 65 of Your Complaint; and
>
> b. all documents concerning, referencing, or material to the allegation in paragraph 65 of Your Complaint.

**ANSWER: Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type hundreds of individuals and thousands of documents with respect to paragraph 65 in the Complaint. Subject to these objections, Plaintiff states:**

> **Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this allegation have been identified and/or are already known to Defendant. Further, all documents possessed concerning this allegation have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents as discovery continues. Examples include, but are not limited to, the following:**
>
> **See Nos. 6-7, above.**
>
> **Defendant did not disclose that its co-founder, vice president, director, and largest shareholder is a convicted felon who has a**

history of knowingly and intentionally defrauding customers, specifically obtaining money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and by the concealment of material facts. (See Case No. 2:07-CR-00134-DDP)

Defendant misrepresented the role and participation of its co-founder, vice president, director and largest shareholder in a prior fraudulent lottery scheme where victims were falsely told their money would be used to purchase tickets in lotteries and other games and they would receive checks from the winnings when, in reality, the checks sent were not winnings but were actually portions of funds sent in by other victims.

Defendant did not disclose that its co-founder, vice president, director, and largest shareholder who, pursuant to the terms of his release from prison, was required (but failed) to obtain the express approval of his probation officer prior to engaging in any business that involves the solicitation of funds.  (See Case No. 4:11-CR-00125-DKG)

In internal correspondence, Defendant's co-founder, vice president, director and largest shareholder estimated Defendant would still "be ahead" by millions of dollars even if it had to refund all undelivered Monarch orders, a risk he deemed "unlikely" and, in fact, many customers have still not received the equipment they purchased or a refund.

Defendant did not disclose that it had no final working prototype.

Defendant did not disclose that it only had $8,000 in initial capital and that customers' funds would be used to design and manufacture the advertised equipment for Defendant's own use and benefit prior to shipping.

Defendant did not disclose that customers who preordered from Defendant might not ever receive the advertised equipment or might not receive it in a timely manner.

Defendant did not disclose that customers who preordered from Defendant were merely betting that Defendant would be able to manufacture and ship the equipment as advertised.

Defendant has not produced any evidence or documents showing that it initiated the manufacture of mining units in proportion to the number of orders being received or at the same rate orders were being received.

Kyle Alexander, et al., v. BF Labs, Inc.
*Kyle Alexander's Supplemental Objections and Answers to Defendant's First Interrogatories*

16

Defendant did not disclose that it shipped hundreds of units to Netsolus for self-mining rather than fulfilling backlogged customer orders.

Defendant did not disclose that it would use customers' equipment on the live bitcoin network, retain all bitcoins for itself, and would not ship the equipment until replacement equipment was manufactured.

Defendant did not disclose the number of defective units it manufactured or the nature of defects in manufactured units.

Defendant did not disclose it lacked the chips necessary to produce the equipment as advertised.

Defendant sent an email to customers in April 2013 stating that it was shipping machines when it was not yet actually doing so.

Former employee Anthony Fast recommended to company management that customers be provided with information about delivery delays but his recommendation was dismissed, and the reason provided was Defendant did not want customers to know that they would have to wait so long for the machines.

Each time Defendant made a new or revised shipping representation, Defendant did not disclose the total number of pending unfulfilled orders so that customers would not be discouraged from making new orders.

After failing to ship as promised, Defendant used customers' funds to make and mass order red foam torches mocking their own customers, stating "Y U NO SHIP – BFL IS LATE!"



