IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| KYLE ALEXANDER and DYLAN SYMINGTON, on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>BF LABS INC., a Wyoming corporation, doing business as BUTTERFLY LABS,<br><br>        Defendant. | Case No. 2:14-cv-02159-KHV-JPO |

**Affidavit of John O. Ward, Ph.D. – September 3, 2015**

1. My name is John O. Ward, Ph.D. I have been retained as an expert witness by the attorneys representing the Class Members Kyle Alexander, et al. in a litigation matter that they have against BF Labs.

2. My opinions are based on my skill, education, and experience as an economist. I hold a doctorate degree in economics. I am Professor Emeritus in the Department of Economics at the University of Missouri-Kansas City and I am Emeritus Editor of the *Journal of Forensic Economics*, the largest circulated academic journal concerning the computation of economic damages arising in litigation matters. I am a co-founder and past-President of the National Association of Forensic Economics and I am a member of several academic economic associations. I attached my curriculum vitae as exhibit A. I attach a listing of my prior testimony as exhibit B. I am being compensated at the rate of $500 per hour for my work on this case. My associate Kurt V. Krueger, Ph.D. assisted my review in this case and he is being compensated at the rate of $425 per hour for his work in this case.

EXHIBIT 26

3. In reaching my opinions, I reviewed and/or relied on the Complaint; the Proposed Amended Complaint; the Answer; Plaintiffs' Interrogatory Answers & Supplemental Answers; A&S 00001-000041; BF Labs' Interrogatory Answers and Supplemental Answers; BF Labs' Exhibits A, B, and E-S; the Deposition of Bruce Bourne as corporate representative of BF Labs; Second Amended Scheduling Order; and, the expert report of Dr. Alan Sherman. I also had a conversation with attorneys representing the Class Members. As additional information is later provided to me, I will evaluate it and, if necessary, incorporate that information into my opinions.

4. From my reading of the Complaint and Proposed Amended Complaint, Plaintiffs allege BF Labs engaged in deceptive and unconscionable business practices, was unjustly enriched, and committed conversion. I understand that the Plaintiffs are seeking to recover the full amount of pre-payments to BF Labs plus interest, the bitcoins allegedly mined by BF Labs prior to shipping miners to Class Members, and any other consequential economic damages associated with the alleged conduct.

5. It is my opinion that there are reasonably certain economic damages for all Class Members that can be computed in a formulaic manner utilizing generally accepted economic methods based on business records possessed by BF Labs without requiring individualized proof.

6. The damages for the Class on their claims seeking to recover the full amount of pre-payments to BF Labs emanating from either the date of purchase or date of coversion, summed by Member ($A_i$) are measurable as:

$$\sum_{i=1}^{n}\sum_{x=1}^{m} A_{i,x} = \left[ P_{i,x}(1+R)^{(DF_x - DT_x)/365} - G_{i,x} \right](1+R)^{(J-DF_x)/365} + \left(P_{i,x} - G_{i,x}\right)(1+R)^{(J-DT_x)/365}$$

where

$x$ are each of each Class Member's orders

2

Ward Affidavit in *Alexander et al. v. BF Labs*

> with payment or conversion (*P*) made on serial date *DT*,
>
> a refund (*G*) given on serial date *DF*, and
>
> *R* is the annual interest rate payable through the judgment date *J*.

7. If there was a complete refund, the first term of the equation is applicable. If there was no refund, then the first term in the damages equation is undefined (zero) and the second term is applicable. If there was a partial refund, both terms are applicable.

8. The rationale for the economic damages calculation presented above is aptly stated in *Inre Pago Pago Aircrash of Jan. 30, 1974*, 525 F. Supp. 1007 (C.D. Cal. 1981):

   > *"An individual who must litigate to recover damages should be placed in the same position, when he recovers, as the individual who recovered the day he suffered an injury. Otherwise, the tortfeasor benefits from denying liability and continuing to litigate, while he retains the use of money to which the plaintiff is entitled, and the plaintiff is deprived of the benefit he should have derived from an immediate recovery."*

9. There are three generally accepted measurements[1] of the economic damages of the foregone use of money from a date of taking through the date of judgment:

   a. Apply a statutory prejudgment interest rate.

   b. Apply defendant's unsecured cost of capital.

   c. Apply plaintiffs' opportunity cost of capital investment.

10. The Kansas statutory prejudgment interest rate is 10% (K.S.A. §16-201).

11. F Labs' cost of unsecured borrowing is not addressed in this report.

---

[1] For a review of these methods, see Escher, Susan & Kurt Krueger, "The Cost of Carry and Prejudgment Interest," 6 LITIG. ECON. REV. 12 (2003). Also see Knoll, Michael S. and Colon, Jeffrey M., "The Calculation of Prejudgment Interest" (2005). Faculty Scholarship. Paper 114 http://scholarship.law.upenn.edu/faculty_scholarship/114; and, Michael S. Knoll, "A Primer on Prejudgment Interest," 75 TEX. L. REV. 293 (1996).

12. The Class Members' opportunity cost of capital investment is not addressed in this report.

13. The damages sought in this action became ascertainable by mathematical computation as of the date payment was made. For example, Kyle Alexander sent BF Labs a payment of $308 on June 14, 2014 and Dylan Symington sent BF Labs a payment of $1,333 on April 3, 2013. Using the economic formula in paragraph 6 under the initial date of payment, the 10% statutory interest rate, and the trial date of August 8, 2016, the economic damages as to Class Members Alexander and Symington are calculated as:

$$\text{Alexander} = \$308(1+10\%)^{(8/8/16 - 6/14/13)/365} = \$415.99$$

$$\text{Symington} = \$1,333(1+10\%)^{(8/8/16 - 4/3/13)/365} = \$1,834.53$$

14. The damages sought in this action also became ascertainable by mathematical computation as of the date of conversion. For example, Kyle Alexander sent BF Labs a payment of $308 on June 14, 2014. Kyle Alexander demanded a refund no later than April 4, 2014 by filing the Complaint, which was refused no later than April 29, 2014 when BF Labs filed its answer. To date, Kyle Alexander has not received the product ordered or a refund. Using the economic formula in paragraph 6, a conversion date of April 29, 2014, the 10% statutory interest rate, and the trial date of August 8, 2016, the conversion damages as to Class Member Alexander are calculated as:

$$\text{Alexander} = \$308(1+10\%)^{(8/8/16 - 4/29/14)/365} = \$382.74$$

15. BF Labs' Interrogatory Answers 22-23 state that it mined a total of ▮▮▮▮ bitcoins. BF Labs' Exhibit S shows it mined ▮▮▮▮ bitcoins from "testing and the development process." [Bruce Bourne, page 241].

Ward Affidavit in *Alexander et al. v. BF Labs*

16. Dr. Alan Sherman has opined there is a formula by which the number of bitcoins mined by BF Labs prior to shipping can reasonably be calculated for Class Members.

17. According to the Internet site CoinDesk.com (BlockChain.info): on September 2, 2015 the closing Bitcoin price was at $228.86 ($230.68); on April 29, 2014, the price closed at $444.25 ($447.70); on April 4, 2014, the price closed at $448.88 ($446.01); on June 14, 2013, the price closed at $100.00 ($100.00). The CoinDesk.com price peaked on December 4, 2013 at $1,147.25.

Further Affiant Sayeth Not

_____
John O. Ward, Ph.D.

In witness whereof, I have hereunto subscribed my name and affixed by official seal this 3rd day of September, 2015.

KAREN J. HARRISON
Notary Public
State of Kansas
My Commission Expires 11/25/17

_____
Notary Public

5