IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 14-CV-2159-KHV-JPO |
| | ) |
| BF LABS INC., et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION,
OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND**

The Plaintiffs' motion should be denied. Now that the parties' proposed settlement has been scuttled, no purpose exists in continuing this putative class litigation. All parties have come to the same conclusion: there are no assets available to satisfy a class-wide judgment. Proceeding further with a class lawsuit thus serves no useful purpose and is wasteful of not only the parties' but, most significantly, the Court's resources. Given the substantial investment in time and dollars with improbable payment to a class, the Court should not reconsider its order denying class certification. The Court's determination is the correct one, and Plaintiffs need not be given an opportunity to file an amended motion. As a matter of law and fact, no class is appropriate.

**I.    INTRODUCTION**

To begin, Plaintiffs have failed to meet their burden of proving that the Court should reconsider its September 30, 2016 Order finding their class certification motion moot. The parties negotiated a good-faith settlement (dependent on future funding) but the Court rejected it and denied preliminary approval for failing to satisfy the typicality and adequacy requirements of Rule 23(a). As the Court found, this effectively mooted the Plaintiffs' Motion for Class Certification. But even if the Court reconsidered its Order, it would find not only that typicality and adequacy remain lacking, but also that Rule 23(b)'s superiority requirement is wanting in

55005890.2

these circumstances. Two separate regulatory and enforcement actions have been instituted and concluded. As evidenced by the investigations into the Defendants' finances by the Federal Trade Commission ("FTC"), the Johnson County District Attorney, and even Plaintiffs' counsel, the Defendants' resources are limited and no assets are currently available to pay class members. BF Labs has already agreed and been ordered to refund all the people to whom it owes refunds (if funds become available) pursuant to a consent judgment entered in Johnson County, Kansas District Court. The potential refunds that BF Labs is already obligated to make are the bulk of the proposed recovery in this putative class action.[1] At this point, proceeding further in private litigation to certify a class would be a complete waste of judicial and the parties' resources as well as an unreasonable burden upon the Court's time and machinery. Finally, there is also a question of whether this Court has continuing subject matter jurisdiction after its denial of class certification. For these reasons, the Court should not reconsider its order but, instead, consider on its own whether this matter may be dismissed in its entirety.

## II.     STATEMENT OF PERTINENT ALLEGATIONS AND FACTS

On April 4, 2014, Plaintiffs filed this putative class action on behalf of all persons who prepaid BF Labs for bitcoin mining machines between September 3, 2012 and July 17, 2014. *See* Complaint (Doc. 1) and First Amended complaint (Doc. 123).[2] A few months later, the FTC filed a complaint in the United States District Court for the Western District of Missouri based on the same set of facts and obtained an *ex parte* temporary restraining order and temporary receivership. While the Missouri federal court later denied the FTC's request for a permanent injunction and ended the receivership, the effect on BF Labs was devastating and costly. After

---

[1] Among other things, Plaintiffs also seek recovery of attorneys' fees under the KCPA.

[2] Plaintiffs' motion for class certification sought to define the class period as June 23, 2012 through July 17, 2014. (Doc. 137.)

significant discovery and the demise of BF Labs' continued operations, BF Labs, Sonny Vleisides, and the FTC entered into a stipulated final order on February 25, 2016 (signed by Judge Brian C. Wimes) that directed BF Labs to pay $15,000 and Vleisides to pay $4,000 based on sworn financial statements that were submitted to the FTC. *See* Case No. 4:14-cv-00815-BCW (W.D. Mo.), Doc. No. 377, p. 7.[3] Judgment in the amount of $38,615,161 was entered in favor of the FTC against BF Labs and Vleisides, jointly and severally, but was suspended based on the truthfulness, accuracy, and completeness of BF Labs' and Vleisides' sworn financial statements. *Id.*

