IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI

| | | | |
|---|---|---|---|
| LUCAS SUBWAY MIDMO, INC., on behalf of itself and on behalf of all others similarly situated, | ) ) ) | | |
| | ) | | |
| Plaintiff, | ) | Case No. | 13AC-CC00476 |
| | ) | | |
| v. | ) | | |
| | ) | | |
| THE MANDATORY POSTER AGENCY INC. d/b/a CORPORATE RECORDS SERVICE, | ) ) ) | | |
| | ) | | |
| Defendant. | ) | | |

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This Order addresses Plaintiff Lucas Subway Midmo, Inc.'s ("Lucas Subway") Motion for Class Certification, filed on January 26, 2015. The Court has reviewed the written briefs and other documents submitted by both Lucas Subway and Defendant The Mandatory Poster Agency Inc. d/b/a Corporate Records Service ("MPA") and the record before the Court, and heard extensive oral arguments of counsel at the hearing held on May 14, 2015. The Court now makes the following findings of fact and conclusions of law, and denies the Motion for Class Certification for the following reasons:

## I.   RELEVANT BACKGROUND/FINDINGS OF FACT

### A.   The Parties

Scott Lucas owns Lucas Subway Midmo, Inc., which is a Subway franchisee of Doctors Associates, Inc. Lucas Depo. 11:11-11:19. Lucas Subway owns and operates several Subway restaurants in Missouri, which are principally located in the Lake of the Ozarks area. Lucas Depo. 13:14-14:4. Scott Lucas also owns a separate Illinois corporation, through a separate

corporation, Lucas Subway, Inc. ("LSI"), which operates several Subway restaurants in Illinois. Lucas Depo. 12:4-12:14.

MPA is a Michigan corporation which operates two separate divisions: Labor Law Poster Service and Corporate Records Service. Fata Depo. 13:10-13:15. MPA is owned by Steven Fata, and his brothers Tom Fata and Joe Fata. Fata Depo. 11:20-12:1. The Corporate Records Service division provides corporations with form annual minutes. Fata Depo. 16:10-16:14.

### B.      The Annual Minutes Solicitations Form

MPA's Corporate Records Service markets its product through direct mail solicitations. The solicitation envelopes bear a legend stating that "**THIS IS NOT A GOVERNMENT DOCUMENT**" in bold, capital letters and the solicitation itself notes, among other things, that "**CORPORATE RECORDS SERVICE IS NOT A GOVERNMENT AGENCY . . . .**" The solicitation also pointed out that corporations could turn to other service providers, including accountants and lawyers, to prepare annual minutes or simply prepare them themselves. Fata Depo. Ex. 4, pg. 2. The Annual Minutes Solicitations Form that MPA sent to registered agents of corporations in Missouri is a uniform form to permit preparation of annual corporate minutes. The only customized information sought on this form is the specific company's name and address and the names of the shareholders, officers and directors. Fata Depo. 51:6-51:22, 93:25-94:9. Fata Depo. 52:3-52:13, 53:12-53:14.

To complete an order for MPA's service, a Missouri corporation provides the names of its directors, shareholders, and officers on the form, which MPA manually enters into MPA's computer system. Fata Depo. Fata Depo. Fata Depo. 52:3-52:13; 94:17-96:12; 95:3-96:12. The information that MPA receives is limited to the information filled out on the form by the customer. Fata Depo. 96:5-96:12. The customer also pays a one-time fee of $125.

The Annual Minutes Form contains a "Please Respond By" field. Fata Depo. 54:21-54:23. MPA generally puts thirty days in that field for administrative purposes. Fata Depo. 54:24-55:9. If MPA had any questions, an MPA employee would contact the customer if necessary. Fata Depo. 22:3-22:5, 64:3-64:18. Any direct contact with a customer was limited to asking for clarification about the customer's handwriting on their completed form. Fata Depo. 64:9-64:24. MPA's employees would not explain any requirements under the law or offer any legal advice. Fata Depo. 64:25-65:3. No one from Lucas Subway ever contacted MPA to ask them any questions. Lucas Depo. 33:18-33:20.

