# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KYLE ALEXANDER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-2159-KHV-JPO |
| | ) | |
| BF LABS INC., et al., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

I.      ALLEGATIONS, CLAIMS, AND FACTS ................................................................... 1

        A.      Sales, Orders, Production, Delivery, and Refunds.................................. 2

        B.      Testing.......................................................................................................... 5

        C.      Litigation..................................................................................................... 6

II.     CLASS CERTIFICATION STANDARDS ...................................................... 8

III.    CHOICE OF LAW ISSUES IMPACT PLAINTIFFS' PROPOSED CLASSES, AND
        THE LAWS OF THE STATES WHERE PEOPLE LIVE APPLY........................... 10

        A.      Kansas Choice of Law Rules Dictate that the Laws of the Fifty States Apply to
                the Putative Class Members' Claims ................................................. 11

        B.      Application of Kansas Law to Out-of-State Class Members' Claims Would Be
                Unconstitutional ........................................................................................ 13

                1.      True Conflicts Exist among the Laws of the States Where Customers Live
                        ......................................................................................................... 15

                        a.      The Consumer Protection Statutes Vary........................................ 17

                        b.      Unjust Enrichment Laws Vary........................................................ 19

                        c.      Conversion Laws Vary .................................................................. 23

                        d.      Punitive Damages Laws Vary........................................................ 24

IV.     PLAINTIFFS FAIL TO SATISFY ONE OR MORE OF THE REQUIREMENTS
        UNDER RULE 23(a)....................................................................................... 25

        A.      Plaintiffs Have Not Proven That There Are Common Issues of Law or Fact ...... 27

                1.      Plaintiffs' KCPA Claims............................................................ 28

                2.      Plaintiffs' Unjust Enrichment Claims ....................................... 32

                3.      Plaintiffs' Conversion Claims.................................................... 34

                4.      Additional Factors Impacting the Commonality Analysis...................... 36

        B.      Plaintiffs have Not Established that their Claims are Typical of the Putative Class
                ......................................................................................................... 38

C.  Defendants Do Not Contest Numerosity or Adequacy of Representation by Plaintiffs' Counsel .............................................................................................. 39

V.  **PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN TO SHOW THE REQUISITE ELEMENTS UNDER RULE 23(b)(3)** .................................................... 40

A.  A Class is Not the Superior Mechanism to Litigate These Claims ...................... 40

1.  The FTC Brought Identical Claims as the Plaintiffs, Investigated the Finances of BF Labs Inc. and Sonny Vleisides, Determined That There Was Insufficient Money or Assets Available for the Consumers it Purported to Represent, and Settled the Matter ........................................ 40

2.  The Johnson County District Attorney has Already Ordered BF Labs to Pay Refunds to Consumers ...................................................................... 41

3.  The Prior Actions and Settlements Preclude Certification Here, as a Class Proceeding Under These Circumstances Would Be Inefficient, Ineffectual, and Improvident ........................................................................................ 42

B.  A Class Will Not be Manageable ......................................................................... 44

C.  Common Issues Do Not Predominate .................................................................. 45

1.  Individual Issues Predominate Over Common Issues .............................. 45

a.  Individual Questions in Plaintiffs Consumer Protection Classes . 46

i.  Individual Questions Regarding What Each Class Member Was Told ......................................................................... 47

ii.  Individual Questions of Reliance ...................................... 47

iii.  Individual Questions Regarding Damages ........................ 49

b.  Individual Questions in Plaintiffs' Conversion Classes ................ 49

i.  Causation ........................................................................... 49

ii.  Damages ............................................................................ 50

iii.  Individual Questions Created by Differing and Changing Approaches to Purchase Orders, Refunds, and Testing .... 50

D.  Individual Questions in Plaintiffs' Unjust Enrichment Classes ............................ 50

E.  Plaintiffs Have Not Proposed a Manageable Trial Plan ....................................... 53

VI.  **CONCLUSION** ............................................................................................................ 53

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbeville Lumber Co. v. Richard*,
    350 So.2d 1292 (La. Ct. App. 1977).....................................................................................21

*Aberdeen-Springfield Canal Co. v. Peiper*,
    133 Idaho 82 (Idaho 1999).............................................................................................34

*Adair v. Freeman*,
    92 Idaho 773, 451 P.2d 519 (Idaho 1969) ....................................................................35

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) .......................................................................................38

*Albrecht v. Walter*,
    572 N.W.2d 809 (N.D. 1997) .........................................................................................21

*Allied Inv. Corp. v. Jensen*,
    731 A.2d 957 (Md. 1999) ...............................................................................................36

*Altadis USA, Inc. v. NPR, Inc.*,
    308 F. Supp.2d 1304 (M.D. Fla. 2004) .........................................................................23

*State ex rel. American Family Mut. Ins. Co. v. Clark*,
    106 S.W.3d 483 (Mo. 2003) (en banc) .........................................................................17

*In re American Medical Systems, Inc.*,
    75 F.3d 1069 (6th Cir. 1996) .........................................................................................17

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013).....................................................................................................9

*Schlinger v. McGhee*,
    268 P.3d 264 (Wyo. 2012).............................................................................................51

*Troxler v. Breaux*,
    105 So.3d 944 (La. Ct. App. 2012)...............................................................................51

*Andy's Towing, Inc. v. Bulldog Bldg. Systems, Inc.*,
    2011 WL 2433679 (D. Kan. June 14, 2011).................................................................12

*Antonson v. Robertson*,
    141 F.R.D. 501 (D. Kan. 1991).............................................................................10, 13

*Apodaca v. Unknown Heirs*,
   98 N.M. 620, 651 P.2d 1264 (1982) ..................................................................35, 36

*ATD Corp. v. DaimlerChrysler Corp.*,
   261 F. Supp.2d 887 (E.D. Mich. 2003)........................................................................23

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) .......................................................................................18

*Barnes v. American Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)......................................................................................10

*Batler, Capitel & Schwartz v. Tapanes*,
   517 N.E.2d 1216 (Ill. Ct. App. 1987) ........................................................................21

*In re Baycol Products Litigation*,
   218 F.R.D. 197 (D. Minn. 2003)......................................................................10, 20, 25

*Benedict v. Altria Group*,
   241 F.R.D. 668 (D. Kan. 2007)......................................................................... *passim*

*Benedict v. Altria Group, Inc.*,
   2007 WL 960049 .......................................................................................48, 49, 53

*Bennett v. Visa U.S.A., Inc.*,
   No. D2005-00659-COA-R9-CV, 2006 WL 770467 (Tenn. Ct. App. Mar. 27,
   2006) ...................................................................................................................33

*In re Bisphenol-A Polycarbonate Plastic Products Liability Litigation*,
   276 F.R.D. 336 (W.D. Mo. 2011)...............................................................................11

*Bostick v. St. Jude Medical, Inc.*,
   No. 03-2626 BV, 2004 WL 3313614 (W.D. Tenn. Aug. 17, 2004) .......................................10

*Boyce v. Freeman*,
   39 P.3d 1062 (Wyo. 2002).......................................................................................21

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ......................................................................... *passim*

*Brown v. Electrolux Home Products, Inc.*,
   817 F.3d 1225 (11th Cir. 2016) .................................................................................8

*Bukowski v. Patel*,
   266 B.R. 838 (E.D. Wis. 2001)..................................................................................23

*C.B. Mills v. Hawranik*,
   No. 91 C. 5797, 1994 WL 113088 (N.D. Ill. Mar. 30, 1994) ...............................................23

*In re Canon Cameras*,
   237 F.R.D. 357 (S.D.N.Y. 2006) ............................................................................................37

*Cantor Fitzgerald, L.P. v. Cantor*,
   724 A.2d 571 (Del. Ch. 1998)................................................................................................20

*Castano v. American Tobacco Corp.*,
   84 F.3d 734 (5th Cir. 1996) ...........................................................................................16, 17

*Cavaliere v. Margaretten & Co.*,
   No. 94CV01928 (ABN), 1996 WL 571178 (D. Conn. Jul. 10, 1996)....................................20

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998)................................................................................................16

*City of Sierra Vista v. Cochise Enterprises, Inc.*,
   697 P.2d 1125 (Ariz. Ct. App. 1984)...............................................................................20, 33

*Clay v. American Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) .............................................................................................20

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*,
   95 F.R.D. 168 (D. Del. 1982) ................................................................................................20

*Cole v. General Motors Co.*,
   484 F.3d 717 (5th Cir. 2007) .................................................................................................11

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)............................................................................................................9

*Commander Properties Corp. v. Beech Aircraft Corp.*,
   164 F.R.D. 529 (D. Kan. 1995)..............................................................................................12

*Community Builders, Inc. v. Indian Motorcycle Associates, Inc.*,
   692 N.E.2d 964 (Mass. App. Ct. 1998) .................................................................................21

*Community Guardian Bank v. Hamlin*,
   898 P.2d 1005 (Ariz. Ct. App. 1995).....................................................................................20

*Correa v. Waiakea Mill Co.*,
   31 Haw. 317 (Haw. 1930).......................................................................................................24

*Cross v. Berg Lumber Co.*,
   7 P.3d 922 (Wyo. 2000)..........................................................................................................22

*Crowe v. Tull*,
   126 P.3d 196 (Colo. 2006)......................................................................................................31

*Darcars Motors of Silverspring, Inc. v. Borzym*,
  841 A.2d 828 (2004) ....................................................................................................35

*Daugherty v. Sony Electronics*,
  No. E2004-02627-COA-R3-CV, 2006 WL 197090 (Tenn. Ct. App. E.S., Jan.
  26, 2006) ....................................................................................................................33

*Daup v. Tower Cellular, Inc.*,
  737 N.E.2d 128 (Ohio Ct. App. 2000) .......................................................................21

*DCB Const. Co. Inc. v. Central City Development Co.*,
  965 P.2d 115 (Colo. 1998) .........................................................................................21

*DeChristoforo v. Machala*,
  685 A.2d 258 (R.I. 1996) ...........................................................................................23

*Dews v. Halliburton Industries, Inc.*,
  708 S.W.2d 67 (Ark. 1986) ........................................................................................21

*Dinosaur Development, Inc. v. White*,
  265 Cal. Rptr. 525 (Cal. Ct. App. 1989) ....................................................................21

*Doe v. HCA Health Services of Tennessee, Inc.*,
  46 S.W.3d 191 (Tenn. 2001) ................................................................................33, 39

*Doe v. Unified School Dist. 259*,
  2007 WL 619505 (D. Kan. Feb. 26, 2007) ............................................................38, 39

*Doll v. Chicago Title Ins. Co.*,
  246 F.R.D. 683 (D. Kan. 2007) ............................................................................11, 12

*Dragt v. Dragt/DeTray, LLC*,
  139 Wash. App. 560, 161 P.3d 473 (Wash. Ct. App. 2007) .......................................34

*Estate of Draper v. Bank of America, N.A.*,
  205 P.3d 698 (Kan. 2009) ..........................................................................................34

*Dubose v. First Sec. Sav. Bank*,
  183 F.R.D. 583 (M.D. Ala. 1997) ....................................................................13, 14, 25

*Durst v. Milroy Gen. Contracting, Inc.*,
  52 A.3d 357 (Pa. Super. Ct. 2012) .............................................................................51

*Edgington v. R.G. Dickinson and Co.*,
  139 F.R.D. 183 (D. Kan. 1991) .............................................................................45, 47

*Emig v. American Tobacco Co.*,
  184 F.R.D. 379 (D. Kan. 1998) ........................................................................ *passim*

*Esplin v. Hirschi,*
  402 F.2d 94 (10th Cir.1968) ....................................................................................45

*In re Estate of Peck,*
  497 N.W.2d 889 (Iowa 1993) ...................................................................................21

*Ex parte Exxon Corp.,*
  725 So.2d 930 (Ala. 1998)........................................................................................17

*Far West Federal Bank, S.B. v. Office of Thrift Supervision,*
  119 F.3d 1358 (9th Cir. 1997) ..................................................................................32

*Farno v. Ansure Mortuaries of Indiana, LLC,*
  953 N.E.2d 1253 (Ind. Ct. App. 2011)......................................................................43

*Feitler v. Animation Celection, Inc.,*
  170 Or. App. 702, 13 P.3d 1044 (Ore. Ct. App. 2000)..............................................31

*Ferguson v. Coronado Oil Co.,*
  884 P.2d 971 (Wyo. 1994)........................................................................................23

*Fisher v. Bristol-Myers Squibb Co.,*
  181 F.R.D. 365 (N.D. Ill. 1998)................................................................................18

*Freeman Industries, LLC v. Eastman Chemical Co.,*
  172 S.W.3d 512 (Tenn. 2005)...................................................................................33

*FTC v. BF Labs Inc., et al.,*
  Case No. 4:14-cv-00815-BCW ...........................................................................40, 41

*Gee v. Eberle,*
  420 A.2d 1050 (Pa. Super. 1980)..............................................................................21

*General Telephone Co. of Southwest v. Falcon,*
  457 U.S. .....................................................................................................................46

*Georgine v. Amchem Products, Inc.,*
  83 F.3d 610 (3d Cir. 1996), *aff'd sub nom. Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................................17

*Grandalski v. Quest Diagnostics, Inc.,*
  767 F.3d 175 (3d Cir. 2014)......................................................................................53

*Gray v. Liberty Nat. Life Ins. Co.,*
  623 So.2d 1156 (Ala. 1993).......................................................................................24

*Green v. Waidner,*
  324 S.E.2d 331 (S.C. Ct. App. 1984).........................................................................24

*Greenbank v. Thompson*,
  2010 WL 5549231 (Tenn. Ct. App. Dec. 29, 2010) ............................................................35

*Group Health Plan, Inc. v. Philip Morris Inc.*,
  188 F. Supp.2d 1122 (D. Minn. 2002)................................................................................48

*Hageman v. Twin City Chrysler-Plymouth Inc.*,
  681 F. Supp. 303 (M.D.N.C. 1988) ....................................................................................48

*Hale v. Enerco Group, Inc.*,
  288 F.R.D. 139 (N.D. Ohio 2012) ......................................................................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014)..........................................................................................................9

*Harding v. Tambrands Inc.*,
  165 F.R.D. ..................................................................................................................... *passim*

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
  649 A.2d 518 (Conn. 1994) .................................................................................................22

*Henry Schein, Inc. v. Stramboe*,
  102 S.W.3d 675 (Tex. 2002)................................................................................................48

*Hernandez v. Ashley Furniture Industries, Inc.*,
  Civ. Action No. 10-5459, 2013 WL 2245894 (E.D. Pa. May 22, 2013) ..........................52, 53

*Hill v. Cross Country Settlements, LLC*,
  402 Md. 281 (2007) .............................................................................................................34

*Hutton v. Klabal*,
  726 F. Supp. 67 (S.D.N.Y. 1989) ........................................................................................22

*Imber-Gluck v. Google Inc.*,
  2015 WL 1522076 (N.D. Cal. Apr. 3, 2015) ......................................................................43

