## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KYLE ALEXANDER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-2159-KHV-JPO** |
| | ) | |
| **BF LABS INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT BF LABS INC.'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST INTERROGATORIES

Defendant BF Labs Inc., by and through its counsel of record, submits the following answers and objections to Plaintiffs' First Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.

### INTERROGATORIES

BF Labs answers and objects to Plaintiffs' First Interrogatories as follows:

1.      State the name, address, employer, and job title of each person answering these Interrogatories and which interrogatory answers they are responsible for answering.

**ANSWER:**

David McClain, Account Manager at BF Labs Inc. with a business address of 10770 El Monte St #101, Leawood, Kansas 66211, with the assistance of counsel, was responsible for answering interrogatories 1-23. Bruce Bourne, a non-employee consultant, and Sonny Vleisides, Chief Innovation Officer at  BF Labs Inc., assisted Mr. McClain in answering interrogatories No. 4 and 6.


2.      Identify all products offered by Defendant for purchase by consumers from the date of Defendant's inception to the date of these interrogatories, including the product name,

version, and the date the product was first released/available for purchase.

**ANSWER:**

| **Generation** | **Product** | **Sales Start Date** |
|---|---|---|
| **FPGA** | Single | 11/2011 |
| | MiniRig | 1/2012 |
| **ASIC 65 NM** | 4.5 GH | 6/23/2012 |
| | 30 GH | 6/23/2012 |
| | 60 GH | 6/23/2012 |
| | 1,500 GH | 6/23/2012 |
| | 5 GH | 4/04/2013 |
| | 25 GH | 4/04/2013 |
| | 50 GH | 4/04/2013 |
| | 500 GH | 6/12/2013 |
| | 10 GH | 12/13/2013 |
| | 230 GH | 12/2013 |
| **ASIC 28 NM** | 600 GH | 8/17/2013 |
| | 300 GH | 9/04/2013 |
| | 1 TH | 3/11/2014 |
| | 700 GH | 8/19/2014 |
| **Mining by the Gigahash/Cloud Mining** | | 9/11/2013 |
| **Nimbus Mining** | | 1/24/2014 |

3.     For each product identified in No. 2, above, identify the manufacturer(s) and component manufacturer(s), including the name and version of the product or component if not already identified in No. 2, above.

**ANSWER:**

The following companies have provided parts for BF Labs' product lines identified in No. 2 above:

For the FPGA: Ironwood Electronics and Wurth Electronics.

For the 65 NM: Chronicle Technology, Altera, T-Global Technology, TE Connectivity, ST Microelectronics, Coilcraft Corp., Osram Opto Semiconductors Inc., Sullins Connector Solutions, JST America Inc., Great Wall, Cooler Master, and EVGA.

For the 28 NM: Chronicle Technology, CoolIT Systems, T-Global Technology, TE Connectivity, Wurth Electronics, ST Microelectronics, Coilcraft Corp., Osram Opto Semiconductors Inc., Sullins Connector Solutions, JST America Inc., Great Wall, Cooler Master, and EVGA.

For all generations (FPGA, 65 NM, 28 NM): Spel Semiconductor, Celsia Technology, Enner Technology, Pengchu, Renesas Electronics, Sunyon Industry, A&E Metal, Taiyo Yuden, Toshiba, Murata Electronics, United Chemi-Con, TDK Corporation, Panasonic – ECG, Atmel Corp., Microchip Technology, Infineon Technologies, Rohm Semicondoctor, Molex Electronic Solutions, Lite-On Semiconductor Corp., IDT, Fox Electronics, Future Technology Devices International Ltd. (FTDI), Analog Devices Inc., Wurth Electronics, Kemet, ECS International Inc., CUI Inc., Diodes Inc., Analong Devices Inc., Avago Technologies Inc., Fox Electronics, Bourns Inc., Abracon Corp., NDK, AVX Corp., Kyocera Corp., FCI Electronics, Texas

Instruments, Alpha & Omega Semiconductor Inc., Caddock Electronics Inc., NXP Semiconductors, Stanley Electric Co., and Vishay Dale.

4.      For each product identified in No. 2, above, identify the date the product design was first started, the date the product design was finished, the date production of the product began, and the date production of the product ended.