**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support paragraph 65 of Plaintiff's Complaint but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support paragraph 65 of Plaintiff's Complaint.  Plaintiff has not withheld any known responsive information. All known persons who might have knowledge about paragraph 65 and all known documents that might relate to paragraph 65 have been provided to Defendant. Plaintiff has listed in No. 8 the "principal" facts Plaintiff currently believes support paragraph 65 of Plaintiff's Complaint and, although not re-typed into No. 8, Plaintiff also believes the facts listed in Nos. 6-7, No. 9, and No. 13 support paragraph 65 of Plaintiff's Complaint as well.   In response to Defendant's counsel's inquiry as to where the image provided in No. 8 was**

**obtained, Plaintiff states the image was found online by Plaintiff's counsel at:**

**http://www.buttcoinfoundation.org/an-in-depth-look-at-how-butterfly-labs-is-going-to-lose-in-court-to-the-ftc**

9.      State specifically each alleged misrepresentation that You contend BF Labs made to You, including the date, person(s) making any such alleged misrepresentations, and substance of the alleged misrepresentation, and include the following:

      a.      All persons with knowledge of the alleged misrepresentation; and

      b.      All documents concerning, referencing, or material to the alleged misrepresentation.

**ANSWER:  Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type each misrepresentation into this interrogatory answer when the documents containing the requested information have already been produced and/or are in Defendant's possession. This interrogatory is also vague and ambiguous because Defendant does not distinguish between affirmative misrepresentations and the omission or concealment of material information and does not distinguish between direct representations and indirect representations.  Plaintiff understands this interrogatory to be limited to affirmative misrepresentations Defendant made to the public that Plaintiff became aware of directly or indirectly.  Subject to these objections, Plaintiff states:**

      **Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this interrogatory have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this interrogatory have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and**

produce a copy of any additional responsive documents as discovery continues.

Further answering, Defendant made numerous representations to the public via its website, forums, and Twitter account. Representations were made publically and aimed at the general public, rather than made to or aimed at a specific individual. As a member of the public, Plaintiff was made aware of Defendant's representations directly by visiting Defendant's website, forums, and Twitter account. Plaintiff was also made aware of Defendant's representations indirectly through general research, interaction, and discussions with others. Examples include, but are not limited to, the following:

Defendant's pre-order product page was arranged, crafted, and worded to suggest and to imply the depicted product was based on a final prototype that had been tested and met specifications and was in the final stage of development, *i.e.*, the design was complete, the units simply had to be assembled.

Representations that shipping would likely or possibly occur in approximately two months, or even sooner.

Representations about changes to Defendant's processes, allowing for production, assembly, and shipping times to be measured in days, not weeks.

Representations that Defendant did not use customers' equipment and did not mine bitcoins for itself.

Representations that Defendant's co-founder, vice president, director, and largest shareholder was not a primary participant in an unlawful lottery scheme that defrauded customers and/or representations that he was innocent but only plead guilty due to international and circumstantial pressures.

Representations that Defendant's co-founder, vice president, director, and largest shareholder is not a majority shareholder (*i.e.*, suggesting and implying he has no or little ability to decide, influence, or control Defendant).

Representations that Defendant would be shipping soon, or has begun shipping.

Representations about Defendant's ability to satisfy existing orders.

Kyle Alexander, et al., v. BF Labs, Inc.
*Kyle Alexander's Supplemental Objections and Answers to Defendant's First Interrogatories*

20

**Representations that refunds will no longer be processed because shipping has begun.**

**See Nos. 6-9, above.**

<u>**SUPPLEMENTAL ANSWER:**</u>  **Plaintiff has not withheld any known responsive information.  All known persons who might have knowledge about Defendant's representations and all known documents that might relate to Defendant's representations have been provided to Defendant. The representations Defendant made to Plaintiff (and not to the public generally) have been produced to Defendant.  See A&S 00001-00034.  The representations Defendant made to the public generally (and not solely to Plaintiff) of which Plaintiff became aware are voluminous and have been summarized in No. 9.  The substance of the representations summarized in No. 9 has already been provided in Nos. 6-8 (with document references), in documents produced to Defendant, and in documents produced by Defendant.**

10.     Identify all principal or material facts that You contend support Your contention that You relied on alleged misrepresentations that BF Labs made, including the date, action or inaction on Your part. Include in Your answer:

      a.     all persons with knowledge concerning such facts or contention;

      and

      b.     all documents referencing, concerning, or material to such facts or

      contention.