Parallel with although separate from the FTC, the Johnson County District Attorney undertook its own investigation of BF Labs. The Johnson County District Attorney contended that BF Labs had violated the Kansas Consumer Protection Act and sought restitution for consumers who were owed refunds. On October 2, 2015, a Journal Entry of Consent Judgment ("Consent Judgment") was entered by Judge Elliott in the Tenth Judicial District Court in Johnson County, Kansas against BF Labs Inc. *See* Case No. 15-cv-60002 (Doc. No. 4) (attached as Exhibit A). The Consent Judgment provided that BF Labs shall continue to satisfy outstanding refund requests until all un-refunded consumers had been refunded. *Id.* at p. 6. Another term of the Consent Judgment stated that "Defendant shall designate no less than 65% of the gross margin from new consumer sales to be utilized for repayment of outstanding consumer restitution" and "Defendant shall devote no less than 35% of the balance of its primary cash operating account as of the end of each calendar month to refunds for un-refunded consumers in

---

[3] Federal Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp*, 605 F.2d 1169, 1172 (10th Cir. 1979).

55005890.2

the following calendar month." *Id.* at pp. 8–9. The Johnson County District Court retained jurisdiction should any violation of any term of the Consent Judgment be committed. *Id.* at 10.

The Plaintiffs' attempt to obtain compensation in this private suit is yet a third piece of litigation arising from the same set of facts. Similar to the Johnson County District Attorney, Plaintiffs have asserted claims under the KCPA, and also common law unjust enrichment and conversion. After a further round of significant discovery in this matter, the parties engaged in settlement discussions and agreed to postpone a formal response to the Plaintiffs' class certification motion. (Docs. 145, 147, 149.) At the conclusion of their discussions, the Defendants agreed to a proposed settlement that provided an opportunity for class relief in the event future funds became available (consistent with the consent judgment in the Johnson County, Kansas matter). The Defendants did not oppose preliminary settlement approval, preliminary approval of the proposed class notice to the class, and appointment of lead class counsel. *See* Memorandum and Order (Doc. 156), p. 1.

The proposed Settlement Agreement attached to Plaintiffs' Motion for Preliminary Approval of Settlement, filed on April 20, 2016, stated that the parties did not resolve the claims against the individual defendants, but the Plaintiffs believed that a settlement with BF Labs was in the best interest of the class because the individual defendants are unable to pay a settlement or judgment. *See* Doc. 150-1, at p. 5. The parties recognized that refunds of over $20 million had already been paid to consumers, while the proposed Settlement Agreement stated that BF Labs had approximately $8,024,964 of refunds requested still to be paid as of October 31, 2015. *Id.* at pp. 2, 12. Plaintiffs' counsel represented they had investigated the financial condition of BF Labs and determined that BF Labs currently had insufficient assets to satisfy the refund requests, any class-wide settlement, or any jury verdict. *Id.*

Under the proposed Settlement Agreement, if BF Labs received sufficient funds on or before May 1, 2017, it agreed to provide a full refund to all customers who pre-paid BF Labs and have not received products or refunds and make specified payments to class members who have received products or refunds. *Id*. If BF Labs did not produce enough income to make a full payment, it would make payments on a priority basis. *Id*. at pp. 12–13. The proposed Settlement Agreement also included a payment to class members who received a refund and who received a product. *Id*. at p. 13. If BF Labs failed to make full payment to any class members, the Court would enter a judgment against BF Labs in the amounts that remain unpaid. *Id*. at p. 14. This possible judgment would in effect duplicate the one entered in Johnson County, Kansas.

The Court rejected the proposed settlement and denied Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 150) on September 22, 2016. (Doc. 156.) The Court found that the named plaintiffs failed to satisfy the typicality and adequacy of representation requirements of Rule 23(a). (*Id*. at p. 17.) The Court also reviewed the proposed settlement agreement and suggested several infirmities existed. (*Id*. at p. 18.) The Court considered four factors to determine whether the proposed settlement was fair, reasonable, and adequate. (*Id*. at p. 8 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).) While the Court found the first and second factors weighed in favor of preliminary approval, it found the third and fourth factors[4] weighed against preliminary approval. *Id*. Regarding the fourth factor, the Court found that because "no named plaintiff holds a claim in subclass d.2; thus no member of that subclass has passed on the question whether the agreement is fair and reasonable." (*Id*. at p. 21.) As to the third factor, the Court remarked that class members will receive monetary

---

[4] The third and fourth factors are "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the judgment of the parties that the settlement is fair and reasonable." *See Rutter*, 314 F.3d at 1188.