The customer receives the finished product which consists of a cover letter with their binder of corporate minutes which explains what the customer is receiving and directs the customer to have the shareholders and directors sign and date the documents. Fata Depo. 97:3-98:23. The language of the cover letter is the same for every Missouri customer. Fata Depo. 100:9-100:14.

Because he had to fill out the information and pay $125, Scott Lucas admittedly did not believe that the Annual Minutes Form was from a lawyer. Lucas Depo. 76:19-76:21. Moreover, the Annual Minutes Form did not strike Scott Lucas as someone trying to sell him legal services. Lucas Depo. 76:22-76:24. Scott Lucas claims he received the solicitation directly at his home in Illinois and MPA claims it sent the solicitation for Lucas Subway to its registered agent in Jefferson City, Missouri. Nonetheless, Scott Lucas authorized the law firm that acted as his registered agent in  Missouri to file this class action lawsuit, following the Missouri Attorney General action noted below.

C.      **The Prior Attorney General's Action**

On April 10, 2013, the State of Missouri, through its Attorney General, filed an action for various remedies against MPA under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §407.020 ("MMPA Action"). The MMPA action followed an inquiry by the Office of the Chief Disciplinary Counsel concerning whether MPA was engaging in the unauthorized practice of law. Following correspondence from MPA, the Office of the Chief Disciplinary Counsel declined to take any action.

The MMPA Action involved allegations that the MPA mailings were deceptive by creating the impression that the documents were required by or sent by the state corporation division. Following extensive negotiations, on August 12, 2013, MPA entered into an Assurance of Voluntary Compliance ("AVC") with the State of Missouri. The AVC provided for notice to all of MPA's Missouri customers of their right to a complete and unconditional refund of any payments that they had previously made to MPA.

Under the terms of the AVC, MPA agreed that any future envelope containing a solicitation would include the statement "**THIS IS NOT A GOVERNMENT DOCUMENT**" in bold, capital letters. Moreover, MPA further agreed that future solicitations would include the following language, in bold and capitalized font:

> CORPORATE RECORDS SERVICE IS NOT A GOVERNMENT AGENCY AND IS NOT AFFILIATED WITH THE MISSOURI SECRETARY OF STATE OR ANY OTHER GOVERNMENT AGENCY. MISSOURI LAW MAY HAVE ADDITIONAL RECORD REQUIREMENTS. TO FULLY UNDERSTAND YOUR RECORD KEEPING REQUIREMENTS CONSULT AN ATTORNEY.
>
> THIS PRODUCT OFFER FROM CORPORATE RECORDS SERVICE DOES NOT SATISFY THE ANNUAL CORPORATE REGISTRATION REPORT FILING WITH THE MISSOURI SECRETARY OF STATE.

**D.**    **MPA's Refund Procedure and Refund Offer to Lucas Subway**

On July 23, 2013, MPA mailed the letter/notice required by the AVC to Lucas Subway, advising them of their right to accept an unconditional refund offer, with no questions asked. Lucas Depo. 49:13-49:22. This July 25, 2013 notice to Lucas Subway was mailed to its registered agent in Jefferson City, to the address of Lucas Subway's law firm in Jefferson City, Missouri. Lucas Depo. 49:13-49:22. Lucas Subway received this refund offer prior to filing this putative class action lawsuit. Lucas Depo. 68:2-68:5. Identical notices were sent to all other potential class members on the same date.

Even before the MMPA action, MPA had a refund policy. If a customer is unhappy for any reason, the customer can send the product back and receive a full refund. Fata Depo. 102:14-102:20. To receive the refund, the customer calls MPA, requests the refund, and then ships the product back to MPA's Michigan address or to a local address. Fata Depo. 104:15-104:23. If customers did not want to ship the product back, MPA still provided a full refund of $125 to those customers. Fata Depo. 104:25-105:5. Consumers did not have to bear the cost of any refund and the AVC includes the cost of shipping. Fata Depo. 122:19-122:23.