*In re Jackson Nat. Life Ins. Co. Premium Litig.*,
  183 F.R.D. 217 (W.D. Mich. 1998) ....................................................................................20

*Jamieson v. Vatterott Educational Center, Inc.*,
  473 F. Supp.2d 1153 (D. Kan. 2007)...................................................................................11

*Estate of Johnson v. Adkins*,
  513 So.2d 922 (Miss. 1987)..................................................................................................22

*Johnson v. Nextel Communications Inc.*,
  780 F.3d 128 (2d Cir. 2015).................................................................................................16

*Karnuth v. Rodale, Inc.*,
    No. Civ.A. 03-742, 2005 WL 1683605 (E.D. Pa. Jul. 18, 2005).............................................18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941).............................................................................................................11

*Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs*,
    713 N.E.2d 1075 (Ohio Ct. App. 1998).............................................................................22

*Landmark Land Co., Inc. v. FDIC*,
    256 F.3d 1365 (Fed. Cir. 2001)..........................................................................................32

*Landskroner v. Landskroner*,
    797 N.E.2d 1002 (Ohio Ct. App. 2003).............................................................................23

*Letouzel v. Eastman Kodak Co.*,
    No. 05-CV-6464T, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) ......................................10

*Lilly v. Ford Motor Co.*,
    No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002).....................................................20

*Limbach Co., LLC v. City of Philadelphia*,
    905 A.2d 567 (Pa. Cmwlth. 2006) ......................................................................................52

*Lucas Subway Midmo, Inc. v. The Mandatory Poster Agency Inc.*,
    Case No. 13-AC-CC00476 (Cole County, Missouri) ...........................................................43

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000).....................................................................................16, 18

*Mack v. General Motors Acceptance Corp.*,
    169 F.R.D. 671 (M.D. Ala. 1996).........................................................................................25

*In re Managed Care Litigation*,
    185 F. Supp.2d 1310 (S.D. Fla. 2002) ................................................................................21

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012)..................................................................................................52

*In re Marriage of Langham and Kolde*,
    153 Wash.2d 553, 106 P.3d 212 (Wash. 2005) ...................................................................36

*Martinez v. Weyerhaeuser Mortgage Co.*,
    No. 94-1610-CIV-RYSKAMP, 1997 WL 33481746 (S.D. Fla. June 25, 1997) ....................10

*Matsuda v. Wada*,
    101 F. Supp.2d 1315 (D. Haw. 1999) ..................................................................................22

ix

*MC Baldwin Financial Co. v. DiMaggio Rosario & Veraja, LLC*,
    364 Ill. App.3d 6, 300 Ill. Dec. 601, 845 N.E.2d 22 (2006) ....................................................32

*McHan v. Grandbouche*,
    99 F.R.D. 260 (D. Kan. 1983)......................................................................................................47

*In re McWeeney*,
    255 B.R. 3 (Bankr. S.D. Ohio 2000)...........................................................................................23

*Miller v. Hehlen*,
    209 Ariz. 462, 104 P.3d 193 (Ariz. Ct. App. 2005)...................................................................35

*Monreal v. Potter*,
    367 F.3d 1224 (10th Cir. 2004) ..................................................................................................28

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2002)................................................................................................18

*Murdock-Bryant Const. Inc. v. Pearson*,
    703 P.2d 1197 (Ariz. 1985)........................................................................................................21

*Nat'l Credit Union Admin. v. Shel-Tec Ltd., LLC*,
    No. CV-12-02500-PHX-NVW, 2013 WL 4231016 (D. Ariz. Aug. 15, 2013) .......................50

*National Amusements, Inc. v. New Jersey Turnpike Authority*,
    619 A.2d 262 (N.J. Super. L. 1992)...........................................................................................21

*Nieberding v. Barrette Outdoor Living, Inc.*,
    302 F.R.D. 600 (D. Kan. 2014)..................................................................................................30

*Norman v. Nash Johnson & Sons' Farms, Inc.*,
    537 S.E.2d 248 (N.C. Ct. App. 2000) ........................................................................................23

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ......................................................................................................37

*Ontiveros Insulation Co., Inc. v. Sanchez*,
    129 N.M. 200, 3 P.3d 695 (N.M. Ct. App. 2000) ....................................................................34

*Panag v. Farmers Ins. Co. of Washington*,
    166 Wash.2d 27, 204 P.3d 885 (2009).......................................................................................31

*Parks v. Macro-Dynamics, Inc.*,
    121 Ariz. 517, 591 P.2d 1005 (Ariz. Ct. App. 1979).................................................................30

*Paschall's, Inc. v. Dozier*,
    407 S.W.2d 150 (Tenn. 1966).....................................................................................................33

*Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*,
844 S.W.2d 508 (Mo. Ct. App. 1992)........................................................................22

*In re Paxil Litigation*,
212 F.R.D. 539 (C.D. Cal. 2003) ............................................................................15

*Pearson v. Philip Morris, Inc.*,
2006 WL 663004 (Or. Cir. Ct. Feb. 23, 2006)........................................................29

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)........................................................................................13, 14, 15

*Picus v. Wal-Mart Stores, Inc.*,
256 F.R.D. 651 (D. Nev. 2009)................................................................................31

*PlaNet Productions., Inc. v. Shank*,
119 F.3d 729 (8th Cir. 1997) ....................................................................................22

*Pound v. Airosol Co.*,
368 F. Supp.2d 1210 (D. Kan. 2005) .......................................................................29

*In re Prempro.*,
230 F.R.D. 555 (E.D. Ark. 2005)..........................................................10, 18, 19, 20

*Ragland v. Sheehan*,
846 P.2d 1000 (Mont. 1993) ....................................................................................21

*Raskin v. Allison*,
30 Kan. App.2d 1240, 57 P.3d 30 (2002) ................................................................12

*Record Data, Inc. v. Schoolcraft*,
No. 83 C 9531, 1986 WL 4424 (N.D. Ill. Apr. 8, 1986)..........................................23

*Redd Iron, Inc. v. International Sales and Services Corp.*,
200 P.3d 1133 (Colo. Ct. App. 2008) ......................................................................32

*The Redemptorists v. Coulthard Services, Inc.*,
801 A.2d 1104 (2002) ...............................................................................................35

*Resolution Trust Corp. v. Federal Savings and Loan Ins. Corp.*,
25 F.3d 1493 (10th Cir. 1994) ..................................................................................32

*In re Rezulin Products Liability Litigation*,
210 F.R.D. 61 (S.D.N.Y. 2002) ....................................................................15, 18, 19

*Richardson's Restaurants, Inc. v. National Bank of South Carolina*,
403 S.E.2d 669 (S.C. Ct. App. 1991)........................................................................24

*Romero v. Bank of the Southwest,*
   135 N.M. 1, 83 P.3d 288 (N.M. Ct. App. 2003) ....................................................32

*Rothwell v. Chubb Life Ins. Co.,*
   191 F.R.D. 25 (D.H.H. 1998) ...............................................................................25

*Sanders v. Johnson & Johnson, Inc.,*
   Civ. No. 0-3-2663 (GEB), 2006 WL 1541033 (D.N.J. June 2, 2006) ...................25

*Schmidt v. Interstate Federal Sav. and Loan Ass'n,*
   74 F.R.D. 423 (D.D.C. 1977)................................................................................20

*Schwartz v. Upper Deck Co.,*
   183 F.R.D. 672 (S.D. Ca. 1999).............................................................................10

*Selgado v. Commercial Warehouse Co.,*
   86 N.M. 633, 526 P.2d 430 (Ct. App. 1974).........................................................29

*Shook v. El Paso County,*
   386 F.3d 963 (10th Cir. 2004) ................................................................................8

*Smith v. MCI Telecommunications Corp.,*
   124 F.R.D. 665 (D. Kan. 1989)..............................................................................47

*Snider v. MidFirst Bank,*
   42 Kan. App.2d 265, 211 P.3d 179 (2009) ...........................................................35

*Spence v. Glock, Ges.m.b.H,*
   227 F.3d 308 (5th Cir. 2000) ...........................................................................15, 16

*St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp,*
   605 F.2d 1169 (10th Cir. 1979) ..............................................................................2

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003)..........................................................................................15, 24

*Stuart v. Colorado Interstate Gas Co.,*
   271 F.3d 1221 (10th Cir. 2001) .............................................................................11

*In re Stucco Litigation,*
   175 F.R.D. 210 (E.D.N.C. 1997) .....................................................................18, 25

*Summer Oaks Ltd. Partnership v. McGinley,*
   183 Or. App. 645, 55 P.3d 1100 (Or. App. 2002) .................................................34

*Taylor v. Powertel, Inc.,*
   551 S.E.2d 765 (Ga. Ct. App. 2001).....................................................................24

*In re Teletronics Pacing System, Inc.*,
    172 F.R.D. 271 (S.D. Ohio 1997) ........................................................25

*Temmen v. Kent-Brown Cher. Co.*,
    227 Kan. 45, 605 P.2d. 95 (1980) .......................................................36

*Thompson v. Brown*,
    76 N.W. 819 (Iowa 1898) ...................................................................22

*Thompson v. Jiffy Lube Intern., Inc.*,
    250 F.R.D. 607 (D. Kan. 2008)...........................................12, 18, 20, 25

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 93 Cal. Rptr.3d 559, 207 P.2d 20 (2009) ....................31

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) .............................................................9

*True v. Conagra Foods, Inc.*,
    2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ...........................................14

*Tyler v. Alltel Corp.*,
    265 F.R.D. 405 (E.D. Ark. 2010).....................................................18, 20

*Tylka v. Gerber Products Co.*,
    178 F.R.D. 493 (N.D. Ill. 1998)...........................................................18

*U.S. East Telecommunications, Inc. v. U.S. West Information Systems, Inc.*,
    No. 87 Civ. 2924, 1991 WL 64461 (S.D.N.Y. Apr. 11, 1991)...............22

*U.S. Fidelity and Guar. Co. v. S.B. Phillips Co.*,
    359 F. Supp.2d 189 (D. Conn. 2005) ...................................................23

*United Leasing Corp. v. Thrift Ins. Corp.*,
    440 S.E.2d 902 (Va. 1994)..................................................................23

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ...........................................................52

*Vickery v. Ritchie*,
    88 N.E. 835 (Mass. 1909) ...................................................................22

*Vigiletti v. Sears, Roebuck & Co.*,
    42 A.D.3d 497, 838 N.Y.S.2d 785 (2007) ............................................32

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..................................................................8, 9, 27

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) .............................................................................15

*Washington Mutual Bank, FA v. Superior Court*,
15 P.3d 1071 (Cal. 2001) ......................................................................................17

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001) .......................................................................................48

*White v. Empire Express, Inc.*,
392 S.W.3d 696 (Tenn. Ct. App. 2012) ..................................................................35

*White v. State Farm Mut. Auto. Ins. Co.*,
No. A-99-405, 1995 WL 521004 (Neb. Ct. App. Sept. 5, 1995)............................21

*Willamette Quarries, Inc. v. Wodtli*,
308 Or. 406, 781 P.2d 1196 (Or. 1989) ................................................................35

*Wong v. PartyGaming, Ltd*,
No. 1:06-CV-02376, 2007 WL 851879 (N.D. Ohio Mar. 19, 2007) ......................10

*Yadlosky v. Grant Thornton, LLP*,
No. 99-CV-76337, 2000 WL 1287906 (E.D. Mich. Mar. 21, 2000) ......................15

*Zarrella v. Minnesota Mut. Life Ins. Co.*,
824 A.2d 1249 (R.I. 2003) ....................................................................................17

*Zinser v. Accufix Research Institute,,. Inc.*,
253 F.3d 1180 (9th Cir. 2001) ..............................................................................17

**Statutes**

Idaho Code Ann. § 48-608 (2008) ...............................................................................31

K.S.A. 50-634(d)......................................................................................................47, 48

K.S.A. § 50-624 ..............................................................................................................29

K.S.A. §§ 50-626, 627 ...................................................................................................29

K.S.A. § 50-634(d).........................................................................................................29

Nev. Rev. Stat. Ann. § 41.600 (2007)...........................................................................31

**Other Authorities**

D. Kan. Rule 23.1(d).........................................................................................................8

Fed. R. Civ. P. 23(a), (b)(3) ..........................................................................................10

Fed. R. Civ. P. 23(b)(3)(A)–(D) ........................................................................................10

4 NEWBERG ON CLASS ACTIONS § 13:36 ...........................................................................16

Restatement (Second) of Torts...........................................................................................35

Restatement (Second) Torts § 546 (1977) ........................................................................29

Restatement (Third) of Restitution and Unjust Enrichment ...........................................32

Rule 23 ........................................................................................................................ *passim*

Rule 23(a)...........................................................................................................9, 25, 46

Rule 23(b) ...............................................................................................................................9

Rule 23(b)(3).............................................................................................................. *passim*

Plaintiffs have not satisfied their burden to establish each of the requisites for certifying a class in this case. Among other things, a class would not be the superior manner in which to proceed with the claims, a class would be unmanageable, and Plaintiffs cannot establish that common issues of fact and law predominate. Accordingly, Plaintiffs' amended motion should be denied.

## I.      ALLEGATIONS, CLAIMS, AND FACTS

BF Labs Inc. was incorporated as a Wyoming corporation in 2011. (Bourne 30(b)(6) deposition, 5:23–6:1, attached as Exhibit A.) Its original founders were Nasser Ghoseiri and Vleisides. (*Id*.) Vleisides and Ownby are both on BF Labs' board of directors. (*Id*. at 9:2–9.) When BF Labs was founded, the Bitcoin mining hardware industry did not yet exist. (Declaration of Sonny Vleisides, attached as Exhibit B, ¶ 2.) BF Labs was the first company to develop a commercial, purpose-built product to perform the secured hash algorithm 256 calculations that are required for Bitcoin mining. (*Id*. at ¶ 3.) BF Labs offered products based on its own proprietary, computer chip technology; no other company had developed this type of chip before BF Labs entered the market. (*Id*. at ¶ 4.)

The company's efforts were, by their nature, based on expectations, projections, and best estimates that were regularly revised as development of truly new products progressed. (*Id*. at ¶ 5.) BF Labs did its best to communicate the production and delivery estimates to its customers throughout development. (*Id*.) Due to many variables in the supply and vendor production timelines, BF Labs' communications were different at different times. (*Id*.) Over time, BF Labs hired management-level executives to handle the challenges facing the company. (*Id*. at ¶ 6.) BF Labs also retained consultants for advice on financial and marketing issues. (Ex. A, 23:20–24:1.)

55335838.1

### A.     Sales, Orders, Production, Delivery, and Refunds

While BF Labs used a preorder model for a period of its existence, BF Labs did not start out with a preorder business model: in fact, its customers encouraged it because many wanted to be "first in line" to get BF Labs' new products when they were completed, and the customers offered to pay in advance to secure their spot in the queue. (Vleisides 30(b)(6) deposition, 16:19–18:7, attached as Exhibit C.) To accommodate this customer preference, BF Labs created a process by which preorders could be placed for its products. (*Id.*) However, BF Labs was surprised by the extent of controversy that resulted from the preorder model combined with extremely volatile Bitcoin market price changes, vendor and supplier issues, and subsequent delivery delays. (Ex. B, ¶ 8.) The vendor, supplier, and delivery delays that BF Labs experienced in developing the Bitcoin mining machines were substantial and unexpected. (Ex. A., 202:15–203:3.) Some of BF Labs' sales were not pre-ordered but sold off the shelf. (Ex. C, 38:8–10.) Eventually, BF Labs ended the preorder model in July 2014. (Ex. B, ¶ 8.)