**ANSWER:**

The process of designing the FPGA generation of products began months before the company was incorporated in August 2011, and design modifications continued until near the end of production.  Regarding production, the first shippable unit was manufactured in February 2012 and the last unit in November 2012.

There was a degree of carryover from the FPGA product generation to the 65nm Bitforce SC line of products, therefore in essence the start of design of the 65nm line can be traced to the FPGA generation.  However, in April 2012 BF Labs began efforts with Chronicle Technology to formalize and document design of the 65nm ASIC chip, which is an integral component of this generation. The Bitforce product line design was continually modified throughout the assembly period. Regarding production, the first shippable unit was produced in April 2013, assembly of units in quantity ended in January 2014, and only in isolated cases have any units been assembled since then.

Similar to the 65nm product line, the 28nm Monarch product line design has its origins in the FPGA generation, and there is also a high degree of overlap with the 65nm ASIC chip design itself.  Discussion of the 28nm chip design with Chronicle Technology began soon after the feasibility of the 65nm chip was determined (in 2012) and BF Labs continues to make

4

modifications to the 28nm product line at the present time.  The first manufacture of 28nm products commenced during Q2 2014, but the initial units did not meet specifications and could not be shipped to customers. They were deployed for use in cloud-based mining starting in July 2014.  The first shippable units were produced and shipped during August 2014; production and shipments are ongoing.

5.     For each product identified in No. 2, above, identify the number of units manufactured by month and year, the number of units ordered by consumers by month and year, and the number of units shipped to consumers by month and year.

**ANSWER:**

BF Labs has not tracked by product the number of units it has manufactured or shipped to consumers by month and year. For the FPGA generation order dates and order status, *see* Exhibit A. For the 65 and 28 NM generations, *see* Exhibit B which will show order dates and order status.

6.     For each product identified in No. 2, above, identify the number of units manufactured by month and year that were not ordered by consumers.

**ANSWER:**

BF Labs is unable to provide a specific answer as manufacturing records were not maintained on the basis requested.  Given the use of the preorder sales model, the vast majority of FPGA and 65 NM products were ordered by customers prior to manufacture and the daily focus was on producing at maximum output and shipping as quickly as possible to fulfill the demand from pre-existing orders. Only at the end of the preorder queue would the company have

manufactured units without a pre-existing order, and those were manufactured with the intent to sell to customers from stock.  BF Labs is currently still building 28 NM units to satisfy the preorder queue. BF Labs is not able to identify units that were not ordered by consumers, nor did the company track such units by month and year.


7.      For each product identified in No. 2, above, identify the date(s) Defendant first requested, ordered, or initiated the manufacture of such products and the number of units Defendant requested, ordered, or initiated the manufacture of on each such date.

**ANSWER:**

BF Labs does not maintain or possess manufacturing records that would allow an exhaustive answer to this interrogatory, but incorporates its answer to interrogatory No. 4, above.


8.      For each product identified in No. 2, above, identify the estimated shipping date (and each revised shipping date) Defendant represented publically, the date each representation was made, and Defendant's factual basis for making such representation to the public on each such date.

**ANSWER:**

BF Labs objects to Plaintiffs' request to the extent it seeks information that BF Labs represented publically such information is equally accessible to Plaintiffs. Regarding BF Labs' factual basis for making representations, BF Labs considered the production and assembly processes, information it received from suppliers and component manufacturers, communications with crucial vendors, contracts it had for ASIC chip delivery, among other things.

6

9.     For each estimated shipping date (and each revised estimated shipping date) identified in No. 8, above, identify the *percentage of units* of each product identified in No. 2, above, that were actually shipped within the *estimated shipping date*.   For purposes of this interrogatory, *percentage of units* is defined as the number of units shipped within the applicable estimated shipping date divided by the number of orders pending for the same type of unit times 100%.  Further, *estimated shipping date* is defined as either (a) the estimated shipping date if a fixed date was provided (*e.g.*, "within 2 months"); or (b) the earliest estimated shipping date if a range of dates was provided (*e.g.*, "within 2 months or later" or "within 2 to 6 months").

        **ANSWER:**

        Defendant objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant does not have the records to be able to provide this information to Plaintiffs.


10.     Identify all current and former employees of Defendant or non-employees who were responsible for or involved in the development and content of Defendant's online representations and web-based marketing (including social media such as YouTube, Twitter, Facebook, LinkedIn, Reddit, bitcoin online forums, *etc.*).