<u>**ANSWER:**</u> **Objection.  See No. 9, above.  This interrogatory is also vague and ambiguous because, whereas No. 9 asks for representations "made to You," No. 10 asks Plaintiff to explain how he relied on representations "that BF Labs made."  As such, it is unclear whether Defendant is asking Plaintiff to explain how he relied on representations made only to him, representations made to the public generally, or both. Plaintiff understands this interrogatory is limited to affirmative misrepresentations Defendant made to the public that Plaintiff became aware of directly or indirectly. Subject to these objections, Plaintiff states:**

**All known individuals who may have knowledge concerning this interrogatory have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this**

interrogatory have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents as discovery continues. Further answering, relying on Defendant's representations, Plaintiff sent money to Defendant via PayPal on June 14, 2013, incurred shipping expenses, and did not cancel or receive a refund from PayPal or Defendant.

**SUPPLEMENTAL ANSWER: By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support Plaintiff's allegation he relied on Defendant's representations but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support Plaintiff's allegation. Plaintiff has not withheld any known responsive information. All known persons who might have knowledge about this allegation and all known documents that might relate to this allegation have been provided to Defendant. Plaintiff has listed in No. 10 the "principal" facts Plaintiff currently believes support Plaintiff's allegation he relied on Defendant's representations, i.e., because of Defendant's representations summarized in No. 9 above, Plaintiff sent money to Defendant via PayPal on June 14, 2013, incurred shipping expenses, and did not cancel or receive a refund from PayPal or Defendant.**

11.     With respect to each category of damage alleged in Your Complaint and/or described in your Rule 26(a) disclosure, identify:

    a.     the amounts and methods used to "calculate" and factual basis supporting any damages figure;

    b.     all principal or material facts or assumptions that you made in arriving at any damages figure; and

Kyle Alexander, et al., v. BF Labs, Inc.
*Kyle Alexander's Supplemental Objections and Answers to Defendant's First Interrogatories*

22

      c.    all documents, referencing, concerning or material to or relied on in

the calculation or substantiation of any damages figure.

**ANSWER:   Plaintiff Kyle Alexander claims the total payment price ($274.00 purchase + $34.00 shipping = $308.00 total payment price) and interest thereon paid to Defendant, the loss of use of equipment that Plaintiff never received, the loss of bitcoins that were mined by Defendant using Plaintiff's equipment, the diminution in value of the Bitcoin mining equipment, and a reasonable attorney's fee, including reasonable expenses and costs.**

**The interest on the total payment price, the loss of use of equipment that Plaintiffs did not receive or did not receive in a timely manner, the loss of bitcoins that were mined by Defendant using Plaintiffs' equipment, and the diminution in value of the Bitcoin mining equipment require further discovery and/or expert calculations, which will be provided in accordance with the Court's scheduling order regarding expert disclosures.  Plaintiff will supplement this answer accordingly.**

12.    Identify all principal or material facts that You contend support the allegations throughout the Complaint that BF Labs engaged in "deceptive and unconscionable business practices," and identify:

      a.    all persons with knowledge of such facts or contentions; and

      b.    all documents referencing, concerning or material to such facts or

contentions.

**ANSWER:  Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type hundreds of individuals and thousands of documents with respect to allegations throughout the Complaint.  Subject to these objections, Plaintiff states:**

> **Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this interrogatory have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this interrogatory have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250,**

subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents as discovery continues.  See Nos. 6-9 above.

**SUPPLEMENTAL ANSWER:** By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support Plaintiff's allegation that Defendant engaged in deceptive and unconscionable business practices but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support Plaintiff's allegation.  Plaintiff has not withheld any known responsive information.  All known persons who might have knowledge about this allegation and all known documents that might relate to this allegation have been provided to Defendant.  Plaintiff has listed and/or summarized in Nos. 6-9 and No. 13 the "principal" facts Plaintiff currently believes support Plaintiff's allegation that Defendant engaged in deceptive and unconscionable business practices.

13.    If You contend that any statement made by Defendant to You was knowingly false when made, identify each person who made any such allegedly false statement, the substance of the statement, and the principal or material facts that you contend support your allegation that the person who made it knew at that time that it was false.