5

benefits only if BF Labs has assets to make payments by May 1, 2017. (*Id*.) The Court observed the record contained no information regarding the probable value of the settlement on that date and Plaintiffs were not guaranteed any recovery under the proposed settlement agreement, as some or all the class members will only receive a judgment (and potentially an uncollectible one). (*Id*.)

On September 30, 2016, this Court entered an order finding that, in light of the order denying Plaintiffs' motion for preliminary approval of settlement, Plaintiffs' Motion for Class Certification (Doc. 137) was moot.

### III.     ARGUMENT

Pursuant to D. Kan. Rule 7.3, motions seeking reconsideration of non-dispositive orders shall be based on "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier. *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324, 1332 (10th Cir.1996), *cert. denied* 520 U.S. 1181, 117 S. Ct. 1461, 137 L.Ed.2d 564 (1997). Deciding whether to grant or deny a motion for reconsideration is within the court's discretion. *Annett v. University of Kansas*, 2003 WL 168967, *1 (D. Kan. Jan. 17, 2003) (citations omitted). The Plaintiffs do not argue that there are circumstances justifying reconsideration under the first or second prongs of Rule 7.3 but, instead, purport to ask the Court to reconsider its order "to correct clear error or prevent manifest injustice" although they never say so directly in their motion.

    **A.    The Court correctly decided its Order mooted Plaintiffs' Motion for Class Certification.**

Rather than litigate and obtain a ruling on the certification of a class as alleged in the Complaint, the parties sought to settle the Plaintiffs' and putative class claims. The Court refused to approve the parties' proposed settlement because (1) the plaintiffs have failed to meet the adequacy and typicality requirements under Rule 23(a) and (2) there is no guarantee that any class member will receive anything other than an uncollectible judgment pursuant to the proposed settlement agreement. Those reasons fully support denial of the Plaintiffs' class certification motion as well. As a result, the Court correctly decided that Plaintiffs' Motion for Class Certification was moot.

    **B.    Even if the Court decides to reconsider its September 20, 2016 Order, class certification would fail, as a matter of law, because Defendants have no money and two governmental agencies have investigated and fully addressed the conduct at issue.**

Even if the Court reconsidered its decision, which it should not, class certification would fail as a matter of law and fact for an additional reason: the superiority requirement of Rule 23(b) cannot be satisfied. Although Defendants have not briefed why class certification is inappropriate, the record in this case (as well as the public record in the Western District of Missouri and Johnson County, Kansas District Court) demonstrates that Rule 23(b) "superiority" cannot be found in light of the FTC action and stipulated judgment on behalf of consumers on the same set of facts; the Johnson County District Attorney investigation and consent judgment with BF Labs on the same set of facts that provides that BF Labs must give refunds to the customers who requested one; and because certifying a class at this point would be a fruitless and inefficient act as well as a drag on the resources of the Court, counsel, and parties.

    **1.    The FTC brought identical claims as the Plaintiffs, investigated the finances of BF Labs Inc. and Sonny Vleisides, determined that there**

7

> **was insufficient money or assets available for the consumers it purported to represent, and settled the matter.**

Throughout their Memorandum in Support of the Motion For Class Certification, the Plaintiffs cited the enforcement action in *FTC v. BF Labs Inc., et al.*, Case No. 4:14-cv-00815-BCW for support. (Doc. No. 138.) As the Plaintiffs noted, the FTC filed its action seeking injunctive and equitable relief against BFL and Vleisides. *Id.* at p. 30. On February 25, 2016, Judge Brian C. Wimes signed a stipulated final order in that matter. *See* Case No. 4:14-cv-00815-BCW, Doc. No. 377. While judgment was entered in favor of the FTC for $38,615,161, that judgment was suspended upon the payments of $15,000 from BF Labs and $4,000 from Sonny Vleisides based on the accuracy and completeness of BF Labs and Vleisides' sworn financial statements. *Id.* at p. 7. Any money paid to the FTC pursuant to that settlement was to be deposited into a fund administered by the FTC and used for equitable relief, including consumer redress. *Id.* at p. 8. The FTC investigated the finances of BF Labs and accepted a total of $19,000, concluding that no other money was available as a remedy to the class.