On August 7, 2013, rather than accepting MPA's unconditional refund offer of $125, Lucas Subway instead chose to file this putative class action asserting four counts: Unlawful Practice of Law (Count I); Money Had and Received (Count II); Missouri Merchandising Practices Act damages claim (Count III); and MMPA injunctive relief claim (Count IV). Both the MMPA Action and Plaintiff's putative class action *specifically allege the same claim:* i.e., that MPA's advertising, marketing and soliciting of their corporate annual records services in Missouri constitutes the unauthorized practice of law and violates the MMPA. Overall, Lucas Subway claims to have lost $125 and does not claim to have lost any additional amount of money. Lucas Depo. 60:23-61:10.

## II.    DISCUSSION/CONCLUSIONS OF LAW

The express elements for satisfying a class action are found in Rule 52.08. *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. 2008). As an initial inquiry, the Court must conduct a rigorous analysis to determine whether Lucas Subway has satisfied all of the necessary factors for class certification. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.5 (3d Cir. 2008);[1] *see also Kansas City Terminal Ry. Co. v. Indus. Comm'n*, 396 S.W.2d 678, 680 (Mo. 1965) (noting that Rule 52.08 "specifically requires that these [class action] allegations must be proved."). The "rigorous analysis" required of certification decisions often entails some overlap with the merits of the plaintiff's underlying claim. *Wal-Mart Stores*, 131 S. Ct. at 2551; *In re Hydrogen Peroxide*, 552 F.3d at 317 n.15. After all, the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores*, 131 S. Ct. at 2552; *see also Hope*, 353 S.W.3d at 74.

As a result, the Court is permitted to look beyond the pleadings to determine if certification is appropriate. *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 692 (N.D. Ga. 2008). Before certifying a class, the Court must find that the "evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide*, 552 F.3d at 320; Newberg on Class Actions §7:21 (5th ed. 2014); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) ("[T]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.").

---

[1] Because Missouri Rule 52.08 and Rule 23 of the Federal Rules of Civil Procedure are virtually identical, it is well established that federal interpretations of Rule 23 are relevant in interpreting Rule 52.08. *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 75 (Mo. Ct. App. 2011).

A.    **Lucas Subway's Class Definition Fails Since It Is Both Overbroad and Indefinite**

While the express elements for satisfying a class action are found in Rule 52.08, before even considering the Rule 52.08 criteria, the Court must first determine "whether the class exists and is capable of legal definition." *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. 2008). "If a class is not properly defined, the circuit court must deny certification." *Id.* A class may be improperly defined because it is overbroad or because it is amorphous and indefinite. *Id.* A class definition that includes "more than a relatively small number of *uninjured* putative members is overly broad and improper." (emphasis added). *Id.*   Likewise, a class definition that depends on individual merit determinations is impermissibly indefinite. *Id.* at 862. "[C]lass membership must be based on objective, rather than subjective, criteria." *Id.*

Here, Lucas Subway has defined the proposed class to include: "All persons or entities in the state of Missouri that paid fees to [MPA] for the preparation of corporate documents from and after August 7, 2008." Certification Motion at 12. For the reasons stated below, this proposed class is both overbroad and indefinite.

The class definition is overbroad because it risks inclusion of "an extremely large number of uninjured class members" who have no grievance against MPA. *Coca-Cola Co.*, 249 S.W.3d at 862 (finding proposed class was not properly defined because a large percentage of the class suffered no injury and concluding the circuit court abused its discretion in certifying the class). Steven Fata testified during his deposition that his company maintained a liberal return policy – that "if somebody's not happy for any reason they can send the product back and [we will] give them a full refund." Fata Dep. 102:14-102:20. This refund even includes the cost of shipping. Fata Dep. 122:19-122:23.

The intervening MMPA Action and resulting AVC provided consumers with another opportunity for a refund. At last count, MPA had issued 170 refunds out of the 1,725 paid orders that it received. Fata Dep., Ex. 6. MPA issued these refunds both *before and after* the Attorney General's lawsuit. *See* Fata Dep. 123:12-123:25. Lucas Subway's proposed class definition makes no attempt to distinguish between those class members who have received a full refund and those who have not – even though its own damage calculation is based on these 1,725 orders. *See* Certification Motion at 19 (calculating damages as $125 times 3 times 1,725).