BF Labs believes that its disclosure of the lengthy development and delivery timeframes was adequate and appropriate, particularly in light of its audience of potential Bitcoin mining customers, many of whom were sophisticated and tech savvy. (*Id.* at ¶ 9.) BF Labs made it known to potential customers that the preordered products did not exist at the time of preorder, the products were under development, and that shipping would occur later on a projected future schedule. (*See* Rex Brocki Declaration, filed in Case No. 4:14-cv-815-BCW, Doc. 155-9, ¶¶ 4–8.)[1] BF Labs made detailed statements and provided periodic updates in blogs and its website about production and shipping of its products. (*See* Interrogatory Answer No. 8 to BF Labs Inc.'s

---

[1] Federal Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp*, 605 F.2d 1169, 1172 (10th Cir. 1979).

Third Supplemental Answers and Objections to Plaintiffs' First Interrogatories, dated June 17, 2015, attached as Exhibit D.) BF Labs relied on the contracts and timelines furnished by qualified vendor experts. (*Id*.; Ex. A, 128:8–11.) As those timelines changed, BF Labs updated projections and estimates and did not conceal material facts about the manufacturing and shipping processes. (Ex. C, 35:5–16; *see also* 4:14-cv-815-BCW, Doc. 155-9, ¶ 6.) Some of BF Labs' products met its shipping estimates while others did not. (Ex. C, 37:13–21.) What was disclosed to each customer of BF Labs' website would likely have been different from what was disclosed to the named Plaintiffs. (*Id.*; *see also* Interrogatory Answer No. 8 to Ex. D.) BF Labs even advised strongly and repeatedly against ordering if a buyer was not comfortable waiting to receive a Bitcoin miner. (Ex. A, 183:10–17; Interrogatory Answer No. 8 to Ex. D.)

At some point, customers were offered additional performance for free for the delays and BF Labs also hosted equipment for customers while they waited for products at no cost. (*Id.* at 90:17–91:1.) BF Labs had thousands of unique customers. (Ex. A at 83:15–29.) BF Labs took orders from customers for the 65 NM product whose residences included 50 states and the District of Columbia and over 170 countries. (Ex. B at ¶ 23.) BF Labs took orders from customers for the 28 NM product whose residences included 50 states and the District of Columbia and over 110 countries. (*Id.* at ¶ 24.) Less than four-tenths of one percent of BF Labs' orders of 65 NM Bitforce products were from Kansas customers. (*Id.* at ¶ 21.) Less than three-tenths of one percent of BF Labs' orders of 28 NM products were from Kansas customers. (*Id.* at ¶ 22.)

At its peak, BF Labs had over 100 employees working to deliver advanced technology products never created before, at speeds far faster than the supply chain vendors were used to. (*Id.* at ¶ 7.) BF Labs offered three different generations of bitcoin miners and sixteen different

products. (*See* Interrogatory Answer No. 2 to BF Labs Inc.'s Answers and Objections to Plaintiffs' First Interrogatories, dated February 20, 2015, attached as Exhibit E.) BF Labs also had many different companies who produced parts for BF Labs' product lines. (*Id*. at No. 3.) Although BF Labs experienced growing pains, other than a handful of its customers,[2] most of whom ordered from BF Labs' first three generations of products were shipped their equipment or received their money back, with approximately 58,000 units shipped and more than $5.5 million refunded. (Ex. B at ¶ 12.) Orders and preorders were taken at different times and BF Labs' products were shipped at different times. (*See* Interrogatory Answer No. 5 to Ex. D.)

BF Labs' policies and practices related to preorders and refunds were clear, ethical, appropriate and, in many instances, the standard in the Bitcoin-mining-hardware industry. (Ex. B at ¶ 11.) From time to time, the policies and practices were revised to accommodate production-chain, customer-service, and business-need realities as part of being the first-mover in this burgeoning technology market. (Ex. B at ¶ 13.) BF Labs did not project precise delivery dates but rather provided anticipated, estimated schedules, and projected dates. (Ex. A at 127:18–128:18.) Product development and shipping projections were in large part based (and dependent) upon BF Labs' suppliers and vendors. (*Id*.)

BF Labs did not identify particular customers' products prior to shipment. (Ex. B at ¶ 17.) BF Labs produced products in bulk and ordinarily fulfilled orders in the order received. (*Id*. at ¶ 18.) If a defect was found in a tested miner, then the next available successfully tested unit was shipped to that next customer. (*Id*.) No customer "waited" for an unsuccessfully tested machine to be fixed. (*Id*.) Some customers who ordered the 65 NM Bitforce products got the product right away, while others may have waited for a period of time. (*Id*. at ¶ 20.)

---

[2] For instance, a customer may not have received a product because he or she could not be located even though BF Labs shipped it to the location requested by the customer.

As noted above, virtually all of the 65 NM Bitforce products were delivered or valid refunds paid. (*Id.* at ¶ 19.) As to the Monarch line (28 NM), BF Labs was in the process of making refunds or fulfilling orders when the FTC filed its *ex parte* motion for a temporary restraining order and receivership, which were eventually rejected by the Court overseeing that matter. (*Id.* at ¶ 25.) In all of BF Labs' product lines, over 58,000 devices were shipped. (*See* Bruce Bourne Declaration filed in Case No. 4:14-cv-815-BCW, Doc. 155-3 at ¶ 5, attached as Exhibit F.) Fewer than 2% were ever returned. (*See* Josh Zerlan Declaration, filed in Case No. 4:14-cv-815-BCW, Doc. 155-11 at ¶ 7, attached as Exhibit G.) BF Labs had refund policies in place which changed from time to time and these policies were disclosed to customers. (Ex. B, ¶ 26.) On numerous occasions, even though a refund request was not immediately available under the then-existing policies, BF Labs made exceptions. (*Id.*). In total, over $20 million in refunds were paid to customers. (*Id.*)

## B.      Testing

In order to confirm its products worked reliably and met the advertised performance specifications, BF Labs tested them on using real world conditions on the live bitcoin network before they were designated for shipment. (Ex. B, ¶ 16.) BF Labs' equipment-testing practices, protocols, and policies were well within electronic industry standards. (Ex. G, ¶ 4.) Consumers wanted products that had been appropriately tested and not subject to significant risk of defect. (*Id.* at ¶ 27.) In this sophisticated technology niche in which component manufacturers struggled to keep pace with new product generations, each batch of boards and chips was tested because each batch could potentially yield unexpected challenges. (Ex. B at ¶ 14). BF Labs' rigorous testing and quality-control practices were expressly designed to accommodate these risks, and resulted in a product-return rate of less than 2% of all shipped products. (Ex. G, ¶¶ 6, 7.) BF Labs did not sacrifice quality for speed. (Ex. B at ¶ 14.) To do otherwise would have harmed

5

customers' user experiences, damaged BF Labs' reputation, and increased costs overall. (Ex. G, ¶¶ 8, 9.) Failing to test each piece of equipment could have led to significantly higher defect and returns. (*Id*.) And burn-in testing was standard industry practice. (*Id*. at ¶ 4.)

BF Labs' testing of miners typically occurred over a few hours, but occasionally a few days if over a weekend. (Ex. B at ¶ 15.) BF Labs did not control the live network, did not control all machines on the network, and did not control computational difficulty. (Ex. G, ¶¶ 20–23.) Live testing of the miners was by far the best option. (*Id*. at ¶ 16.) A closed system test could not completely replicate the live environment, and therefore did not provide the quality-control assurances that BF Labs required for its products. (*Id*. at ¶¶ 11–13.)

### C.    Litigation

As mentioned, a few months after Plaintiffs filed this action against BF Labs, the Federal Trade Commission filed a complaint in the United States District Court for the Western District of Missouri based on the same set of operative facts and obtained an *ex parte* temporary restraining order and temporary receivership. (*See* Case No. 4:14-cv-00815-BCW (W.D. Mo.)) While the Missouri federal court later denied the FTC's request for a permanent injunction and ended the receivership, the effect on BF Labs was devastating and costly. (Ex. B, ¶ 25.) After significant discovery and the demise of BF Labs' continued operations, BF Labs, Vleisides, and the FTC entered into a stipulated final order on February 25, 2016 that directed BF Labs to pay $15,000 and Vleisides to pay $4,000 based on sworn financial statements that were submitted to the FTC. (*See* Case No. 4:14-cv-00815-BCW (W.D. Mo.), Doc. No. 377, p. 7.) Judgment in the amount of $38,615,161 was entered in favor of the FTC against BF Labs and Vleisides, jointly and severally, but was suspended based on the truthfulness, accuracy, and completeness of BF Labs' and Vleisides' sworn financial statements. (*Id*.)

Proceeding separately from the FTC, the Johnson County District Attorney undertook its own investigation of BF Labs. (Ex. B, ¶ 27.) The Johnson County District Attorney contended that BF Labs had violated the Kansas Consumer Protection Act and sought restitution for consumers who were owed refunds. (*Id*.). On October 2, 2015, a Journal Entry of Consent Judgment ("Consent Judgment") was entered by Judge Elliott in the Tenth Judicial District Court in Johnson County, Kansas against BF Labs Inc. (*See* Case No. 15-cv-60002 (Doc. No. 4) (attached as Exhibit H).) The Consent Judgment provided that BF Labs shall continue to satisfy outstanding refund requests until all un-refunded consumers had been refunded. (*Id*. at p. 6.) Another term of the Consent Judgment stated that "Defendant shall designate no less than 65% of the gross margin from new consumer sales to be utilized for repayment of outstanding consumer restitution" and "Defendant shall devote no less than 35% of the balance of its primary cash operating account as of the end of each calendar month to refunds for un-refunded consumers in the following calendar month." (*Id*. at pp. 8–9.) The Johnson County District Court retained jurisdiction should any violation of any term of the Consent Judgment be committed. (*Id.* at 10.) BF Labs entered into this consent judgment to save litigation costs. (Ex. B, ¶ 27.)

On April 4, 2014, Plaintiffs filed this putative class action against BF Labs Inc. on behalf of all persons who prepaid BF Labs for 65 NM or 28 NM bitcoin mining machines between September 3, 2012 and July 17, 2014. (*See* Complaint (Doc. 1) and First Amended Complaint (Doc. 123).) Plaintiffs later added Sonny Vleisides and Jeffrey Ownby as Defendants in their First Amended Complaint. (Doc. 123). Plaintiffs contend Defendants violated the Kansas Consumer Protection Act, Defendants were unjustly enriched, and BF Labs committed conversion. (*Id.*) The Plaintiffs' attempt to obtain compensation in this private suit is a third piece of litigation arising from the same set of facts. Months ago, the parties engaged in

settlement discussions and the Defendants agreed to a proposed settlement that provided an opportunity for class relief in the event future funds became available (consistent with the consent judgment in the Johnson County, Kansas matter). The parties recognized that refunds of over $20 million had already been paid to consumers, while the proposed Settlement Agreement stated that BF Labs had approximately $8,024,964 of refunds requested still to be paid as of October 31, 2015. (Doc. 150-1 at pp. 2, 12.) Plaintiffs' counsel represented they had investigated the financial condition of BF Labs and determined that BF Labs currently had insufficient assets to satisfy the refund requests, any class-wide settlement, or any jury verdict. (*Id*.) This is consistent with BF Labs', Vleisides', and Ownby's current financial condition. (*See* Sonny Vleisides Declaration Under Seal, ¶¶ 1–8, attached as Exhibit I; *see also* Jeffrey Ownby Declaration Under Seal, ¶¶ 2–12, attached as Exhibit J.) The Court rejected the proposed settlement and denied Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 150) on September 22, 2016. (Doc. 156.)

## II.   CLASS CERTIFICATION STANDARDS

Class actions are an exception to the rule that cases typically should be litigated on an individual basis rather than on behalf of unnamed individuals. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). There is, thus, a presumption against class certification. *See Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). While certification is subject to the trial court's discretion, *Shook v. El Paso County*, 386 F.3d 963, 967 (10th Cir. 2004), the court must nevertheless conduct a rigorous analysis to determine whether the parties seeking certification have shown that the putative class satisfies the prerequisites of Rule 23, *Dukes*, 131 S. Ct. at 2551.

Plaintiffs have the burden to prove that all of the requirements of Rule 23 are met. *See* D. Kan. Rule 23.1(d); *Shook*, 386 F.3d at 968. The rule does not set forth a mere pleading

standard. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014). Rather, the Plaintiffs carry a strict burden of proof and must affirmatively demonstrate that the requirements of Rule 23 are clearly satisfied. *Dukes*, 131 S. Ct. at 2551; *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). At the certification stage, the court may also consider the merits of the suit to the extent they are relevant to determining whether the Rule 23 prerequisites are satisfied. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013).

Under Rule 23(a), the Plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Upon meeting these requirements, the Plaintiffs must then demonstrate that the proposed class action fits within one of the categories described in Rule 23(b). Here, Plaintiffs seek to proceed under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining the predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A)   the class members' interest in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

(D)   the likely difficulties in managing the action.

9

Fed. R. Civ. P. 23(b)(3)(A)–(D).

As discussed below, Plaintiffs are unable to satisfy their burden to establish class certification for several reasons.

## III.   CHOICE OF LAW ISSUES IMPACT PLAINTIFFS' PROPOSED CLASSES, AND THE LAWS OF THE STATES WHERE PEOPLE LIVE APPLY

In cases where plaintiffs seek class certification on claims with multi-state parties, courts must address choice of law issues. *See In re Prempro.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005). Choice of law pervades every element of Rule 23. Accordingly, it should be addressed at the outset of any class certification motion. *Id.* at 561.

"No class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). In particular, choice of law issues impact Rule 23(b)(3) classes where predominance is an issue.[3] The Constitution mandates constraints on the choice of law determination because a party has the right to have claims governed by the state law applicable to that particular party's case. *In re Prempro*, 230 F.R.D. at 562. Courts should identify which states' substantive laws may control the outcome of a litigation as a threshold matter before making specific class certification findings. *Id.*

---

[3] *See, e.g.*, *Antonson v. Robertson*, 141 F.R.D. 501, 505–06 (D. Kan. 1991) (application of 50 states' laws defeats commonality and typicality as well as predominance); *see also Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *In re Baycol Products Litigation*, 218 F.R.D. 197, 211 (D. Minn. 2003); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682–83 (S.D. Ca. 1999) (same); *Bostick v. St. Jude Medical, Inc.*, No. 03-2626 BV, 2004 WL 3313614 at *12 (W.D. Tenn. Aug. 17, 2004) (same); *Martinez v. Weyerhaeuser Mortgage Co.*, No. 94-1610-CIV-RYSKAMP, 1997 WL 33481746 at *3 (S.D. Fla. June 25, 1997) (same); *Letouzel v. Eastman Kodak Co.*, No. 05-CV-6464T, 2006 WL 1455478 at *2 (W.D.N.Y. May 25, 2006) (same); *Wong v. PartyGaming, Ltd*, No. 1:06-CV-02376, 2007 WL 851879 at *2 (N.D. Ohio Mar. 19, 2007).