        **ANSWER:**

        Current employees responsible for or involved in the development and content of Defendant's online representations and web-based marketing include Josh Zerlan, Jeff Ownby, and Sonny Vleisides. Anthony Fast is a former employee who was involved in the development and content of Defendant's online representations and web-based marketing. Bruce Bourne and

Jurie Pieterse are non-employees who have been responsible for or involved in the development and content of Defendant's online representations and web-based marketing.

11.     Identify all current and former employees of Defendant or non-employees who were responsible for managing, supervising, training, or providing customer service on behalf of Defendant.

**ANSWER:**

Jody Drake, Dave McClain, and Jeff Ownby are current employees who were responsible for managing, supervising, training, or providing customer service on behalf of Defendant. Jurie Pieterse is a non-employee who is, and Paul Scholes is a former employee who was responsible for managing, supervising, training, or providing customer service on behalf of Defendant. In addition, all other employees, all former employees and non-employees have been responsible for providing customer service on behalf of BF Labs by virtue of being associated with BF Labs, which serves customers.

12.     For all policies or contracts of insurance which you were or may be insured in any manner, for the damages, claims, or actions that have arisen out of the occurrence(s) mentioned in Plaintiffs' Complaint, state the type of coverage, the name and address of the company or companies issuing such insurance, the policy number, the limits of coverage for each type of coverage contained in the policy, and whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company.

**ANSWER:**

This information has previously been provided to Plaintiffs. *See* BFLABS-KA 00000001-31. Coverage has been denied in *FTC v. BF Labs Inc., et al.*, No. 14-815-BCW (W.D. Mo.). The letter denying coverage will be produced.

13.     Identify all owners of Defendant by name, address, and percentage of ownership.

**ANSWER:**

Sonny Vleisides, 12406 Overbrook, Leawood, KS 66209 (44%); Nasser Ghoseiri, c/o Law Offices of Behrouz Shafie Associates, 1575 Westwood Blvd., Ste 200, Los Angeles, CA 90024 (40%); Jeffrey S. Ownby, 130 N Park Rd., La Grange, IL 60525 (10%); Alexa Fuller, Olathe, KS (2.5%); Chris Vleisides, Kansas City, MO  (2.5%); and A.D. Douma, Rotterdam, Netherlands (1%).

14.     Identify all bitcoin mining accounts or operations operated, owned, utilized, or otherwise controlled by Defendant or Defendant's agents or employees by stating the name and number of the account or location of the operation, the specific date(s) bitcoins were mined under that account or at that location, and the product name, version, and serial number of the each piece of mining equipment used to mine bitcoins for each account or operation.

**ANSWER:**

BF Labs objects to this Interrogatory to the extent it seeks information relating to the bitcoin mining accounts owned by BF Labs' agents or employees that are not operated, owned, utilized, or otherwise controlled by BF Labs. BF Labs will not answer this interrogatory to the extent it seeks such information. Subject to the foregoing objection, Eclipse Mining Consortium became part of BF Labs on October 26, 2012. This mining consortium is operated on multiple

servers in multiple locations. It provides pool mining services for thousands of pool members, who own their own equipment and the bitcoins mined; BF Labs objects to providing records on the mining results of machines not owned by the company, and does not maintain records of the serial number or type of customer equipment connected to the pool.

BF Labs set up a mining operation at its headquarters in February 2014 to fund the bitcoin prize pool for an internet game show named "The Bitcoin Game Show." Initially, no more than 2 TH of 65 NM mining equipment was used; these were units left over after BF Labs' 65 NM pre-order queue was fulfilled. BF Labs ended mining with no more than 3.5 TH of 65 NM equipment.  During the entire operation of this pool, approximately 14 bitcoins were mined.

In January 2014, BF Labs entered into a cloud-based mining partnership with a data center hosting company through which it offered a product sold under the name Nimbus Mining. The hosting company provides administrative software that monitors bitcoins mined to each customer's account; BF Labs does not receive copies of these records. To support the Nimbus Mining offering (sold between January and June 2014), later a free service referred to as Temporary CloudMining (provided between June and December 2014), and eventually permanent (paid) CloudMining (from December 2014 to present), BF Labs initially provided 594 units of excess 230 GH machines to the partnership.  These machines were decommissioned in August and September 2014.  Starting in July 2014, BF Labs began deploying substandard, non-shippable 28 NM Monarchs to the same hosting company to be used to replace the 65 NM equipment.  Between July and August 2014 approximately 611 TH of Monarch equipment was delivered.  For Nimbus Mining and Cloud Mining, approximately 700 bitcoins were mined and should ultimately be received by BF Labs.