**ANSWER:** Objection. See Nos. 9-10 above.  This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type dozens of individuals and thousands of documents with respect to scores of false statements.  Plaintiff understands this interrogatory is limited to affirmative false misrepresentations Defendant made to the public that Plaintiff became aware of directly or indirectly. Subject to these objections, Plaintiff states:

Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this interrogatory have been identified and/or are already known to Defendant.   Further, all documents possessed concerning this interrogatory have been produced to Defendant and/or are already

possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents as discovery continues.  See Nos. 6-9 above.

**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory does not require Plaintiff to list each and every fact that could ever possibly support Plaintiff's contention that Defendant made knowingly false statements but, instead, this interrogatory only requires Plaintiff to list the "principal" facts Plaintiff currently believes support Plaintiff's contention.  Plaintiff has not withheld any known responsive information. All known persons who might have knowledge about this interrogatory and all known documents that might relate to this interrogatory have been provided to Defendant. The statements Defendant made to the public generally (and not solely to Plaintiff) of which Plaintiff became aware are voluminous and have been summarized in No. 9.  Plaintiff contends the statements summarized in No. 9 were made by Defendant's owners, officers, employees, and agents via Defendant's website, forums, and Twitter account. Plaintiff contends there is undeniable and overwhelming evidence for the jury to unanimously conclude the statements summarized in No. 9 were known by Defendant to be false at the time the statements were made by Defendant's owners, officers, employees, and agents and Defendant knowingly repeated, affirmed, ratified, and adopted the false statements of its owners, officers, employees, and agents day after day without correcting the falsity. The substance of the statements summarized in No. 9 has already been provided in Nos. 6-8, in documents produced to Defendant, and in documents produced by Defendant.  Unless indicated by the substance and/or context of the statement in documents produced, Plaintiff does not know the name of the owner(s), officer(s), employee(s), or agent(s) who pushed the "Enter" key or other key to publish the statements via Defendant's website, forums, and Twitter account. Defendant has not claimed or made an announcement that any non-owner, non-officer, non-employee, or non-agent hacked into Defendant's website, forums, or Twitter account and/or made statements on Defendant's behalf without Defendant's authorization.   Defendant has not produced any evidence that the statements made by its owners, officers, employees, or agents had a truthful basis. Plaintiff has listed and/or summarized in Nos. 6-9 and No. 13 the "principal" facts Plaintiff currently believes support Plaintiff's contention that Defendant made knowingly false statements.**

14.   Identify all civil lawsuits, administrative proceedings, bankruptcy filings, or similar actions in which You or any member of your immediate family have been a party, during the last 10 years, including the court, the caption, the docket number, the date, the nature of the dispute, and the resolution of each lawsuit.

**ANSWER:  Objection. This interrogatory seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence.**

15.   Identify all of Your bitcoin wallets, any activity related to such wallets and whether You reported such activity on Your tax return in the past three years.

**ANSWER:  Objection. This interrogatory seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections, Plaintiff states:**

> **Plaintiff had three bitcoin wallets that added up to a total of approximately .00000003 bitcoins as best as Plaintiff can recall. Plaintiff no longer has access to the computer where the wallet and mining information was stored because that computer failed shortly after Plaintiff placed his order with Defendant in June of 2013.**

**SUPPLEMENTAL ANSWER:  Plaintiff's mining activity was worth a fraction of one penny and, thus, was not reported on his tax return in the past three years.  Plaintiff has not withheld any known responsive information.**

16.   Identify all other bitcoin miners You have received, whether You requested a refund on the purchase, each and every bitcoin address used, including the date received, the model number and any profits received from the mining activity, including any bitcoin exchanging ever done.

**ANSWER:  Objection. This interrogatory is vague and ambiguous in that it does not define "miner" or clarify whether the interrogatory applies to the miner Plaintiff ordered from Defendant or elsewhere.  This interrogatory also seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff understands this interrogatory is limited to**

bitcoin ASIC miners other than the miner Plaintiff ordered from Defendant.  Subject to these objections, Plaintiff states:

None.  See No. 15 above.  Plaintiff received approximately .00000003 bitcoins as his share of a mining pool his computer was connected to before failing shortly after Plaintiff placed his order with Defendant in June of 2013.