In light of the identical FTC action and its lack of recovery due to insufficient assets, no purpose would be served to continue this case as a class action.

### 2. The Johnson County District Attorney has already ordered BF Labs to pay refunds to consumers.

The Johnson County District Attorney entered into a Journal Entry of Consent Judgment with BF Labs on October 2, 2015.[5] *See* Case No. 15-cv-60002 (Doc. No. 4) (Exhibit A). In that Consent Judgment, BF Labs provided the District Attorney with a full accounting of all consumers who had outstanding orders for its mining hardware or cloud mining services. *Id.* at p. 5. The Consent Judgment obligated BF Labs to provide consumer restitution for all the un-

---

[5] BF Labs denied the contentions but entered into the Consent Judgment to avoid the expense and inconvenience of protracted litigation. *See* p. 10.

refunded customers. *Id*. at pp. 8–9. As the proposed Settlement Agreement noted, "the anticipated outstanding refunds are approximately $8,024,964" (Doc. 150-1, p. 12) which is nearly 90% of the potential maximum payout under the parties' proposed (but now rejected) settlement agreement. *Id*. at p. 14. This consent judgment, with its imposition of obligations to provide full refunds, negates any reason for continuing this litigation in a class action.

### 3. The prior actions and settlements preclude certification here, as a class proceeding under these circumstances would be inefficient, ineffectual, and improvident.

As private litigants, Plaintiffs seek money damages and attorneys' fees for themselves and the putative class. However, the aforementioned actions by the FTC and Johnson County District Attorney counsel against certification because it would not be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The FTC and Johnson County District Attorney have already resolved virtually identical claims arising from the same alleged course of conduct, including the entry of two presently uncollectible judgments. Denial of certification under such circumstances is not unprecedented. For example, in *Kamm v. Cal. City Dev. Co*., a group of investors alleged that land promoters failed to disclose the nature of the property and the inherent risks associated with certain real estate investments. 509 F.2d 205 (9th Cir. 1975). After the lawsuit was filed, but before the district court's class certification ruling, the California Attorney General and Real Estate Commissioner reached a settlement agreement with many of the defendants. *Id*. at 207–08. The settlement agreement "provided for offers of restitution of principal payments to certain purchasers[]," permanently enjoined defendants from making further misrepresentations, and required defendants to use their "best efforts" to settle future disputes. *Id*. at 208. Based on the relief already provided, the district court found that a class action was not the superior method of adjudicating these claims. *Id*.

The Ninth Circuit affirmed, explaining that, in no particular order of importance, "[s]uperiority must be looked at from the point of view of (1) the judicial system, (2) the potential class members, (3) the present plaintiff, (4) the attorneys for the litigants, (5) the public at large and (6) the defendant." *Id*. at 212. Some of the factors that led the court to affirm denial of class certification included recognition that:

- a class action would require "a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level[;]"

- the state action provided restitution, an agreement to settle future disputes, and a permanent injunction;

- no investor was barred from initiating his/her own suit; and

- defending a class action would be costly to defendants and duplicate the hours spent working to achieve the result with the state. *Id*.

Similarly, in *Caro v. Proctor & Gamble Co*., the court denied class certification in a consumer protection case, in part, because of a completed government action. 18 Cal. App. 4th 644 (1993). In *Caro*, a putative class of consumers alleged that Proctor & Gamble falsely labeled its orange juice. The court denied certification, in part, because Proctor & Gamble had already disgorged funds and spent more than $450,000 "complying with consent decrees and settlement agreements with various governmental agencies including the California Attorney General and District Attorneys in Santa Cruz and Alameda Counties." *Id*. at 660. The *Caro* court further found that the class action would "effectively duplicat[e] work which has been or could be done by the state [and the FDA]," and that the superficial differences between the allegations in the complaint and those involved in the government action failed to make the class action superior

because the same or similar conduct was alleged in both. *Id*. at 661; *see also Imber-Gluck v. Google, Inc.*, 2015 WL 1522076 (N.D. Cal. Apr. 3, 2015) (denying certification where FTC had resolved consumer claims covering same conduct); *Farno v. Ansure Mortuaries of Indiana, LLC*, 953 N.E.2d 1253, 1276 (Ind. Ct. App. 2011); *Lucas Subway Midmo, Inc. v. The Mandatory Poster Agency Inc.*, Case No. 13-AC-CC00476 (Cole County, Missouri) (finding that a class action was not superior method for consumer protection case when a governmental agency had investigated and fully addressed the conduct, finding a class action would be a waste of judicial resources and citing similar cases) (Exhibit B).