The class definition is also overbroad because it fails to exclude those class members who were satisfied with the product they received from MPA. MPA has "a *lot of satisfied customers* that like the product [and who] find value in the service." Fata Depo. 123:12-123:25 (emphasis added). A court may not simply imply or assume harm in "actions for damages brought by individual consumers." *Coca-Cola*, 249 S.W.3d at 862-63 (a proposed class action brought under the Merchandising Practices Act). The proposed class definition is overbroad because it includes a number of individuals who have not been injured or who have been made whole. *See Hope*, 353 S.W.3d at 77 ("Overbreadth may refer to the inclusion of a significant number of uninjured persons. An 'uninjured person' especially when the injury is not specific and concrete, may be a person who simply does not feel cheated or injured.").

Finally, the proposed class definition also fails since it is impermissibly indefinite, requiring proof of subjective criteria on a class-wide basis. Lucas Subway's petition includes a count for money had and received. To prevail on such a claim, Lucas Subway must show that it would be "unjust for the defendant to keep the money" that it received. Certification Motion at 11 (citing *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. Ct. App. 2010)). Determining whether something is fair or unfair requires "a subjective determination." *See Beverly Hills*

*Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994). To make this subjective determination on a class-wide basis and hence, to determine exactly which members were satisfied with MPA and which were not, would require the Court to undergo a "Sisyphean task, requiring [countless] mini-hearings to determine whether each potential class member had the requisite state of mind to be a member of the class . . . ." *Coca-Cola*, 249 S.W.3d at 862.  Since Lucas Subway's proposed class definition fails by being both impermissibly overbroad and indefinite, class certification must be denied. *See id.* at 864.

**B.      Lucas Subway Cannot Satisfy the Requirements Of Rule 52.08**

Lucas Subway must also demonstrate that the proposed class fits within the terms of either Rule 52.08(b)(1), (b)(2), or (b)(3). *Hope*, 353 S.W.3d at 74. Under subsection (b)(3), class certification is inappropriate unless a plaintiff is able to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mo. S. Ct. R. 52.08(b)(3). "[T]he underlying question in any class action certification then is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered." *Coca-Cola*, 249 S.W.3d at 860-61. And while the predominance requirement is similar to the commonality requirement of Rule 52.08(a)(2), the "test for predominance is *far more demanding*." *Smith v. Mo. Highways and Transp. Comm'n*, 372 S.W.3d 90, 94 (Mo. Ct. App. 2012) (emphasis added).

> **1.      A Class Action is Not a Superior Method of Adjudication when a Government Agency has Investigated and      Fully Addressed the Conduct at Issue**

Following entry of the AVC, MPA notified its customers of its refund policy, which extended a complete refund to any dissatisfied customers. A number of customers took advantage of this offer and accepted complete refunds from MPA. *See* Fata Dep. 123:12-123:25.

The vast majority of MPA's customers, however, were satisfied with the services they received and opted not to pursue refunds. Fata Depo. 123:12-123:25. The Court finds the current lawsuit is duplicative and unnecessary, and will not assist the class members. "[W]here the State agreement is providing monetary relief to the [proposed class members] anyway, a class action seeking those same monies is unnecessary." *Brown v. Blue Cross and Blue Shield of Mich., Inc.,* 167 F.R.D. 40, 45 n.18 (E.D. Mich. 1996) (denying class certification based on the defendants' agreement with the Michigan Attorney General).

As in *Brown,* courts around the country have found state relief or state actions to be superior to related class actions. *Thornton v. State Farm Mut. Auto Ins. Co.,* No. 1:06-CV-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) (collecting cases); *see also Kamm v. California City Dev. Co.,* 509 F.2d 205, 211 (9th Cir. 1975) (holding that the "class action was not a superior method of resolving the controversy" in light of actions by the California Attorney General and the Real Estate Commissioner of California); *Ostrof v. State Farm Mut. Auto Ins. Co.,* 200 F.R.D. 521, 532 (D. Md. 2001) ("adding a class action overlay in federal court makes little sense" particularly "where a remedy is available from an administrative agency which has expertise in a relevant field"); *Com. of Pa. v. Budget Fuel Co., Inc.,* 122 F.R.D. 184, 186 (E.D. Pa. 1988) ("[W]here a state attorney general and a private class representative seek to represent the same class members, the *parens patriae* action is superior to that of a private class action."); *Wechsler v. Se. Properties, Inc.,* 63 F.R.D. 13, 16 (S.D.N.Y. 1972) ("The Attorney General has now concluded his proceeding. I find it to have been adequate to the purpose stated, and dismiss this [proposed class] action.").