Plaintiffs here seek to represent classes of "all persons" without regard to residency or location. Plaintiffs have contended that Kansas state law should apply to all of the putative class members' claims. However, BF Labs entered into transactions with persons all across the country—and some internationally. Thus, the Court will be called upon to consider numerous and diffuse questions concerning the applicable substantive laws to apply.[4] Although mentioned nowhere in their Amended Motion or Memorandum of Law, it is the Plaintiffs' burden to provide an analysis of state law variations to reveal whether those differences present insurmountable obstacles. *Cole v. General Motors Co.*, 484 F.3d 717, 724 (5th Cir. 2007). As discussed below, the laws of all states where customers live apply to the proposed classes rendering certification inappropriate.

### A.  Kansas Choice of Law Rules Dictate that the Laws of the Fifty States Apply to the Putative Class Members' Claims

A federal court, sitting in diversity, must apply the choice of law rules of the forum state.[5] For all three of Plaintiffs' claims—conversion, violation of consumer protection statutes, and unjust enrichment—Kansas choice of law rules dictate that the applicable law is the law of the state where each individual putative class member placed his or her order, from which payments came, and where alleged damage was suffered.

Kansas employs the *lex loci delicti* choice of law rule for tort claims such as conversion, which requires that the law of the state where the injury occurred governs:

---

[4] "The complexity of these analyses of differing states' laws makes the class action proposed [by Plaintiffs] unmanageable and weighs against a finding that a class action would be superior." *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 689 (D. Kan. 2007); *see also In re Bisphenol-A Polycarbonate Plastic Products Liability Litigation*, 276 F.R.D. 336, 341 (W.D. Mo. 2011).

[5] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Jamieson v. Vatterott Educational Center, Inc.*, 473 F. Supp.2d 1153, 1158 (D. Kan. 2007).

> Kansas adheres to *lex loci delicti* which provides that the place of the law of the state where the tort occurred applies. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). A tort occurs where the injury occurs. *See id*.

*Emig v. American Tobacco Co.*, 184 F.R.D. 379, 394 (D. Kan. 1998) (declining to certify products liability class action); *Doll*, 246 F.R.D. at 691–92 (law of state of plaintiff's residence where loss suffered applies); *Raskin v. Allison*, 30 Kan. App.2d 1240, 57 P.3d 30 (2002) (Kansas applies law of the place of injury).

This rule also applies to consumer protection act claims. *Andy's Towing, Inc. v. Bulldog Bldg. Systems, Inc.*, 2011 WL 2433679 *4–6 (D. Kan. June 14, 2011) (ruling Oregon law applied where plaintiff's loss and reliance occurred in Oregon even though defendant located in Kansas).

Similarly, the Kansas choice of law rule for unjust enrichment claims requires a court to consider the residence of the purported class members. Applying these choice of law principles in a proposed nationwide class action against an airplane manufacturer, a Kansas District Court found that the laws of various states applied, rendering class certification impossible:

> Individual choice of law questions arise with regard to the unjust enrichment claims as well. The court applies the law of the state with the most significant contacts in light of (1) the place where the benefit or enrichment was performed, (2) the domicile or residence of the parties, and (3) the location of the aircraft at the time of the act conferring the benefit or enrichment. Based on the present record, it appears that this analysis will inevitably involve the law of several different states.

*Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 541 (D. Kan. 1995); *see also Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 625–26 (D. Kan. 2008) (analyzing choice of law issues).

Individual putative class members' transactions with BF Labs in their respective states form the basis for their complaints. They engaged BF Labs' website from their home states.

12

They received alleged representations in their home states.[6] They received updates from BF Labs in their home states. They placed orders from their home states. They made payments from their home states. Any loss or damage occurred in the class members' home states, not elsewhere. Kansas' choice of law rules thus compel application of the laws of each state where each putative class member resides.

### B.   Application of Kansas Law to Out-of-State Class Members' Claims Would Be Unconstitutional

Even if Kansas choice of law principles in context of class actions could somehow be construed to apply Kansas law to all of the non-Kansas putative class members' claims in this action, the Full Faith and Credit and Due Process clauses of the U.S. Constitution prohibits such application. The United States Supreme Court articulated the Constitutional standards for determining choice of law issues in nationwide class actions based on state law claims in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). *Shutts* was a nationwide class action brought in Kansas state court by approximately 28,000 individuals, residing in all fifty states and the District of Columbia. The plaintiffs sued to recover interest on royalties under lease agreements concerning land in eleven different states entered into with a gas company incorporated in Delaware with its principal place of business in Oklahoma. *Shutts*, 472 U.S. at 799. The trial court applied Kansas law to the entire class, even though only roughly three percent of plaintiffs and one percent of the contracts had any connection to Kansas. *Id.* at 814–16. The Supreme Court reversed and held, "the constitutional limitations [on application of forum law to out of state claims] must be respected even in a nationwide class action." *Id.* at 823.

*Shutts* sets forth a two-part choice of law analysis. *First*, is there any actual conflict between the forum state's law and the laws of the other states that are connected to the litigation?

---

[6] *Antonson*, 141 F.R.D. at 508 (applying law of state where representation was received).

*Second*, does the forum state have significant contacts with the litigation to create a state interest sufficient to justify application of the forum state's laws to the litigation? In *Shutts*, the Supreme Court determined that the variations in state law regarding the applicable interest rates were material, so the Kansas court should have considered these conflicts before applying its laws to all the claims. As to the second question, the Court found that Kansas did not have sufficient contacts with the litigation to justify application of that state's laws to all class members' claims.

The *Shutts* opinion further explained that, in considering fairness in this context, the court should consider the parties' expectations. *Id*. at 822. The United States Supreme Court explicitly rejected the Kansas Supreme Court's view that in nationwide class actions "the law of the forum should be applied unless compelling reasons exist for applying a different law." *See id*. at 823.

Applying *Shutts*' two-part choice of law analysis in this case demonstrates that the laws of the states where the putative nationwide class members' reside will apply. *First*, Kansas lacks any significant interest in the out-of-state class members' claims to justify application of Kansas law to such claims. In addition, there is no proof that non-Kansan putative class members had any expectation that their claims would be governed by Kansas law, and applying Kansas law to all class members' claims is unconstitutionally arbitrary and unfair. *Second*, the laws of Kansas in the areas of consumer protection, conversion, unjust enrichment, and punitive damages differ materially from the laws of the other forty-nine states.

Like in *Shutts*, Kansans represent only a small percentage of potential class members across the country. Neither of the two proposed class representatives hails from Kansas. Plaintiffs have offered no argument or other support for a proposition that non-resident class members would have expected Kansas law to apply. *See True v. Conagra Foods, Inc.*, 2011 WL 176037 *7 (W.D. Mo. Jan. 4, 2011). Neither BF Labs nor the out-of-state putative class members

likely expected Kansas law to govern when the injury giving rise to this litigation occurred in other states. The claims asserted by non-Kansas residents concern alleged harm where they live. A distant forum has no state interest in applying its law to provide recompense for non-forum claims or residents. *See Hale v. Enerco Group, Inc.*, 288 F.R.D. 139, 144–45 (N.D. Ohio 2012) (finding under Ohio choice of law that law of the place of injury controls).

The states where the alleged harm occurred have far superior interests in applying their states' laws to claims asserted by their citizens than does Kansas. Competing against any interest Kansas might have are the interests of every other state in ensuring that its own citizens are compensated for their injuries and that the standards they set for sales within their borders are complied with. *See In re Rezulin Products Liability Litigation*, 210 F.R.D. 61 (S.D.N.Y. 2002). Proper adjudication of harm occurring outside Kansas with parties outside the state requires the application of the laws of the parties' relevant jurisdictions. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Finally, as the United States Supreme Court has stated, it is impermissible for Kansas to "abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *See Shutts*, 472 U.S. at 822. Applying Kansas law to harm occurring wholly in the other states is impermissibly arbitrary and unfair.

### 1.    True Conflicts Exist among the Laws of the States Where Customers Live

Courts have repeatedly and consistently held that the proponent of class certification bears the burden of demonstrating that the state law variations do not predominate.[7] Plaintiffs

---

[7] *See*, *e.g.*, *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 313 (5th Cir. 2000) ("The burden of proof lies with the plaintiffs; in not presenting a sufficient choice of law analysis they have failed to meet their burden of showing that common questions of law predominate."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (quoting *In re School Asbestos Litigation*, 789 F.2d 996,1010 (3d Cir. 1986) ("[T]o establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'")); *In re Paxil Litigation*, 212 F.R.D. 539, 546 (C.D. Cal. 2003) (same); *Yadlosky v. Grant Thornton, LLP*,

must make a detailed showing that the differences in state law are not material. *Castano v. American Tobacco Corp.*, 84 F.3d 734, 741–43 (5th Cir. 1996). While it is Plaintiffs' burden to provide an extensive analysis of state law variations and establish that there are no "insuperable obstacles" to class certification, *see Johnson v. Nextel Communications Inc.*, 780 F.3d 128, 148 (2d Cir. 2015), neither their amended motion nor their memorandum in support discusses these crucial issues. The failure to do so means Plaintiffs have not met their burden of proof on all class certification issues.

As the Fifth Circuit has stated, "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be [the] appropriate course of action." *Spence v. Glock, Ges.m.b.H*, 227 F.3d at 311. Judges must resist the temptation to alter doctrine to facilitate class treatment so that all parties' legal rights may be respected. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1020. Although differences across the laws of the states may be costly for both courts and litigants, they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court. *See id*. at 1020 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568–73 (1996)).

A number of United States Courts of Appeals have addressed the question whether a nationwide, state-law class action can be certified when there is substantial variation in

---

No. 99-CV-76337, 2000 WL 1287906 at *7 (E.D. Mich. Mar. 21, 2000) ("[P]laintiff bears the burden of proving that state law variations do not predominate . . . ."); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000) ("In a motion for class certification, plaintiff [bears the] burden of providing an 'extensive analysis' of state law variations to determine whether there are 'insuperable obstacles' to class certification"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J. 1998) (same). *See also* 4 NEWBERG ON CLASS ACTIONS § 13:36, pp. 436–37 ("[I]t is incumbent upon class counsel to prove to the court that the multistate class should proceed. Class counsel must either show that there are no significant differences in the various state laws, or, if there are variations, that they can be managed by the trial court.").

applicable state law. These courts are unanimous that certification is impermissible.[8] Several

state supreme courts that have addressed the issue have agreed that nationwide class actions may

not be certified if they involve the application of substantially different laws.[9] Because applying

the numerous states' laws in this case negates any common issues of law, destroys the

cohesiveness of any proposed class, and renders this case utterly unmanageable, no class can be

certified under Rule 23(b)(3).

> **a.**     **The Consumer Protection Statutes Vary**

Numerous courts, including the United States Supreme Court, have recognized that

states' consumer protection laws "vary considerably, and courts must respect these differences

rather than apply one state's law to sales in other states with different rules." *In re*

---

[8] *See, e.g., Bridgestone/Firestone Inc.*, 288 F.3d at 1015 ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of [Rule 23].."); *Zinser v. Accufix Research Institute,,. Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (denying class certification because "there was no manageable trial plan adequate to deal with individualized issues and variances in state law"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially." (citation omitted)), *aff'd sub nom. Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty sates differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

[9] *See, e.g., Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1264 (R.I. 2003) ("When the discrepancies in the laws are substantial, class certification will not be appropriate."); *State ex rel. American Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 486–87 (Mo. 2003) (en banc) ("Many courts that have addressed the issue conclude that the application of varying state laws not common to the class precludes class certification" when multiple states' laws must be applied.); *Washington Mutual Bank, FA v. Superior Court*, 15 P.3d 1071, 1085 (Cal. 2001) ("[W]e hold that a class action proponent must credibly demonstrate, through a thorough analysis, of the applicable state laws, that state law variations will not swamp common issues and defeat predominance."); *Ex parte Exxon Corp.*, 725 So.2d 930, 933 (Ala. 1998) ("[A] court must, before certifying a class, make a choice-of-law determination, including a determination of whether variations in state law defeat predominance.").

*Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).[10] Many other federal cases that have considered whether a single state's consumer protection statute can be applied to a nationwide class action, and each one concluded that the variations in state consumer protection statutes prevented application of a single state's law.[11]

There are numerous differences in many important components to the states' consumer protection laws. *See* Variations in State Consumer Protection Statutes, attached as Appendix A hereto. Such differences include (1) scienter, (2) reliance, (3) types of damages available, (4) statutes of limitations, (5) notice requirements, (6) whether class actions are permitted, and (7) whether there is a heightened penalty for elderly victims. *Id.*

Federal courts have held over and over again that differences in state consumer protection laws regarding, among other things, defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance are so significant that the states' laws cannot

---

[10] Because the laws of all fifty states applied and because these states' laws vary substantially, the *Bridgestone/Firestone* court held that the nationwide class was not manageable because of the substantial variation in state law. 288 F.3d at 1015. ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of [Rule 23]"). Other courts have reached the same result, although through a different rationale: that the consumer protection laws of one state simply cannot be applied to transactions occurring out of that state. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

[11] *See, e.g., Thompson,* 250 F.R.D. at 625-26 (finding substantial conflicts among states' consumer protection laws); *Tyler v. Alltel Corp.*, 265 F.R.D. 405, 421–22 (E.D. Ark. 2010) (plaintiffs acknowledged state law differences were outcome determinative); *In re Prempro*, 230 F.R.D. at 564 (denying nationwide class because the variation in the tort and consumer fraud laws of the different states would render litigation of plaintiffs' claims difficult, if not impossible); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 367–72 (N.D. Ill. 1998) (same); *In re Stucco Litigation*, 175 F.R.D. 210, 217 (E.D.N.C. 1997) (reviewing differences among states' consumer fraud statutes and denying certification of nationwide class in part because these differences, as well as differences in other applicable laws, would render class action unmanageable); *Karnuth v. Rodale, Inc.*, No. Civ.A. 03-742, 2005 WL 1683605, at *4 (E.D. Pa. Jul. 18, 2005) (same); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002); *Rezulin*, 210 F.R.D. at 68–69 (same); *Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) (refusing to certify putative nationwide class action alleging violation of consumer fraud laws of the fifty states because "a brief review of the applicable statutes reveals not only [different] nuances, but differing standards of proof, procedure, substance, and remedies"); *Lyon,* 194 F.R.D. at 219 ("[s]tate consumer protection acts vary on a range of fundamental issues").

be grouped in any manageable way, as Plaintiffs seek to do in this case by applying Kansas consumer protection law across the board. *See e.g. In re Prempro*, 230 F.RD. at 564; *In re Rezulin*, 210 F.R.D. at 68–69. The *In re Prempro* court notes explicitly that even where scienter and reliance requirements are similar across certain states (like Alabama and Ohio, for example), other issues like the measure of damages still prevent them from being grouped together. *Id*. These variations present an actual conflict, as evidenced by the clear language of the states' statutes and the federal courts that have considered this issue.