15.     Identify all bitcoin addresses operated, owned, utilized, or otherwise controlled by Defendant or Defendant's agents or employees.

**ANSWER:**

BF Labs objects to this Interrogatory to the extent it seeks information relating to the bitcoin addresses owned by BF Labs' agents or employees that are not operated, owned, utilized, or otherwise controlled by BF Labs. BF Labs will not answer this interrogatory to the extent it seeks such information. Subject to the foregoing objection,

18UxwNVLPo7vyRkCgs5wusUfhhbMYhApAu

14uocwfztA3GQpT1RT6jST9gw1B6pNPEWM

15os4NVs4BqCJg1SaijQJC7T8aLQM7YeY8

1LaWJTs6xbDAvrf6YFRWGnPRNY6UkP98WD

13PVf3oUrbpEJZYoEaouKvR5rqp2x1j84k

14c2bDM17reCLH68uubeSeQygnM2uo5zY2

1QAHVyRzkmD4j1pU5W89htZ3c6D6E7iWDs

1DYqanUjJ6hGaECPj2CMatbW1uBduRWaw8

12HmUEdk3fqz9W4SEf1xjxPqvkGDqAqHyc

13vx46HBN8FViQAy4uFkdvUX5RjAFAuXsY

1EGknUZnQCLTBHH7v2f7PP8vkY42zHbY8y

38PEdxeoJUf12RTzg7Ay6Pu7kV7pqxHA1q

1MPYyQiJ16JpfQ1ab2cVEfncNGo5GLU77a

13cWs3fZDcB4x6myLGByZBVhWiMFYX5QD3

1FLhdDdX5b3A8Jt7uTeLmRnRugR8Dd5syT

1ERVh27gZfPSDaaagL9R3W12xpMJ38ZBA7

15v3sXGh6PDpQXcCmVYRf7H2ryRL5EVsu6

18M9o2mXNjNR96yKe7eyY6pfP6Nx4Nso3d

1NKygkkRpjDmboWEXXEsAFDEKheZ2pBVxo

1GhYFmoDgtyJsYFFWhZ2YmeVj2GHsTPTUC

1BM8dkK77yvwGk7ucqoNn8eDTBFy8jXjLQ.

16.    Identify all designers and engineers involved in the development of Defendant's products identified in No. 2, above.

**ANSWER:**

Employees: Nasser Ghoseiri, Marc Goodpasture, Sonny Vleisides, and Josh Zerlan.

Contractors: Jason Aspinall

Vendors: Chronicle Technology, Interconnect Systems, Nanium, Bayside Design, i2A Technologies, Sierra Circuits, and Spel Semiconductor.

17.    Identify all current and former employees of Defendant or non-employees who have operated in the capacity of a manager or supervisor for Defendant.

**ANSWER:**

**Current**

Sonny Vleisides – VP of Product Development

Nasser Ghoseiri – Chief Technology Officer

Jeff Ownby – VP of Marketing and Ecommerce

Jody Drake – General Manager

Marc Goodpasture – Production Manager

Josh Zerlan – Operations Manager

David McClain – Account Manager

Bruce Bourne – Non-Employee Consultant

Jurie Pieterse – Non-Employee Consultant

**Former**

Anthony Fast - Marketing Manager

Brian Pollmiller – Shipping Supervisor

Debra Grantham – Warehouse Supervisor

Brett Cederholm – Warehouse Supervisor

Alicia Suenaga – Customer Service Supervisor

Zach Weaver – Customer Service Supervisor

Ana Janeth Zamarron – Assembly Supervisor

Paul Scholes – Assistant Account Supervisor

18.     Identify and itemize all consideration (cash, bitcoins, *etc*.) received by Defendant from customers who pre-ordered a product or service from Defendant.

**ANSWER:**

For FPGA generation sales, *see* exhibit C. For the 28 and 65 NM generations, *see* exhibit D.

19.     Identify all customers who requested a refund from Defendant, denoting which customers received refunds, the date of such refunds, and the type and amount of such refunds (cash, bitcoins, *etc*.).