**SUPPLEMENTAL ANSWER:**  Plaintiff has not withheld any known responsive information.  Plaintiff did not receive any bitcoin miners other than from Defendant.

17.    Identify any and all donations You ever made to Kickstarter or any other Crowdfunding website.

**ANSWER:  Objection. This interrogatory seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence.**

18.    Identify every correspondence or communication between You and any other purchaser(s) of BF Labs Inc. products or services about BF Labs Inc. from July 25, 2011 through the present.

**ANSWER:  Although Plaintiff has no way of determining or confirming who was a purchaser of Defendant's products and services at the time of any correspondence or communication, Plaintiff does not recall corresponding or communicating with any purchaser of Defendant's products or services.**

19.    Identify all pseudonyms You have used and whether You have posted on the internet under a pseudonym and on which forums, websites, etc. those pseudonyms were used.

**ANSWER:  Objection. See No. 5.**

**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory is limited to pseudonyms used to post on forums or websites discussing bitcoin.  None. Plaintiff has not withheld any known responsive information.**

20.    Identify all pre-orders You have made in the past 10 years for any product(s) and all correspondence You have made related to such pre-orders.

**ANSWER:  Objection. This interrogatory is vague and ambiguous in that it does not define "pre-order."  This interrogatory also seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff understands this interrogatory is limited to pre-orders like Defendant's pre-order concept. Subject to these objections, Plaintiff states:**

**None, other than the miner Plaintiff ordered from Defendant but never received.**

**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory is limited to bitcoin-related orders.  Plaintiff has not withheld any known responsive information.**

21.    Identify all websites You control and any Google account, including Google Drive.

**ANSWER:  Objection. This interrogatory seeks information not relevant to any element of any claim or defense and information not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, Plaintiff states:**

**Plaintiff has a Google account associated with ks.alexander12 and kbeyke.**

**SUPPLEMENTAL ANSWER:  Plaintiff has not withheld any known responsive information.**

22.    Identify all groups and associations You belong to (whether online or offline) and whether You have attended bitcoin-related conferences and the location and dates of those conferences.

**ANSWER:  Objection. This interrogatory is vague and ambiguous in that it does not define "bitcoin-related" and does not clarify whether "groups and associations" is limited to bitcoin-related groups and associations.  Plaintiff understands this interrogatory is limited to groups and associations that collectively mine bitcoins and organized conferences or seminars that primarily discuss the bitcoin industry. Subject to these objections, Plaintiff states:**

**See No. 15 above.   Plaintiff received approximately .00000003 bitcoins as his share of a mining pool his computer was connected to before failing.  Plaintiff has not attended any bitcoin conferences.**

**SUPPLEMENTAL ANSWER:  By agreement with Defendant's counsel, this interrogatory is limited to bitcoin-related groups, associations, and conferences.  Plaintiff has not withheld any known responsive information.**

23.    Please state whether You have ever been convicted (including pleading guilty) of any crime that, in the convicting jurisdiction, the elements required proving a dishonest act or false statement. For each such conviction, describe the details of Your conviction, including the city and state where You were convicted, the date of the conviction, the name of the offense of which You were convicted, and whether You pleaded guilty to the offense.

**ANSWER:  None.**

24.    Have You or anyone on Your behalf obtained any statement (written, oral, or recorded) from BF Labs Inc. or any of its current or former employees or representatives? If so, please state: when, where, from whom and by whom, and in what form it was obtained, the name and address of every person present at the time it was obtained, and please attach a copy of the statement or, if oral, please identify the substance of the statement.