Because certifying a class would not be the superior method of adjudicating the action in light of (1) the FTC and the Johnson County District Attorney's investigations and settlements with the Defendants and (2) recognition by the FTC, District Attorney and Plaintiffs' counsel that possible assets or money being available for putative class members to receive anything approaching a meaningful payment is remote, the Court should not reconsider its denial of class certification.

### C. Because the sole basis for federal jurisdiction is under the Class Action Fairness Act, once class certification has been denied, the Court may no longer exercise subject-matter jurisdiction.

Plaintiffs originally filed their lawsuit in this Court and asserted that the sole basis for subject-matter jurisdiction is found in CAFA, as expressed in 28 U.S.C. § 1332(d). (Doc. 123, ¶ 13.) Federal courts have limited jurisdiction and are obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004). Here, the Court may now lack further subject-matter jurisdiction because of the denial of class certification.

While some courts have held that a mid-litigation denial of class certification does not destroy the CAFA jurisdiction that put the suit in federal court at the outset, *see*, *e.g.*,

11

*Cunningham Charter Corp. v. Learjet, Inc*., 592 F.3d 805, 806–07 (7th Cir. 2010), others have held that a denial of class certification brings an end to CAFA subject-matter jurisdiction, *see*, *e.g.*, *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 862 (11th Cir. 2012) (per curiam); *Avritt v. Reliastar Life Ins. Co*., No. 07–1817, 2009 WL 1703224 (D. Minn. June 18, 2009). Describing this area of the law as "in flux" would not capture the extent of discordant outcomes presented by the relevant authorities. *See Avritt*, 2009 WL 1703224 (collecting cases); *see also Karhu v. Vital Pharmaceuticals, Inc*., Case No. 13-cv-60768-JIC (Doc. 139), S.D. Fla. (order dated March 27, 2014) (dismissing case while also considering prudential concerns, substantial costs and burden on the court in proceeding with individual action) (Exhibit C at pp. 8–9). This Court also has previously remarked that it may lack subject matter jurisdiction over a plaintiff's claims after class certification is denied. *See e.g. Rushing, et al. v. Alon USA, Inc., et al*. (MDL No. 1840), Case No. 07-1840-KHV, October 29, 2013, Doc. 4663; *Gonzalez v. Pepsico, Inc.,* Case No. 06-2163-KHV, 2007 WL 1100204 ("If plaintiffs' motion for class certification were denied then plaintiffs would lose jurisdiction under CAFA and would need to meet general diversity jurisdiction requirements to maintain federal jurisdiction or risk dismissal of the case.").

Plaintiff Kyle Alexander alleges he paid BF Labs $308 and Plaintiff Dylan Symington alleges he paid BF Labs $1,333. (Doc. 156 p. 4.) The Plaintiffs plainly do not allege sufficient damages to establish ordinary diversity jurisdiction in federal court. 28 U.S.C. § 1332(a). Accordingly, the Court should follow its previous decisions and the Eleventh Circuit, find it no longer has jurisdiction, and consider dismissing this matter.

## IV.     CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court deny Plaintiffs' Motion for Reconsideration in its entirety. The Court may also consider whether subject-matter jurisdiction is lacking, and dismiss the matter if it so finds.

Dated: October 26, 2016

Respectfully submitted,

/s/ Mark A. Olthoff
Mark A. Olthoff                          KS Fed. #70339
Michael S. Foster                        KS #24011
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
moltoff@polsinelli.com
mfoster@polsinelli.com

Attorneys for Defendants BF Labs Inc., Sonny Vleisides, and Jeffrey Ownby

## CERTIFICATE OF SERVICE

This is to certify that I have on the 26th day of October, 2016, filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to the following attorneys of record:

Noah K. Wood, Esq.
Ari N. Rodopoulos, Esq.
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171

Attorneys for Plaintiffs

 /s/ Mark A. Olthoff
Attorney for Defendants