The contention that consumers were not reimbursed for the costs of return of the minutes is unsupported as a matter of fact. Lucas Subway's further contention that it is entitled to

enhanced damages and attorneys' fees is also insufficient to warrant conduct of this case as a class action. Discretionary damages and attorneys' fees are not guaranteed and the efficient resolution of the matter by the AVC satisfactorily addressed any alleged harm to the class.

In light of the Missouri Attorney General's prior action and the subsequent AVC, Lucas Subway cannot satisfy the superiority requirement of subparagraph (b)(3).

> ### 2. MPA's Complete No-Questions-Asked Refund Offer makes any Class Action a Waste of Judicial Resources

MPA offered to provide any Missouri customer a full refund, no questions asked, including the cost of shipping. MPA specifically offered this refund to Lucas Subway before this lawsuit was filed, but Lucas Subway declined to accept the offer and, instead, chose to file suit. Scott Lucas Depo. 49:13-49:25; 60:23-61:10; 68:2-68:5; *see also* July 25, 2013 correspondence sent from MPA to Lucas Subway, which was attached to MPA's Opposition as Exhibit C.

The superiority standard of subparagraph (b)(3) "reflects a broad policy of economy in the use of society's difference-settling machinery." *Berley v. Dreyfus & Co.*, 43 F.R.D. 397, 398-99 (S.D.N.Y. 1967). As a result, a court should not create a class of interested litigants where one "is not already in existence." *Id.* To create a class action, with complicated, protracted litigation in the place of a "simple, amicable settlement procedure" would "serve no useful purpose." *Id.* at 399 (denying motion for class certification where the defendant had offered a complete refund to its customers). Indeed, it "makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wa. 2003) (denying motion for class certification where the defendant had a refund and product-replacement program in place); *see also Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012) (denying motion for class

certification and noting that the "wisdom of Plaintiffs' decision to forgo the Recall program is questionable . . . .).

Here, a class mechanism is unnecessary to afford the potential class members redress since MPA has a complete no-questions-asked refund policy already in place pursuant to the AVC that has been specifically offered (and rejected) by Lucas Subway. For these reasons, class certification is not, therefore, a superior method of adjudication.

### 3. Lucas Subway Cannot Satisfy the Requirements of Rule 52.08(b)(1) or 52.08(b)(2).

Under Rule 52.08(b)(1)(A), any inconsistent adjudications must create "*incompatible standards of conduct* for the party opposing the class." Mo. S. Ct. R. 52.08(b)(1)(A) (emphasis added). This means far more than the ordinary risk that similar, individual lawsuits might end with different results. *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *4 (W.D. Mo. Sept. 10, 2010). Rule 52.08(b)(1)(A) contemplates cases "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

With these types of cases in mind, subsection (b)(1)(A) is "rarely utilized" and "does not cover situations in which multiple plaintiffs sue a single defendant for money damages." *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, Civ. A. No. 12-2043, 2014 WL 7330602, at *10 (E.D. La. Dec. 18, 2014); *see also Casey*, 2010 WL 3636140, at *4 ("Certification under [subsection] (b)(1)(A) is generally inappropriate where the primary relief sought is monetary damages."). As the primary relief sought by Lucas Subway is monetary damages, Lucas Subway does not satisfy the requirements under Rule 52.08(b)(1)(A).

Lucas Subway has made no argument that it falls under Rule 52.08(b)(1)(B), which typically applies to common funds. *See Amchem Prods., Inc.,* 521 U.S. at 614; *Otomo v. Nevada Ass'n Servs., Inc.,* No. 2:10-CV-2199 JCM GWF, 2013 WL 1249598, at *6 (D. Nev. Mar. 25, 2013) ("[T]his court finds that certification under Rule 23(b)(1)(B) would be inappropriate since plaintiffs' recovery is not limited by a capped fund.").