### b.     Unjust Enrichment Laws Vary

Although the principles of unjust enrichment are essentially the same in all states, Plaintiffs fail to identify what these principles are. In fact, there are many differences in the laws of unjust enrichment, including (1) whether another remedy at law bars an unjust enrichment claim, (2) the interpretation of such elements as "benefit," "impoverishment," and "appreciation," (3) the "acceptance of benefit requirement," (4) what constitutes unjustness, and (5) the calculation of damages. Numerous combinations of the various components can lead to different results.

Not surprisingly, federal courts have consistently recognized that the elements of a claim for unjust enrichment vary from state to state in material ways, making it improper to apply one state's unjust enrichment law to a nationwide class:

> [t]he actual definition of "unjust enrichment" varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud . . . . Other states only allow a claim of unjust enrichment when no adequate legal remedy exists . . . . Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense . . . . Additionally, "some states consider unjust enrichment a remedy at law, while others consider it an equitable claim."

*In re Prempro*, 230 F.R.D. at 563.[12] The differences across the states' laws regarding unjust enrichment present a conflict that prevents the constitutional application of Kansas common law to all class members' claims.

As one federal court has observed, many "variances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies from state to state." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999); *see also Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, *2 (N.D. Ill. Apr. 3, 2002); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168, 177–78 (D. Del. 1982); *Schmidt v. Interstate Federal Sav. and Loan Ass'n*, 74 F.R.D. 423, 428–29 (D.D.C. 1977). Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud." *Clay*, 188 F.R.D. at 501 (citing *Johnson v. American Nat. Ins. Co.*, 613 P.2d 1275 (Ariz. Ct. App. 1980). And "[m]any states, but not all permit an equitable defense of unclean hands." *Id*. (citing *Polverari v. Peatt*, 614 A.2d 484, 490 (Conn. Ct. App. 1992); *Dennett v. Kuenzli*, 936 P.2d 219, 225 (Idaho Ct. App. 1997)).

It is therefore unsurprising that numerous states (including Arizona, Delaware, Louisiana, New Jersey, North Dakota, and Florida) refuse to recognize claims for unjust enrichment unless the claimant has no other adequate remedy of law. *See Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995); *City of Sierra Vista v. Cochise Enterprises, Inc.*, 697 P.2d 1125, 1131–32 (Ariz. Ct. App. 1984); *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571,

---

[12] *See also*, *e.g.*, *Thompson*, 250 F.R.D. at 225–26; *Tyler*, 265 F.R.D. at 428–29; *In re Baycol Products Litigation*, 218 F.R.D. at 214 (same); *Schmidt v. Interstate Federal Sav. and Loan Ass'n*, 74 F.R.D. 423 (D.D.C. 1977) (court denied class action where litigation of unjust enrichment claims would require application of inconsistent bodies of law from three different states' laws); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 500–502 (S.D. Ill. 1999) (same); *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 222–223 (W.D. Mich. 1998) (same); *Cavaliere v. Margaretten & Co.*, No. 94CV01928 (ABN), 1996 WL 571178 at *4 (D. Conn. Jul. 10, 1996) (same).

585–86 (Del. Ch. 1998); *Abbeville Lumber Co. v. Richard*, 350 So.2d 1292, 1300 (La. Ct. App. 1977); *National Amusements, Inc. v. New Jersey Turnpike  Authority*, 619 A.2d 262, 267 (N.J. Super. L. 1992); *Albrecht v. Walter*, 572 N.W.2d 809, 815 (N.D. 1997); *In re Managed Care Litigation*, 185 F. Supp.2d 1310, 1337 (S.D. Fla. 2002). The states are also divided on whether a plaintiff must prove that the defendant engaged in some kind of misconduct. In Montana and Nebraska, proof of fault is a prerequisite to a claim of unjust enrichment, while in Pennsylvania and Wyoming a defendant's misconduct need not be established. *Compare Ragland v. Sheehan*, 846 P.2d 1000, 1004 (Mont. 1993); *White v. State Farm Mut. Auto. Ins. Co.*, No. A-99-405, 1995 WL 521004, at *5–6 (Neb. Ct. App. Sept. 5, 1995), *with Gee v. Eberle*, 420 A.2d 1050, 1059 (Pa. Super. 1980); *Boyce v. Freeman*, 39 P.3d 1062, 1066 n.1 (Wyo. 2002).

Most critically, however, the states are divided on the fundamental question of what constitutes "unjust" enrichment. In California, the benefits must be conferred as a result of "mistake, fraud, coercion, or request." *Dinosaur Development, Inc. v. White*, 265 Cal. Rptr. 525, 528 (Cal. Ct. App. 1989) (emphasis added) (citation omitted). Ohio courts apply a more flexible standard based on a balance of equities and conscience. *See Daup v. Tower Cellular, Inc.*, 737 N.E.2d 128, 138 (Ohio Ct. App. 2000). Colorado and Arizona consider notions of natural justice in assessing what is unjust. *See DCB Const. Co. Inc. v. Central City Development Co.*, 965 P.2d 115, 119 (Colo. 1998); *Murdock-Bryant Const. Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985). Some states consider the expectations of the parties, *see Community Builders, Inc. v. Indian Motorcycle Associates, Inc.*, 692 N.E.2d 964, 979 (Mass. App. Ct. 1998); *Dews v. Halliburton Industries, Inc.*, 708 S.W.2d 67, 69 (Ark. 1986), while other states expressly reject such consideration, *In re Estate of Peck*, 497 N.W.2d 889, 890 (Iowa 1993); *Batler, Capitel & Schwartz v. Tapanes*, 517 N.E.2d 1216, 1219 (Ill. Ct. App. 1987). And still other states simply

offer no specific guidance as to what enrichment is unjust. *See*, *e.g.*, *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 521 (Conn. 1994) ("With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, [the court must] . . . examine the circumstances and the conduct of the parties and apply this standard"); *PlaNet Productions., Inc. v. Shank*, 119 F.3d 729, 733 (8th Cir. 1997) (interpreting the Missouri standard for unjust enrichment as whether "it would be unjust to allow the defendant to retain the benefit").

Even the damages available vary widely from jurisdiction to jurisdiction. Some states limit the recovery in restitution to the extent of the benefit to the recipient. *See*, *e.g.*, *Cross v. Berg Lumber Co.*, 7 P.3d 922, 933 (Wyo. 2000). Others allow the "greater of the value taken from plaintiff as compared to the 'benefit' to defendant." *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs*, 713 N.E.2d 1075, 1085 (Ohio Ct. App. 1998). Some, however, impose liability on defendants who have derived no economic benefit whatsoever from the challenged transactions. *See*, *e.g.*, *Vickery v. Ritchie*, 88 N.E. 835, 837 (Mass. 1909); *Thompson v. Brown*, 76 N.W. 819, 822 (Iowa 1898). And others permit recovery in an amount to which the claimant can demonstrate he is equitably entitled. *See*, *e.g.*, *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (Miss. 1987); *Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*, 844 S.W.2d 508, 515–16 (Mo. Ct. App. 1992).

The states are also divided on the question of punitive damages. Several states, including Hawaii and New York, refuse to permit the recovery of punitive damages in actions for unjust enrichment. *See Matsuda v. Wada*, 101 F. Supp.2d 1315, 1325 (D. Haw. 1999); *U.S. East Telecommunications, Inc. v. U.S. West Information Systems, Inc.*, No. 87 Civ. 2924, 1991 WL 64461, at *4 (S.D.N.Y. Apr. 11, 1991); *Hutton v. Klabal*, 726 F. Supp. 67, 74 (S.D.N.Y. 1989).

Some states, such as Wisconsin, allow punitive damages in unjust enrichment cases only when warranted by willful and malicious conduct. *See Bukowski v. Patel*, 266 B.R. 838, 846 (E.D. Wis. 2001). And in other states the availability of punitive damages remains an open question. *See, e.g.*, *C.B. Mills v. Hawranik*, No. 91 C. 5797, 1994 WL 113088, at *20 (N.D. Ill. Mar. 30, 1994) (questioning whether punitive damages could be awarded on a claim for unjust enrichment); *cf. Record Data, Inc. v. Schoolcraft*, No. 83 C 9531, 1986 WL 4424, at *4 (N.D. Ill. Apr. 8, 1986) (court was unable to find any authority to support proposition that punitive damages were available for a claim of unjust enrichment).

These varying standards demonstrate the material differences among the numerous states' laws to be applied here. As a result, Plaintiffs cannot carry their burden on this significant point; the uniform application of Kansas law would be improper.

### c.        Conversion Laws Vary

Like unjust enrichment, the conversion laws of the states are anything but uniform. Several states hold that conversion only applies to tangible personal property—not money. *See, e.g.*, *Altadis USA, Inc. v. NPR, Inc.*, 308 F. Supp.2d 1304 (M.D. Fla. 2004); *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1012 (Ohio Ct. App. 2003); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248 (N.C. Ct. App. 2000); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971 (Wyo. 1994). Other jurisdictions permit an action for conversion where the money is coupled with a document, such as a stock certificate. *See United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902 (Va. 1994). And still other jurisdictions only recognize an action for conversion of money if "there is an obligation on the defendant to deliver a specific, identifiable sum to the plaintiff." *U.S. Fidelity and Guar. Co. v. S.B. Phillips Co.*, 359 F. Supp.2d 189, 211 (D. Conn. 2005); *see also ATD Corp. v. DaimlerChrysler Corp.*, 261 F. Supp.2d 887 (E.D. Mich. 2003); *DeChristoforo v. Machala*, 685 A.2d 258 (R.I. 1996); *In re McWeeney*, 255 B.R. 3 (Bankr. S.D.

Ohio 2000); *Richardson's Restaurants, Inc. v. National Bank of South Carolina*, 403 S.E.2d 669 (S.C. Ct. App. 1991). Predictably, among these latter jurisdictions there is further conflict about what constitutes a specific, identifiable sum. A Georgia court held that money paid by a customer to his telephone service provider was not specifically identifiable and thus not recoverable in a conversion action. *See Taylor v. Powertel, Inc.*, 551 S.E.2d 765 (Ga. Ct. App. 2001). By contrast, an Alabama court held that money paid on preauthorized checks that an insurer drew monthly against the insured's bank account was "identifiable" money and that the insured party was entitled to maintain action for conversion against the insurer. *See Gray v. Liberty Nat. Life Ins. Co.*, 623 So.2d 1156 (Ala. 1993). In addition, some states have held that intent and good faith may affect the award of damages. *See Correa v. Waiakea Mill Co.*, 31 Haw. 317 (Haw. 1930); *Green v. Waidner*, 324 S.E.2d 331, 333 (S.C. Ct. App. 1984).

**d.      Punitive Damages Laws Vary**

The requirements for imposing punitive damages vary widely under various states' laws. Variations in state law include (1) the standard for obtaining punitive damages, (2) what standard of proof is required, and (3) whether there are limits and/or caps on punitive damages across the states. The conduct that must be shown to recover punitive damages ranges from a stringent "actual malice" standard to a less demanding "gross negligence" standard, and there are numerous other standards in between. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). The burden of proof for punitive damages also differs significantly, from beyond reasonable doubt to clear and convincing evidence to a mere preponderance of the evidence. *Id*. Furthermore, many states impose limits on the amount of punitive damages, expressed either as a ratio to compensatory damages or as an absolute cap, and the limits vary widely from state to state. *Id*.

Many courts have refused certification in nationwide class actions that seek punitive damages because of the significant differences in states' laws on punitive damages.[13]

## IV.   PLAINTIFFS FAIL TO SATISFY ONE OR MORE OF THE REQUIREMENTS UNDER RULE 23(A)

The Plaintiffs have alleged causes of action under three theories: (1) in Count I, Plaintiffs assert claims under the Kansas Consumer Protection Act, (2) in Count II, Plaintiffs assert claims for unjust enrichment, and (3) in Count III, Plaintiffs assert claims for conversion. Plaintiffs claim that BF Labs is liable under each of their counts; Plaintiffs contend that Defendants Ownby and Vleisides are liable under their claims for unjust enrichment and violation of the Kansas Consumer Protection Act. The two Plaintiffs seek to represent classes made up of all persons who have done business with BF Labs:

### Alexander Count I—KCPA

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014, and (2) as of November 18, 2016, have not received the product(s) ordered and have not received a refund.

### Alexander Count II—Unjust Enrichment

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014, and (2) as of November 18, 2016, have not received the product(s) ordered and have not received a refund.

### Alexander Count III—Conversion

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014,

---

[13] *See*, *e.g.*, *Thompson*, 250 F.R.D. at 627-28; *In re Baycol Products Litigation*, 218 F.R.D. at 215; *Sanders v. Johnson & Johnson, Inc.*, Civ. No. 0-3-2663 (GEB), 2006 WL 1541033 at *6 (D.N.J. June 2, 2006); *In re Stucco Litigation*, 175 F.R.D. 210, 216 (E.D.N.C. 1997); *In re Teletronics Pacing System, Inc.*, 172 F.R.D. 271, 294 (S.D. Ohio 1997); *Rothwell v. Chubb Life Ins. Co.*, 191 F.R.D. 25, 33 (D.H.H. 1998); *Dubose v. First Sec. Sav. Bank*, 183 F.R.D. 583, 588 (M.D. Ala. 1997); *Mack v. General Motors Acceptance Corp.*, 169 F.R.D. 671, 678–79 (M.D. Ala. 1996).

(2) demanded or requested a refund, and (3) as of November 18, 2016, have not received the product(s) ordered and have not received a refund.

### Symington Count I—KCPA

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014, and (2) as of November 18, 2016, have received the product(s) ordered and have not received a refund.

### Symington Count II—Unjust Enrichment

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014, and (2) as of November 18, 2016, have received the product(s) ordered and have not received a refund.

### Symington Count III—Conversion

All persons who (1) pre-paid BFL for ASIC 65 NM generation products or ASIC 28 NM generation products between September 3, 2012 and July 17, 2014, and (2) as of November 18, 2016, have received the product(s) ordered and have not received a refund.

Excluded from each class shall be BF Labs Inc. and any shareholder, director, officer, or employee of BF Labs Inc.; the Court and Court personnel; counsel of record for BF Labs Inc.; and counsel of record for the Named Plaintiffs and Plaintiffs; and any customers who previously settled with Defendants.

Plaintiff Alexander is a citizen and resident of Tennessee. (Doc. 123 ¶ 2.) He placed an order with BF Labs on June 14, 2013. He requested a refund on March 17, 2014. Plaintiff Symington is a citizen and resident of Maryland. (Doc. 123 ¶ 3.) He placed an order with BF Labs on April 3, 2013. Symington received the ordered equipment in November 2013 but claims it was defective. He, like Alexander, wants a refund. Defendant BF Labs Inc. is a Wyoming corporation which at all relevant times had its principal place of business located in Kansas. (Doc. 123 ¶ 4.) Defendant Vleisides is a citizen and resident of the State of Missouri; Defendant Ownby is a citizen and resident of the State of Illinois.