**ANSWER:**

13

*See* Exhibit E, which may be supplemented as it may not be completely comprehensive.


20.     Identify all IPs and account names that Defendant's employees or agents have utilized to post information on the internet relating or referring to bitcoin mining by the dates the posts were made, the contents, and the location of those posts.

**ANSWER:**

BF Labs objects to this interrogatory to the extent it seeks "the dates the posts were made, the contents, and the location of those posts" as this is unduly burdensome and overbroad. Subject to the foregoing objections, the following account names have been used to post information on BF Labs' forums: BFL AM Dave, BFL_Emily, BFL_Jody, BFL_Jonathon, BFL_Josh, BFL_Nasser, BFL Office, BFL_Sabina, and BFL_Updates.


21.     Identify all customers who, after receiving their order from Defendant, notified Defendant the equipment received was defective, not working properly, or not working according to specifications.

**ANSWER:**

*See* Exhibit F.


22.     How many bitcoins has Defendant mined (either by itself or by someone else on Defendant's behalf) for Defendant's own benefit since Defendant was formed?

**ANSWER:**

BF Labs has mined or received as its share of cloud-based mining approximately 8124.58 bitcoins.

23.     How many bitcoins has Defendant mined (either by itself or by someone else on Defendant's behalf) for Defendant's own benefit from the testing of mining equipment pre-ordered by customers before shipping such equipment to customers?

**ANSWER:**

BF Labs does not maintain records that would allow it to answer the question posed by this interrogatory.  BF Labs is otherwise unable to determine precisely the number of bitcoins mined through the testing of mining equipment.  BF Labs further states in an effort to address this interrogatory that there are various activities that result in "by-product" mining, such as product research and development, quality assurance testing, returned item testing and diagnosis, and substandard unit testing and repair/retest. The bitcoin resulting from this "by-product" mining has historically been directed to a single wallet address.  While the number of bitcoins generated by testing cannot be determined, it is substantially less than the 8124.58 total bitcoins mined and identified in the answer to Interrogatory No. 22 above (a figure which includes bitcoins that were mined as part of the Nimbus Mining partnership, as well as bitcoins that BF Labs has yet to receive from cloud mining).

Respectfully submitted,


/s/ Michael S. Foster

| | |
|---|---|
| James M. Humphrey | KS Fed. #70664 |
| Michael S. Foster | KS #24011 |

Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com

Attorneys for Defendant BF Labs Inc.

STATE OF Missouri )
)ss.
COUNTY OF Platte )

Before me appeared David McClain, being duly sworn upon his or her oath, states that he or she is a representative of Defendant BF Labs Inc., that he or she duly authorized to answer the foregoing interrogatories on behalf of Defendant BF Labs Inc., and that the answers given are true and correct to the best of his or her information, knowledge, and belief.

Subscribed and sworn to before me this 23rd day of February, 2015.

Notary Public

My commission expires: 9/14/15

R. JUSTIN ROWDEN
Notary Public - Notary Seal
State of Missouri
Commissioned for Platte County
My Commission Expires: September 14, 2015
Commission Number: 11240575

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20th, 2015, a true and correct copy of the foregoing pleading was served via electronic mail on the following:

Noah K. Wood, Esq.
Ari N. Rodopoulos, Esq.
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171

Attorneys for Plaintiffs

  /s/ Michael S. Foster
Attorney for Defendant BF Labs Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KYLE ALEXANDER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 14-CV-2159-KHV-JPO |
| | ) |
| BF LABS INC., | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of February, 2015, Defendant BF Labs Inc.'s Answers and Objections to Plaintiff's First Interrogatories were served on the following by electronic mail:

Noah K. Wood, Esq. (noah@woodlaw.com)
Ari N. Rodopoulos, Esq. (ari@woodlaw.com)
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171

Attorneys for Plaintiff

Respectfully submitted,


/s/ Michael S. Foster
James M. Humphrey                KS Fed. #70664
Michael S. Foster                KS #24011
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112-1895
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
jhumphrey@polsinelli.com
mfoster@polsinelli.com

Attorneys for Defendant BF Labs Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Noah K. Wood, Esq.
Ari N. Rodopoulos, Esq.
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171

Attorneys for Plaintiff


/s/ Michael S. Foster
Attorney for Defendant

2