**ANSWER:  Objection. This interrogatory is unduly burdensome in that it would require a massive undertaking of repetitive busywork to list and type dozens of individuals and hundreds of statements by Defendant's current and former employees. Subject to these objections, Plaintiff states:**

**Due to the volume of responsive information, Plaintiff is unable to re-type all responsive information into this answer. Nevertheless, all known individuals who may have knowledge concerning this interrogatory have been identified and/or are already known to**

Defendant.    Further, all documents possessed concerning this interrogatory have been produced to Defendant and/or are already possessed by Defendant. Plaintiff refers Defendant to Plaintiff's Complaint, Plaintiff's initial disclosures, A&S 00001-04250, subpoenas served by Plaintiff, documents obtained by subpoena, Defendant's discovery responses, Defendant's website (and web forum) and prior versions thereof, Defendant's initial disclosures, and documents and transcripts in the FTC action against Defendant. Plaintiff will supplement and identify any additional individuals and produce a copy of any additional responsive documents as discovery continues.  See Nos. 6-9 above.

**SUPPLEMENTAL ANSWER:**  By agreement with Defendant's counsel, this interrogatory is limited to written statements obtained directly from Defendant's current or former employees or representatives.   None. Plaintiff has not withheld any known responsive information.

25.   For each claim or count in Your Complaint in which you seek to represent a class of persons, state specifically the definition and scope of the class of persons You seek to represent, including but not limited to the time period and nature of each claim that You contend you would adequately represent a class of persons.

**ANSWER**: **Objection.**  Plaintiff is not a lawyer and does not possess the legal expertise to offer a legal opinion on which claims are subject to class certification or what constitutes a proper class definition in this case. Before this case was filed and as this case has progressed, Plaintiff's counsel has engaged in substantial legal research, analysis, and mental notes regarding the claims for which Plaintiff may seek class certification, as well as a proper class definition for such claims.   Plaintiff's counsel's legal analysis regarding class certification has evolved and continues to evolve as discovery progresses.   Plaintiff's counsel's ongoing and evolving legal research, analysis, thoughts, strategies, and mental impressions regarding class certification and a class definition are protected by the work product doctrine and are immune from discovery.   Subject to these objections, Plaintiff states:

Plaintiff will file a motion for class certification setting forth the claims sought to be certified and a class definition on or prior to November 16, 2015, as required by the Court's Second Amended Scheduling Order.

**SUPPLEMENTAL ANSWER:**   Plaintiff has not withheld any known responsive information.   All known persons who might have relevant

knowledge and all known relevant documents have been provided to Defendant.  Plaintiff's counsel, not Plaintiff, will determine which claims are proper for class certification, the definition and scope of the class, and the time period and nature of each claim Plaintiff is adequate to represent.  Plaintiff's counsel has not yet decided the requested information and has until November 16, 2015 to do so pursuant to the Court's Second Amended Scheduling Order.

26.   For each claim or count in Your Complaint, identify all principal or material facts that you contend support each requirement of Rule 23(a).

**ANSWER:   Objection.  See No. 25 above.**

**SUPPLEMENTAL ANSWER:   Plaintiff has not withheld any known responsive information.   All known persons who might have relevant knowledge and all known relevant documents have been provided to Defendant.  Plaintiff's counsel, not Plaintiff, will determine the principal facts that support each requirement of Rule 23(a).  Plaintiff's counsel has not yet decided which facts will be used to support the requirements of Rule 23(a) and has until November 16, 2015 to do so pursuant to the Court's Second Amended Scheduling Order.**

27.   For each claim or count in Your Complaint, identify all principal or material facts that you contend support each requirement of Rule 23(b).

**ANSWER: Objection.  See No. 25 above.**

**SUPPLEMENTAL ANSWER:   Plaintiff has not withheld any known responsive information.   All known persons who might have relevant knowledge and all known relevant documents have been provided to Defendant.  Plaintiff's counsel, not Plaintiff, will determine the principal facts that support each requirement of Rule 23(b).  Plaintiff's counsel has not yet decided which facts will be used to support the requirements of Rule 23(b) and has until November 16, 2015 to do so pursuant to the Court's Second Amended Scheduling Order.**

Date: <u>June 30, 2015</u>

WOOD LAW FIRM, LLC

By  <u>/s/ *Ari N. Rodopoulos*</u>

Noah K. Wood        Bar #23238
noah@woodlaw.com
Ari N. Rodopoulos     Bar #26585
ari@woodlaw.com
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Attorneys for Plaintiff