Lucas Subway also does not provide any argument that it satisfies Rule 52.08(b)(2). A court cannot certify a class under (b)(2) unless injunctive or declaratory relief is the "primary claim[] in the action." *Drimmer v. WD-40 Co.,* No. 06-CV-900 W(AJB), 2007 WL 2456003, at *5 (S.D. Cal. Aug. 24, 2007). Since this case is primarily one for damages, with Lucas Subway claiming total class damages of $646,875 (Certification Motion at 19) and an attorneys' fee award, Lucas Subway also does not fall under Rule 52.08(b)(2). *See Amchem Prods., Inc.,* 521 U.S. at 614 (noting that civil rights cases typically fall under subsection (b)(2)).

### 4. Lucas Subway has Failed to Satisfy the Requirements of Rule 52.08(a)

#### a. Lucas Subway has not made the Requisite Showing of Numerosity

The party seeking class certification bears the burden of demonstrating that it has satisfied *each* prerequisite element of Rule 52.08(a). *In re Hydrogen Peroxide,* 552 F.3d at 307; *Hope,* 353 S.W.3d at 74. The Court must conduct a rigorous analysis for each of these elements. *Wal-Mart Stores,* 131 S. Ct. at 2551-52; *In re Hydrogen Peroxide,* 552 F.3d at 309 n.5. These standards require the plaintiff to show some evidence of, or reasonably estimate, the number of class members. *Pagan,* 287 F.R.D. at 147.

In this case, Lucas Subway alleges that the proposed class includes more than one-thousand Missouri entities. Certification Motion at 14. This number is based on pure speculation since it is only based on the total number of orders that MPA received from Missouri customers.

Lucas Subway has not stated how many Missouri entities have already received refunds, how many Missouri entities have been satisfied with the services provided by MPA, and how many Missouri entities have not received refunds *and* been unsatisfied with the services provided by MPA. *See Pagan*, 287 F.R.D. at 147 (noting that the mere receipt of a recall notification letter did not mean that the recipient had any legal claim). This last group may include only Lucas Subway or a group so limited that joinder would be feasible and appropriate. Looking to *Pagan*, Lucas Subway has failed to make the necessary showing of numerosity and certification should be denied. *See id.* (denying class certification because the plaintiffs' assertion of numerosity was based on pure speculation and bare allegations).

<b>b.</b>   <b>Lucas Subway has not made the Requisite Showing of Commonality</b>

Rule 52.08(a)(2) requires the plaintiff to demonstrate that there are questions of law or fact common to the class. Mo. S. Ct. R. 52.08(a)(2). The common claims must depend on a common contention, which "must be of such a nature that it is capable of classwide resolution" such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim. *Wal-Mart Stores*, 131 S. Ct. at 2551.

In its brief, Lucas Subway raises certain "common questions" in support of its commonality argument: "Is Corporate Records' conduct the unauthorized practice of law? Is the Corporate Records solicitation deceptive and/or misleading to a reasonable person?" Certification Motion at 14. These are exactly the types of generalized common questions that the United States Supreme Court warned against in *Wal-Mart Stores*. 131 S. Ct. at 2551 ("Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."). "What matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity

of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* Lucas Subway does not make the requisite showing that the class action device would generate common answers to its "questions." Nor could it, since its money had and received claim requires individual subjective liability determinations.

*Kansas City Terminal* further undermines Lucas Subway's common question arguments. 396 S.W.2d at 680-81. In *Kansas City Terminal*, the Missouri Supreme Court reversed the trial court's class certification, finding that there was no evidence of any common interest or claim between the plaintiff and the other class members. *Id.* In particular, there was nothing in the record that demonstrated that the other railroads had any desire to be free of the defendant's inspection fees (this fee was the subject of plaintiff's lawsuit). *Id.* Like *Kansas City Terminal*, Lucas Subway has cast itself as the "self-appointed representative," but without any evidence that the class members it seeks to represent were dissatisfied whatsoever with either the product received or the fees that they paid MPA. The record evidence indicates the contrary: that MPA has "a *lot of satisfied customers* that like the product [and who] find value in the service." Fata Depo. 123:12-123. Similar to the plaintiffs in both *Wal-Mart Stores* and *Kansas City Terminal*, Lucas Subway has also not made the requisite showing of commonality pursuant to 52.08(a)(2).