**A.      Plaintiffs Have Not Proven That There Are Common Issues of Law or Fact**

Plaintiffs contend that there are numerous common issues of law and fact in this case. However, merely providing a list of what they believe are common questions of law and fact among the various claims and putative class members is insufficient. A lengthy generic list of supposed common issues is not helpful. Instead, the relevant inquiry is whether there are common answers to various issues. *See Dukes*, 131 S. Ct. at 2551. "Commonality requires the plaintiff to demonstrate that the class members suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law . . . . Their claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. If all plaintiffs needed to do post-*Dukes* is simply restate common questions alleged in the Complaint, then there is no evidentiary standard to be satisfied and the Rule would be meaningless.

Plaintiffs claim that the causes of action and the elements of liability are questions common among all of the class members. It is simply not enough to ask a common question whether the Defendants may be liable under the three alleged legal theories. Moreover, since Plaintiffs purport to assert multiple instances of representations or omissions (which occurred at different times), whether any one of the representations or omissions was "material" cannot be determined class-wide.

Plaintiffs' motion also stumbles because the "evidence" is lacking as to the supposed "uniform" method of testing. (Ex. B, ¶¶ 14-18; *see also* Ex. G) As the facts show, BF Labs did test each machine, but the amount of time varied significantly. *Id*. Plaintiffs also suggest there was a uniform or standard statement that BF Labs did not mine prior to sale; BF Labs never said it would not test machines. Those machines were not identified to any purchase order until *after*

they were tested. The persons who simply seek a refund and not a machine cannot assert the same "harm" as someone who received a machine that had been tested. Finally, Defendants did not have in place a uniform policy of refusing to refund—BF Labs had different policies in place at different times. It also has paid out over $ 20 million in refunds. (Ex. B, ¶ 26.)

As above, not all claims are governed by Kansas law. Plaintiffs seek to represent a geographically diverse class. The putative class representatives (Alexander and Symington) are not Kansas residents. Each of the Plaintiffs as well as the putative class members conducted business with BF Labs over the Internet or telephone. While BF Labs may have acted in part in Kansas, the alleged injury to each of the Plaintiffs would have been felt in their particular location.

Most class action plaintiffs are able to find at least one common question. *See Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004) (noting that commonality was a far less stringent inquiry than predominance). But Plaintiffs' proposed classes are *so* broad and *so* diverse that Plaintiffs cannot adequately articulate a plausible common question that can be answered with common proof. *Id.* at 1237 (noting that plaintiffs' class action was so broadly pleaded as to fail commonality). The application of all states' laws defeats commonality as a matter of law.[14] None of Plaintiffs' questions are truly common to the class if each class member has to apply his or her own state's law to Plaintiffs' factual situation.

### 1.      Plaintiffs' KCPA Claims

Plaintiffs contend that they will establish a violation of the Kansas Consumer Protection Act based on BF Labs' website and electronic brochures as well as electronic postings, e-mails, or telephone calls that occurred over a two-plus year period. As an alternative, plaintiffs assert

---

[14] *See*, *e.g.*, Footnote 3, *supra.*

that they will prove that BF Labs' alleged failure to disclose material facts constituted a violation of the KCPA.

The KCPA is available only to provide a remedy to a "consumer," which by statute does not include an entity that placed an order. K.S.A. § 50-624. In addition, the KCPA defines a violation as either deceptive or unconscionable. K.S.A. §§ 50-626, 627. Both sections contain a non-exclusive list of the types of conduct that may constitute an unfair, deceptive, or unconscionable practice. As alleged, Plaintiffs' theory of the case arguably fits within the KCPA definitions. In addition, Section 50-634 provides that "[a] consumer who suffers loss as a result of a violation" may bring a class action to recover damages. K.S.A. § 50-634(d).

The phrase "as a result of" suggests that the Kansas legislature had in mind traditional causation principles when it enacted the KCPA. *See Pound v. Airosol Co.*, 368 F. Supp.2d 1210 (D. Kan. 2005) (finding that a causal connection between the alleged statutory violation and damages must exist); *Pearson v. Philip Morris, Inc.*, 2006 WL 663004 at *4 (Or. Cir. Ct. Feb. 23, 2006) (concluding that the plain meaning of the words "as a result of" in Oregon Unlawful Trade Practices Act imposes a causation requirement); *see also Selgado v. Commercial Warehouse Co.*, 86 N.M. 633, 636, 526 P.2d 430 (Ct. App. 1974) (using "as a result of" as synonymous with proximate cause). Reliance is the traditional causal mechanism of fraud. Restatement (Second) Torts § 546 (1977). There must be a causal "nexus" between the defendant's deceptive conduct and the plaintiff's loss. *See Benedict v. Altria Group*, 241 F.R.D. 668, 678 (D. Kan. 2007). In the context of claims based on false statements and where the damages are measured by the purchase price paid or the difference in value between the product as represented and the product as delivered, reliance would appear to be equivalent to the cause-in-fact of the plaintiff's damages, since it is the plaintiff's decision to buy the product that causes

29

the plaintiff's loss. In other words, once the plaintiff has paid for the product in reliance on the defendant's misrepresentation, no further causal links are necessary to establish loss measured by the purchase price or the difference in value between the product as represented and the product as delivered. Under the circumstances of this case, and in view of Plaintiffs' theory of the case and the measures of damages requested, an individual class member will have to demonstrate something akin to traditional reliance to establish the requisite "causal nexus" between the particular misrepresentations communicated to a class member and the class member's loss. *Id*. at 679. Even if the Court were to apply an objective standard of reliance—whether the representations would have mattered to a hypothetical reasonable class member—Plaintiffs and the class must still prove what representations a particular class member read or saw in order to establish the requisite causal link between the misrepresentations and the class member's loss. Because there is no basis in the record for determining which versions of BF Labs' catalogs, brochures, or website a particular class member read or saw, the "causal nexus" element of a KCPA claim will not be susceptible to class-wide proof. *Id*. at 680–81.[15]

As previously discussed, the substantive law of the state where a class member resides will govern his claims. By way of example, under Arizona's consumer fraud statute, the plaintiff must show actual reliance, but the reliance need not be reasonable. *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979). Under case law interpreting

---

[15] This Court has previously concluded that individualized showings of causation are not necessary in a willful omissions class action context, *see Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 616 (D. Kan. 2014), but a plaintiff must prove willfulness and materiality of an alleged omission, *id*. at 613. These essential elements present individual questions depending upon when a putative class member placed an order, made a payment, made an inquiry or requested a refund. Likewise, an unconscionability claim under the "material benefit" factor is not suitable for class certification. *Id*. at 616. Any assertion that products delivered were "defective" or failed to perform as represented will depend on what use was put to the equipment, how it was used, or misused, and whether it worked at all. These questions cannot be answered with common proof.

California's Unfair Competition Law, there are different standards for the class representative and the class members: only the class representative must show actual reliance, *In re Tobacco II Cases*, 46 Cal. 4th 298, 93 Cal. Rptr.3d 559, 207 P.2d 20, 38 (2009), and class members may obtain relief "without individualized proof of deception, reliance and injury," *id.* at 35. Under case law interpreting the Colorado Consumer Protection Act, plaintiffs must show causation, which may require proof of reliance depending on the context. *Crowe v. Tull*, 126 P.3d 196, 209–211 (Colo. 2006). Idaho's Consumer Protection Act permits any person who has "suffered any ascertainable loss of money . . . as a result of the use or employment" of an unlawful practice to "bring an action to recover actual damages." Idaho Code Ann. § 48-608 (2008). The Court could find no reported case interpreting the phrase "as a result of" in § 48-608. Under case law interpreting the Oregon Unlawful Trade Practices Act, reliance is required where the plaintiff alleges that he or she acted on the seller's express representations, but may not be required in all contexts. *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 13 P.3d 1044, 1047 (Ore. Ct. App. 2000). The Nevada Deceptive Trade Practices Act permits "a victim of consumer fraud" to bring an action to recover "damages that he has sustained." Nev. Rev. Stat. Ann. § 41.600 (2007). The United States District Court for the District of Nevada has predicted that the Nevada Supreme Court will construe § 41.600 to require reliance in cases of affirmative misrepresentation. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–58 (D. Nev. 2009). Under the Washington Consumer Protection Act, individual claimants must show causation, which, depending on the claimant's theory of the case may or may not require proof of reliance. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 204 P.3d 885, 899–903 (2009). These cases strongly suggest that showing of reliance will be required to establish causation

under the consumer protection acts of every state except California. In these jurisdictions, as in Kansas, causation will not be susceptible to class-wide proof.

### 2.     Plaintiffs' Unjust Enrichment Claims

As a general proposition, determining whether a defendant's retention of the benefit (*i.e.*, the purchase price for the goods) is "unjust" requires considering what a particular plaintiff received in exchange for bestowing that benefit. If a person completely used a product without encountering ill effects or other difficulties and can only declare after the fact that s/he would not have purchased the goods had the truth been known, such a person may not have "unjustly" enriched the seller. Some jurisdictions seem to explicitly offset the plaintiff's benefit and the defendant's enrichment. *E.g.*, *Vigiletti v. Sears, Roebuck & Co.*, 42 A.D.3d 497, 838 N.Y.S.2d 785 (2007) ("plaintiffs failed to state a cause of action to recover damages for unjust enrichment because there was no allegation that the benefits that the members of the plaintiffs' class received were less than what they bargained for"); *MC Baldwin Financial Co. v. DiMaggio Rosario & Veraja, LLC*, 364 Ill. App.3d 6, 300 Ill. Dec. 601, 845 N.E.2d 22, 30 (2006) (citing prior decisions (and, interestingly, the draft of the Restatement (Third) of Restitution and Unjust Enrichment) for proposition that restitution consists of "all monies paid to defendants on the contract minus any benefit [plaintiffs] received"); *Romero v. Bank of the Southwest*, 135 N.M. 1, 83 P.3d 288, 297 (N.M. Ct. App. 2003) (noting that damages suffered by defendant may reduce the award of restitution); *see also Landmark Land Co., Inc. v. FDIC*, 256 F.3d 1365, 1373 (Fed. Cir. 2001). Other states emphasize that whether the defendant's enrichment is unjust is a factual inquiry that requires consideration of all the circumstances. *E.g.*, *Redd Iron, Inc. v. International Sales and Services Corp.*, 200 P.3d 1133, 1136–39 (Colo. Ct. App. 2008); *see also Far West Federal Bank, S.B. v. Office of Thrift Supervision*, 119 F.3d 1358, 1367 (9th Cir. 1997); *Resolution Trust Corp. v. Federal Savings and Loan Ins. Corp.*, 25 F.3d 1493, 1505 (10th Cir.

1994). Clearly, those circumstances would include the fact that the consumer received the full (or partial) benefit of the bargain.

The elements of unjust enrichment also conflict in legally significant ways. In Tennessee, five elements must be shown to establish unjust enrichment:

(1) There is no existing, enforceable contract between the parties covering the same subject matter;

(2) The party seeking recovery proves that it provided valuable goods or services;

(3) The party to be charged received the goods or services;

(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 197–98 (Tenn. 2001) (citing *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)); *see also Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966); *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Daugherty v. Sony Electronics*, No. E2004-02627-COA-R3-CV, 2006 WL 197090 at *6 (Tenn. Ct. App. E.S., Jan. 26, 2006); *Bennett v. Visa U.S.A., Inc.*, No. D2005-00659-COA-R9-CV, 2006 WL 770467 at *7 (Tenn. Ct. App. Mar. 27, 2006). A party alleging unjust enrichment must prove all five of the above elements in order to recover.

In Arizona, five somewhat different elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law. *City of Sierra Vista v. Cochise Enterprises, Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984). In Idaho, Maryland, Oregon, and Washington, on the other hand, three elements must be established for unjust

33

enrichment: (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Dragt v. Dragt/DeTray, LLC*, 139 Wash. App. 560, 576, 161 P.3d 473, 482 (Wash. Ct. App. 2007); *Hill v. Cross Country Settlements, LLC*, 402 Md. 281 (2007); *Summer Oaks Ltd. Partnership v. McGinley*, 183 Or. App. 645, 654, 55 P.3d 1100, 1105 (Or. App. 2002); *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 882, 982 Pl2d 917, 923 (Idaho 1999). Under Kansas law, unjust enrichment requires a showing that (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances the defendant's retention of the benefit is unjust. *See Estate of Draper v. Bank of America, N.A.*, 205 P.3d 698, 706 (Kan. 2009). In New Mexico, however, to prevail on an unjust enrichment claim, a plaintiff only must show that (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 203, 3 P.3d 695, 698 (N.M. Ct. App. 2000). As a legal matter, the different showings required by putative class members from different jurisdictions to prove unjust enrichment would undermine Plaintiffs' ability to present generalized proof for all putative class members' unjust enrichment claims. As a practical matter, applying the different standards of liability for putative class members from different states would almost certainly confuse the jury. These types of issues that would arise when a single court is required to apply varying standards of liability to multiple causes of action undermine the Plaintiffs' efforts to secure class certification.

### 3.    Plaintiffs' Conversion Claims

The law of conversion among the various jurisdictions also conflicts in material ways, including different scienter requirements. Under Kansas law, "[c]onversion is the unauthorized

assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. . . . [It] is a strict liability tort. The required intent is shown by the use or disposition of the property belonging to another." *Snider v. MidFirst Bank*, 42 Kan. App.2d 265, 211 P.3d 179 (2009) (citations omitted). Under Maryland law, conversion is an intentional tort defined as any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it. *See The Redemptorists v. Coulthard Services, Inc.*, 801 A.2d 1104 (2002). It consists of a physical act with a certain state of mind. *See Darcars Motors of Silverspring, Inc. v. Borzym*, 841 A.2d 828 (2004). In Tennessee, conversion is (1) appropriation of another's property to one's own benefit and use, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights. *Greenbank v. Thompson*, 2010 WL 5549231 *3 (Tenn. Ct. App. Dec. 29, 2010). Wrongful intent is not a requirement to be proved. *White v. Empire Express, Inc.*, 392 S.W.3d 696 (Tenn. Ct. App. 2012). Arizona and Oregon have adopted the Restatement (Second) of Torts, which defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, 104 P.3d 193, 203 (Ariz. Ct. App. 2005); *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413, 781 P.2d 1196, 1201 (Or. 1989). Under Idaho law, conversion is "an act of dominion wrongfully exerted over the personal property of another in denial or in unwarranted interference with his rights therein." *Adair v. Freeman*, 92 Idaho 773, 777, 451 P.2d 519, 523 (Idaho 1969). New Mexico has defined conversion as a "wrongful detention amounting to repudiation of the owner's rights or any exercise of dominion inconsistent with such rights." *Apodaca v. Unknown Heirs*, 98 N.M. 620, 624, 651 P.2d 1264, 1268 (1982). Under Washington law, conversion is

"the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham and Kolde*, 153 Wash.2d 553, 364, 106 P.3d 212, 218 (Wash. 2005). While the law of New Mexico allows for a wrongful retention of funds to constitute conversion, *Apodaca*, 98 N.M. at 624, 651 P.2d at 1268, other states generally do not unless the monies are specifically identifiable or segregated funds. *See Temmen v. Kent-Brown Cher. Co.*, 227 Kan. 45, 50, 605 P.2d. 95 (1980); *Allied Inv. Corp. v. Jensen*, 731 A.2d 957 (Md. 1999). Because the Plaintiffs would be required to demonstrate conversion under different and varying standards of liability, their claim is not common. Furthermore, as discussed below, predominance is undermined because putative class members' conversion claims would not be subject to generalized proof. *See* Fed. R. Civ. P. 23(b)(3).