### c.   Lucas Subway has not made the Requisite Showing of Typicality

Rule 52.08(a)(3) requires the plaintiff to demonstrate that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Mo. S. Ct. R. 52.08(a)(3). The typicality requirement is, among other things, intended to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. *Pagan*, 287 F.R.D. at 146. The commonality and typicality requirements often merge, because each serves as a guidepost for judging whether a class action is economical and "whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores*, 131 S. Ct. at 2551 n.5.

Lucas Subway's claims do not sufficiently relate to those of the proposed class. Lucas Subway essentially asserts that (1) it was not happy with MPA's product and (2) it voluntarily chose to refuse MPA's refund offer. There is no evidence that this conduct, and the claims stemming from this conduct, is typical of the claims of the class. In fact, the deposition testimony indicates the exact opposite – that nearly *all* of the purported class members were satisfied with MPA's service, and that the small fraction of those that were unhappy, *have already* accepted their refunds from MPA (contrary to Lucas Subway). Fata Depo. 123:12-123:25; Fata Depo. Ex. 6 (showing that 170 customers out of more than 1,700 orders requested refunds). Lucas Subway's claims of damages are, therefore, atypical of those class members who (a) have already received refunds and (b) do not feel that they should receive or want to receive refunds. *See Pagan*, 287 F.R.D. at 150; *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 665 (Cal. Ct. App. 1993).

### d.   Lucas Subway has not made the Requisite Showing of Adequacy

The adequacy requirement seeks to determine whether the representative party will fairly and adequately protect the interests of the class. Mo. S. Ct. R. 52.08(a)(4). To satisfy Rule 52.08(a)(4), a plaintiff must demonstrate that class counsel is qualified and competent to conduct the litigation and that the plaintiff has no interests that are antagonistic to the proposed class members. *Pagan*, 287 F.R.D. at 146.

By refusing to accept a refund and, instead, choosing to file the instant action and seeking class certification, Lucas Subway has shown itself to be an inadequate representative for its

proposed class members. "A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). Lucas Subway has not met its burden of proving that it will be an adequate representative.

### C.   Lucas Subway Lacks Standing To Pursue This Case On Behalf Of The Class

"A party has standing if he or she has a personal stake [in the action] arising from a threatened or actual injury." *Thruston v. Jefferson City Sch. Dist.*, 95 S.W.3d 131, 134 (Mo. Ct. App. 2003). In the class action context, and where a refund has been offered, the "named plaintiff must allege facts showing that he or she *personally* suffered economic loss as a result of an inadequate recall to state a cognizable injury on the basis of a recalled product." *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 273 (E.D. Pa. 2012) (denying class certification on standing grounds where the defendant offered an adequate refund to the named plaintiffs). The absence of an allegation that the "refund offer was insufficient *based on the experience of a named plaintiff* is fatal." *Id.; see also Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. 2011) ("If a party is without standing to bring a particular claim, a court *shall* dismiss the claim . . . .").

MPA offered to provide any customer a full refund, no questions asked, including the cost of shipping. MPA specifically offered this refund to Lucas Subway before this lawsuit was filed, but Lucas Subway declined to accept the offer and, instead, chose to file suit. Scott Lucas Depo. 49:13-49:25; 60:23-61:10; 68:2-68:5. Lucas Subway has declined to accept a full refund, one that would have allowed it to recoup *the entirety of its alleged loss. See In re McNeil*, 877 F. Supp. 2d at 273 ("Critically, no plaintiff has alleged that he or she sought a refund for a recalled

product and was denied one."). Under *In re McNeil*, Lucas Subway has no standing. *See id.* And when the named plaintiff lacks standing, no one may seek relief on behalf of the other members of the class. *Id.* at 270. Class certification must be denied.

### III.   RULING

For the foregoing reasons, it is HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Class Certification is hereby **DENIED**.  Plaintiff is to proceed, if at all, as an individual party.

SO ORDERED:

Circuit Court Judge Jon Beetem

Date: 12/31/15