### 4.    Additional Factors Impacting the Commonality Analysis

The conduct alleged to have occurred over the period of time asserted as the class period changed with respect to different products offered by BF Labs. Thus, each Plaintiff as well as each putative class member would need to establish his or her claims depending upon when the claim arose, what BF Labs did with the money that was accepted for the product ordered, whether BF Labs conducted testing or mining operations with any particular product ordered, and what was done with the Bitcoin, if any, mined with any piece of equipment.

The extent to which the Plaintiffs (and any putative class member) received any benefits would be a factor in determining whether and to what extent a Defendant's retention of money is unjust. Some customers who received equipment were apparently happy and made money. (*See* Rex Brocki Declaration, filed in Case No. 4:14-cv-815-BCW, Doc. 155-9, ¶¶ 2, 8.) Not all Plaintiffs (or class members) received the same benefit so the extent of any such benefit is not a common issue. Nothing in Rule 23 dictates that individual issues relating to damages are to be ignored.

A consumer's sophistication level, knowledge of the bitcoin industry, its risks, the value of bitcoin, and surrounding controversies is also relevant. A person who purchased a bitcoin mining machine with knowledge of the controversies, with knowledge of the difficulties in manufacturing, with knowledge that delivery times were estimates, etc. may have difficulty convincing a jury that the Defendants were unjustly enriched. Likewise, a person who paid attention to BF Labs' disclaimers may be treated different from someone who ignored or did not see them. The claims in this case require that Plaintiffs show that people were damaged by representations and omissions.

Other individual issues that will arise in the evidence include:

- What statements were made and when

- What actions or inactions did any class member take

- Whether the Defendants' conduct was willful toward any class member

- Did the price of a Bitcoin at any time affect the decision of a class member and damages

- What problems or defects existed on any particular equipment[16]

- Whether other persons using the network either before, during, or after BF Labs tested and delivered equipment affected the speed, quality, and efficacy of any consumer's ability to mine

---

[16] Purchasers of an allegedly defective product have no claim where the alleged defect has not manifested itself in the product they own. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009); *see also In re Bridgestone/Firestone*, 288 F.3d at 1017 (explaining that most states would not entertain a theory that selling products with undisclosed attributes and, thus, worth less than represented, would not state a claim in the absence of actual injury); *In re Canon Cameras*, 237 F.R.D. 357, 359–60 (S.D.N.Y. 2006) (holding "proof of malfunction is a prerequisite to any of the plaintiffs' claims" and a plaintiff who purchases a product that never malfunctions cannot be said to have received less than he or she bargained for).

These issues make it more likely than not that there are not going to be common issues of law and fact in this case.

**B.    Plaintiffs have Not Established that their Claims are Typical of the Putative Class**

For reasons similar to the Plaintiffs' failure to establish commonality, they fail likewise to establish typicality. Given the particularly long class period as well as the differing conduct that occurred over that time frame, the Plaintiffs cannot establish that their claims are typical of any other person in the putative class.

In order to satisfy typicality, a class representative's claim must at the very least be based on "the same legal or remedial theory" as the other class members. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Minor factual variations between the class representative's and class members' claims will not normally defeat typicality. *Id*. But pervasive factual differences will defeat typicality. For example, in *Doe v. Unified School Dist. 259*, 2007 WL 619505 (D. Kan. Feb. 26, 2007), the plaintiff made a similar argument to the arguments that Plaintiffs in the present case make:

> Plaintiffs' counsel argues that the Doe students each suffered as a result of the pattern and practice of the defendant. Additionally, plaintiffs state that the claims proceed under the same legal theory: that defendant has acted with deliberate indifference in violation of Title IX and 42 U.S.C. § 1983.

*Id*. at *8. But the Court rejected these arguments and held that in order to satisfy typicality, the class representative's claims must be factually similar to the other class members:

> Defendant also argues that the claim of each proposed class member would differ from the plaintiffs' claims with respect to both liability and damages because of the vast factual differences in each individual claim. . . . Due to this tension and that plaintiffs' proposed class presents different claims and factual differences, plaintiffs' claims do not satisfy the typicality requirement of Rule 23(a)(3).

*Id*.

The factual differences between the proposed class representative's claims and the claims of the class members are even greater than those in *Doe* and clearly defeat typicality. Examples of these variations are described below.

There are extreme factual differences in putative class members' unjust enrichment and conversion claims. (Plaintiff Alexander asserts he did not receive a miner while Plaintiff Symington did.) There are likely to be hundreds, perhaps even thousands of individuals who "allege" that BF Labs was unjustly enriched even though miners were delivered. But the types of damages vary so wildly as to preclude any one person's claim from being "typical." Damages may or may not exist depending on the individual's mining successes and the value of bitcoin at any particular time. The factual differences in these claims—and their relationship, if any, to BF Labs—are so pervasive as to defeat typicality. *Doe*, 2007 WL 619505 at *8. Moreover, BF Labs is entitled to defend itself against these claims (just as it did with Plaintiffs' claims), which would require BF Labs to obtain discovery from each individual class member.

### C. Defendants Do Not Contest Numerosity or Adequacy of Representation by Plaintiffs' Counsel

Defendants in this case do not contest that Plaintiffs' obligations of proof have raised sufficient questions to satisfy their burden to prove numerosity. Defendants also do not contest Plaintiffs' counsel's adequacy of representation.[17]

---

[17] Although they seek to represent "all persons" who prepaid for ASIC 65 NM or ASIC 28 NM products, the facts show that both Alexander and Symington ordered 65 NM products. (Ex. B, ¶ 28.) Neither Plaintiff ordered or prepared to buy a 28 NM product. There is no evidence they received and relied on any statements concerning 28 NM products or incurred any loss concerning a 28 NM product. Plaintiffs cannot carry their burden to demonstrate why or how they can adequately represent 28 NM product customers.

**V.     PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN TO SHOW THE REQUISITE ELEMENTS UNDER RULE 23(B)(3)**

In this case, Plaintiffs are seeking a damages class under Rule 23(B)(3). In order to certify a class under Rule 23(b)(3), a plaintiff must show that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods of adjudication." Fed. R. Civ. P. 23(b)(3). None of Plaintiffs' proposed classes meets either of these criteria. For several reasons, Plaintiffs' motion fails.

**A.     A Class is Not the Superior Mechanism to Litigate These Claims**

Federal Rule 23(b)'s "superiority" cannot be found in light of the FTC action and stipulated judgment on behalf of consumers on the same set of facts; the Johnson County District Attorney investigation and consent judgment with BF Labs on the same set of facts that provides that BF Labs must give refunds to the customers who requested one; and because certifying a class at this point would be a fruitless and inefficient act as well as a drag on the resources of the Court, counsel, and parties.

**1.     The FTC Brought Identical Claims as the Plaintiffs, Investigated the Finances of BF Labs Inc. and Sonny Vleisides, Determined That There Was Insufficient Money or Assets Available for the Consumers it Purported to Represent, and Settled the Matter**

Throughout their Memorandum in Support of the Motion for Class Certification, the Plaintiffs cited the enforcement action in *FTC v. BF Labs Inc., et al.*, Case No. 4:14-cv-00815-BCW, for support. (Doc. No. 138.) As the Plaintiffs noted, the FTC filed its action seeking injunctive and equitable relief against BFL and Vleisides. (*Id.* at p. 30.) On February 25, 2016, Judge Brian C. Wimes signed a stipulated final order in that matter. (*See* Case No. 4:14-cv-00815-BCW, Doc. No. 377.) While judgment was entered in favor of the FTC for $38,615,161, that judgment was suspended upon the payments of $15,000 from BF Labs and $4,000 from Sonny Vleisides based on the accuracy and completeness of BF Labs' and Vleisides' sworn

financial statements. (*Id.* at p. 7.) Any money paid to the FTC pursuant to that settlement was to be deposited into a fund administered by the FTC and used for equitable relief, including consumer redress. (*Id.* at p. 8.) The FTC investigated the finances of BF Labs and accepted a *total* of $19,000, concluding that no other money was available as a remedy to the class. Vleisides and Ownby likewise have little money that can satisfy a judgment. (Ex. I, ¶¶ 1-8; Ex. J, ¶¶ 2-12.)

In light of the identical FTC action and its lack of recovery due to insufficient assets, no purpose would be served to continue this case as a class action.

### 2. The Johnson County District Attorney has Already Ordered BF Labs to Pay Refunds to Consumers

The Johnson County District Attorney entered into a Journal Entry of Consent Judgment with BF Labs on October 2, 2015.[18] *See* Case No. 15-cv-60002 (Doc. No. 4) (Exhibit H). In that Consent Judgment, BF Labs provided the District Attorney with a full accounting of all consumers who had outstanding orders for its mining hardware or cloud mining services. (*Id.* at p. 5.) The Consent Judgment obligated BF Labs to provide consumer restitution for all the un-refunded customers. (*Id.* at pp. 8–9.) As the proposed Settlement Agreement noted, "the anticipated outstanding refunds are approximately $8,024,964" (Doc. 150-1, p. 12) which is nearly 90% of the potential maximum payout under the parties' proposed (but now rejected) settlement agreement. (*Id.* at p. 14.) This consent judgment, with its imposition of obligations to provide full refunds, negates any reason for continuing this litigation in a class action.

---

[18] BF Labs denied the contentions but entered into the Consent Judgment to avoid the expense and inconvenience of protracted litigation. *See* p. 10.

### 3.   The Prior Actions and Settlements Preclude Certification Here, as a Class Proceeding Under These Circumstances Would Be Inefficient, Ineffectual, and Improvident

As private litigants, Plaintiffs seek money damages and attorneys' fees for themselves and the putative class. However, the aforementioned actions by the FTC and Johnson County District Attorney counsel against certification because it would not be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The FTC and Johnson County District Attorney have already resolved virtually identical claims arising from the same alleged course of conduct, including the entry of two presently uncollectible judgments. Denial of certification under such circumstances is not unprecedented. For example, in *Kamm v. Cal. City Dev. Co.*, a group of investors alleged that land promoters failed to disclose the nature of the property and the inherent risks associated with certain real estate investments. 509 F.2d 205 (9th Cir. 1975). After the lawsuit was filed, but before the district court's class certification ruling, the California Attorney General and Real Estate Commissioner reached a settlement agreement with many of the defendants. *Id*. at 207–08. The settlement agreement "provided for offers of restitution of principal payments to certain purchasers[]," permanently enjoined defendants from making further misrepresentations, and required defendants to use their "best efforts" to settle future disputes. *Id*. at 208. Based on the relief already provided, the district court found that a class action was not the superior method of adjudicating these claims. *Id*.

The Ninth Circuit affirmed, explaining that, in no particular order of importance, "[s]uperiority must be looked at from the point of view of (1) the judicial system, (2) the potential class members, (3) the present plaintiff, (4) the attorneys for the litigants, (5) the public at large and (6) the defendant." *Id*. at 212. Some of the factors that led the court to affirm denial of class certification included recognition that:

- a class action would require "a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level[;]"

- the state action provided restitution, an agreement to settle future disputes, and a permanent injunction;

- no investor was barred from initiating his/her own suit; and

- defending a class action would be costly to defendants and duplicate the hours spent working to achieve the result with the state. *Id.*

Similarly, in *Caro v. Proctor & Gamble Co.*, the court denied class certification in a consumer protection case, in part, because of a completed government action. 18 Cal. App.4th 644 (1993). In *Caro*, a putative class of consumers alleged that Proctor & Gamble falsely labeled its orange juice. The court denied certification, in part, because Proctor & Gamble had already disgorged funds and spent more than $450,000 "complying with consent decrees and settlement agreements with various governmental agencies including the California Attorney General and District Attorneys in Santa Cruz and Alameda Counties." *Id.* at 660. The *Caro* court further found that the class action would "effectively duplicat[e] work which has been or could be done by the state [and the FDA]," and that the superficial differences between the allegations in the complaint and those involved in the government action failed to make the class action superior because the same or similar conduct was alleged in both. *Id.* at 661; *see also Imber-Gluck v. Google Inc.*, 2015 WL 1522076 (N.D. Cal. Apr. 3, 2015) (denying certification where FTC had resolved consumer claims covering same conduct); *Farno v. Ansure Mortuaries of Indiana, LLC*, 953 N.E.2d 1253, 1276 (Ind. Ct. App. 2011); *Lucas Subway Midmo, Inc. v. The Mandatory Poster Agency Inc.*, Case No. 13-AC-CC00476 (Cole County, Missouri) (finding that a class

action was not superior method for consumer protection case when a governmental agency had investigated and fully addressed the conduct, finding a class action would be a waste of judicial resources and citing similar cases) (Exhibit K).

Because certifying a class would not be the superior method of adjudicating the action in light of (1) the FTC and the Johnson County District Attorney's investigations and settlements with the Defendants and (2) recognition by the FTC, District Attorney and Plaintiffs' counsel that possible assets or money being available for putative class members to receive anything approaching a meaningful payment is remote, the Court should deny class certification.

### B.    A Class Will Not be Manageable

Rule 23(b)(3) lists several factors that courts should consider when determining superiority, including (1) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (2) the desirability or undesirability of concentrating the litigation of the claims in a particular forum, and (3) the difficulties likely to be encountered in the management of the class action. These categories can be broadly collapsed into the two inquiries of superiority and manageability.

Here, because of the differences between and among the various class members, manageability of this case will be at a premium. That is, Plaintiffs have not shown and cannot show that maintaining this litigation as a class will be manageable. As above, the Defendants have no money to satisfy a class-wide judgment. Accordingly, the Court will expend its resources to rule on motions, preside over a jury, and conduct a jury trial for no apparent reason. Given the substantial differences among the class members, the individual claims will be heard as well as certain defenses available to the Defendants will be raised with respect to particular class members.

As discussed, this is a case in which individual issues are so central to Plaintiffs' claims that classwide treatment of even discrete issues would not achieve significant economies of time, effort, and expense. The Court and parties would be required to sort out putative class members' claims under dozens of state (or international) laws. These claims involve a host of issues necessitating individual proof thus creating immense manageability problems for any trial.

Accordingly, the manageability element of this proposed class cannot be satisfied.

## C.    Common Issues Do Not Predominate

### 1.    Individual Issues Predominate Over Common Issues

The Tenth Circuit approach to determine whether common issues predominate over individual ones consists of (1) identifying whether there is a "common nucleus of operative facts" among the issues presented by the suit, and (2) determining whether there are material variations in the elements of the claims presented. *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968); *see also Harding v. Tambrands Inc.*, 165 F.R.D. at 629; *Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 190–91 (D. Kan. 1991); *Emig v. American Tobacco, Inc.*, 184 F.R.D. at 388.

Plaintiff seems to confuse this standard to mean that if there are some common findings that could "advance" each class member's litigation, predominance is met. But the real issue is whether the trial would not be overwhelmed by, in this case, thousands of "mini trials" regarding individual issues. This District's very recent ruling in *Benedict v. Altria Group, Inc.*, No. 05-2306 CM, 241 F.R.D. 668, 2007 WL 960049 at *7 (D. Kan. March 30, 2007) is highly instructive. In this case, the plaintiff sought to hold a cigarette company liable under the KCPA for misrepresentations regarding "light" cigarettes. *Id*. at *1. The court ruled that, under the KCPA, each member of the class would have to individually show that he/she relied on the misrepresentations and was damaged. *Id*. at *7. Even though many of the elements of the claims,

45

such as whether the statements were misleading, could be tried as a class, these common questions would be overwhelmed by the thousands of "mini trials" that the Court would have to conduct on the issues of reliance and damages. *Id*. Plaintiff thus failed to establish predominance. *Id*.

The same issues arise when Plaintiffs seek to certify a class for conversion or unjust enrichment. In these cases, the prospect of individual mini-trials concerning causation and damages often swamps any common questions that exist. *See e.g. Harding v. Tambrands, Inc.*, 165 F.R.D. at 630 (individual questions regarding causation and damages would overwhelm any common questions that existed); *Emig v. American Tobacco Co.*, 184 F.R.D. at 389 (same).

In this case, thousands of individual issues would require mini trials and defeat predominance. Below are some of those individual issues in both Plaintiffs' "consumer class" and "damages class." In addition to the individual questions outlined below, the application of the fifty states' laws to the putative class members' claims defeats predominance.

> a.    **Individual Questions in Plaintiffs Consumer Protection Classes**

Plaintiffs' briefing is unclear as to exactly which BF Labs policies Plaintiffs are challenging with their Rule 23(b)(3) "consumer" class. It is Plaintiffs' burden to demonstrate with their class certification motion that the requirements of Rule 23 are met. *See* D. Kan. L. R. 23.1(d); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. at 160. It appears that Plaintiffs make four categories of allegations, (1) alleged inaccuracies as to product availability, (2) BF Labs' practice of estimating shipping dates, (3) BF Labs' testing, and (4) BF Labs' refund policies. As noted above, none of these allegations raise any common issues to the class. Because Plaintiffs have not identified a single issue that is truly common to their enormously broad and diverse "consumer protection" classes, common questions cannot predominate, and the Court's analysis need go no further. Fed. R. Civ. P. 23(a). In any event, below are some of the most

46

obvious individual questions that clearly swamp any common questions that may exist for Plaintiffs' consumer classes.

### i.      Individual Questions Regarding What Each Class Member Was Told

A class action cannot be predicated on oral misrepresentations because what specifically was said to each class member is an unavoidably individual question. *McHan v. Grandbouche*, 99 F.R.D. 260, 266–67 (D. Kan. 1983); *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 679 (D. Kan. 1989); *Edgington,* 139 F.R.D. at 194. These central, individual questions defeat predominance. *Id.*

All of Plaintiffs' consumer claims rely on proof of oral or written representations. There is not a single standard, written misrepresentation that applies uniformly to each and every putative class member. It is obvious that exactly what any individual employee said or wrote to each class member is an individualized inquiry. *See McHan*, 99 F.R.D. at 267 ("Where there have been oral misrepresentations the initial critical inquiry is what oral representations were made to each member of the prospective class. Individual inquiry would, therefore, be necessary."). Different statements were made at different times. (*See, e.g.,* Ex. B, ¶ 5; Ex. D, No. 8.) In addition, different products were offered at different prices at different times. Plaintiffs do not contend that each (or the same) class member heard or read each statement and in some way acted or relied upon it. Plaintiffs also cannot show that each Defendant acted willfully to injure particular persons at particular times. Inasmuch, multiple individual issues persist.

### ii.      Individual Questions of Reliance

In *Benedict v. Altria Group, Inc.*, No. 05-2306-CM, 241 F.R.D. 668, 2007 WL 960049 (D. Kan., March 30, 2007), this District ruled that each class member must make an individual showing of reliance, causation, and damages in order to sustain a class action under K.S.A.

50-634(d), which is a provision under which Plaintiffs seek to certify their consumer class. *Benedict* at *7. The Court reasoned that even if the plaintiff could establish that the defendant's representations regarding light cigarettes were *per se* deceptive, binding Kansas Supreme Court precedent dictated that each class member must show a causal connection between the statement and his injuries. *Id.* (citing *Finstad v. Washburn University of Topeka*, 252 Kan. 465, 845 P.2d 685, 690 (1993)). The Court went on to reason that the only way that the class members could establish this causal connection in a KCPA claim was to individually show that he/she relied on the defendant's statements concerning light cigarettes when they decided to purchase the cigarettes. *Id.* at *9. In *Benedict*, this District joined numerous other federal and state courts in deciding that consumer protection class actions require individual showings of reliance.[19]

The court in *Benedict* went on to note that the fact that each class member would have to show reliance clearly defeated predominance. *Benedict*, 2007 WL 960049 at *10. It noted that the individual reliance requirement of K.S.A. 50-634(d) would result in "very few class certifications in misrepresentations cases." *Id.* (emphasis in original).

The present case is no different. Plaintiffs claim that BF Labs made misrepresentations or failed to disclose material information at various times. Each of Plaintiffs and nationwide class members would need to establish a causal link between those representations or omissions and his/her injuries. Each class member would thus have to show that he or she relied. These showings would necessitate thousands of mini-trials and defeat predominance.

---

[19] *See e.g. Group Health Plan, Inc. v. Philip Morris Inc.*, 188 F. Supp.2d 1122, 1125 (D. Minn. 2002); *Hageman v. Twin City Chrysler-Plymouth Inc.*, 681 F. Supp. 303, 308 (M.D.N.C. 1988); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001); *Henry Schein, Inc. v. Stramboe*, 102 S.W.3d 675 (Tex. 2002).

### iii.     Individual Questions Regarding Damages

This District has also held that individual damage determinations defeat predominance in consumer protection class actions. In *Benedict*, the court held:

> Ms. Brown argues that injury can be established on an aggregate basis. . . . The court finds this issue is essentially the same as the causation issue. The court is unpersuaded that damages caused by defendants' representations can be established under K.S.A. § 50-634(d) without individual inquiry.

*Id*. at *11. Other courts have reached identical conclusions in different class action contexts. *See e.g. Harding v. Tambrands, Inc.*, 165 F.R.D. at 630 (individual questions regarding damages would overwhelm and common questions that existed); *Emig v. American Tobacco Co., Inc.*, 184 F.R.D. at 389 (same).

Each class member will have differing damages based on the specific product he or she ordered. These individual damage calculations would result in thousands of mini-trials and would clearly defeat predominance.

### b.     Individual Questions in Plaintiffs' Conversion Classes

Nor do common questions predominate in Plaintiffs' conversion classes. Plaintiffs point to BF Labs retaining their purchase order money and keeping bitcoins mined during testing. These conclusory statements do not satisfy Plaintiffs' burden to show an evidentiary basis for the existence of common questions. D. Kan. L. R. 23.1(d). Even if there were common questions created by these actions, they would be swamped by the literally thousands of individual questions that would be created by Plaintiffs' conversion classes.

### i.     Causation

Even if Plaintiffs were successful in identifying a BF Labs action that caused some bitcoin to be mined outside the testing process or that Defendants intentionally withheld purchase money, any given class member's damages is an inescapably individual question. This

District has consistently held that fact intensive individual causation questions in tort cases defeat predominance. *See e.g. Harding v. Tambrands, Inc.*, 165 F.R.D. at 630 (individual questions regarding causation would overwhelm any common questions that existed); *Emig v. American Tobacco Co., Inc.*, 184 F.R.D. at 389 (same).

### ii.      Damages

On the same note, courts in this District have also ruled that individual damage calculations in tort actions defeat predominance. *See e.g. Harding v. Tambrands, Inc.*, 165 F.R.D. at 630 (individual questions regarding damages would overwhelm any common questions that existed); *Emig v. American Tobacco Co., Inc.*, 184 F.R.D. 379, 389 (D. Kan. 1998) (same). Members of Plaintiffs' conversion classes would have wildly varying damages that could not be determined without individual determinations. Under Plaintiffs' proposed conversion classes, the Court would be forced to undertake thousands of individual damage calculations.

### iii.     Individual Questions Created by Differing and Changing Approaches to Purchase Orders, Refunds, and Testing

Whatever BF Labs conduct Plaintiffs ultimately identify is supposedly responsible for class members' damages, those actions changed significantly over the years. (*See, e.g.,* Ex. B, ¶ 13.) The Court would thus have to determine when each class member was damaged.

### D.      Individual Questions in Plaintiffs' Unjust Enrichment Classes

The elements of Plaintiffs' unjust enrichment claim cannot be succinctly identified because, as discussed, the law of each customer's home state will govern. For example, some states require five elements to prove a claim of unjust enrichment while others require three or four. *Compare Nat'l Credit Union Admin. v. Shel-Tec Ltd., LLC*, No. CV-12-02500-PHX-NVW, 2013 WL 4231016 at *2 (D. Ariz. Aug. 15, 2013) ("To plead a claim for unjust enrichment [under Arizona law], [plaintiff] must allege facts showing (1) an enrichment, (2) an

50

impoverishment, (3) a connection between the enrichment and the impoverishment, (4) absence of justification for the enrichment and the impoverishment, and (5) absence of a legal remedy."), *and Troxler v. Breaux*, 105 So.3d 944, 948 (La. Ct. App. 2012) (same), *with Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012) ("The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."), *and Schlinger v. McGhee*, 268 P.3d 264, 272 (Wyo. 2012) ("In Wyoming, the elements of unjust enrichment are: 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the other party would expect payment for the services."). For the same reasons why an actual conflict exists among the unjust enrichment laws of the fifty states, individual issues of law predominate with regard to a nationwide class. In addition to proving different elements for all class members to establish unjust enrichment at trial, other individual issues that m ay predictably arise include the level of misconduct required to be proven and whether the Defendants may avail themselves of particular defenses. *See* 1 McLaughlin on Class Actions § 5:60 (11th ed. 2014) ("Where certification of a multistate unjust enrichment class is sought, variations in state law also have precluded class certification based on unjust enrichment theories." (footnote omitted)).

Eighteen jurisdictions follow the Restatement (First) of Restitution's definition of unjust enrichment; twenty-seven jurisdictions follow the Restatement (First) of Restitutions definition of unjust enrichment with the additional element that the defendant appreciate, realize, or know of the plaintiff's conferral of a benefit; four jurisdictions require a direct connection between the

impoverishment of a plaintiff and the enrichment of a defendant; and two jurisdictions require that a plaintiff prove that a defendant had reasonable notice that the plaintiff would expect payment for the benefit conferred.

"The polestar of the unjust enrichment inquiry is whether the defendant has been *unjustly* enriched[.]" *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Cmwlth. 2006). Resolution to this question is, by nature, fact-sensitive. *Id.* Some common proof regarding equitable circumstances is present here. It is clear that BF Labs was enriched by monetary payments from putative class members who, by definition, paid for equipment. Plaintiffs offer evidence that BF Labs' marketing and distribution was coordinated across the country and thus common to all class members. Plaintiff can establish the facts of BF Labs' marketing and sales activities.

Not as easy is Plaintiffs' class-wide showing of whether enrichment was *unjust*. Under an unjust enrichment theory, all facts and circumstances are considered to determine whether, without a remedy, inequity would result or persist. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009); *Hernandez v. Ashley Furniture Industries, Inc.*, Civ. Action No. 10-5459, 2013 WL 2245894, at *9 (E.D. Pa. May 22, 2013). There are a significant number of class members who prepaid, received a product, used it, and were successful. Innumerable individual issues will exist.

Whether payments for equipment resulted in unjust enrichment is a question resolved by examination into the actions not only of BF Labs, but also of individual class members. *See Marcus v. BMW of North America, LLC*, 687 F.3d 583, 611 (3d Cir. 2012) (reviewing a grant of class certification in a consumer fraud case and stating, "the District Court should not have focused exclusively on [the defendants'] conduct, and should have made factual findings critical

52

to the predominance analysis"); *see also Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 185 (3d Cir. 2014)(noting the various factual scenarios that could lead to overbilling a patient for clinical testing and concluding that individual inquiries are required to determine whether the alleged overbilling constituted unjust enrichment); *Hernandez*, 2013 WL 2245894, at *9 ("Whether the doctrine applies depends on the unique factual circumstances of each case. Thus, the unjust enrichment claim essentially *demands* an individualized inquiry[.]" (internal citations and quotation marks omitted)). What may be unjust for one class member may not be unjust for another depending on individual facts. This individualized inquiry into equitable circumstances applies with regard to Plaintiffs' proposed multi-state grouping.

### E.      Plaintiffs Have Not Proposed a Manageable Trial Plan

Plaintiffs have not proposed a trial plan that demonstrates that this case is manageable as a class action. It is not manageable for the Court and the jury to apply the law of all states to any "common" questions. Nor is it manageable for each Plaintiff and the class members who believe they are injured to have such issues determined as a whole or individually.

This is the exact situation that District Courts have repeatedly held is unmanageable. *See e.g. Benedict v. Altria Group, Inc.*, 2007 WL 960049 (the necessity for individual mini trials for the class members would make the class action unmanageable); *Harding v. Tambrands, Inc.*, 165 F.R.D. at 630 (same); *Emig v. American Tobacco Co.*, 184 F.R.D. at 389 (same).

## VI.    CONCLUSION

While the parties attempted to resolve their claims through a settlement class which the Defendants did not oppose, the Court rejected the proposed plan. Even though it is clear that the Defendants could never satisfy a class-wide judgment, Plaintiffs nevertheless seek certification. For all of the reasons previously discussed, their motion should be denied.

Respectfully submitted,


/s/ Mark A. Olthoff
MARK A. OLTHOFF                KS Fed. #70339
MICHAEL S. FOSTER             KS #24011
POLSINELLI PC
900 W. 48th Place
Suite 900
Kansas City, Missouri  64112-1895
(816) 753-1000
Fax: (816) 753-1536
molthoff@polsinelli.com
mfoster@polsinelli.com

ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Noah K. Wood, Esq.
Ari N. Rodopoulos, Esq.
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO  64105-5171

ATTORNEYS FOR PLAINTIFFS


/s/ Mark A. Olthoff
Attorney for Defendants